**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60416-CIV- SMITH/VALLE**

TOCMAIL INC., a Florida corporation,

          Plaintiff,

v.

MICROSOFT CORPORATION, a
Washington corporation,

          Defendant.

_____/

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT</u>**

Plaintiff, TocMail Inc. ("TocMail" or "Plaintiff"), by and through undersigned counsel, hereby respectfully files its Memorandum of Law in Opposition to Defendant, MICROSOFT CORPORATION'S ("Microsoft" or "Defendant"), Motion to Dismiss Complaint ("Motion to Dismiss" or "Motion") [D.E. 14], and states:

## I.    INTRODUCTION

In its Motion, Microsoft seeks to portray TocMail as "a mere alleged patent holder" who is making "preposterous accusations" "with literally no foundation" solely to procure a "a multi-billion-dollar payday." Setting aside the fact that TocMail does in fact sell cybersecurity that competes with and is more effective than Microsoft's Safe Links, and that TocMail's CEO is a published cybersecurity expert, has previously developed a $95 million internet technology, his cryptography is studied in a textbook, and holds eight cybersecurity patents, Microsoft's unsound attack of TocMail's character is undeniably an attempt to create prejudice against TocMail to avoid the real issues in this case concerning Microsoft's false advertisements.  Microsoft even makes the patently false statement that TocMail "issued a press release to announce the filing of this lawsuit." TocMail did not issue any press release that mentions this lawsuit at any time, including the press release referenced by Microsoft in its Motion.

At its core, this is a straightforward case.  Microsoft advertises and promotes its Safe Links ("Safe Links") service as protecting users from one specific attack called cloaking in which a hacker's link sends benign content to security scanners and sends malicious content to everyone else.  However, Microsoft's cloud-based Safe Links service undisputedly does not work as Microsoft advertises. Even the simplest, most-common form of cloaking (IP cloaking) bypasses Safe Links with near 100% effectiveness.  Thus, Microsoft's advertisements and promotions are literally false.

Safe Links is significant because Microsoft's billion-dollar cloud-based email security service, called Exchange Online Protection ("EOP"), was widely known to be defenseless against IP cloaking. Consumers (e.g., IT decision makers, business decision makers, technology decision makers, etc.) declined moving to Microsoft's cloud-based email security to avoid being harmed by IP cloaking. Therefore, Microsoft introduced Safe Links as the solution, convincing endless consumers to move to Microsoft's cloud-based security. Despite the attempt of Microsoft's Motion to downplay the importance of Safe Links, Safe Links is literally the linchpin that started the migration to cloud-based email security, resulting in substantial sales to Microsoft.

TocMail filed the instant case for false and misleading advertising pursuant to the Lanham Act because it is substantially damaged by Microsoft's literally false advertising regarding Safe Links. TocMail is a competitor of Microsoft based out of South Florida who sells a competing cybersecurity service – the only competing service that effectively blocks IP cloaking. While Microsoft contends that TocMail does not have standing to assert its claims, in addition to being direct competitors, TocMail clearly alleges in the Complaint that TocMail has and will continue to lose substantial sales due to Microsoft's false claims that result in consumers withholding trade from TocMail. Moreover, Microsoft falsely claims to offer that which TocMail alone provides. Thus, it is unquestionably clear that TocMail has standing to bring its claims.

TocMail also states valid claims under the Lanham Act. TocMail's 214 paragraph Complaint sets forth particularly detailed allegations regarding Microsoft's false and contributory false advertising. For example, Microsoft unambiguously advertises and promotes that Safe Links protects against cloaking. Those advertisements and promotions are literally false. Taking TocMail's allegations as true, which is required at this stage but that TocMail will ultimately

establish, TocMail has clearly alleged facts that support false advertising claims.  Microsoft does nothing more than attempt to misconstrue its own advertisements in an effort to confuse the issues.

## II.     FACTUAL BACKGROUND

The following are background facts alleged by TocMail in its Complaint.

The majority of cloud adoption was driven by subscriptions to Microsoft's Office 365. *Compl.*, ¶ 100.  Office 365's email security service is called Exchange Online Protection (EOP). *Id.*, Ex. 3 p. 4.

Microsoft unambiguously portrays Safe Links as the solution to cloaked links that hide from EOP: "EOP scans each message in transit in Office 365 and provides time of delivery protection, blocking malicious hyperlinks in a message. But, attackers sometimes try to hide malicious URLs with seemingly safe links that are redirected to unsafe sites by a forwarding service after the message has been received. ATP's S*afe Links feature proactively protects your users if they click such a link*." *Id.*, Ex. 3 p 5 (emphasis added). Safe Links is the sole Advanced Threat Protection (ATP) service that Microsoft offers against cloaking. *Id.*, Exs. 3, 4, 7, 8. Microsoft falsely portrays Safe Links as the solution to cloaked links in official ATP Product Guides from the launch of ATP in 2015 to present. *Id.*, Exs. 3 p 5, 4 p. 5, 7 p. 7.  In other words, Microsoft's advertisement is simple:  Microsoft presents cloaking as an issue and then states that Safe Links is the solution.  This sustained marketing campaign had a profound impact on purchasing decisions, deceiving consumers (e.g., IT decision makers, business decision makers, technology decision makers, etc.) *en masse* that they can safely move to Microsoft's cloud service *Id.* at ¶ ¶ 6, 25, 101.

