UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-RS

TOCMAIL INC., a Florida corporation,

      Plaintiff,

v.

MICROSOFT CORPORATION, a Washington
corporation,

      Defendant.

**MICROSOFT CORPORATION'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

In its motion to dismiss [ECF No. 14] (the "Motion"), Microsoft exposed the speculative and implausible nature of TocMail's lawsuit and underlying claims, which fall well short of the standard set forth by the United States Supreme Court for pleading claims that can survive a motion to dismiss. TocMail's memorandum in opposition [ECF No. 22] (the "Opposition") does not refute Microsoft's arguments but instead doubles down on TocMail's novel theory that its patent, by definition, renders any marketing of Microsoft's Safe Links technology misleading. TocMail's claims are unsubstantiated. TocMail does not have standing to sue because it does not specify any economic or reputational injury that was caused by Microsoft's conduct, and simply asserting injury and causation without details is insufficient. TocMail also does not state a cognizable cause of action under the Lanham Act because none of the alleged deceptive statements is false or misleading, nor could they be material to consumers. Furthermore, any allegedly deceptive statements by third parties were not actively and materially furthered by Microsoft. The Complaint should therefore be dismissed altogether.

## I.      TocMail Lacks Standing to Sue Microsoft Under § 1125(a) of the Lanham Act.

TocMail fails to allege sufficient facts to establish standing for a false advertising claim under the Lanham Act. First, TocMail's claims do not fall within the "zone of interests" protected by the Act, and second, TocMail has failed to allege it has suffered injuries that were proximately caused by Microsoft's conduct in violation of the Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).

As an initial matter, TocMail boldly asserts that simply because it is allegedly a competitor of Microsoft's, it necessarily satisfies the "zone of interests" requirement. Opp. at 8. TocMail relies on *POM Wonderful LLC v. Coca-Cola Co.*, a preemption decision addressing whether the Food, Drug, and Cosmetic Act precludes a private party from bringing a Lanham Act claim, which

does not address the application of the Act. 573 U.S. 102, 120-21 (2014).  In discussing Congress'
intent and the purpose of the Lanham Act, the Supreme Court acknowledged that "[c]ompetitors,
in their own interest, may bring Lanham Act claims," because "they may suffer an injury to a
commercial interest in sales or business reputation proximately caused by [a] defendant's
misrepresentations." *Id*. at 107.  However, the mere fact that a plaintiff is allegedly a competitor
does not, by itself, guarantee that it has standing to sue under the Lanham Act, as TocMail argues.
*See, e.g., Nature's Earth Prod., Inc., v. Planetwise Prod., Inc*., No. 09-80770-CIV, 2010 WL
4384218, at *6 (S.D. Fla. Oct. 28, 2010) (finding defendant had no standing to bring false
advertising claim under the Act because "[d]efendant, though a competitor, does not allege a
recognizable injury or a link between its purported harm and Plaintiff's conduct…."); *see also
Lexmark*, 572 U.S. at 138-39 (plaintiff need not be a competitor to bring a false advertising claim
under the Act).

Indeed, TocMail is still required to plead sufficient facts demonstrating it is within the
"zone of interests" by showing it has suffered injury to its commercial interests in reputation or
sales. *See Lexmark*, 572 U.S. at 131-32.  Instead of providing such facts, however, TocMail merely
conclusively recites its burden and alleges that "TocMail has lost sales and suffered injury to its
reputation due to Microsoft's false advertising…." Opp. at 8.  It does not specify when and how
the lost sales occurred, how much the lost sales were worth, what specific damage was done to
TocMail's reputation, or provide any details that would raise its pleading above pure speculation.[1]

---

[1] TocMail assumes that all of Microsoft's Office 365 users have withheld trade from it. Opp. at 8. Such a
blanket assertion that all of Microsoft's sales constitute TocMail's injury is akin to not stating any injury at
all. At the very least, without providing details of when TocMail's product was brought to market or other
facts to quantify actual sales, TocMail's allegations are implausible and insufficient to allege injury. *See
Natural Answers, Inc. v. SmithKline Beecham Corp*., 529 F.3d 1325, 1331-32 (11th Cir. 2008) ("Natural
Answers ["NA"] could suffer no such commercial or competitive injury, because it was no longer selling
or promoting HerbaQuit Lozenges at the time of the alleged injury. Simply put, [it] could not have lost any
customers or potential customers…. In fact, all it can allege is that GSK's conduct 'might' cause…(cont.)

