UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60416-CIV- SMITH/VALLE

TOCMAIL INC., a Florida corporation,

        Plaintiff,

v.

MICROSOFT CORPORATION, a
Washington corporation,

        Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER TO THE WESTERN DISTRICT OF WASHINGTON**

Plaintiff, TocMail Inc. ("TocMail" or "Plaintiff"), by and through undersigned counsel, hereby respectfully files its Memorandum of Law in Opposition to Defendant, MICROSOFT CORPORATION'S ("Microsoft" or "Defendant"), Motion to Transfer this Action to the Western District of Washington ("Motion to Transfer" or "Motion") [D.E. 15], and states:

**I.     INTRODUCTION**

The Southern District of Florida is TocMail's home forum. This District is also the home of one of Microsoft's *headquarters* along with Microsoft's regional sales office for the entire South East U.S., and a regional Microsoft Cybersecurity Solutions Group office as well. This is not a case where the plaintiff is in Florida and the defendant is elsewhere. Rather, *both parties are in the Southern District of Florida*.

TocMail has identified four key witnesses in South Florida, including a third-party witness who cannot be compelled to Washington. Whereas, Microsoft has local employees who can testify fully to each element of the Lanham Act without requiring a single witness from Washington State.

1

Moreover, Microsoft has not identified any third-party witness in Washington who must be compelled.

Microsoft cannot meet its heightened burden of demonstrating that a transfer is strongly favored, and all of the factors weigh against transfer. In fact, the Southern District of Florida is the only logical forum for this dispute.

## II.   MEMORANDUM OF LAW

In the Eleventh Circuit, "Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005) "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

A defendant "cannot merely shift the inconvenience of the location from itself to Plaintiff." *Ritter v. Metro. Casualty Ins. Co.*, No. 4:19-cv-10105, 2019 WL 8014511, *3 (S.D. Fla. Dec. 3, 2019). "'Defendants moving for transfer have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum.'" *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813, 2012 WL 243764 *2 (S.D. Fla. Jan. 25, 2012) (citations omitted).

Throughout its motion, Microsoft relies heavily on *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271 (S.D. Fla. 2011), a *patent infringement* case nothing like this *false*

*advertising* case. The plaintiff, Motorola, was a Delaware corporation with its principal place of business in Illinois and Motorola did not file in its home forum. *Id.* at 1274. Moreover, there were already two other cases pending in Washington between Motorola and Microsoft and "the resources required to adjudicate th[e] case could be streamlined with the cases already pending in Washington." *Id.* at 1274, 1278.

In general, in its Motion, Microsoft repeatedly relies on patent infringement cases which are not applicable to this false advertising case. Patent infringement cases center around creation, design, and development, whereas false advertising cases center on the dissemination of false advertisements regarding the finished product.

Here, the factors weigh strongly against transfer.

**1.      The Convenience of the Parties.**

"Some courts consider the convenience of the parties the single most important factor in an analysis of whether a transfer should be granted." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008).

Microsoft has a headquarters in Fort Lauderdale, which, in Microsoft's words, "manages 35 offices in 18 countries across the region. Their team of 4,000 generates over one million jobs with the support of 80,000 business partners, and a growing ecosystem of more than 846,000 developers."  A true and correct copy of a printout from Microsoft's website, https://careers.microsoft.com/professionals/us/en/l-fort-lauderdale, is attached hereto as **Exhibit "1."** Additionally, the Fort Lauderdale headquarters "is the base for a separate sales group dedicated to the Southeast U.S." *See* **Exhibit "2**," p. 5, an article from the Miami Herald, a true and correct copy of which is attached hereto.  Microsoft also has a Cybersecurity Solutions Group (CSG) office in Fort Lauderdale as well. *See* **Exhibit "3**," pp. 2-3, a job posting for Microsoft's

Cybersecurity Solutions Group in Fort Lauderdale, a true and correct copy of which is attached hereto. In South Florida, Microsoft has sales and marketing teams, network engineers, product specialists, support personnel, and cybersecurity experts. Thus, the Southern District of Florida is a convenient forum for Microsoft.

