UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-RS/VALLE

TOCMAIL INC., a Florida corporation,

    Plaintiff,

v.

MICROSOFT CORPORATION, a Washington corporation,

    Defendant.

## MICROSOFT CORPORATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER

Tocmail attempts to counter Microsoft's motion to transfer [ECF No. 15] (the "Motion") by re-casting the main factual premise underlying its claims. The Complaint alleges that Microsoft falsely advertises the technical capabilities of its Safe Links technology, thereby causing consumers to purchase Safe Links instead of TocMail's purported solution, and Microsoft demonstrated that the witnesses and documents relevant to the function and marketing of Safe Links are in Washington. In its opposition memorandum [ECF No. 24] (the "Opposition"), TocMail now contends that this action centers more generally around Microsoft's cybersecurity and the sales revenue generated by Microsoft's advertising of Safe Links, while discounting the technology's design and marketing that are critical to the central issues in this case. TocMail goes as far as to assert, with no support whatsoever, that all of Microsoft's "key" witnesses who are "necessary for trial" are in South Florida and not one witness located in Redmond, Washington, the site of Microsoft's corporate headquarters, is necessary for trial.

But TocMail must do much more than simply demonstrate the sales revenue generated by Safe Links. TocMail bears the burden of proving that Microsoft's advertising of Safe Links'

technological capabilities was false or misleading, and that this caused consumers to purchase Microsoft's products and services instead of TocMail's. This determination involves the design, technical capabilities, and operation of Safe Links and Microsoft's advertising or marketing thereof, and the purchasing decisions made by consumers (if any) based on Microsoft's advertising of Safe Links.

Given TocMail's lack of insight regarding Microsoft's Advanced Threat Protection ("ATP") software, including its Safe Links feature, its reliance on unsupported, conclusory assertions is not surprising. Microsoft, on the other hand, is in the best position to identify the witnesses, documents, and sources of proof related to its own Safe Links technology, which are located in Redmond, as explained in its Motion and supporting Declaration of Jason Rogers. It is also undisputed that the advertisements and marketing materials related to Safe Links were disseminated nationwide and were not directed at TocMail or otherwise specifically targeted toward Florida consumers.

Based on the collective weight of the applicable private and public interest factors, this action should be transferred to the Western District of Washington if it is not dismissed.[1]

## I. The Private Interest Factors Collectively Favor Transferring this Action to the Western District of Washington.

The relevant private interest factors can be generally grouped as follows: 1) the locus of operative facts, TocMail's choice of forum, and the relative means of the parties; and 2) the

---

[1] TocMail takes issue with Microsoft's reliance on several patent infringement cases in which motions to transfer were granted, claiming that they do not apply to this false advertising case. Opp. at 3. As TocMail acknowledges, "patent infringement cases center around creation, design and development" (Opp. at 3), and the alleged false advertising relates precisely to whether Safe Links has the technological capabilities advertised by Microsoft. This implicates aspects such as the creation, design and development of Safe Links, which is information that resides with witnesses and documents located in Redmond and makes the patent infringement cases cited in Microsoft's Motion analogous. This also explains TocMail's redirection of its focus towards the sales revenues generated by the advertising of Safe Links (Opp. at 3, 5-6).

convenience of the parties and witnesses, location of relevant documents, and ease of access to sources of proof and availability of process to compel attendance of unwilling witnesses at trial. *Manuel v. Convergys Corp.*, 430 F. 3d 1132, 1135 n. 1 (11th Cir. 2005). As explained in Microsoft's Motion, the locus of operative facts, and the location of most of the relevant witnesses, documents and sources of proof is in the Western District of Washington, thereby bestowing less weight upon TocMail's selection of this District for purposes of this determination. Mot. at 4-6. Also considering the relative means of the parties, these factors favor transferring the case to the Western District of Washington.

      A.    *Locus of Operative Facts, TocMail's Choice of Forum, and Relative Means of the Parties*

In summary, the research, design, and development of Safe Links occurred in Microsoft's main research and development facility in Redmond, and the marketing and advertising content for Safe Links and the rest of Microsoft's Advanced Threat Protection ("ATP") program was also created there. Mot. at 4. These advertisements were disseminated throughout the United States, with no special focus on TocMail or South Florida consumers, making this District no better situated as a forum than any other place where the Safe Links advertisements were received. *Id.*; *Advantus, Corp. v. Sandpiper of California, Inc.*, No. 3:18-CV-1368-J-34JRK, 2019 WL 4751725, *34 (M.D. Fla. Sept. 30, 2019) (finding that the location where the advertisements at issue were created weighed in favor of transfer and noting that, "[w]hile the purportedly misleading advertisements were accessible in Florida, and the related products were sold in Florida, there is nothing unique about Florida's role in this dispute beyond [plaintiff's] location here. Indeed, Florida is a minor market for the products, and no more relevant to this case than any of the other places nationwide."). The locus of operative facts is therefore in the Western District of Washington, and while this alone may not altogether trump TocMail's choice of its home forum,

