UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60416-CIV-SMITH

TOCMAIL INC.,

    Plaintiff,

v.

MICROSOFT CORPORATION,

    Defendant.
_____/

### ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant, Microsoft Corporation's Motion to Dismiss Complaint [DE 14], Plaintiff, TocMail, Inc.'s Response [DE 22], and Defendant's Reply [DE 23]. Plaintiff filed this action under the Lanham Act, seeking to recover for harm allegedly suffered because of Defendant's dissemination of deceptive promotions of its cyber-security service, Safe Links.  (*See* Compl. [DE 1].)  Plaintiff asserts claims against Defendant for false advertising (Count I) and contributory false advertising (Count II).  (*Id.* ¶¶ 188-214.)  For the reasons discussed below, the Motion is granted in part and denied in part.

**I.     MOTION TO DISMISS STANDARD**

"The appropriate standard for deciding to dismiss a claim is whether it appears beyond doubt that the plaintiff can prove no set of facts to support his claim." *GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993) (citation omitted).  All facts set forth in the complaint are to be accepted as true.  *Id.*  The Court draws all reasonable inferences in the plaintiff's favor. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal marks and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Still, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556.

**II.     DISCUSSION**

Defendant argues that the Complaint should be dismissed because Plaintiff lacks standing to bring a claim under section 1125(a) of the Lanham Act, Plaintiff has not alleged that Defendant's advertising is false and misleading, and Plaintiff cannot allege contributory false advertising because Defendant had no active knowledge or involvement in the deceptive statements allegedly made by third parties about their own products. (Mot. at 9-20.)  The Court addresses each of these arguments in turn.

   **A.     Standing**

To have standing to bring a claim under the Lanham Act, (1) a plaintiff's claim must fall within the "zone of interests" protected by the statute, and (2) plaintiff's injuries must have been proximately caused by the defendant's violation of the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-134 (2014).

      **i.     Zone of Interests**

"[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Id.* at 129.  The Lanham Act protects persons engaged in commerce within the control of Congress against unfair competition.  15 U.S.C. § 1127.  Unfair competition is "understood to be concerned with injuries to business reputation and present and future sales." *Lexmark Int'l, Inc.* 572 U.S. at 131.  Thus, "to come within the zone of

interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32.

The Complaint alleges that the parties are competitors. Plaintiff alleges that it sells the only patented-solution for cloud-based hacking. (Compl. ¶ 17.) More specifically, Plaintiff owns the only patented product that solves the cloud security flaw of IP-Cloaking. (*Id.* ¶¶ 18-20.) With IP Cloaking, hackers can get passed security scanners by sending benign links to the scanner and, then, once approved by the scanner, proceed to send malicious content to the end user. (*Id.*) Like Plaintiff, Defendant offers a product, Safe Links (a part of Defendant's Advanced Threat Protection ("ATP") service), that Defendant claims protects users against cloud-based hacking. (*Id.* ¶¶ 17, 23-25.)

The Complaint further alleges that Plaintiff has suffered economic and reputational injury as a result of Defendant's false advertising. Defendant has harmed Plaintiff's reputation by convincing over 100 million professionals that Plaintiff's product offers no value to them. (*Id.* ¶¶ 4, 7, 197.) Plaintiff has been economically injured because consumers have withheld, or will withhold, trade from Plaintiff "due to trusting Microsoft's false advertising." (*Id.* ¶ 196.) Defendant's product has roughly 100 million users and, based on these 100 million potential customers for Plaintiff, Plaintiff estimates lost profits in excess of $43 billion. (*Id.* ¶¶ 198-200.)

Defendant argues that these allegations are speculative and unsupported, as they are premised on multiple assumptions. (Mot. at 12-13.) Here, the Court's only inquiry is whether Plaintiff has plausibly alleged reputational and economic harm—not whether Plaintiff will ultimately prevail on its allegations. *See Bell Atl. Corp.*, 550 U.S. at 556 (explaining that a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely."). Drawing all

inferences in Plaintiff's favor, the Court finds that the Complaint does allege reputational and economic harm and, therefore, that Plaintiff's claims are within the zone of interests protected by the Lanham Act.

### ii. Proximate Causation

The proximate cause requirement of the standing analysis generally bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct. *Lexmark Int'l, Inc.* 572 U.S. at 133. Therefore, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[, . . . which] occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* Here, Plaintiff alleges that consumers (that is, the 100 million users of Safe Links) have withheld trade from Plaintiff in favor of using Defendant's product.

