UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-AMC

TOCMAIL INC., a Florida corporation,

      Plaintiff,

v.

MICROSOFT CORPORATION, a Washington
corporation,

      Defendant.

**MICROSOFT CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED**
**COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Defendant, Microsoft Corporation ("Microsoft") hereby moves to dismiss the First Amended Complaint [ECF No. 42] filed by Plaintiff TocMail, Inc. ("TocMail"), for failure to state an actionable claim against Microsoft.

## INTRODUCTION

After failing to sufficiently allege false advertising and contributory false advertising claims under the Lanham Act, TocMail's second attempt at alleging a false advertising claim against Microsoft fares worse. TocMail now admits that it began as a company in December 2019 and that it only provides users purported protection from one type of cyberattack (known as "IP Cloaking"), yet it blames its inability to "break into the [cybersecurity] market" on Microsoft's alleged false advertising of Safe Links, a cloud-based time-of-click redirect service and security feature found within its more robust security suite, Advanced Threat Protection ("ATP"), which is included in some Office 365 products.

The Amended Complaint sets forth a conspiracy theory that, beginning in 2011, Microsoft deceived the public by convincing it to move away from on-premise email security to the cloud by falsely promoting the benefits and security of its cloud-based Office 365, which Microsoft knew was not safe from IP Cloaking.  Despite this alleged public "deception," TocMail admits the purported vulnerabilities of cloud-based security services and the issue of cloaking had been well-known and published during this time.  The basis of TocMail's false advertising claim, however, is Microsoft's alleged false advertising of Safe Links (a feature that was created in 2015) as the "solution to IP Cloaking."  However, none of the three "deceptive messages" in the Amended Complaint even mention IP Cloaking.  And while TocMail claims to have solved the problem of IP Cloaking in December 2019, it did not have an alleged competing service for consumers to purchase at the time of Microsoft's alleged false advertising (and still does not).  Without alleging

it has a reputation in the market, a single sale, any form of advertising, marketing, or other promotional effort it has made (besides the filing of this lawsuit), or instance where a customer aware of TocMail did not purchase its service because of Microsoft's alleged false advertising, TocMail's speculative aspersions fall flat.

Despite this, TocMail claims that today it would have *all* 100 million subscriptions to Microsoft's Safe Links but for Microsoft's alleged false advertising of Safe Links.  Given the brief time TocMail has been in existence, this is not plausible.  TocMail also presumes that customers would not have moved expeditiously to the cloud and instead would have waited until TocMail's service finally debuted in December 2019 to move from on-premise servers to the cloud.  Based on this, TocMail seeks the disgorgement of Microsoft's profits due to its alleged deception causing consumers to move to the Office 365 cloud in 2011, when neither Safe Links nor TocMail existed. TocMail also seeks future lost profits through 2035, when TocMail's patent expires, based on Microsoft's 100 million customers for sales it claims would have been TocMail's, but for Microsoft's alleged false advertising of Safe Links.  TocMail now estimates its damages to be $15 Billion, instead of the initial $43 Billion it touted in its initial Complaint, but this new figure is also pure conjecture. The allegations in the Amended Complaint are internally inconsistent and so speculative that they cannot now, or in a subsequent amendment, rise to meet the plausibility standard set forth in *Iqbal/Twombly*.  Accordingly, the Amended Complaint should be dismissed with prejudice.

## MEMORANDUM OF LAW

### I.    Summary of TocMail's Relevant Factual Allegations[1]

Since 1975, Microsoft has invested in research and development to create software, services, devices, and solutions that focus on security and compliance, among other things, in which it is considered an industry leader. Am. Compl. Ex. 5 at 8. By contrast, TocMail has been in existence for less than a year and purports to sell a single service that specifically prevents IP Cloaking. Am. Compl. ¶¶ 89-90.  The technology used in TocMail's service is patented until 2035. *Id*. ¶ 102. The patent, however, was not obtained until the day before this lawsuit was filed, on February 25, 2020.[2] This technology was created by TocMail's CEO, who has previously had success creating and selling technology. *Id*. ¶ 91.  TocMail's service is purportedly "accessible at https://tocmail.net," but it is clear from visiting the website that TocMail does not even sell its own service to customers. *Id*. ¶ 90; *see* https://tocmail.net/#instructions.[3]  Similarly, TocMail alleges to have begun advertising its service in December 2019, without providing one example of such