While Microsoft attempts to portray TocMail's allegation of Microsoft's deceit as a preposterous accusation, *three* independent cybersecurity researchers demonstrated that Safe

Links' users are unprotected against the simplest, most-common form of cloaked links – IP Cloaking. *Id.* at ¶¶ 31-33, 43, 49-51.  Moreover, TocMail's Complaint includes a 2017 email exchange between Microsoft Security Response Center and accredited cybersecurity researcher Mikail Tunç documenting that Microsoft *knows* Safe Links' users are unprotected from the very attack the users are promised protection from. *Id.* at ¶¶ 6, 33-36. Remarkably, Microsoft claims that TocMail offers an *unproven* technology when, as documented by independent researchers, Microsoft blatantly offers *disproven* technology. *Motion*, p. 2, *Compl.*, ¶¶ 31-33, 43, 49-51.

Only one company built a cloud-based time-of-click redirect service that effectively blocks IP Cloaking – TocMail.  *Id.* at ¶ 135, 140. However, consumers have been falsely led to believe by Microsoft that the problem was solved many years ago, causing TocMail's cybersecurity service to appear to hold no value to the very users who remain defenseless against the one single issue that needed to be solved before companies could safely move to cloud-based email security. *Id.* at ¶¶ 8, 136, 172, 180.  Thus, TocMail has suffered harm and is likely to suffer future harm as a direct result of Microsoft's false advertising. *Id.* at ¶¶ 1, 5, 199-200.[1]

Additional specific false advertisements by Microsoft alleged in the Complaint regarding Safe Links are set forth in detail below in the Memorandum of Law section.

### III.    MEMORANDUM OF LAW

**A.    Standard for Motion to Dismiss.**

In considering a Motion to Dismiss, a federal court must view the subject pleading in the light most favorable to the claimant and accept all of the allegations in the subject pleading as true.

---

[1] Microsoft misconstrues TocMail's allegations concerning its patent.  Contrary to Microsoft's contentions, TocMail's claims are not based on the "dubious premise" that, because TocMail holds a patent, Microsoft's advertisements are somehow false. *Motion* p. 2. Microsoft's advertisements are false because they are false – Safe Links does not protect against the one thing it claims to protect against.  That has nothing to do with TocMail's patent. Rather, TocMail's patent is significant toward the issue of damages because TocMail is the only competitor that offers a solution.

*Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999); *TracFone Wireless, Inc. v. GSM Group, Inc.*, 555 F. Supp. 2d 1331, 1334 (S.D. Fla. 2008). Moreover, "the scope of the Court's review is 'limited to the four corners of the complaint.'" *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005). "[T]he issue is not whether the [claimant] will ultimately prevail, but 'whether the claimant is entitled to offer evidence to support the claims.'" *TracFone Wireless, Inc.*, 555 F. Supp. 2d at 1335 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Thus, "'the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low.'" *Ventrassist*, 377 F. Supp. 2d at 1285.

**B.      TocMail Has Standing to Assert Its Claims under 15 U.S.C. § 1125(a)(1)(B).**

TocMail agrees that, for a plaintiff to have standing to file a false advertising claim under the Lanham Act, (1) the plaintiff's alleged injuries must fall within the "zone of interests" protected by the Act and (2) the advertisements at issue must proximately cause those injuries. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). "This test is 'not especially demanding.'" *Wyndham Vacation Ownership, Inc. v. Miller*, No. 6:19-cv-817-Orl-40EJK, 2019 WL 5394074 *4 (M.D. Fla. Oct. 11, 2019).

"Competitors are within the class that may invoke the Lanham Act because they may suffer 'an injury to a commercial interest in sales or business reputation proximately caused by [a] defendant's misrepresentations." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) ("That provision [15 U.S.C. § 1125] allows one competitor to sue another if it alleges unfair competition arising from false or misleading product descriptions"); *see also Matonis v. Care Holdings Group, L.L.C.*, 423 F. Supp. 3d 1304, 1314 ((S.D. Fla. 2019) (quoting that "[T]he undersigned finds that Plaintiff has alleged the type of injury that the Lanham Act is designed to address. Because Plaintiff competes head-to-head with Defendants, Plaintiff is at a competitive

disadvantage if Defendants are able to advance their market position through false advertisements.") (citations omitted). As a direct competitor of Microsoft offering a directly competing cybersecurity service, TocMail easily satisfies that test. *Compl.*, ¶¶ 17, 196.