Indeed, TocMail does not allege facts showing that it made any efforts to market and sell its technology, or that it had any reputation with consumers at all.  While the allegations in a complaint are assumed to be true, such "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *See Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  As such, TocMail has failed to plead sufficient facts to allege its claim falls within the Lanham Act's "zone of interests."

Secondly, TocMail cannot allege causation, or "economic or reputational injury flowing directly from the deception wrought by [Microsoft's] advertising." *Lexmark*, 572 U.S. at 133.  Here too, TocMail does not allege facts supporting causation but instead conclusively states that consumers have "withheld trade" from it and that its "reputation [has been] damaged directly as a result of Microsoft's false advertising." Opp. at 9.  TocMail argues that allegations of diverted sales, like those in *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, are sufficient to establish standing for false advertising. *See* 261 F.Supp.3d 1220, 1225 (M.D. Fla. 2017); Opp. at 9. TocMail's reliance on *Incarcerated*, however, is misplaced.  In *Incarcerated*, plaintiff owned the rights to the life story of Efraim Diveroli and sued Warner Bros. for misappropriating that story by advertising its film "War Dogs" as the "true story," when it was not, thereby diverting sales away from Diveroli's memoir and to Warner Bros.' movie instead. *Id*.  That is different than the situation here, where TocMail has not alleged any facts to support the notion that it had an existing

---

the value of the HerbaQuit Lozenges mark to 'weaken' at some wholly unknown time if NA chooses to reintroduce it into the market…. Moreover, the amount of NA's claimed damages is entirely speculative."). Similarly, the fact that various assumptions would need to be made to accept TocMail's allegations as true (which TocMail dismisses as denials of allegations, which they are not), further supports the fact that the allegations as they stand are insufficient to allege standing. *See* Mot. at 13; Opp. at 8; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…. The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''") (internal citations omitted).

product in the market and lost sales due to Microsoft advertising Safe Links as containing TocMail's technology, thereby causing consumers to purchase Safe Links over TocMail's product. While TocMail asserts that "Microsoft capitalized on consumers' desire to purchase protection from IP Cloaking by falsely claiming to offer that which TocMail alone provides, diverting customers from TocMail," none of the alleged false advertisements state that Safe Links provides protection from IP Cloaking or that it has the sole, unique capacity to do so, let alone do they mention TocMail or its technology. Opp. at 10.

In fact, the allegations TocMail points to only discuss TocMail's alleged patent and do not discuss Safe Links or Microsoft's advertising of Safe Links. *Id*. at 10 (Compl. ¶¶ 129-130, 136, 140, 197).  Without alleging any specific false advertising of Safe Links, TocMail cannot attribute any alleged diversion of its sales to Microsoft,[2] and simply stating so is insufficient. *See Iqbal*, 556 U.S. at 678.[3]  Because TocMail has not sufficiently pled standing, its Complaint must be dismissed.

## II.     TocMail Cannot State a Claim for False and Misleading Advertising.

TocMail does not dispute that the five "Deceptive Messages" that serve as the pillars for Count I of the Complaint either (1) were not made by Microsoft or (2) reflect TocMail's interpretation of Microsoft's statements.  Each is accompanied in the Complaint by one or more exhibits that must each be considered in full context and in its entirety, and which control over the

---

[2] Safe Links is not a stand-alone product that can be purchased by consumers but is one of several features in Microsoft's Advanced Threat Protection service that is included in some Microsoft Office 365 products. Compl. ¶ 24.  Thus, even if Microsoft falsely advertised Safe Links as offering TocMail's technology—and it did not—Safe Links is not a product that could divert sales away from any alleged TocMail product.
[3] TocMail alleges that the Court must disregard "intervening steps" when analyzing whether it has alleged proximate causation under the *Lexmark* standing test. Opp. at 10-11. TocMail concludes that because it is allegedly a direct competitor of Microsoft, its injury ***must have*** been proximately caused by Microsoft. *Id*. at 11. Again, direct competition does not equate to proximate cause, which must be pled with specific and sufficient, plausible facts. *See supra* Section II (regarding "zone of interests"). The Motion raises these hypothetical intervening steps to demonstrate how tenuous and speculative a finding of proximate cause would be in the instant case, mandating dismissal under *Iqbal/Twombly*. Mot. at 11-13.

factual allegations of the Complaint. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).  Reading the full context of each of the various advertisements, brochures, and presentations from which the five so-called "Deceptive Messages" are excerpted, there can be no dispute that these materials do not contain any literally false or otherwise misleading statements by Microsoft.