TocMail is a small business in South Florida. *Wood Decl.*, ¶ 6. A true and correct copy of the Declaration of Michael Wood is attached hereto as **Exhibit "4."** TocMail's principal place of business and only office is in South Florida. *Id*. TocMail has no connection to Washington, and litigating across the country in Washington state would be very inconvenient for TocMail. *Id*. Microsoft fails to present any argument on this factor even though it has the burden.

Therefore, convenience of the parties strongly favors keeping the case in this District.

**2.     Convenience of Witnesses.**

A party seeking a transfer must demonstrate that the witnesses are "key witnesses." *Mason v. Smithkline Beecham Clin. Labs.*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001); *Homes v. Freightliner, LLC*, 237 F. Supp. 2d 690, 694 (M.D. Ala. 2002) ("[A] party seeking a transfer must demonstrate that the witnesses identified are *key witnesses*."). "A witness is key if his or her testimony is likely to be significant enough that the witnesses's presence would be *necessary at trial*." *Nat. Trust Ins. Co. v. Penn. Nat. Mut. Casualty Ins. Co.*, 223 F. Supp. 3d 1236, 1243 (M.D. Fla. 2016) (emphasis added). A failure to "'indicat[e] what their testimony at trial will be, 'does not merit transfer." *Id.*

This case is premised on Microsoft's false advertisements that its *cybersecurity* protects users against cloaking when it does not.[1] Thus, Microsoft's key witnesses in this case will include

---

[1] Microsoft promotes its Safe Links service as protecting against a specific attack called *cloaking*, in which a hacker's link sends benign content to security scanners and sends malicious content to everyone else. This is discussed in detail in TocMail's Response to Motion to Dismiss [D.E. 22].

4

*cybersecurity* witnesses and *sales* witnesses, all of whom reside here in South Florida. As discussed, Microsoft has a local Cybersecurity Solutions Group and the regional sales office for the entire Southeast U.S. as well. Thus, any witnesses identified by Microsoft in Washington would merely be duplicative to local witnesses but in no way "key" or "necessary at trial."

Microsoft argues that Washington employees with knowledge of "key design" and "development" "will likely be at the center" of this case, as well as other purportedly relevant knowledge (such as product creation). *Motion*, p. 5, Ex. 1 ¶ 12. However, many of the knowledge areas cited by Microsoft (such as creation, design process, and development) may be relevant to addressing the elements of a patent infringement case, but not the elements of this false advertising case.[2] After all, even if the inventors and developers tried to solve cloaking, the only relevant question is whether or not the finished product works as advertised.[3]

Microsoft also argues that Washington employees made "marketing and sales decisions that will likely be at the center of TocMail's Lanham Act claims." *Motion*, p.5. Yet the creation process of the marketing content is not relevant to any element of the Lanham Act. The only relevant Lanham Act issues are whether the finished content is false, and whether the false message of the finished content influenced sales. The Lanham Act is not concerned with pre-sales decision making, but rather the impact on actual sales instead, making *this* the relevant sales knowledge.

---

[2] When arguing convenience of witnesses, Microsoft mischaracterizes three patent infringement cases as purportedly having "similar fact patterns" to this false advertising case. *Suomen Colorize Oy v. Dish Network L.L.C.*, 801 F. Supp. 2d 1334 (M.D. Fla. 2011), *Guidance IP LLC v. T- Mobile USA, Inc.*, No. 613CV1168ORL36GJK, 2014 WL 12521334, and *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271 (S.D. Fla. 2011). *Motion*, pp. 5-6. These two different types of cases require two different sets of witnesses. There is no "similar fact pattern."

[3] In 2017, a cybersecurity expert from Microsoft realized that Safe Links was never designed to block IP cloaking, regardless of the original inventors' intentions. *Compl.* ¶¶ 6, 32-40. This realization came two years after Safe Links was released. Thus, what matters is the current understanding of Microsoft's cybersecurity team, not the testimony of Safe Links' creators.