it eliminates any additional deference that might have otherwise applied. *See Windmere Corp. v. Remington Prod., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985); *Rothschild Storage Retrieval Innovations, LLC v. LG Elecs., Inc.*, No. 14-CV-22654, 2015 WL 11233067, *3 (S.D. Fla. June 3, 2015); *Implant Seminars, Inc. v. Lee*, No. 18-23097-CIV, 2019 WL 1979365, at *6 (S.D. Fla. May 3, 2019).

    TocMail somehow concludes that the locus of operative facts is in this District because the advertisements at issue were disseminated to Floridians through the Internet from Microsoft's Latin America and Caribbean regional office in Fort Lauderdale and other servers around the world. Opp. at 9-10.  Not surprisingly, TocMail provides no support for this conjecture and offers nothing to refute Microsoft's statements in its Motion that these advertising materials originated in Redmond.  TocMail's reliance on *Student Advantage, Inc. v. Int'l Student Exchange Cards, Inc.* in support of this argument is also misplaced because that case involved supposed false advertising that specifically implicated the plaintiff and its business in New York and there were other business dealings between the plaintiff and the defendant in New York beyond those involving the Internet. No. 00-Civ. 1971, 2000 WL 1290585, * 1 (S.D.N.Y. Sept. 13, 2000).  Here, Microsoft's advertising of Safe Links has nothing to do with TocMail or its business and Microsoft has never had any business dealings with TocMail in this District or elsewhere.

    Going a step further, TocMail argues that even if the advertisements were disseminated from Redmond, the locus of operative facts factor would be neutral, due to the national and local harm it allegedly suffered. Opp. at 10-11.  TocMail relies heavily on *LRP Publications, Inc. v. Sharedxpertise Media, LLC*, but that case is also factually distinguishable. No. 11-80395-CIV-Marra/Johnson (S.D. Fla. Dec. 15, 2011).  At issue in that case was false advertising contained in a nationwide press release issued by the defendant from New Jersey specifically directed to the

plaintiff located in Florida, and the locus of operative facts was found to be a neutral factor. *Id.* at 2. Unlike the press release in *LRP Publications*, the alleged false advertising in this case was not specifically directed at TocMail or any Florida consumers. In fact, Microsoft's advertising was nationwide, and this alone is not enough to establish the locus of operative facts is in this District. *See Implant Seminars, Inc.*, No. 18-23097-CIV, 2019 WL 1979365, at *5 (granting transfer, noting that despite defendant's "nationwide effort to attract consumers" and "*some* of [d]efendants' sales and promotions — and by extension, some consumer confusion — occurred in the Southern District of Florida, that in and of itself does not render this District the locus of the operative facts."); *Corioliss, Ltd. v. Corioliss USA, Inc.*, No. 08-21579-CV, 2008 WL 4272746, at *2 (S.D. Fla. Sept. 17, 2008) (granting transfer, finding locus of operative facts occurred in Georgia and according little weight to the fact that products were sold to Florida consumers at the mall and through the internet, where relevant events occurred in Georgia and defendant sold an overwhelming amount of products to consumers outside of Florida).

Finally, TocMail claims it would be inconvenient to litigate in Washington and would likely not have the financial means to do so if the case were transferred there. Opp. at 4, 12-13; Wood Decl. ¶¶ 6, 10-13. Engaging local counsel and litigating in another district should hardly present a financial hardship for TocMail, which has touted in multiple court filings that its CEO (and sole party witness) made over $95 million from the sale of an invention [ECF No. 1 at ¶ 2, ECF No. 22 at 2].

> **B.    Convenience of the Parties and Witnesses, Location of Relevant Documents and Ease of Access to Sources of Proof, and Availability of Process to Compel Attendance of Unwilling Witnesses at Trial**

It is also of critical importance that the Western District of Washington is a more convenient forum for the witnesses and the parties, primarily because the Microsoft employees

responsible for the creation, design, technology, development, operation, advertising and marketing of its ATP software, including the Safe Links feature, work in Microsoft's main campus in Redmond. Mot. at 5-6. The discovery process will also likely entail Microsoft producing documents and electronic files related to these aspects of Safe Links, which are maintained and accessible from Microsoft's facilities in Redmond. *Id*. at 7. Accordingly, these factors also weigh in favor of transfer to the Western District of Washington.[2] *See Advantus Corp.*, 2019 WL 4751725 at *32-33; *Suomen Colorize Oy v. DISH Network, LLC*, 801 F.Supp.2d 1334, 1338-39 (M.D. Fla. 2011); *Guidance IP, LLC v. T-Mobile USA, Inc.*, No. 613-CV-1168, 2014 WL 12521334, *2 (M.D. Fla. Apr. 24, 2014); *Jewelmasters, Inc. v. May Dep't Stores Co.*, 840 F.Supp.893, 895-96 (S.D. Fla. 1993).