Defendant maintains that these allegations fail to sufficiently plead proximate causation because they are too speculative and Plaintiff's alleged harm is too remote, given the number of intervening causes. (Mot. at 10-12.) But courts have found allegations based on the diversion of business from one party to the other enough for purposes of pleading proximate causation. *See, e.g., Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1225, 1233 (M.D. Fla. 2017) (finding that causation was well-pled where plaintiff, the alleged owner of rights to the life story of Efraim Diveroli, sued defendant for false advertising based on defendant's promotion of the movie *War Dogs* as the "true story" of Diveroli, and alleged that "consumers who desire to learn the true story are most likely to purchase a ticket to the movie, after being bombarded with promotional material, rather than purchasing Diveroli's memoir."); *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257, at *5 (S.D. Fla. Feb. 16, 2016) (finding standing where complaint alleged that "misrepresentations on [defendant's product] label results

4

'in a material deception,' which 'wrongly influenc[es] purchasing decisions and caus[es] past and continued future injury to [the plaintiffs].'") (citation omitted); *Outlaw Lab., LP v. US 1 Novelties LLC*, No. 1:18-CV-2065-AT, 2018 WL 8951183, at *7 (N.D. Ga. Nov. 28, 2018) (finding that plaintiff alleged proximate causation because "a plain reading of Amended Complaint, in a light most favorable to [p]laintiff, illustrates that [defendant] ABCDP's role in advertising, promoting and making available for sale [d]efendants' male enhancement products, which allegedly contained false and misleading statements, directly resulted (at least in part) in [p]laintiff's economic and reputational injuries based upon the "diversion of business from [p]laintiff to [d]efendants."); *Wika Instrument I, LP v. Ashcroft, Inc.*, No. 1:13-CV-43-CAP, 2015 WL 11199059, at *12 (N.D. Ga. July 10, 2015) ("Ashcroft meets the proximate cause element necessary to pursue this claim. Ashcroft alleges that WIKA's deception of consumers caused those consumers to withhold trade from Ashcroft by purchasing gauges from WIKA instead of Ashcroft."). Similarly, this Court finds that the Complaint alleges proximate causation.

Plaintiff has met its burden of establishing standing to bring its Lanham Act claims.

### B. False Advertising

"Under the Lanham Act, an entity that misrepresents the 'nature, characteristics, qualities, or geographic origin' of its services in commercial advertising or promotion is liable to the persons damaged by the false or misleading representation." *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1294 (11th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)). To succeed on a false advertising claim, a plaintiff must "demonstrate that: (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the

5

consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement." *Id*. (citation omitted).

Defendants argue that the Complaint fails to state a claim for false advertising because the statements at issue are not false or were not made by Defendant. The Complaint identifies five allegedly deceptive or misleading statements. The Court examines each in turn.

### i. Statement #1

Plaintiff alleges that the following excerpt of a 2019 ATP Product Video produced by Defendant is a deceptive message:

> So let me break this down by starting with the core of all prevention: detection. Now, we invest at least a billion dollars in this area annually. . . . Sophisticated attackers will plan to ensure links pass through the first round of security filters by making the links benign, only to weaponize them once the message is delivered. Meaning that the destination of that link is altered later to point to a malicious site. Time is important when thwarting this type of attack. 20% of all clicks happen within just five minutes of when an email is received, and with Safe Links, we're able to protect users right at the point of click by checking the link for reputation and triggering detonation if necessary.

(Compl. ¶ 26.) Plaintiff alleges that this statement is deceptive because "it is literally false that Safe Links protects users by 'thwarting this type of attack' [that is, the described attacked of sophisticated hackers]." (*Id.* ¶ 28.) However, on its face, the statement is not that Safe Links thwarts these attacks but that "[t]ime is important when thwarting this type of attack." And, Plaintiff has not alleged that Defendant's representation that Safe Links is "able to protect users right at the point of click by checking the link for reputation and triggering detonation if necessary" is false. Hence, the Complaint fails to allege that Statement #1 is false.

### ii. Statement #2

Plaintiff alleges that the following statement is deceptive:

6

> [A]ttackers sometimes try to hide malicious URLs within seemingly safe links that are redirected to unsafe sites by a forwarding service after the message has been received. The ATP Safe Links feature proactively protects your users if they click such a link. That protection remains every time they click the link, so malicious links are dynamically blocked while good links can be accessed.