---

[1] Microsoft does not agree with the allegations in TocMail's Amended Complaint but recites them here solely for purposes of this motion, in which the factual allegations in the Amended Complaint are assumed to be true, although "mere 'labels and conclusions' and other 'threadbare recitals' of a claim" must be disregarded." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] TocMail's patent is attached hereto as "**Exhibit 1**." The Court can properly take judicial notice of TocMail's patent and consider it as part of this Motion to Dismiss without converting the Motion to one for summary judgment. Fed. R. C. P. 201(b)(2); *Domond v. Peoplenetwork APS*, No. 16-24026-CIV, 2017 WL 5642450, at *2, n.1 (S.D. Fla. June 16, 2017), *aff'd*, 748 F. App'x 261 (11th Cir. 2018) (granting motion to dismiss and considering "records from the U.S. Patent and Trademark Office [that] provide context in this case" because they are "public records that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned") (quotations and citations omitted); *see Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 418 F. Supp. 3d 1143, 1160 (S.D. Fla. 2019) (the "[court] may take judicial notice of records from the United States Patent and Trademark Office's trademark database").

[3] *See Roman v. Spirit Airlines, Inc.*, No. 19-CIV-61461-RAR, 2020 WL 5746830, at *3, n.6 (S.D. Fla. Aug. 31, 2020) (granting motion to dismiss and considering website pages attached to motion because it is "central to Plaintiffs' claims [and] the contents … are not in dispute").

advertising or traffic received from it. *Id*. ¶ 90. Despite all this, TocMail alleges that "all 100 million subscriptions [to Microsoft's Safe Links] would have subscribed to TocMail" but for Microsoft's alleged false advertising of Safe Links. *Id*. ¶ 95.

### A.  The Shift to the Cloud.

TocMail alleges that in 2011, Microsoft announced the general availability of Office 365, and promoted security at a lower cost, resulting in, "many companies [] abandoning their on-premise scanners to move to Office 365's cloud-based scanners." Am. Compl. ¶¶ 22, 31. TocMail alleges that cloud-based scanners like Safe Links cannot reliably detect a specific hacking technique known as "IP Cloaking." *Id*. ¶¶ 22, 24. Vulnerabilities with the cloud and cloud-based scanners, however, have been well-documented since this time. *Id*. ¶¶ 25, 40, 50, 51, 52. Despite this, TocMail claims that, "[i]f Microsoft's customers knew that Microsoft's cloud-based scanners were defenseless against [IP Cloaking], they would have kept their servers on-premise." *Id.* ¶ 89.

### B.  Microsoft's Safe Links.

Microsoft's Advanced Threat Protection ("APT") is a robust security suite that includes several security features and is included in some Microsoft Office 365 products. *See* Am. Compl. ¶ 57. ATP contains a cloud-based email security service known as Exchange Online Protection ("EOP"). *Id*. ¶ 43. On April 8, 2015, Microsoft announced the availability of a security feature in EOP named Safe Links. *Id.* ¶¶ 42, 43, 57. "Microsoft is recognized as an industry leader in cloud security" and "Office 365 provides robust email protection against spam, viruses and malware with [EOP]." *Id*. ¶ 79. One overview of Office 365 ATP describes its focus on (i) anti-phishing, (ii) safe attachments, (iii) safe links, (iv) anti-spam, (v) spoof intelligence, and (vi) anti-malware, among other things. *Id*. Ex. 2 at 1. Other overviews describe its focus on (i) malware and viruses, (ii) malicious URLS, (iii) reporting and URL trace capabilities. *Id.* Ex. 3 at 5; Ex. 4 at 5.

### C.   Alleged False Advertising by Microsoft.

TocMail alleges that Microsoft falsely claims to have solved the IP Cloaking problem and to have the solution to IP Cloaking although it does not provide any *additional* protection against IP Cloaking. Am. Compl. ¶¶ 54, 55 (emphasis added).  However, the three purportedly "deceptive messages" upon which TocMail bases its false advertising claim are inconsistent with this narrative, as none of them mention "IP Cloaking," "IP Cloaked links," or the cloud. *Id*. ¶¶ 57-75.