As an initial but critical note, Microsoft's lack of standing argument is premised on the unsound contention that TocMail does not offer a cybersecurity service for sale and thus does not compete with Microsoft. *Motion*, pp. 2, 11. Aside from the fact that Microsoft's contentions are incorrect, they also ignore TocMail's clear allegations in the Complaint that TocMail has a cybersecurity service that it offers for sale, which not only is true but must be taken as true at this phase. *Compl.*, ¶¶ 17, 130, 136, 196, 197 (e.g., "Plaintiff sells cloud-based security with the solution to such attacks." *Id.* at ¶ 17; "Plaintiff is a competitor of Microsoft . . . ." *Id.* at ¶ 196).

The rest of Microsoft's standing arguments are either mere denials of allegations in the Complaint or based on unsupported facts that go beyond the four corners of the Complaint. Regardless, TocMail will address the two standing elements required by *Lexmark*.

1.    **TocMail's Alleged Injuries Fall within the "Zone of Interests."**

"[T]o come within the zone of interests in a §1125(a) false-advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131-32 *see also ThermoLife Int'l LLC v. Vital Pharmaceuticals Inc.*, No. 19-cv-61380, 2019 WL 4954622 *2 (S.D. Fla. Oct. 8, 2019) (finding allegations of harm to "business, reputation, goodwill, sales and profits" fall "squarely within the zone of interests protected by the Lanham Act"); *Wyndham Vacation Ownership, Inc. v. Reed Hein & Associates, LLC*, No. 6:18-cv-02171-GAP-DCI, 2019 WL 3934468 (M.D. Fla. 2019) ("With respect to the zone of interest requirement, Wyndham claims that it lost sales and suffered injury to its reputation. . . . This is precisely the sort of commercial interests that the Lanham Act seeks to safeguard.").

Here, TocMail alleges that it, like Microsoft, sells cloud-based security and that it is a competitor of Microsoft. *Complaint*, ¶¶ 17, 130, 136, 196, 197. As a competitor to Microsoft selling a directly competing cybersecurity service, TocMail satisfies the "zone of interests" requirement. *See POM Wonderful*, 573 U.S. at 107.

TocMail additionally sets forth detailed allegations supporting the how and why it has been damaged, including that TocMail has lost sales and suffered injury to its reputation due to Microsoft's false advertising, which allegations must be taken as true. *See, e.g.*, ¶¶ 2, 5, 7, 132-134, 136, 138-140, 142, 183-185, 190, 193, 196-199, 202, 208, 211, and 213. For example, TocMail alleges that "more than 100 million professionals withhold trade from Plaintiff due to Microsoft's deceptive practices." (*Id.* at ¶ 138) and "Microsoft has also irreparably harmed Plaintiff's reputation and continues to irreparably harm Plaintiff's reputation, by convincing over 100 million professionals that Plaintiff's offering is of no value to them . . . ." *Id.* at ¶ 7.

In its Response, Microsoft suggests that TocMail will ultimately not be able to establish its allegations of harm or the amount of damages it is seeking.  Those are mere denials and not appropriate for a motion to dismiss.

Microsoft also asserts that TocMail's allegations depend on multiple assumptions.  The very nature of those assumptions incite a factual dispute and amount to nothing more than mere reasons why Microsoft claims TocMail's allegations are incorrect – i.e., denials.  While TocMail does not agree with those assumptions and/or they have been satisfied, the factual fight regarding them is for another day.   Thus, TocMail clearly satisfies the zone of interest test.

2.      **Microsoft's False Advertisements Proximately Caused TocMail's Injuries.**

For proximate cause, a plaintiff must allege that it suffered "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark*, 572

U.S. at 133. "Economical or reputational injury 'occurs when deception of consumers causes them to *withhold trade* from the plaintiff,' i.e. a loss of sales." *USA Nutraceuticals Group, Inc. v. BPI Sports Holdings, LLC*, No. 15-CIV-80352, 2016 WL 4254257, *5 (S.D. Fla. Feb. 16, 2016) (emphasis in original) (*quoting Lexmark*, 572 U.S. at 133).

Here, TocMail alleges in detail throughout the Complaint that consumers have withheld trade from TocMail – i.e., a loss of sales by purchasers withholding trade from TocMail – and TocMail's reputation damaged directly as a result of Microsoft's false advertising. *Compl.*, ¶¶ 2, 5, 7, 132-134, 136, 138-140, 142, 183-185, 190, 193, 196-199, 202, 208, 211, and 213. For example, TocMail alleges that "more than 100 million professionals withhold trade from Plaintiff due to Microsoft's deceptive practices." *Compl*, ¶ 138; *see also* ¶¶ 185, 196, 198-199. Additionally, as a competitor, TocMail is "within the class that may invoke the Lanham Act" because competitors suffer harm "proximately caused by [a] defendant's misrepresentations." *See POM Wonderful.*, 573 U.S. at 107; *Lexmark*, 572 U.S. at 138 ("[D]iversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising.").