> **A.     The "Deceptive Messages" alleged in the Complaint were not false or misleading statements by Microsoft nor did they deceive or have the capacity to deceive consumers.**

"Deceptive Message #1" is based on an excerpt that TocMail claims appears in a product brochure and an ATP Product Video.  On its face, this excerpt describes how certain attackers attempt to bypass the first round of security filters by making links benign and later weaponizing them, explaining that Safe Links aims to protect users at "the point of click by checking the link for reputation and triggering detonation if necessary."  Along similar lines, "Deceptive Message #2" is an excerpt describing how certain attackers hide malicious links within seemingly safe ones and explaining how Safe Links proactively protects users each time they click such malicious links. These mere descriptions of how Safe Links works are not literally false or otherwise misleading.

"Deceptive Message #3" is a statement quoted from a specific Microsoft 365 customer that states: "[w]e no longer have to worry about what security product we'll use.  With Microsoft 365 we're covered."  TocMail does not deny that this statement was a Microsoft 365 customer's opinion referring to its business nor provides authority to support the argument that such an opinion statement by a third-party constitutes a false or misleading statement by Microsoft.  TocMail's attempt to distinguish the Eleventh Circuit holding in *Johnson & Johnson* by arguing that it involved a factually true customer survey and not a literally false customer statement (Opp. at 15)

is unavailing because it ignores that the statement in question, regardless of its alleged falsity, was not made by Microsoft, which is what makes it unactionable against Microsoft. 299 F.3d at 1251.

Turning to "Deceptive Message #4," there is no question that the name "Safe Links," by itself, does not guarantee that hyperlinks are harmless or otherwise ensures the quality or performance of the security feature. As used in the name Safe Links, the term "safe" constitutes an aspirational statement of "puffery" that describes the stated objective of Safe Links to provide customers with safety in the context of cybersecurity, nothing more. For instance, in *City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.* the phrase "committed to safe, sound and secure banking practices" by a financial institution alleged of engaging in a litany of unsafe and unsound business practices was found to be immaterial puffery. *See* 963 F. Supp. 2d 1092, 1121 (E.D. Wash. 2013). Similarly, in *Tylka v. Gerber Prod. Co.*, the word "safe" referring to the nutritional quality of baby food was determined to be part of the supermarket sales pitch that reached such a large number of people so as to put the reasonable consumer on alert that this statement is sales patter. No. 96-1647, 1999 WL 495126, at * 8 (N.D. Ill. July 1, 2999). In a similar fashion, no reasonable consumer would be misled into thinking that the name "Safe Links" provides any sort of performance or other guarantee.

In arguing that the "Safe Links" name constitutes actionable false advertising, TocMail relies mainly on the decision in *Warner-Lambert Co. v. BreathAsure, Inc.*, in which the name "BreathAsure" was "deceptive and a misrepresentation of the products' qualities" as an effective breath freshener. 204 F.3d 87, 89 – 90 (3rd Cir. 2000). That case is distinguishable because it is based on an investigation performed by the National Advertising Division of the Better Business Bureau ("BBB") that concluded that the "defendant's claim that its BreathAsure and BreathAsure-D products were effective breath fresheners were not supported by any reliable scientific evidence"

7

and a stipulation by the defendant that "scientific studies presented in this case demonstrate that BreathAsure and BreathAsure-D are not effective in reducing bad breath." *Id.* Here, there is no comparable scientific finding by a recognized entity such as the BBB or a stipulation by Microsoft that Safe Links is ineffective in protecting against cybersecurity threats, just the unsupported conclusory statements by TocMail that are insufficient to state a claim for false advertising.[4]

Regarding "Deceptive Message #5" TocMail focuses on a single heading contained within a PowerPoint presentation and ignores the requirement that it be considered together with the rest of the presentation to determine whether it is false or misleading. *See Osmose*, 612 F.3d at 1308. Read in context with the entire exhibit, the heading describes the sequential progression and purpose of the steps in the Safe Links feature, which is supplemented by a guide for the presenter to provide further explanation. This heading is therefore not false or misleading. *See Mot.* at 16.