TocMail does not accuse any marketers of acting in bad faith. It is Microsoft's cybersecurity team that knows Safe Links' design flaw. TocMail will seek to establish at trial that Microsoft's cybersecurity evangelists know Safe Links' flaw. Therefore, TocMail has identified two key cybersecurity witnesses who are Microsoft employees here in South Florida: Michael Marrochello (Security & Compliance Technical Specialist) whose sole job function is technical support of sales of Microsoft's Advanced Threat Protection (ATP) suite (including ATP Safe Links),[4] and MariaTeresa Zancanelli Ghiorzoe (Regional Cybersecurity Program Manager).[5] *Wood Decl.*, ¶ 7 (Ex. 4). Both individuals possess technical product knowledge in addition to requisite cybersecurity expertise: Mr. Marrochello is a Certified Ethical Hacker. *Id.*; *see also* **Exhibit "5,"** a Certified Ethical Hacker Certificate, a true and correct copy of which is attached hereto. Ms. Ghiorzoe is a Certified Information Systems Security Specialist. *Wood Decl.*, ¶ 7; s*ee also* FN 5.

TocMail also identifies a key third-party witness - John Perez from Epica in Miami, Florida who will testify about how perception of Microsoft's email security affects purchase decisions of Microsoft 365 (Office 365). *Wood Decl.*, ¶ 8; s*ee also* LinkedIn Profile for Mr. Perez, a true and correct copy of which is attached hereto as **Exhibit "6."** Mr. Perez previously worked for Microsoft for 13 years where he was responsible for Microsoft 365 product marketing accounting for $3.5 billion in revenue. *Id*. He has requisite knowledge regarding the material qualities that affect $3.5 billion in annual revenue specifically related to the product containing ATP Safe Links' security service. *Id*. Mr. Perez will likely not attend a Washington trial, as his loyalties continue to be with Microsoft, whose products he continues to resell in his new position. *Id*.

---

[4] According to the LinkedIn profile and Facebook page for Michael Marrochello. Last visited May 16, 2020.
[5] According to the LinkedIn profile for MariaTeresa Zancanelli Ghiorzoe. Last visited May 16, 2020.

Another key witness for TocMail includes TocMail's CEO, who will testify regarding TocMail's cybersecurity service and how the company is damaged and will be damaged by Microsoft's false advertising. *Wood Decl.*, ¶ 9 (Ex. 4). TocMail's CEO resides and works in South Florida. *Id.*

Not one Washington witness from either party is necessary at trial.[6] However, even if Microsoft optionally chooses to use Washington employees, "[t]ransfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party." *Mason*, 146 F. Supp. 2d at 1361 (S.D. Fla. 2001); *see also Steifel Labs.*, 588 F. Supp. 2d at 1341 (S.D. Fla. 2008) (defendant "failed to indicate any material reason why such employees would be unable to travel to Florida for trial"); *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1164 (S.D. Fla. 2017) ("Because the witnesses identified by Defendants are employees of Defendant Buzzfeed, compelling the employees 'presence at trial should not be an issue"). That is because, "when considering this factor, it is not so much the convenience of the witnesses but the possibility of having their testimony at the trial that is important." *Id.*

Microsoft claims witnesses testifying to "revenues generated by sales, concerning ATP and Office 365" cannot be compelled at trial because such knowledge can only be imparted by employees of PricewaterhouseCooper (PwC) in Redmond, Washington. Yet Microsoft does not show why their own consultants "dedicated to… Microsoft" would be unwilling to testify. *Motion*, Ex. 1. "[A] failure to 'show that the witnesses would be unwilling to testify and that compulsory process would be necessary' *weighs against transfer.*" *Davis v. Ceo Recruiting, Inc.*, Case No: 6:18-cv-695-Orl-40DCI, 2018 WL 4964638, *8 (M.D. Fla. Sep. 28, 2018). Indeed, it is hard to imagine Microsoft's own consultant refusing to testify for Microsoft.