TocMail's principal argument on the convenience factors is that this District is more convenient forum for the parties because Microsoft has a so-called "headquarters" in Fort Lauderdale that "manages 35 offices in 18 countries across the [Latin America] region [and] has sales and marketing teams, network engineers, product specialists, support personnel and cybersecurity experts". Opp. at 3-4. The size and breadth of Microsoft's Latin America and Caribbean regional operations facility in Fort Lauderdale, however, are irrelevant (Microsoft has 39 regional offices in 21 countries) because they have nothing to do with the creation, design, development, operation, marketing and advertising of Safe Links, and this is reflected in the website printout, newspaper article, and job posting offered by TocMail in support of this

---

[2] Contrary to TocMail's characterization (Opp. at 7), Microsoft did not state that its external consultants from Pricewaterhouse Coopers, LLP ("PwC") who are located in Redmond would be unwilling to testify at trial. Microsoft simply stated that these individuals, who possess knowledge of sales revenue and other financial information related to Safe Links, could not be compelled to testify at trial in this District. Mot. at 6. Even if the PwC consultants were to voluntarily testify at trial, they would fall into essentially the same category as the Microsoft employees located in Redmond who have critical knowledge regarding Safe Links, which further supports transferring this action.

6

argument, which contain no mention of Safe Links. *Id*. at Ex. 1-3. TocMail cannot leverage Microsoft's worldwide presence to circumvent the fact that the Microsoft employees, information, and facilities relevant to Safe Links, which are at the center of this action, are all located in Redmond.

Regarding the convenience of witnesses, TocMail boldly states that "[n]ot one Washington witness from either party is necessary at trial" (Opp. at 7) and purports to dictate the "key" Microsoft witnesses that will be "necessary for trial." *Id*. at 6-7. TocMail identifies two current Microsoft employees and one third-party former Microsoft employee located in South Florida, who, according to TocMail, should be the only "key" witnesses "necessary for trial" and "any witnesses identified by Microsoft in Washington would merely be duplicative" thereof.[3] *Id*. at 4-6. There is nothing in TocMail's Opposition indicating that TocMail obtained any information directly from these individuals and is not simply speculating as to their respective roles with Microsoft or supposed knowledge regarding Safe Links, and based upon Microsoft's investigation of these assertions to date, they are for the most part untrue. But even if TocMail's speculative statements were true, that would not necessarily make these individuals "key" witnesses "necessary for trial" or change the fact that the Microsoft witnesses with relevant knowledge regrading Safe Links who would testify at trial are located in Redmond.

As framed by TocMail, "the only relevant question is whether or not [Safe Links] works as advertised … and whether the [allegedly] false message of the finished content influenced sales." Opp. at 5. Microsoft identified the employees with specific knowledge of the design and operation of Safe Links (including the technological capabilities related to the first part of this

---

[3] The only other "key witness" identified by TocMail is its CEO. Opp at 7, and despite TocMail's assertions as to who it believes are the only "key" witnesses "necessary for trial," it is unlikely that TocMail would stipulate to only calling these witnesses at trial.

inquiry), the employees with specific knowledge of the advertising and marketing of Safe Links, and those persons with specific knowledge of the revenues generated by Safe Links, all of whom reside in Redmond. Mot. at 5-6.  It is these individuals, not the three who TocMail conveniently identifies in its Opposition, who will likely serve as Microsoft's "key" witnesses "necessary for trial." *See Advantus Corp.*, 2019 WL 4751725 at *33; *Suomen Colorize Oy*, 801 F.Supp.2d at 1338-39; *Guidance IP*, 2014 WL 12521334 at *2.

II.   **The Balance of the Public Interest Factors Also Tips in Favor of Transferring this Action to the Western District of Washington.**

The public interest factors to be considered are: 1) the connection between this action and this District; 2) the familiarity of each forum with the applicable law; and 3) trial efficiency. *Manuel*, 430 F. 3d at 1135 n. 1; *Motorola Mobility, Inc. v. Microsoft Corp*., 804 F.Supp.2d 1271, 1278 (S.D. Fla. 2011).  Again, the alleged operative facts in this case did not occur in Florida, nor is South Florida, as a community, situated any differently than the rest of the locations throughout the United States where the advertisements in question were disseminated. Mot. at 8.  The Western District of Washington, is familiar with the claims at issue here, contrary to TocMail's assertion, and has particular knowledge regarding Microsoft products and technology, thereby making it a more appropriate forum for a dispute involving the technical capabilities of Safe Links. *Id*. at 8-9.  These factors, combined with the docket congestion faced by the courts in this District, weigh in favor of transferring this action to the Western District of Washington. *Id*. at 8, n. 2.