(Compl. ¶ 5.) Plaintiff alleges that Safe Links does not protect users if they click the described links sent by attackers. (*Id.* ¶¶ 58, 62-67.) Defendant argues that Statement #2 does not make "any promises, guarantees or other representations." (Mot. at 15.) Defendant's argument is belied by the express language of this statement, which promises customers protections against attackers' malicious links. Plaintiff has alleged that Safe Links affords no such protection and, therefore, Statement #2 is false.

Further, the Complaint alleges the remaining elements of a false advertising claim: that the statement deceived, or had the capacity to deceive, consumers; the deception had a material effect on the consumers' purchasing decision; the misrepresented service affects interstate commerce; and Plaintiff has been injured as a result of the false or misleading statement. (*See, e.g.*, Compl. ¶¶ 190-197.) Hence, the Court denies the Motion to the extent it asserts that Plaintiff may not proceed with its false advertising claim based on Statement #2.

### iii.     Statement #3

The third alleged misleading statement is: "You Don't Need Any Other Security Products. With ATP You're Covered." (Compl. ¶¶ 67-68.) Plaintiff acknowledges, however, that this statement was not made by Defendant but by one of Defendant's customers. (*Id.* ¶ 72.) This is the customer's perception of, opinion about, and experience with Safe Links. Statement #3 cannot serve as a basis for Plaintiff's false advertising claim against Defendant.

### iv. Statement #4

Plaintiff alleges that the "very name 'Safe Links' conveys that Microsoft's security services makes links 'safe,'" which is a misleading and deceptive message. (Compl. ¶¶ 76-84.) Defendant argues that the use of the word "safe" is puffery and a non-actionable statement. (Mot. at 16.)

The determination of whether an alleged misrepresentation is a statement of fact or is mere puffery is a legal question that may be resolved on a motion to dismiss. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (citation omitted). As explained in *Newcal*:

> A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Thus, a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

*Id.* (internal citation and marks omitted).

Thus, whether the use of the word "safe" is mere puffery is contingent on the context in which it is used. *See, e.g., L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) (finding parts of defendant's advertising campaign about the safety of its rides to be "exaggerated advertising" and subjective statements to the extent it made statements like "BACKGROUND CHECKS YOU CAN TRUST," and finding others parts actionable to the extent they include specific assertions describing absolute characteristics of defendant's services (for example, statements that defendant is "setting the strictest safety standards possible," that its safety is "already best in class," that its "three-step screening" background check procedure adheres to a "comprehensive and new industry standard," and comparing the safety of its services with those offered by taxi cab companies)); *Hoffman v. A. B. Chance Co.*, 339 F. Supp. 1385, 1388

(M.D. Pa. 1972) (finding that defendants' statement that "their product offered unprecedented safety" is "a statement of opinion and is in the nature of seller's 'puffing.'").

In this case, the Court finds that Defendant's use of the word "safe" in the name if its product is more akin to the exaggerated advertising and statements of opinions courts have found to be non-actionable puffery. "Safe" in this context is a very general claim that characterizes classic puffery, as opposed to a specific assertion describing absolute characteristics of Defendant's product. Therefore, the Court concludes that this is not an actionable statement and Plaintiff's false advertising claim cannot proceed on this statement.

   **v.** **Statement #5**

Defendant argues that Statement #5—"Safe Links Ensures Hyperlinks in Documents are Harmless"—was simply a heading in a presentation, which when read in context of the entire document, reveals Statement #5 is not false or misleading. This argument has no merit. To start, on a motion to dismiss, the Court accepts all allegations in the complaint as true. Hence, Defendant's alternate interpretation of the plaint text of the statement has no significance to the Court's analysis. The Complaint alleges that Statement #5 is false because it assures customers that, with Safe Links, hyperlinks in documents are harmless, which is "literally false" or misleading. (Compl. ¶ 87.) Thus, Plaintiff has alleged that Statement #5 is false, and has sufficiently pled a claim for false advertising based on this statement. Consequently, the Motion is denied to the extent it asserts that Plaintiff may not proceed with its false advertising claim under Statement #5.

The Motion is therefore granted in part and denied as it relates to Plaintiff's false advertising claim.