Deceptive Message #1, "Safe Links Protects Users Right at the Point of Click," is based on an *Office 365 Essentials: Advanced Threat Protection* brochure, which states:

> "Sophisticated attackers will plan to ensure links pass through the first round of security filters. They do this by making the links benign, only to weaponize them after the message is delivered, altering the destination of the links to a malicious site. . . . With Safe Links, we are able to protect users right at the point of click by checking the link for reputation and triggering detonation if necessary."

*Id.* ¶ 58.  Deceptive Message #2, "Attackers Redirect to Unsafe Sites via a Forwarding Service After the Message Has Been Received; But with Safe Links, Malicious Links are Dynamically Blocked while Good Links Remain Accessible," is based on product guides and other sources which state:

> "...attackers sometimes try to hide malicious URLs within seemingly safe links that are redirected to unsafe sites by a forwarding service after the message has been received. The ATP Safe Links feature proactively protects your users if they click such a link. That protection remains every time they click the link, so malicious links are dynamically blocked while good links can be accessed."

*Id.* ¶ 63.  Finally, Deceptive Message #3, "ATP Safe Links ensures hyperlinks are harmless," is derived from two PowerPoint pitch decks and a brochure. *Id.* ¶¶ 70, 75, Ex. 8 at 23, Ex. 9 at 21, Ex. 10 at 6.

### D.   Alleged Material Consumer Deception by Microsoft.

TocMail alleges that these false advertisements deceived "a substantial portion of the target audience," Am. Compl. ¶ 85. Yet, according to the Amended Complaint, the vulnerabilities of

cloud-based scanners including Safe Links have been known to the public. *Id.* ¶¶ 25, 50, 51, 52, 102. Specifically, TocMail cites to (i) a study co-authored by Dr. Wenke Lee, Director of the Institute for Information Security & Privacy at Georgia Tech; (ii) a 2017 public disclosure on security researcher Mikail Tunç's website; (iii) a 2018 publicly-documented test by Cryptron Security GmbH; and (iv) a 2019 publicly-documented test by Rhino Security Labs, Inc., which document these alleged vulnerabilities. *Id.* ¶¶ 25, 50-52. Further, TocMail alleges that Microsoft's false advertising "regarding the security of Office 365 is material to the purchase decision of Office 365" (as opposed to Safe Links) simply because "security is material to purchase decisions." *Id.* ¶ 82. "TocMail estimates that there are approximately 100 million subscriptions to Microsoft's Safe Links' service" purchased by consumers who "remain loyal to Microsoft" *Id.* ¶ 95.

E.     **TocMail's Alleged Damages.**

TocMail complains it "would be introducing the first cloud-based redirect service capable of keeping users safe from IP Cloaking" and would "reap[] the benefits of ***the entire world safely moving to the cloud*** using TocMail's technology" when TocMail's product became available "***in December 2019***" if not for Microsoft's false advertising of Safe Links. Am. Compl. ¶¶ 90, 93 (emphasis added).  Because TocMail alleges it "is the sole provider of a cloud-based, time-of-click redirect service capable of keeping users safe from IP Cloaking, all 100 million [of Microsoft's] subscriptions would have subscribed to TocMail as TocMail is their only option." *Id.* ¶ 95. TocMail has not alleged any business activity, advertising efforts, customers, or sales, and "does not anticipate that it will be able to break through in the market and, therefore, is seeking damages up through the time of its patent expiration...based on loss of approximately 100 million subscriptions at an approximate rate of $2.50 profit per user per month over the lifetime of the

patent (which expires May 7, 2035)." *Id*. ¶¶ 90, 102.  Stated differently, TocMail seeks three times its future lost profits *Id*. ¶ 8.