Moreover, courts have found allegations of diverted sales similar to those here to support standing for false advertising claims. *See., e.g., Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1225 (M.D. Fla. 2017). In *Warner Bros.*, Incarcerated owned the rights to the "true story" of Efraim Diveroli and alleged that "it has been effectively shut out of the marketplace" due to Warner's massive false advertising campaign. *Id.* at 1225. Specifically, Incarcerated alleged that Warner capitalized on consumers' desire to purchase "the true story" by falsely claiming to offer that which Incarcerated alone provided. *Id.* The Court stated: "Plaintiff alleges that it is a direct victim of Warner's advertising because War Dogs *diverted book sales* from Plaintiff. In particular, the Amended Complaint alleges that 'consumers who desire to learn

9

the true story are most likely to purchase a ticket to the movie, after being bombarded with promotional material, rather than purchasing Diveroli's memoir.' . . . Accordingly, Plaintiff plausibly alleges that its injuries 'flow[] directly' from Warner's advertising. . . Again, whether Plaintiff will actually be able to prove its theory is a separate question that is not appropriate for resolution on a motion to dismiss." *Id.* at 1233 (emphasis added).

Here, in addition to all of its other allegations supporting proximate harm, TocMail alleges that Microsoft capitalized on consumers' desire to purchase protection from IP Cloaking by falsely claiming to offer that which TocMail alone provides, diverting customers from TocMail.[2] *Compl,* ¶¶ 129, 130, 136, 140, 197.  Thus, TocMail has abundantly alleged proximate causation.

In its Motion, Microsoft cites cases for the general rule that vague and speculative allegations of harm do not support a proximate cause finding.  However, all of those cases cited by Microsoft involved parties *that were not competitors*.  *See Motion*, p. 11-12.  Clearly such cases would not apply here where Microsoft and TocMail are competitors. *See Tech. Med. Advancements, LLC v. Advanced Med. Distribs.*, No. 15-80194, 2015 WL 11438210 *5 (S.D. Fla. Oct. 2, 2015) (finding that, where the parties were competitors, at the motion to dismiss phase, "it logically follows" that the harm is directly caused by the false advertisements of the other party).

Microsoft also argues that TocMail failed to allege proximate cause due to a number of hypothetical intervening causes. *Motion*, p. 11.  Purported intervening causes asserted by a defendant at the motion to dismiss stage should be disregarded and are not sufficient grounds for dismissal.  *Wyndham Vacation Ownership v. Gallagher*, 6:19-cv-00476-GAP-EJK, 2019 WL 5458815 *7 (M.D. Fla. Sept. 10, 2019) ("Taking these allegations as true and **disregarding Resort**

---

[2] Additionally, TocMail holds a patent on its security.  *Compl.*, at ¶ 121. Customers purchase from Microsoft believing that they are receiving from Microsoft that which they can only get from TocMail. *Id.* at ¶ 197. Since TocMail is the sole provider, it alone is being harmed.  These additional allegations only add to the fact that TocMail has clearly alleged proximate cause.

**Legal Team's attempt to identify as many intervening steps as possible**, the Court finds that

Wyndham has presented sufficient facts to plead proximate cause.") (emphasis added).  "'[C]ourts

have found that causation just requires that false advertising proximately cause the claimed injury

– it need not be the only cause or even the predominant cause of the injury.'"  *Id.* at *6.  Microsoft

cites just one case claiming that intervening causes could affect proximate cause, a case from the

District of Arizona, but that case again did not involve competitors. *Motion* p. 11; *ThermoLife*

*Int'l. LLC v. Sparta Nutrition LLC*, 2020 WL 248164 (D. Ariz. Jan. 16, 2020).  Rather, the Court

in that case stated that there was *no link* between the parties and that plaintiff failed to "connect[]

the dots" in the Complaint.  *Id.* *9.  That is completely the opposite of the facts here in which

TocMail alleges that it sells a directly competing security service and that customers are diverted

from TocMail to Microsoft due to Microsoft's false advertisements.

Thus, TocMail has standing to bring its current claims against Microsoft.

**C.    TocMail Properly States a Claim for False and Misleading Advertising.**

To state a claim for false advertising, a plaintiff must allege that "(1) the defendant's

statements were false or misleading; (2) the statements deceived, or had the capacity to deceive,

consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the

misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will

be, injured as a result of the false or misleading statement."  *Hi-Tech Pharms., Inc. v. HBS Int'l.*

*Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018).  TocMail has stated a claim for false advertising.