### B. The "Deceptive Messages" alleged in the Complaint did not have a deceptively material effect on consumers' purchasing decisions and TocMail was not, and is not likely to be, injured as a result.

Putting aside that the "Deceptive Messages" in the Complaint must be false or misleading to serve as the basis for a false advertising claim, TocMail still bears the burden of establishing that they were material in consumers' decisions to purchase Safe Links. *Johnson & Johnson*, 299 F.3d at 1250 ("[t]he plaintiff must establish materiality even when the court finds that the

---

[4] The other cases cited by TocMail in support of this contention (Opp. at 16) are likewise distinguishable. *In re Bayer Corp.*, 701 F.Supp.2d 356, 375 (E.D.N.Y. 2010) (representations involving the word "safety" in the context of drug manufacturing are governed by the regulations and standards specifically promulgated by the Food and Drug Administration, which to not apply here); *Guidance Endodontics, LLC v. Dentsply, Int'l, Inc.*, 708 F.Supp.2d 1209, 1244 (D.N.M. 2010) (while general superlatives such as "best in the world" are non-actionable puffery, statements that a product can perform a task "more efficiently," "quicker," "safer," or "easier" are more specific and objectively verifiable such that a reasonable consumer might believe that the statements are based on some sort of testing; however, the name "Safe Links" is not a specific statement of this sort); *X-IT Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 155 F.Supp.2d 577, 628 (E.D. Va. 2001) (whereas "puffery is an exaggeration or overstatement expressed in broad, vague and commendatory language … specific assertions that can be objectively confirmed may be actionable" but the name "Safe Links" contains no such specific assertions).

defendant's advertisement was literally false.  The district court [should not] conflate [] the element of consumer deception with the element of materiality.").  "The alleged falsity of the ['Deceptive Messages'] does not implicate the quality, nature or characteristics of [Safe Links]."  *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F.Supp.360, 367 (S.D. Fla. 1996).

In its Opposition, TocMail conclusively asserts that "Microsoft's actions have had and continue to have a material effect on purchase decisions," pointing to the content of the "Deceptive Messages" themselves and Microsoft's 2018 Q4 Form 10-K. Opp. at 18.  These materials, however, do not speak to the reasons for consumers deciding to purchase Safe Links, much less that the alleged "Deceptive Messages" materially influenced them to do so.  Notably, TocMail said almost nothing in its Opposition in response to Microsoft pointing out that the market research, consumer surveys and case studies cited in the Complaint do not show that the supposed "Deceptive Messages" had any effect on consumers' purchasing decisions. Mot. at 17-18.

Due to its inability to satisfy the materiality element, TocMail cannot plead a commercial injury to its sales or business reputation that was proximately caused by Microsoft's alleged "Deceptive Messages."  *Lexmark*, 572 U.S. at 140.  As further explained above, whether TocMail suffered any "commercial or competitive injury" or could have "lost any customers or potential consumers" remains nothing more than unsupported speculation, which is insufficient to state a claim for false advertising under the Lanham Act. *Natural Answers, Inc.* 529 F.3d at 1331; *ThermoLife Int'l LLC v. Sparta Nutrition, LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *9 (D. Ariz. Jan 16, 2020).  Count I of TocMail's Complaint should therefore be dismissed.

## III.   TocMail Cannot State a Claim for Contributory False and Misleading Advertising.

Count II of the Complaint fails to state a claim for contributory false advertising under the Lanham Act because TocMail cannot allege that Microsoft "actively and materially furthered the

unlawful conduct [that injured it] – either by inducing it, causing it, or in some other way looking to bring it about." *Duty Free Am., Inc. v. Estee Lauder Co., Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (affirming dismissal for failure to state a contributory false advertising claim).   In its Opposition, TocMail argues that this claim should survive because Microsoft allegedly: i) knew or had reason to know about third-party vendors' alleged false statements about their own products (not Safe Links) that caused customers to not purchase TocMail's technology; ii) accepted customers acquired through the alleged false advertising of these third-party vendors; and iii) granted the third-party vendors access to Microsoft customer accounts. Opp. at 20-21.  Even taking these allegations as true, they do not constitute the level of active and material participation by Microsoft in the alleged third-party false advertising that is required to state a claim for contributory false advertising. *See Duty Free Am.*, 797 F.3d at 1277.