---

[6] TocMail's Initial Disclosures include other Microsoft employees who likely have discoverable information but are not anticipated as being witnesses at trial.

Moreover, local employees from PwC's Miami and Fort Lauderdale offices certainly can present simple sales numbers.

Regardless, these are literally Microsoft's own financial records. Microsoft possesses or has the right to control and access all such financial information and could itself testify regarding such financial information. A finance executive from Microsoft's Fort Lauderdale headquarters can present the spreadsheet or graph.

Therefore, the convenience of witnesses factor strongly favors keeping the case here.

3.  **The Availability of Process to Compel the Attendance of Unwilling Witnesses.**

As just discussed, Microsoft failed to explain why individuals from PwC, who is Microsoft's consultant and the only potential third party witness identified by Microsoft, would be unwilling to testify at Microsoft's request. Moreover, PwC has local offices, and PwC merely possesses financial records owned by Microsoft. Microsoft has not met its heavy burden and this factor weighs against transfer.

4.  **The Location of Relevant Documents.**

It is well established in this District that, "in this age of electronic discovery, it is no more burdensome for [a defendant] to produce its documents in Florida than it is for it to produce them in [defendant's forum.]" *Wi-Lan USA, Inc. v. Alcatel-Lucent USA Inc.*, No. 12-23568-CIV, 2013 WL 358385 *4 (S.D. Fla. Jan. 29, 2013); *see also Ritter*, 2019 WL 8014511 at *4 ("technological advancements have rendered physical location of documents and other types of proof virtually irrelevant"), Thus, Microsoft's argument that its purported relevant documents are located in Washington has no relevance here.

Moreover, the false advertisements currently being disseminated by Microsoft at issue in this case include the ATP Video, Guide, and Case Study accessed from Microsoft's main ATP

promotion and purchase webpage at: https://www.microsoft.com/en-us/microsoft-365/exchange/advance-threat-protection. Florida residents access these promotional materials from IP addresses located in Chicago, Illinois, not Washington, on servers owned by Akamai Technologies ("Akamai"). *See* **Exhibit "7,"** the IP address for www.microsoft.com when accessed from Florida, and **Exhibit "8,"** the geolocation of this IP address, which are attached hereto. Since 1999, Microsoft has had a relationship with Akamai to disseminate its promotional pages and materials from Akamai's servers scattered around the globe. *See* article regarding Microsoft and Akamai's relationship attached hereto as **Exhibit "9."** Thus, the false advertising materials are not only not in Washington, they are not even disseminated from Microsoft's own servers.

**5.     The Locus of Operative Facts.**

In actions for false advertising under the Lanham Act, "the locus of operative facts is in the initial forum if the . . . false statements occur in that forum." *Student Advantage, Inc. v. Int'l. Student Exchange Cards, Inc.*, No. 00Civ.1971, 2000 WL 1290585, *7 (S.D.N.Y. 2000). The court in *Student Advantage* found: "Here, the allegation is that [defendant] makes false statements . . . in this District via the internet and through businesses located here. The locus of operative facts is thus in this District . . ." *Id.*

Microsoft admits in its Motion that the "advertisements and materials were widely disseminated throughout the United States." *Motion*, p. 4. Microsoft also disseminates false statements to Floridians from the regional sales office located in this District. Thus, because Microsoft made false statements in this District via the internet and through its business located here, the locus of operative facts is in this District as the initial forum.

Microsoft inappropriately relies on patent infringement cases when arguing the locus of operative facts. *Motion*, p. 4-5. For example, Microsoft relies on *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, *2 (S.D. Fla. Feb. 23, 2009), which states that "district courts may disregard plaintiff's choice of forum in cases involving claims of *patent infringement*." Thus, the three cases cited by Microsoft have no application to this current dispute.