Aside from the locus of operative facts being in the Western District of Washington, this District has no particular local interest in this dispute, which means that there is no overriding public interest in adjudicating this action here. Mot. at 8.  The only "local interest" identified by TocMail is that Florida residents who use Microsoft 365 "are just as interested in being safe from hackers as residents of Washington." Opp. at 13.  Unlike residents of this District, residents of the

Western District of Washington have an interest in resolving disputes involving Microsoft, especially in view of Microsoft's long-standing presence in that region. *Motorola Mobility*, 804 F.Supp.2d at 1278.[4]

TocMail insists that it would be prejudiced before a jury in the Western District of Washington because of what it describes as certain "inflammatory language" used by Microsoft thus far in this case. Opp. at 14. Not only are statements made by counsel in case filings hardly enough to "inflame" potential jurors in the manner suggested by TocMail, but TocMail's position appears to reflect a belief that jurors in its home forum of South Florida would likely be predisposed to view a small local technology company more favorably in a dispute with Microsoft, a large and established software and technology company with a significant worldwide presence. Such preconceived notions would, of course, be unfairly prejudicial to Microsoft and further weigh in favor of transferring this action.

Although TocMail does not dispute the Western District of Washington's familiarity with false advertising claims under the Lanham Act and unique knowledge of Microsoft's products and technology, it claims that the Western District of Washington is less familiar with the governing law of this action because TocMail found no published decisions where that court addressed contributory false advertising. Opp. at 15. TocMail's only support for this contention is the Eleventh Circuit decision in *Duty Free Ams., Inc. v. Estée Lauder*, 797 F. 3d 1248 (11th Cir. 2015) and a series of decisions from the Middle District of Florida. Opp. at 15, n. 12. TocMail did not identify any decision from <u>this</u> District addressing contributory false advertising, and apparently

---

[4] Unlike Apple in the *Rembrandt Wireless Techs., LP v. Apple, Inc.* decision cited by TocMail (Opp. at 13, n. 9), Microsoft seeks to transfer this action to the federal district in which it is headquartered. No. 2:19-CV-00025-JRG, 2019 WL 6344470, *3 (E.D. Tex. Nov. 27, 2019).

overlooked that a court in the Western District of Washington, like this Court, may apply the appropriate law on contributory false advertising to this action. Despite TocMail's contention, the Western District of Washington is familiar with these claims as it has in fact decided similar cases.[5]

TocMail also cites to a publication discussing judicial vacancies in the Western District of Washington to argue that it is unequipped to handle this action if it is transferred. Opp. at 14-15. This argument ignores that even if this District has more judges, the fact that it also has one of the busiest dockets in the country can produce a strain on capacity similar to the judicial vacancies described in the Opposition. *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F.Supp.2d 1373, 1378 (S.D. Fla. 2003); *Nolan Helmets S.p.A. v. Fulmer Helmets, Inc.*, Case No. 95-6401-CIV, 1995 WL 789505, *2 (S.D. Fla. Nov. 27, 1995). At most, the judicial vacancies in the Western District of Washington and docket congestion in this District offset each other for purposes of this factor.

For the reasons set forth above and in Microsoft's Motion, the applicable private and public interest factors weigh in favor of transferring this case to the Western District of Washington if the Court does not dismiss TocMail's Complaint.

---

[5] The Western District of Washington and Ninth Circuit have decided Lanham Act false advertising claims involving theories of contributory and vicarious liability. *See, e.g., Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 905 F. Supp. 2d 1235, 1250 (W.D. Wash. 2012); *Corker v. Costco Wholesale Corp.*, NO. C19-0290RSL, 2019 WL 5887340, at *2 (W.D. Wash. Nov. 12, 2019); *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 447 Fed. Appx. 814, 816 (9th Cir. 2011). Microsoft also found at least 52 additional cases involving false advertising claims under the Lanham Act in the Western District of Washington and Ninth Circuit.

Dated: June 4, 2020                              Respectfully submitted,

*/s/ Mary-Olga Lovett*
MARY-OLGA LOVETT (admitted *pro hac vice*)

**GREENBERG TRAURIG LLC**
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile:  (713) 374-3505
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
       orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
       FLService@gtlaw.com

***Attorneys for Defendant***,
MICROSOFT CORPORATION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of June, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Francisco O. Sanchez*
FRANCISCO O. SANCHEZ

## SERVICE LIST

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*