### C. Contributory False Advertising

In support of its contributory false advertising claim, Plaintiff alleges that "[a]lmost all email cybersecurity vendors participate in a coordinated, industry-wide deception that promotes 'time-of-click' redirection as the solution to links that appear benign to cloud scanners yet send users to somewhere dangerous." (Compl. ¶ 146.) Also, "[m]ultiple third parties offer alternatives to Safe Links to protect Microsoft Office 365 users," which benefits Defendant when "consumers choose to subscribe to Microsoft's cloud services out of trust in a third-party's security offering." (*Id.* ¶ 143.) "Microsoft provides many of these third parties access to its customers' accounts via a proprietary protocol," and these "third parties cannot offer their services without Microsoft providing access." (*Id.* ¶ 144.) "Microsoft benefits from its cloud users being assured that time-of-click redirection guarantees that they will never download malware from a protected link." (*Id.* ¶ 174.) These guarantees are "deceptive." (*Id.*) Yet, "such absolute guarantees are highly effective in lulling hundreds of millions of consumers into a false sense of safety, to the degree that they confidently purchase Microsoft's cloud-based apps and services." (*Id.*) Plaintiff further alleges that "Microsoft continues to supply its service to those it knows or has reason to know are engaged in false advertising directly in regards to the service being supplied." (*Id.* ¶ 184.)

Defendant argues that the Complaint fails to state a claim for contributory false advertising. The Court agrees. "[T]he mere sale of products in the course of an ordinary business relationship, without more, cannot justify a finding that a defendant induced, encouraged, caused, procured, or brought about false advertising." *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015*).* To state a contributory false advertising claim under the Lanham Act, a plaintiff must show that a third party directly engaged in false advertising that injured plaintiff, and that the defendant contributed to that conduct either by knowingly inducing or causing the

conduct, or by materially participating in it. *Berkley Vacation Resorts, Inc. v. Castle Law Grp., P.C.*, No. 18-CV-60309, 2019 WL 5213310, at *7 (S.D. Fla. Aug. 15, 2019), r*eport and recommendation adopted*, No. 18-60309-CIV, 2019 WL 5208953 (S.D. Fla. Sept. 5, 2019) (citing *Duty Free Americas, Inc.*, 797 F.3d at 1277). A plaintiff must show that the defendant "actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *Id.*

In determining whether a complaint suggests a plausible inference of knowing or intentional participation, the Eleventh Circuit examines: "the nature and extent of the communication between the third party and the defendant regarding the false advertising; whether or not the defendant explicitly or implicitly encouraged the false advertising; whether the false advertising is serious and widespread, making it more likely that the defendant knew about it and condoned the acts; and whether the defendant engaged in bad faith refusal to exercise a clear contractual power to halt the false advertising." *Duty Free Americas, Inc.*, 797 F.3d at 1278 (citation and internal marks omitted).

The Complaint fails to adequately plead these elements. For one, Plaintiff has not alleged the requisite knowing or intentional participation by Defendant. Rather, Plaintiff seeks to hold Defendant accountable for the third-party cybersecurity companies' promotion of their own products and marketing strategy. Plaintiff maintains that the deceptive third-party marketing strategy benefits Defendant and, therefore, Defendant is liable for contributory false advertising. These allegations are not enough to state a claim for contributory false advertising in the Eleventh Circuit. *See Duty Free Ams., Inc.*, 797 F.3d at 1277-79. And, even if Defendant supplies services to these third-party companies, as Plaintiff alleges, that is not enough to sustain a contributory false advertising claim; "a plaintiff must allege more than an ordinary business relationship between the

defendant and the direct false advertiser in order to plausibly plead its claim." *Id.* at 1279. The Court finds that the Complaint fails to state a claim for contributory false advertising under the Lanham Act. Hence, the contributory false advertising claim is dismissed without prejudice. Accordingly, it is

      **ORDERED** that:

      1. Defendant, Microsoft Corporation's Motion to Dismiss Complaint [DE 14] is **GRANTED IN PART**.

      2. The Complaint [DE 1] is **DISMISSED WITHOUT PREJUDICE**, consistent with the discussion in this Order.

      3. Plaintiff shall file an amended complaint no later than **November 13, 2020**. **Plaintiff and his counsel shall be guided by the dictates of Federal Rule of Civil Procedure 11 in drafting the amended pleading**. Plaintiff is also reminded that shot-gun pleadings are impermissible. That includes pleadings, like the Complaint, that reincorporate all factual allegations in each count, thereby including in each count irrelevant factual allegations and legal conclusions.

      4. Defendant shall file an answer or response to the amended complaint no later than **November 23, 2020**.

      **DONE AND ORDERED** in Fort Lauderdale, Florida, this 6th day of November 2020.

                                          RODNEY SMITH
                                          UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record