In addition to the above damages based on loss of future subscriptions, TocMail seeks "treble disgorgement of Microsoft's profits" because "Microsoft has knowingly, willfully, and intentionally deceived companies over a sustained period of almost ten years," beginning in 2011, well before TocMail had any alleged service to offer consumers. *Id*. ¶¶ 90, 104; *see* ¶¶ 13, 31. Finally, TocMail alleges it has suffered "significant reputational damage" due to Microsoft's false advertisements which causes TocMail to be perceived as useless to those who falsely believe they are already subscribing to a solution to IP Cloaking. *Id*. ¶ 94. In total, TocMail seeks damages in excess of $15 Billion dollars. *Id.* ¶ 8.

## II.   Procedural Background

TocMail filed its original Complaint in this action on February 26, 2020, bringing two counts against Microsoft for false advertising and contributory false advertising under the Lanham Act. [ECF No. 1]. On November 6, 2020, the Court found three out of five "deceptive messages" forming the basis of Count I for false advertising were nonactionable and dismissed Count II for contributory false advertising. [ECF No. 41] (the "Order") at 6, 7, 9, 12. The Court admonished "[TocMail] and his counsel [to] be guided by the dictates of Federal Rule of Civil Procedure 11 in drafting the amended pleading. [TocMail] [was] also reminded that shot-gun pleadings are impermissible." *Id.* at 12.  Despite these admonitions about frivolous and improper pleadings, TocMail failed to fix the defects in its Complaint and went further to file an Amended Complaint setting forth an implausible claim that defies the Order and pleading standards.  It is now apparent TocMail cannot, under any circumstance, allege a sufficient claim against Microsoft.

### III.    Legal Standard

To survive a motion to dismiss, a complaint must contain facts that sufficiently "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and quotations omitted). This task "requires the reviewing court to draw on its judicial experience and common sense." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…." *Id*. "The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" *Id*. (internal citations omitted).  That is, "a complaint's factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although the well-pled factual allegations in a complaint are to be accepted as true, "the court need not take allegations as true if they are merely 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements[.]'" *Hall v. Omega Flex, Inc.*, No. 13-61213-CIV, 2014 WL 12496551, at *2 (S.D. Fla. Jan. 17, 2014) (citing *Iqbal*, 556 U.S. at 678). Courts also "need not accept factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party." *In re Adeleke*, No. 09–16347, 2012 WL 2953195, at *4 (Bankr. S.D. Fla. July 19, 2012) (quotation omitted). "[W]hen the allegations of the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation and quotations omitted).

## IV.    Argument

To state a false advertising claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "the movant must establish: (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). TocMail is unable to assert a cause of action for false advertising under the Lanham Act because it cannot allege the purported "deceptive messages" were material to consumers' purchasing decisions or that it has been or is likely to be injured as a result of Microsoft's alleged false advertising.  TocMail's Amended Complaint rests upon rampant speculative damages that are insufficient to state a plausible claim of entitlement to relief.  For these reasons, TocMail's Amended Complaint should be dismissed with prejudice.

### A.    The "Deceptive Messages" Are Not Material to Consumers' Purchasing Decisions Because They Do Not Pertain to a Key Characteristic of Microsoft's Office 365.

TocMail has not sufficiently pled the "deceptive messages" were material to consumers' decisions to purchase Safe Links.  "A plaintiff may establish [the] materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product. The materiality requirement is based on the premise that not all deceptions affect consumer decisions." *Johnson & Johnson Vision Care*, 299 F.3d at 1250 (citations omitted). TocMail conclusively alleges that "[s]ecurity is material to purchase decisions.  Therefore, any false advertising and promotions regarding the security of Office 365 is material to the purchase decision of Office 365." Am. Compl. ¶ 82.  Such a threadbare, conclusive recitation of the materiality element is insufficient

to allege it. *Iqbal*, 556 U.S. at 678; *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-CV-775-T-24-TBM, 2012 WL 33155, at *3–4 (M.D. Fla. Jan. 6, 2012) (dismissing false advertising claim where plaintiff's "[materiality] allegation provides nothing more than a legal conclusion" and therefore "failed to allege sufficient facts to support the material-deception element…and state a plausible claim").