**1.    TocMail Sufficiently Alleges that Microsoft's Subject Advertisements and Promotions Were False or Misleading.**

For the first element, a plaintiff must allege that a "challenged advertisement is

literally false, or [that] the challenged advertisement is literally true, but misleading."  *Osmose*,

612 F.3d at 1308.  "Statements that have an unambiguous meaning, either facially or considered

in context, may be classified as literally false." *Osmose*, 612 F.3d at 1309.  Whether statements, read in their full context, are false or misleading is "a fact-intensive inquiry" not "appropriate on a motion to dismiss." *Incarcerated Entm't.*, 261 F. Supp. 3d at 1231.  In its Complaint, TocMail alleges that Microsoft made specific false or misleading statements in its advertisements and promotional materials. *Compl.*, ¶¶ 25, 28, 40, 53, 62, 66-67, 74, 80, 82, 87. Those deceptive messages falsely convey that Safe Links protects users from IP Cloaked dynamic links and, therefore, consumers can safely move to Microsoft's Office 365 cloud app.[3] *Id.*

### a. Deceptive Message #1.

In its Complaint, TocMail alleges that Microsoft's current ATP product brochure contains a false advertisement. *Compl.*, ¶¶ 52-54, Ex. 7.  Microsoft does not address this product brochure in its Motion in any fashion. This product brochure depicts cloaked links as "weaponize[d]" links, and promises Safe Links protects users from them: "Sophisticated attackers will plan to ensure links pass through the first round of security filters. They do this by making the links benign, only to *weaponize* them after the message is delivered, altering the destination of the links to a malicious site. *With Safe Links, we are able to protect users*…" *Id.* (emphasis added). In other words, Microsoft's advertisement is simple: Microsoft presents cloaking as an issue and then states that Safe Links is the solution. TocMail alleges that this statement is literally false because Safe Links is not a solution to cloaking. *Id.* at ¶ 53-54. That in itself ends the analysis. TocMail states a claim.

In addition to the product brochure, TocMail also alleges in its Complaint that Microsoft's 2019 ATP Product Video, which Microsoft does address in the Motion, is literally false or misleading, including statements from the following excerpt:

---

[3] TocMail contends that it has sufficiently stated a claim for false advertising regarding each of the false messages.  However, even if the Court were to determine that one false message is not actionable, the other false messages would stand separately and still support a claim for false advertising.

> Sophisticated attackers will plan to **ensure links pass through** the first round of security filters by making the links benign, only to **weaponize them once the message is delivered. Meaning that the destination of that link is altered later to point to a malicious site.** Time is important when **thwarting this type of attack**. 20% of all clicks happen within just five minutes of when an email is received, and **with Safe Links, we're able to protect users right at the point of click...**

*Compl.*, ¶ 26, Ex. 8; *see also* ¶¶ 27-40, 53-54.

In its Motion, Microsoft acknowledges that the weaponized links, in which time is important for thwarting, does indeed refer to IP Cloaked links, but then solely attempts to distract by misconstruing the advertisement and TocMail's allegations. *Motion*, pp.14-15. For example, Microsoft claims that Safe Links' protection is "a separate statement" and therefore refers to something else. *Id.* at p. 14. Microsoft improperly attempts to separate the eyes, ears, and mouth in order to deny the existence of the face, in direct opposition to the Eleventh Circuit's requirement to the contrary. *Incarcerated Entm't.*, 261 F. Supp. 3d at 1230-31 ("[t]he Eleventh Circuit is clear that 'the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other.'") (citations omitted).

Additionally, the ATP Product Brochure's statement regarding IP Cloaked weaponized links has a picture next to it with the following caption: "Weaponized links are detonated by Safe Links..." *Compl*, Ex. 7, p. 7. Given that Microsoft correctly acknowledges that the weaponized links are IP cloaked links, the exhibit explicitly conveys that Safe Links is undisputedly responsible for protecting against these IP cloaked links, *not something else*.

TocMail also alleges "Microsoft's implication that only 'sophisticated attackers' use dynamic links to bypass their billion-dollar *first round of detection* is misleading." *Compl.*, ¶ 47. (emphasis added). Microsoft misconstrues this allegation and then argues based on its own misconstrual. *Motion* pp. 14-15.  Specifically, TocMail refers to bypassing the "*first round of detection*," but Microsoft incorrectly states that TocMail refers to eluding "*Safe Links*" and then

builds a misleading argument on its own incorrect statement. *Id.* Microsoft is simply attempting to misconstrue TocMail's allegations and its own unambiguous advertisement to confuse the issues.

To the contrary, Microsoft's advertisement is very simple: Microsoft presents cloaking as an issue and then states that Safe Links is the solution. This is literally false.

### b.    Deceptive Message #2.

TocMail alleges in its Complaint that various ATP product guides and other promotional materials are literally false or misleading and state:

> …**attackers sometimes try to hide malicious URLs within seemingly safe links that are redirected to unsafe sites by a forwarding service** after the message has been received. **The ATP Safe Links feature proactively protects your users if they click *such a link***. That protection remains every time they click the link, so malicious links are dynamically blocked while good links can be accessed. (emphasis added)

*Compl.*, ¶ 57-67; Exs. 3, 4, 12, and 13.

Again, this is a simple message. Microsoft unambiguously states that Safe Links's users are protected when they click on cloaked links. However, TocMail alleges that this statement is literally false because Safe Links is defenseless against even the simplest, most-commonly used cloaked links (IP Cloaked links). *Compl.*, ¶¶ 32, 54, 129. Thus, TocMail sufficiently alleges a false advertisement and/or promotion.