In *Duty Free Am.*, the Eleventh Circuit explained:

In its complaint, DFA based its claim for contributory liability on the fact that 'Estée Lauder knew or should have known of the False Claims, but it continued to supply Estée Lauder products to its favored duty free operators.... In doing so, Estée Lauder provided its favored duty free operators with the means to continue making the False Claims....'  We cannot see how the mere sale of Estée Lauder products can serve as a basis for holding the manufacturer liable for any disparaging statements its customers make in the course of their own separate business relations. In our view, selling Estée Lauder products is too unrelated to the making of the allegedly false or misleading statements to form a basis for liability – under either an inducement or participation theory.

Moreover, contrary to DFA's argument, there are simply no facts in the complaint that suggest the existence of coordinated action or encouragement, much less inducement, between Estée Lauder and the operators on the decision to make the disputed claims to airport authorities. There has been no allegation that by selling its products to the duty free operators, Estée Lauder monitored, controlled, or participated in operators' statements to airport authorities during a competitive bidding process for which Estée Lauder was not even present.  More generally, there are no facts to suggest that Estée Lauder commonly exercises any level of control over or involvement in the duty free operators' conduct during airport RFP bidding.

In short, although we agree with DFA that a plaintiff may state a claim against a defendant for contributory false advertising, we are unwilling to extend the doctrine as far as DFA urges. **The mere sale of products in the course of an ordinary business relationship, without more, cannot justify a finding that a defendant induced, encouraged, caused, procured, or brought about false advertising**. Contributory false advertising claims are cognizable under the Lanham Act, but a plaintiff must allege more than an ordinary business relationship between the defendant and the direct false advertiser in order to plausibly plead its claim. DFA has failed to do so here.

797 F.3d at 1278-79 (emphasis added). Similar to Esteé Lauder, Microsoft's alleged relationship with third-party vendors identified in TocMail's Complaint was, at best, an "ordinary business relationship" that did not entail Microsoft monitoring, controlling or participating in the third-party vendors' advertising activities, which is insufficient to plausibly claim that Microsoft "induced, encouraged, caused, procured, or brought about false advertising." 797 F.3d at 1279.[5] Accordingly, Count II of TocMail's Complaint should be dismissed.

For the reasons set forth above and further explained in Microsoft's Motion, TocMail's Complaint should be dismissed.

---

[5] TocMail's reliance on *Wyndham Vacation Ownership, Inc. v. Reed Hein & Ass'n, LLC* to support its claim for contributory false advertising is misplaced. Opp. at 20-21. That case involved a complex fraud scheme in which a timeshare exit company, a law firm and other defendants were alleged to have together deceived timeshare owners into paying thousands of dollars with the false expectation of exiting their timeshare contracts with Wyndham. *Reed Hein,* Case No. 6:18-cv-02171-GAP-DCI, 2019 WL 3934468, *1 (M.D. Fla. Aug. 20, 2019). The defendant advertising firm solicited and convinced timeshare owners to stop making payments on their timeshare contracts and then hired the defendant lawyers "for a fixed fee to engage in fruitless negotiations with Wyndham." *Id.* They would both then "falsely represent to their clients that they successfully cancelled or transferred their timeshare contracts." *Id.* at *2. The Court found the lawyers, through this level of active involvement in the fraud, "induced, caused or participated in" the advertising firm's false advertising, such that plaintiff pled a viable claim for contributory false advertising against the lawyers. *Id.* at *7. Here, the alleged business relationship between Microsoft and the third-party vendors is nowhere near the highly coordinated fraud engaged in by the defendant lawyers in *Reed Hein.*

11

Dated: May 21, 2020

Respectfully submitted,

*/s/ Mary-Olga Lovett*
MARY-OLGA LOVETT (admitted *pro hac vice*)

**GREENBERG TRAURIG LLC**
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile:  (713) 374-3505
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
        orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
        FLService@gtlaw.com

***Attorneys for Defendant***,
MICROSOFT CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of May, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Francisco O. Sanchez*
FRANCISCO O. SANCHEZ

## <u>SERVICE LIST</u>

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*