Here, the cause of action giving rise to the claim for relief is "Microsoft's dissemination of deceptive promotions." *Compl.*, ¶ 1. As discussed above, Microsoft's false promotions are not even disseminated from Washington, but rather disseminated from Akamai servers scattered around the globe. Also, when Microsoft's cybersecurity evangelists from regional offices, including offices here in Fort Lauderdale, deceptively use the false materials to acquire/maintain corporate customers, none of this dissemination involves Washington, but rather multiple dissemination points around the globe instead, including South Florida.[7]

Even if Washington was the exclusive dissemination point, which it is not, the locus of operative facts would at least be neutral given the national and local harm. *See LRP Publications, Inc. v. Sharedxpertise Media, LLC*, No. 11-80395-CIV-MARRA/JOHNSON (S.D. Fla. Dec. 15, 2011).[8] *LRP* involved false advertising and related claims arising out of a press release issued by SharedXpertise. *Id.* In finding the locus of operative facts to be a neutral factor, the Court stated that while "*the harm arose out of actions executed exclusively within the District of New Jersey… the harm of consumer confusion existed throughout the nation* because LRP has a national

---

[7] A LinkedIn search indicates that Microsoft operates regional Cybersecurity Solutions Group offices in almost every major city around the globe, including Charlotte, Washington DC, Philadelphia, New York, Boston, Chicago, Madrid, United Kingdom, Munich, Fort Lauderdale and many more. *See also* job postings for Microsoft's Cybersecurity Solutions Group offices in Washington DC, Los Angeles, and the United Kingdom, attached hereto as **Exhibits "10-12."** The job postings show that the CSG offices are "regionally based." *See* **Exs. 3, 12.**

[8] A true and correct copy of that Decision is attached hereto as **Exhibit "13."** This order was incorrectly posted to Pacer as "Order on Motion for Miscellaneous Relief," presumably causing Westlaw to miss it.

customer base. Further, *the harm to Lutz indisputably occurred in Florida*. The *varied locations of the harm* resulting from the allegedly wrongful conduct precludes a finding of a clear locus of operative facts, so this factor does not weigh in favor of transfer." *Id.* (emphasis added); *see also Gubarev*, 253 F. Supp. 3d at 1165-66 (S.D. Fla. 2017) ("[W]here there is no single locus of the operative facts, this factor is neutral and does not support a transfer.").

The locus of operative facts factor weighs against transfer.

**6.     The Weight Accorded to Plaintiff's Choice of Forum.**

"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260; *see also Sapa Precision Tubing Rockledge, LLC v. Tex-Mex Recycling, LLC*, No: 6:16-cv-22-Orl-31KRS, 2016 WL 3917491, *7 (M.D. Fla. July 20, 2016) ("When deciding a motion to transfer under Section 1404, the Court employs a 'strong presumption against disturbing plaintiff's initial forum choice.'"); "[A] defendant bears a heavy burden when seeking to disrupt a plaintiff's chosen venue." *Sapa Precision*, 2016 WL 3917491 at *7. Significantly, even where operative facts did not occur in the chosen forum, "a plaintiff's choice of forum must be afforded considerable deference, where, as here, the plaintiff has elected to bring suit in the district in which he resides." *Mason*, 146 F. Supp. 2d at 1361 (S.D. Fla. 2001).

Microsoft mischaracterizes case law to claim that "the action should be transferred" on the weight of locus of operative facts alone, even when TocMail has chosen its home forum. However, the cases cited by Microsoft do not support that contention. *Motion*, pp. 3-4. Moreover, locus of operative facts does no outweigh Plaintiff's choice of forum, even when Plaintiff has not chosen its home forum. *Kelling v. Hartford Life & Accident Ins. Co.*, 961 F. Supp. 2d 1216, 1218, 1219-20 (M.D. Fla. 2013) (finding that plaintiff's choice of forum was "the key factor weighing against

11

transfer" even where the locus of operating facts was "definitely not" in plaintiff's chosen district, and even though plaintiff's home forum was more than a thousand miles away).

Here, TocMail filed the instant action in its home forum. Thus, while Microsoft argues that the operative facts did not occur in this District, with which TocMail strongly disagrees as discussed above, TocMail's choice of its home forum is still given considerable deference.