Even assuming that "security" in general is material to consumers' decisions to purchase Microsoft's Office 365, TocMail alleges nothing about consumers' decisions to purchase the feature at issue, Safe Links. *See* Am. Compl. ¶¶ 76-84, 111.  In fact, TocMail cannot allege this, because consumers cannot choose to purchase Safe Links separate from the entire ATP security suite. *See id.* ¶ 57.

Further, while TocMail alleges Microsoft's "deceptive messages" focus on IP Cloaking[4], nowhere has TocMail alleged that IP Cloaking is "an inherent quality or characteristic of [Safe Links]." *See id.* ¶ 54-55, 76-84, 111; *see also Johnson & Johnson Vision Care*, 299 F.3d at 1250. Microsoft's Exchange Online Advanced Threat Protection, in which Safe Links operates, is "a cloud-based email filtering service that helps protect [an] organization" against (i) unknown malware and viruses; (ii) harmful links in real-time; and (iii) offers rich reporting and URL trace capabilities. *See* "Solution Overview," Am. Compl. Ex. 3 at 5.  Indeed, ATP performs a myriad of

---

[4] TocMail wrongly alleges the "deceptive messages" revolve around IP Cloaking and Safe Links' purported guarantee that it prevents this specific type of attack, solely because TocMail claims that *its* product is the sole patented solution to IP Cloaking and its damages, which must be proximately caused by the alleged false statements, are based on this patent. Am. Compl. ¶¶ 55, 60-61, 65, 73, 98, 102, 116; *see Black Diamond Land Mgmt., LLC v. Twin Pines Coal, Inc*., 707 Fed. Appx. 576, 580 (11th Cir. 2017) (plaintiff must plead alleged misrepresentations proximately caused it injury). Yet, on their face, none of the three alleged "deceptive messages" contain the term "IP Cloaking." *Id.* ¶¶ 58, 63, 70 (header).  Nor does Microsoft advertise that Safe Links provides the best protection against IP Cloaking or protects users from IP Cloaking 100% of the time.

cybersecurity tasks[5]; whether it protects users from IP Cloaking is but a fraction of its intended and advertised purpose. Because TocMail cannot allege that protecting users from IP Cloaking is a key characteristic of Safe Links, let alone ATP (in which Safe Links operates), TocMail cannot allege the materiality element of a false advertising claim. *See J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 796–97 (11th Cir. 2020) (noting "demonstrably false statements that are irrelevant to consumer purchasing decisions are immaterial and cannot be the basis for a false advertising claim").

**B.     TocMail Cannot Allege It Has Been or Is Likely to Be Injured by Microsoft's Conduct.[6]**

The Amended Complaint does not include sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, allowing the Court to reasonably infer Microsoft is liable for the alleged false advertising. *Iqbal*, 556 U.S. at 678; *see Black Diamond Land Mgmt., LLC,* 707 Fed. Appx. at 580 (affirming dismissal of Lanham Act claim on plausibility grounds). Specifically, TocMail's alleged damages for economic and reputational harm are so speculative that they fail to allege a plausible claim.

---

[5] One overview of Office 365 ATP describes its focus on (i) anti-phishing, (ii) safe attachments, (iii) safe links, (iv) anti-spam, (v) spoof intelligence, and (vi) anti-malware, among other things. Am. Compl. Ex. 2 at 1. Other overviews describe its focus on (i) malware and viruses, (ii) malicious URLS, (iii) reporting and URL trace capabilities. *Id.* Ex. 3 at 5; Ex. 4 at 5.

[6] The Court found TocMail had standing to bring a claim under the Lanham Act. Order at 5. However, the Amended Complaint fails to plead the fifth element of a *prima facie* Lanham Act claim: that TocMail has been or is likely to be injured by Microsoft's conduct. *Johnson & Johnson Vision Care, Inc.,* 299 F.3d at 1247. TocMail's amended pleading includes new facts and admissions that clearly renders its damages theories implausible.

i.      **TocMail Cannot Plausibly State a Claim for Economic Damages.**

a.      **TocMail's Damage Theory of Disgorgement is Unrelated to the Deceptive Messages and Speculative.**