Microsoft argues that Deceptive Message #2 does not actually make "any promises, guarantees or other representations" regarding Safe Links. *Motion* p. 15. In other words, Microsoft denies that it promotes that Safe Links works. *Id*. However, that argument is directly contradictory to the express, unambiguous language from the materials:  "ATP Safe Links feature proactively protects your users if they click such a link."  Thus, it is clear that Microsoft makes a statement of fact that Safe Links protects users from such links, which TocMail alleges is false.

14

### c.    Deceptive Message #3.

TocMail alleges Microsoft uses the following literally false statement in its primary ATP Case Study:  "We no longer have to worry about what security product we'll use. With Microsoft 365 we're covered."  *Compl.,* ¶¶ 68-75; *Exs.* 10, 11, 25.

Microsoft argues that the message is not actionable because it is a quote supplied by a customer. *Motion*, p. 15. However, TocMail alleges that the message is actionable because Microsoft uses it to falsely promote to other companies that no other security products are needed. *Compl.*, ¶¶ 72-73. Given that ATP fails to block the most-common hacking attack, this statement is literally false. *Id.* at ¶¶ 32, 39, 54.

In the only case cited by Microsoft, the issue was a factually true customer survey, not a literally false customer statement. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1251 (11th Cir. 2002).

### d.    Deceptive Message #4.

TocMail alleges in the Complaint that Microsoft's use of the name "Safe Links" is false and misleading. *Compl.*, ¶¶ 76-84.  A product name can constitute a false or misleading statement for a false advertising claim. *Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 97 (3rd Cir. 2000) (finding that the "District Court's finding that the BreathAsure product name is 'deceptive and a misrepresentation of the products' qualities' was not clearly erroneous" and requiring that BreathAsure be enjoined from using the BreathAsure product name). Just as "BreathAsure" falsely conveys an assurance of fresh breath, TocMail alleges that "Safe Links" falsely conveys that links are made safe, especially given that it is virtually defenseless against the specific attack it is promoted to block. *Compl.*, ¶¶ 76-78, 80.

Microsoft contends that "Safe Links" contains no guarantee about the performance of Safe Links and merely constitutes opinion and puffery. *Motion* p. 16. Microsoft cites and misconstrues cases for the proposition that the word "safe" is non-actionable. *Id*. The *City of Roseville* case concerned securities fraud, not false advertising, and is completely inapplicable here. *Id.* The *Tylka* case was a case involving consumer fraud under Illinois law and the word "safe" was not at issue but rather the superlative laden phrase: "most wholesome nutritious safe foods you can buy anywhere in the world." *Tylka v. Gerber Prod. Co.*, 1999 WL 495126 *8 (N.D. Ill. July 1, 1999). That case certainly does not demonstrate "well-settled" law, as Microsoft argues, that the word "safe" is non actionable.[4] *Id*.

Contrary to Microsoft's contentions, misrepresentations regarding the safety of one's own products can be the subject of a false advertising claim. *See In re Bayer Corp*., 701 F. Supp. 2d 356, 375 (E.D.N.Y. 2010) (finding claim that the defendant misrepresented the safety and effectiveness of the defendant's products was "a traditional claim of consumer misrepresentation."); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*,708 F. Supp. 2d 1209, 1244 (D.N.M. 2010) ("The Court finds that the bulk of these statements – 'safer,' 'more efficiently,' 'easier,' 'quicker – are objectively verifiable and that a reasonable consumer might believe that the seller had engaged in some sort of testing before making these statements. They are therefore not puffing."); *X-IT Prods, L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 628 (E.D. Va. 2001) (finding that reference to a product as "safe" is not mere puffery under the Lanham Act). Moreover, in the context of a cybersecurity service, "safety" is not only a

---

[4] Microsoft also cites *Wyndham Vacation Ownership*, 2019 WL 3934468 for the general proposition that statements of opinion and puffery are not actionable. However, the Court in that case went on to state that "TET tries to sidestep Wyndham's allegations by arguing that its advertisements were accurate and/or constitute non-actionable opinion and puffery. . . But this argument fails to appreciate that the court, when ruling on its motion, 'must accept as true all well-pled factual allegations' . . . [and] involves a fact-intensive inquiry that is inappropriate for resolution on a motion to dismiss." *Id.* at *6.

material quality, "it is the core quality that consumers consider when making a purchase decision." *Compl.*, ¶ 84.  Thus, it is clear that Microsoft's use of "Safe" Links is an actionable statement.

> **e.    Deceptive Message #5.**

TocMail also alleges that Microsoft makes a false or misleading statement in its power point presentations targeted to Business Decision Makers, Technology Decision Makers, and IT Decision Makers: "ensure hyperlinks in documents are harmless with ATP Safe Links."  *Compl.*, ¶¶ 85-90; Exs. 5, 6; *see also* Ex. 14 for near identical messaging. However, TocMail contends that it is literally false to promote that Safe Links *ensures* hyperlinks in documents are harmless, for reasons explained in more detail throughout the Complaint and this Response.  *Id.* at ¶ 87.