Moreover, not only is TocMail's home in South Florida, but Microsoft has a headquarters, regional sales office, and cybersecurity evangelists in South Florida as well. TocMail's choice of its home forum strongly weighs against transfer.

**7.     The Relative Means of the Parties.**

Microsoft fails to address this factor. Regardless, it clearly favors TocMail.

Microsoft is a multi-national giant corporation with over 150,000 employees and offices and stores throughout the United States and world, including a headquarters in Fort Lauderdale. On the other hand, TocMail is a small business with no offices outside of South Florida. *Wood Decl.*, ¶ 6. Given the national importance of this case, and given that TocMail is seeking an injunction against Microsoft's use of the name "Safe Links," this case may very well indeed go to trial. TocMail would likely not have the financial means to litigate this case in Washington. *Id.* at ¶ 14.

TocMail's current law firm represented TocMail's CEO in obtaining several cybersecurity patents and has acquired years of knowledge regarding the cybersecurity at issue in this case. *Id*. at ¶¶ 10, 12. TocMail's legal representatives have offered fee saving options if this case does indeed proceed to a local trial due to their long relationship history. *Id*. at ¶ 11. If TocMail were forced to hire another law firm in Washington, TocMail would either have to retain new counsel or local counsel, both of which would add significant fees to this case, especially considering that

12

such new firm does not have in-depth knowledge regarding the cybersecurity at issue here. *Id.* at ¶ 13.

Given the national importance of this case, this case is likely headed to trial, and TocMail does not have sufficient funds to litigate a trial in Washington. *Id*. at ¶ 14.

Thus, it is clear that the relative means of the parties strongly weighs against transfer.

**8.** **Trial Efficiency and Interests of Justice.**

    **a.** **Local Interests.**

Microsoft contends that "the Southern District of Florida likely does not have a particular interest in trying this case." *Motion*, p. 8. However, literally millions of residents of Florida use Office 365 making them unknowingly defenseless against the most-common, most-effective hacking attack. Floridians are just as interested in being safe from hackers as residents of Washington.[9]

It is commonly known that hackers use email links for phishing sites. However, the vast majority of malware is also delivered via email, with links being the delivery mechanism 88% of the time (not attachments). *See* Proofpoint article attached hereto as **Exhibit "14."** Email links account for well over 80% of all hacking, and for good reason. In an analysis of 2,313 webserver configuration files on live phishing sites, 95% of the files were using IP Cloaking, the very attack

---

[9] Microsoft also argues that Washington residents have a greater local interest in this case by citing *Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). However, in that case, neither party was from the chosen forum and there was "no connection between the case" and the chosen forum. *Id.* at 335. Additionally, the dispute in that case involved a defendant company comprised of a few scientists whose *individual reputations* were being impugned. *Id.* Apple attempted to rely on the same case to make a similar argument as Microsoft which the court rejected. "Apple has not identified any *individuals* whose reputations have been implicated by this action or how." *Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 WL 6344470, at *3 (E.D. Tex. Nov. 27, 2019).

at the center of this present case.[10] See **Exhibit "15,"** p. 6, "Inside a Phisher's Mind," which is attached hereto. The outcome of this case will determine the future course for the vast majority of hacking. To transfer this case to a likely prejudicial locale that is currently beyond TocMail's means would be an injustice not only to Florida residents, but companies and people all around the world for many years to come.

Moreover, Microsoft has already articulated that it is going to portray TocMail as making "*preposterous accusations* that Microsoft enriched itself by deceiving an entire industry" along with a slew of other inflammatory language. This language is bound to inflame Washington residents, resulting in undue prejudice that TocMail will not likely face in its chosen home forum. To transfer this case to a likely prejudicial locale that is currently beyond TocMail's means would be a substantial injustice to Florida residents. Thus, the interests of justice favor this case being tried in this District.