TocMail alleges that it is seeking disgorgement of profits based on Microsoft's alleged ten-year deception of consumers by "knowingly stripping hundreds of millions of consumers of the protection they once had by migrating consumers to Office 365's cloud…." Am. Compl. ¶¶ 5, 104. TocMail's theory is based on the dubious premise that Microsoft deceived the public to move to the cloud in 2011 at a time when it was "unsafe" to do so. *Id.* ¶¶ 5, 31-33, 55, 87, 93.  However, this conspiracy theory, based on the cloud and safety of cloud-based scanners, is not in any way tied to the three "deceptive messages" about Safe Links that form the basis for Count I, and therefore cannot form the basis of TocMail's damages, as they would not flow directly from the alleged false advertising. *Id.* ¶¶ 31-33. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998) ("[T]o recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages.").  Similarly, any such damages would relate to the disgorgement of Microsoft's profits for the sale of Office 365, not Safe Links.[7]

Further, even according to the Amended Complaint, TocMail did not have a product readily available until December 2019. *Id.* ¶ 90.  And the alleged false advertising mostly occurred prior to this time. *See* Am. Compl. ¶¶ 64 (stating Ex. 3 was created in 2015, Ex. 4 was created in 2016, Ex. 5 was created in 2017, and Ex. 6 was created in 2019); 75 (stating Ex. 10 was created in 2019);

---

[7] TocMail alleges consumers were moving to the cloud by purchasing Office 365, at a time when Safe Links did not exist and could not be purchased separately anyway. *See* Am. Compl. ¶¶ 5, 42, 57, 104.

Ex. 8 at 2 ("last updated January 2018"); Ex. 9 at 2 ("last updated March 2018").[8] Thus, the alleged

misconduct occurred prior to TocMail having a competitive product on the market. As such,

TocMail cannot show a direct relationship between Microsoft's conduct and the claimed injury,

and cannot state a claim for relief. *See Johnson & Johnson Vision Care, Inc*., 299 F.3d at 1247)

(false advertising under the Lanham Act requires a showing of both an injury and a causal link

between the injury and the alleged false advertising); *Black Diamond Mgmt.*, 707 Fed. Appx. 576

at 580-81; *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1332 (11th Cir.

2008).

"[TocMail] could suffer no [] commercial or competitive injury, because it was no[t]

selling or promoting [its product] at the time of the alleged injury. Simply put, [TocMail] could

not have lost any customers or potential customers." *Natural Answers*, 529 F.3d at 1331. In other

words, because consumers could not choose TocMail's product over Microsoft's, and indeed they

were not competitors[9], TocMail could not have been harmed. *Id*.; *Enzymotec Ltd. v. NBTY, Inc*.,

754 F. Supp. 2d 527, 545 (EDNY 2010) ("If…the false advertising alleged by [plaintiff], will not

necessarily influence consumers away from a product, then the injury, even to direct competitors

is purely speculative."). And for TocMail to allege that Microsoft's and consumers' actions a

decade before TocMail had a product on the market harmed it ten years later, is too speculative to

sufficiently plead a claim for damages. *Twombly*, 550 U.S. at 555. "Such an artificial and

attenuated link between [Microsoft's] purported false advertising and [TocMail's] harm . . . defies

the reality of business . . . Simply put, the [c]omplaint's vague and speculative allegations do not

---

[8] The Amended Complaint does not provide a creation date for Exhibit 2, and Exhibit 7 is a 2020 webpage screenshot included after the filing of the Original Complaint.
[9] Safe Links, a feature in Microsoft's robust ATP security suite, that cannot be purchased as a standalone product, is not comparable to TocMail's service, which allegedly prevents IP Cloaking and can be purchased as a service. Am. Compl. ¶¶ 57, 90; Ex. 3 at 5; Ex. 4 at 5.

show [Microsoft's] false advertising caused its harm." *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020). It is implausible for TocMail to base its damages theory on the premise that due to Microsoft's "deceptive conduct" (and not due to technological innovation, cost, or convenience), companies and consumers would have continued to use an on-premise scanner and not moved to the cloud for years while they waited for TocMail to develop its "revolutionary" product in December 2019. Am. Compl. ¶ 93.  When the facts that form the basis of a claim are this implausible, the Court should dismiss the claim. *See In re Adeleke*, 2012 WL 2953195 at *4 (holding the "complaint … was so implausible that dismissal with prejudice was the only possible outcome").