Microsoft only argues that this statement cannot be actionable because it was a "heading in a presentation" to which a presenter speaks about. *Motion*, p. 16. Such argument is backwards. The purpose of headings is to draw attention and focus, emphasizing the message, as the slides themselves demonstrate. *Compl.*, Exs. 5 p.23, Ex. 6 p.21,  Ex. 14 p. 6. Microsoft essentially argues that the literally false heading cannot be considered false because someone is talking about it.

"Ensure hyperlinks in documents are harmless with ATP Safe Links" is literally false everywhere it's found, including presentation headers.

> **2.    TocMail Sufficiently Alleges that Microsoft's Statements Had the Capacity to Deceive Consumers.**

TocMail alleges that all of the Deceptive Messages are literally false. *Compl.*, ¶¶ 25, 28, 40, 53, 62, 66-67, 74, 80, 82, 87. All of Microsoft's arguments claiming TocMail fails to demonstrate consumer deception are irrelevant given that evidence of consumer deception is not required where the statements at issue are literally false, which TocMail has alleged here. *Osmose*, 612 F.3d at 1319 (11th Cir. 2010).

Even if the Court were to determine that certain False Messages were misleading rather than literally false, evidence of consumer deception would still not be required at the motion to dismiss phase. *Incarcerated Entm't.*, 261 F. Supp. 3d at 1232. ("Warner cites no authority to suggest that factual evidence of consumer deception is required at the pleading stage, and the Court declines to impose such an evidentiary burden"); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1316 (M.D. Fla. 2012) ("that burden does not exist at the pleading stage.").

Regardless, TocMail amply pled consumer deception. *Compl.*, ¶¶ 5, 8, 113-114, 118, 193.

### 3.     TocMail Sufficiently Alleges that Microsoft's Statements Had a Deceptively Material Effect on Purchasing Decisions.

To establish materiality, the plaintiff must plead that "'the defendant's deception is likely to influence the purchasing decisions.'" *Osmose*, 612 F.3d at 1319. TocMail alleges "Microsoft's actions have had and continue to have a material effect on purchase decisions." *Compl.*, ¶ 194. "In fact, Microsoft presents *Safe Links' alleged protection against dynamic links as the linchpin of the purchase decision*." *Id.* at ¶¶ 41; *see also* ¶ 53 (emphasis added). Multiple Microsoft advertisements present Safe Links' capabilities as the *linchpin of the purchase decision*: i.e., cloaking bypasses our billion-dollar time-of-delivery filter but Safe Links will protect you. *Id.* at ¶¶ 26, 52, 57-67. Moreover, Microsoft's own 2018 Q4 Form 10-K confirms that perception of its security is inextricably tied to purchase decisions: "**The security of our products and services is important in our customers' decisions to purchase** or use **our products or services**. . . . perceived security vulnerabilities in our products and services… could harm our reputation and lead customers to reduce or delay future purchases of products or subscriptions to services, or to **use competing products or services**." *Id.* at ¶ 103 (emphasis added).

Microsoft spends time in its Motion attacking TocMail's allegations of materiality and attempting to argue other reasons why consumers may purchase Safe Links independent of its false

advertisements and promotions regarding Safe Links. *Motion*, pp. 17-18. Microsoft goes as far as suggesting that, at the Complaint stage, before any discovery, TocMail's claims fail because TocMail allegedly does not present express evidence that specifically "state that consumers purchase Safe Links because they believe Microsoft promised it would prevent cyberattacks from dynamic links." *Motion*, p. 17. Microsoft is attempting to assert a heightened pleading standard that is simply not required here. Also, the factual intensive inquiry Microsoft seeks to incite is not proper for a motion to dismiss. Thus, TocMail has clearly alleged materiality.

Additionally, Microsoft patently misrepresents the Complaint's exhibits. For example, Microsoft claims **"nowhere is Safe Links even mentioned in these materials"** in reference to Exhibits 31, 34-36. *Motion*, pp. 17-18. Yet Safe Links is prominently discussed in Ex. 36 of the Complaint: "'[W]e've enabled *Safe Links* across the entire tenant with about *1,000 users now*'" *Compl.*, Ex. 36, p. 2 (emphasis added); *see also* Ex. 31, p. 30 (table referencing Safe Links).

**4.    Interstate Commerce.**

Microsoft did not contest that TocMail sufficiently pled interstate commerce. TocMail did in fact plead that Microsoft conducts "business throughout the United States" via its cloud-based product involved in interstate commerce. *Compl.*, ¶¶ 10, 24, 100-101, 195.