      b.    **Trial Efficiency.**

Microsoft contends that the Southern District of Florida has a busy docket. However, the Western District of Washington is facing "judicial emergencies" and unequipped to handle the current backlog of cases, at least in part due to it having only two of seven authorized judgeships filled. *See* "Short-Benched U.S. Trial Courts Face Post-Pandemic Crisis," April 9, 2020, a true and correct copy of which is attached hereto as **Exhibit "16."** The judicial vacancies in the Western District of Washington "are considered 'judicial emergencies 'a term given to vacancies that increase the workload of the remaining judges," and "courts like [the Western District of Washington] with a high percentage of judicial vacancies, will be among the least equipped to deal with the backlog." *Id.* "The Western District of Washington has *the highest ratio of vacancies to*

---

[10] The IP cloaked files were found on 95% of the Apache webservers. Other webservers used other techniques to execute IP cloaking, including "server-side scripts" and "javascript." Ex. 15, p.6.

*authorized judgeships in the U.S.*" *Id.* (emphasis added). Chief Judge Martinez stated: "The way I look at it, especially now with this pandemic, I don't think we're going to be getting more bodies in the door to help us until 2021 at the earliest," and "in the meantime, that puts us in real bind." *Id.*

Thus, it is clear that trial efficiency strongly weighs against transfer.

**9.     The Forum's Familiarity with the Governing Law.**

Microsoft claims that Washington has "a greater interest in further developing the laws relevant to the issues raised in this dispute." *Motion*, p. 9. However, TocMail has alleged two claims in this action, one of which is contributory false advertising. TocMail was unable to locate any Ninth Circuit Court of Appeals case that addresses contributory false advertising and it appears that Washington State has addressed zero such cases.[11] In stark contrast, the Eleventh Circuit Court of Appeals has issued a decision regarding contributory false advertising with multiple district cases in Florida addressing contributory false advertising as well.[12] Thus, this Court is clearly more familiar with the governing law in this case.

Moreover, the claims in the case relied on by Microsoft were governed by New York law, which is why the Court found that federal courts in New York would have more expertise with New York law. *Food Mktg. Consultants, Inc. v. Sesame Workshop*, No. 09-61776-CIV, 2010 WL 1571206, *10 (S.D. Fla. Mar. 26, 2010).

Thus, this factor weighs heavily against transfer.

---

[11] The Ninth Circuit has addressed contributory *trademark infringement* but not contributory *false advertising*.

[12] *See Duty Free Ams., Inc. v. Estée Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015); *Wyndham Vacation Ownership, Inc. v. Clapp Bus. Law, LLC*, 411 F. Supp. 3d 1310 (M.D. Fla. 2019); *Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No: 6:18-cv-02171-GAP-DCI, 2019 WL 3934468 (M.D. Fla. Aug. 20, 2019); *Westgate Resorts, Ltd. v. Castle Law Grp.*, No: 6:17-cv-1063-Orl-31DCI, 2019 WL 4228551 (M.D. Fla. Aug. 21, 2019).

### III. CONCLUSION

All of the factors here weigh against transfer. TocMail's home is in South Florida and Microsoft has a headquarters in Fort Lauderdale along with cybersecurity and regional sales groups directly relevant to this issues in this case. South Florida is not merely convenient, it is the only logical forum. Thus, TocMail respectfully requests that the Court deny Microsoft's Motion to Transfer.

Dated: May 21, 2020

Respectfully submitted,

By: /s/Joshua D. Martin
Joshua D. Martin
Florida Bar No. 028100
josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd., Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

*Attorneys for Plaintiff, TocMail Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 21st day of May 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Joshua D. Martin
Joshua D. Martin

## SERVICE LIST

### *TOCMAIL INC. v. MICROSOFT CORPORATION*
### 20-60416-CIV- SMITH/VALLE

**Joshua D. Martin**
E-Mail: josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd.
Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

**Francisco O. Sanchez**

E-Mail: sanchezo@gtlaw.com
orizondol@gtlaw.com

**Evelyn A. Cobos**

E-Mail: cobose@gtlaw.com
FLService@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

**Mary-Olga Lovett** *(admitted pro hac vice)*
E-Mail: lovettm@gtlaw.com
GREENBERG TRAURIG LLC
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 374-3505