### b.      TocMail's Lost Profits Damages are Speculative.

The crux of TocMail's lost profits theory is the implausible assertion that but for Microsoft's "deceptive messaging," since TocMail "is the sole provider of a cloud-based, time-of-click redirect service capable of keeping users safe from IP Cloaking, **all 100 million subscriptions** [of Microsoft's Safe Links] would have subscribed to TocMail as TocMail is their only option." Am. Compl. ¶ 95 (emphasis added).  Based on this, TocMail claims it is entitled to damages resulting from the "millions of consumers [who] withhold trade from TocMail" for the next fifteen years. *Id*. ¶¶ 102, 103.  Specifically, TocMail seeks damages "based on loss of 100 million subscriptions…**over the lifetime of the patent (which expires May 7, 2035)**." *Id*. ¶ 102 (emphasis added).

TocMail merely assumes that due to Microsoft's "deceptive messages," which occurred before TocMail's service existed, TocMail will lose out on all 100 million of Microsoft's subscriptions that it believes it otherwise would have secured. *Id*. ¶ 95.  Indeed, without a single sale, and admittedly "not [even] anticipat[ing] that it will be able to break through in the market,"

TocMail presumes that because all customers desire its patented technology it would capture all of Microsoft's market base **through the life of its patent in 2035**. *Id*. ¶ 102.  Such speculative damages cannot state a plausible claim for relief and are improper. *Prakash v. Altadis U.S.A. Inc*., No. 5:10CV0033, 2012 WL 1109918, at *10 (N.D. Ohio Mar. 30, 2012) (false advertising claim under the Act dismissed for failure to allege causal link between false statements and harm); *Black Diamond Mgmt*., 707 Fed. Appx. 576 at 580-81 (same); *Natural Answers*, 529 F.3d at 1332 (because the plaintiff "was not selling or promoting [its product] at the time of the allegedly false advertising, it cannot claim to have suffered lost sales, lost market share, or increased promotional costs." As a result, "the amount of [plaintiff's] claimed damages is entirely speculative."); *Twombly*, 550 U.S. at 555.

Further, TocMail's allegations are fatally inconsistent, speculative, and implausible. TocMail alleges that Microsoft's alleged false advertising "deceived a *substantial portion* of the target audience" yet claims it is entitled to damages for *all* 100 million subscribers, some of which admittedly were not deceived by the messages. *Id.* at ¶¶ 85, 95 (emphasis added).  For this reason alone, TocMail's damage theory fails. *See Smith v. City of Fort Pierce*, 2018 WL 5787269 at *6 (S.D. Fla. Nov. 5, 2018) (finding plaintiff failed to state a plausible claim for relief because the complaint incorporated internally inconsistent factual allegations).  Contrary to TocMail's assumption that its service is the only option for consumers, TocMail admits there are other competitors like Proofpoint that compete in the same space, yet it does not allege why Microsoft's consumers would not subscribe to their services instead of TocMail's. *Id*. at ¶¶ 39, 51-52.  Further, TocMail alleges that IP Cloaking and the vulnerabilities of cloud-based scanners including Safe Links have been documented and available to the public since the cloud became available, yet, Microsoft's customers remain loyal. *Id*. at ¶¶ 25, 50-53, 95.  Given that TocMail is a brand new

company without any alleged sales or marketing, with a product that claims to only do one thing; and given that Microsoft has an established reputation in the market, invests billions of dollars in cybersecurity, and offers robust products that include features like Safe Links and are cost effective, it is not plausible that all Microsoft customers are only purchasing Microsoft products because of its false advertising of Safe Links and would otherwise certainly purchase TocMail's service. *Id*. at ¶¶ 41, 79, 81, 90, 95.   TocMail's damages theory is highly speculative and unprovable. *See Enzymotec Ltd.,* 754 F. Supp. 2d at 545 (if the alleged false advertising does not influence consumers away from a product, then any alleged injury is speculative in the absence of any causal link); *Black Diamond Mgmt*., 707 Fed. Appx. 576 at 580-81; *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 705 (7th Cir. 2014) (affirming dismissal of complaint where plaintiff's Lanham Act claim was "too implausible to support costly litigation"); *Twombly*, 550 U.S. at 555.