**5.    TocMail Sufficiently Alleges that TocMail Has Been or Is Likely to be Injured by Microsoft's Statements.**

Microsoft argues that TocMail cannot plead an injury because TocMail allegedly did not plead the materiality element. *Motion*, p. 18. However, TocMail sufficiently alleged materiality as discussed. Additionally, as explained in detail in the standing section, TocMail has clearly alleged that it has been damaged and will be damaged directly by Microsoft's false advertisements and promotions, which need not be repeated here. TocMail also specifically pled injury directly caused

by Microsoft's false advertisements, as discussed in detail above.  Thus, TocMail sufficiently pled that it has been or likely will be injured.[5]

Therefore, TocMail has properly pled all of the elements of a false advertising claim.

**D.    TocMail Properly States a Claim for Contributory False Advertising.**

TocMail agrees that the two elements required to state a claim of contributory false advertising are (a) false advertising by a third party and (b) the defendant contributed to such conduct by inducing, causing or participating in it.  *Motion*, p. 19.  Microsoft argues: 1) TocMail's alleged harm was caused by third-parties that advertise their own products, not Safe Links, 2) TocMail does not allege that Microsoft knew about the false advertising, and 3) TocMail did not allege that Microsoft actively and materially furthered the unlawful conduct.

However, a defendant can be liable for contributory false advertising where a third party is falsely advertising its own services. *Reed Hein*, 2019 WL 3934468 at *7 (M.D. Fla. Aug. 20, 2019).  Thus, Microsoft's first contention is without merit.

Moreover, TocMail alleges that Microsoft knows or has reason to know about the third parties' false advertising. *Compl.*, ¶ 184. Additionally, in *Reed*, the plaintiff alleged that the defendants must be aware of the third party's false advertising *due to its widespread dissemination*, and the court agreed. 2019 WL 3934468 at *7.  Here, TocMail alleges widespread dissemination in the form of an "industry-wide deception" *Compl.*, ¶¶ 42, 65, 146-147, 157, 159. Hence Microsoft must know about the false advertising. *Id.* at ¶ 184.

Additionally, acceptance of customers by a defendant that were acquired through a third party's false advertising constitutes furthering unlawful conduct for purposes of a contributory

---

[5] Microsoft also contends that TocMail's allegations are speculative regarding the precise number of customers TocMail has lost due to Microsoft's false advertisements. *Motion*, p. 2-3.  However, that issue goes to the amount of damages at trial, not whether TocMail has standing or whether TocMail states a claim for false advertising.

false advertising claim. *Reed Hein*, 2019 WL 3934468 at *7. In *Reed*, the court found the plaintiff's allegations that "without [the defendants'] willingness to accept those consumers [derived from the false advertising]," "[the third party] could not advertise what they do." *Id.* Here, the third parties identified in the Complaint are advertising time-of-click services for companies that want to become *Microsoft Office 365 users. Compl.*, ¶¶ 142-184. If Microsoft were to decline customers derived from the third-party false advertisers, the third-parties "could not advertise what they do."

Additionally, "a plaintiff may be able to make out the participation prong of a contributory false advertising claim by alleging that *the defendant directly controlled or monitored the third party's false advertising. Duty Free Ams., Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (emphasis added).  "It is also conceivable that there could be circumstances under which *the provision of a necessary product or service, without which the false advertising would not be possible, could support a theory of contributory liability*." *Id.* (emphasis added). Here, TocMail alleges that Microsoft provides third-party false advertisers access to its proprietary protocol, and "such third parties cannot offer their services without Microsoft providing access." *Compl.*, ¶ 144. TocMail alleges that Microsoft has "technology partnerships and relationships" with third-party false advertisers.  *Id.* at 145. Microsoft certainly monitors, and can control, the advertising of its partners and the companies to which it provides protocol access, yet Microsoft enjoys the benefits of an increased customer base as a direct result of the third-party false advertising, all while knowing that those parties are falsely advertising their services regarding time-of-click security. *Id.* at ¶ 184.

Thus, TocMail has properly pled a claim for Contributory False Advertising.

### IV.    CONCLUSION

TocMail respectfully requests that the Court deny Microsoft's Motion to Dismiss.

Dated: May 14, 2020

Respectfully submitted,
By:   /s/Joshua D. Martin
Joshua D. Martin
Florida Bar No. 028100
josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd., Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

*Attorneys for Plaintiff, TocMail Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 14th day of May 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    /s/ Joshua D. Martin
Joshua D. Martin

## SERVICE LIST

### *TOCMAIL INC. v. MICROSOFT CORPORATION*
### 20-60416-CIV- SMITH/VALLE

**Joshua D. Martin**
E-Mail: josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd.
Suite 430
Fort Lauderdale, Florida 33309
   Telephone: (954) 790-6699
Facsimile: (954) 206-0017

**Francisco O. Sanchez**

E-Mail: sanchezo@gtlaw.com
         orizondol@gtlaw.com
**Evelyn A. Cobos**

E-Mail: cobose@gtlaw.com
         FLService@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

**Mary-Olga Lovett** *(admitted pro hac vice)*
E-Mail: lovettm@gtlaw.com
GREENBERG TRAURIG LLC
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 374-3505