> ii. **TocMail's Reputational Damages are Too Speculative to State a Claim.**

In addition to economic injury, TocMail attempts to allege reputational injury. Specifically, TocMail alleges Microsoft's false advertisements cause it to be perceived as useless and cause "significant reputational damage." Am. Compl. ¶ 94.  TocMail's bare recitation of the damage element is insufficient to state a claim. *Iqbal*, 556 U.S. at 678.   And, alleging that consumers perceive TocMail's service to be "useless" does not allege a harm to its reputation, particularly if it has not at least alleged that its service was once perceived by consumers to be useful.  Indeed, without alleging it ever had a reputation, TocMail cannot allege reputational injury. TocMail has neither.   TocMail has alleged no business activity, no investors or funding, not a single sale or customer, nor even a single user of the "free trial" available on its website. Am. Compl. ¶ 90.  Through TocMail's website https://tocmail.net, a consumer cannot even directly

purchase the product. *Id*.  TocMail has not alleged it has made any effort to create a brand, form a reputation, and enter the marketplace.

TocMail can only allege that it is a purported patent holder of a wholly-unproven technology and that it only began advertising its product in December 2019. *Id*. ¶¶ 90, 92. TocMail's belief that in the future it will not be able to break into the market due to Microsoft's alleged false advertising of Safe Links is on its face speculative and unsupported, as TocMail has not tried to go to market. *See id*. ¶ 102; *see also Black Diamond Mgmt*., 707 Fed. Appx. 576 at 581 (affirming dismissal of case where plaintiff did not plead with sufficient factual specificity how allegedly false statements would proximately cause plaintiff an injury to a commercial interest in sales or business reputation; *Natural Answers*, 529 F.3d at 1332 (damages found to be speculative as "[t]his is not a case where the plaintiff has lost any sales or market share. Rather, [plaintiff] has merely postulated that the weakening of its [] mark <u>might</u> cause it to lose sales in the future <u>if</u> it []enters the [] market."); *Twombly*, 550 U.S. at 555.  Despite these assumptions, according to the Amended Complaint, there are years' worth of publicly available studies documenting cloud vulnerabilities to IP Cloaking, yet companies continue to trust Microsoft anyway. Am. Compl. ¶¶ 25, 50, 51, 52, 95, 102.  Brand loyalty is not false or unfair advertising, and the Lanham Act is not intended to punish companies for market power and brand loyalty, which without more, is insufficient to establish reputational injury to TocMail. *See Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1247 (generally setting forth elements of the claim); *Iqbal*, 556 U.S. at 678; *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 1389-90 (the Act's goal is "protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.").

Nevertheless, TocMail assumes that had it broken into the market, since it is "the sole provider" of a "service capable of keeping users safe from IP Cloaking, all 100 million subscri[bers] [of Microsoft] would have subscribed to TocMail." *Id.* ¶ 95. This goes far beyond speculation into the realm of the implausibility: it is implausible that TocMail would have all of Microsoft's subscriptions the very day after obtaining the patent to its product and through the patent's life. Based on these allegations, there can be no "reasonable expectation that discovery will reveal evidence of the required element" of damages necessary to prove TocMail's Lanham Act claim; dismissal is accordingly warranted. *Iqbal*, 556 U.S. at 678; *Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307 (S.D. Fla. 2015) (granting motion to dismiss complaint that failed to meet *Iqbal*/*Twombly*).

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint with prejudice and award Microsoft its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

Dated: November 23, 2020

Respectfully submitted,

*/s/ Mary-Olga Lovett*

Mary-Olga Lovett
**GREENBERG TRAURIG, LLC**
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile:  (713) 374-3505
Email: lovettm@gtlaw.com

*/s/ Evelyn A. Cobos*

Evelyn A. Cobos
**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
        orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 106937
Email: cobose@gtlaw.com
        FLService@gtlaw.com

***Attorneys for Defendant***,
MICROSOFT CORPORATION