**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60416-CIV- CANNON/HUNT**

TOCMAIL INC, a Florida corporation,

       Plaintiff,

v.

MICROSOFT CORPORATION, a
Washington corporation,

       Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Plaintiff, TOCMAIL INC ("Plaintiff" or "TocMail"), by and through undersigned counsel, hereby respectfully files its Memorandum of Law in Opposition to Defendant, MICROSOFT CORPORATION'S ("Microsoft" or "Defendant"), Motion to Dismiss The First Amended Complaint ("Motion to Dismiss" or "Motion") [ECF No. 44], and states:

## I.    INTRODUCTION

Microsoft's Motion begins by explicitly misstating the Court's prior Order: TocMail "fail[ed] to sufficiently allege false advertising." *Motion*, p. 1. Quite the opposite, **the Court found that TocMail "sufficiently pled a claim for false advertising"** and "**denie[d] the Motion**" with respect to two of Microsoft's promotional statements. *See Order Granting in Part Defendant's Motion to Dismiss* ("Order"), p. 7, 9 (emphasis added).

Specifically, TocMail's original Complaint pled two claims: a contributory false advertising claim that was dismissed without prejudice and a false advertising claim based on five (5) deceptive statements. TocMail's Amended Complaint merely preserved its false advertising claim for the already allowed two statements, and corrected its allegations for one of the other statements as specified by the Court. TocMail did not attempt to re-plead the contributory false advertising claim nor the two remaining statements.  Hence, the Amended Complaint was not a "second attempt at alleging a false advertising claim" as Microsoft falsely states. *Motion*, p. 1.  The Court already determined that TocMail stated a claim, and TocMail transferred that which the Court already permitted. As will be discussed, courts routinely deny motions to dismiss when defendants try to seek dismissal of claims and allegations that the court has already allowed.

This case centers on a cybersecurity service called *link scanners.* Link scanners attempt to keep users safe from harmful URLs. Microsoft's cloud-based link scanner (ATP Safe Links) competes with TocMail's namesake cloud-based scanner (TocMail). TocMail alleges that

Microsoft falsely promotes its scanner as possessing a security capability that it actually does not possess. Moreover, only TocMail's scanning service has the security capability that Microsoft promotes its scanner as providing.

Microsoft misportrays this case as a conspiracy theory in which TocMail makes the ridiculous claim that companies would not have moved *anything* to the cloud until TocMail came into existence. *Motion*, p. 2, 6. On the contrary, TocMail alleges that companies would not have moved to Microsoft's cloud-based *link scanners* (nor to services dependent on those scanners) but for Microsoft's false advertisements. Thus, this case is much more clear-cut than Microsoft portrays. (The context is entirely framed around the issue of on-premise link scanners vs. cloud-based link scanners – *i.e.*, framed around companies moving their email security *link scanners* to the cloud. *See, e.g., Am. Compl.*, ¶¶ 5, 21-22, 25-26, 31-32, 87, 89, 117).

Microsoft's Motion seeks dismissal based on TocMail's supposed failure to plead the elements of materiality and injury.  *Motion*, p. 9.  The Court already determined that TocMail sufficiently pled both elements. Regardless, throughout its Motion, Microsoft attempts to improperly reargue them via explicit denials of TocMail's allegations (e.g. TocMail "wrongly alleges…" *Motion*, p. 11). To accept Microsoft's arguments based on denials of TocMail's allegations would require the Court to ignore decades of well-established law that the allegations in the Complaint must be taken as true at the motion to dismiss stage.

Regarding materiality, Microsoft inexplicably argues that TocMail made only one statement regarding materiality, and this supposed single statement was conclusory. *Motion*, p. 9. However, the Amended Complaint contains multiple detailed allegations regarding materiality. *Am. Comp.*, ¶¶ 3-4, 76-84, 89, 93, 95, 102, 111, 115-116. In fact, one allegation is nine paragraphs long, detailing how Microsoft's advertisements are directly related to the significant feature of

security, which is an essential factor when consumers are purchasing a cybersecurity service. *Id.*, ¶¶ 76-84. Included in these paragraphs are citations from Microsoft itself that state that security is material to the purchase decisions of its products. In fact, these paragraphs focus exclusively on materiality. Microsoft's baseless argument lifts a single paragraph from the Amended Complaint out of context, treats it as if it is the only paragraph addressing materiality, mislabels it as a conclusory statement, and then cites case law against conclusory statements. Microsoft's argument regarding materiality is without merit.

Microsoft's injury arguments are all based on same false premise: the Amended Complaint should supposedly be dismissed because TocMail's damages are "too speculative." *Motion*, pp. 13, 16; *see also* pp. 9, 12-18. The Court already rejected Microsoft's "too speculative" argument:

> Defendant maintains that these allegations fail to sufficiently plead proximate causation because they are **too speculative** and Plaintiff's alleged harm is too remote, given the number of intervening causes. (Mot. at 10-12.) **But courts have found allegations based on the diversion of business from one party to the other enough for purposes of pleading proximate causation**."

*Order*, p. 4 (emphasis added). The Court further found:

> Defendant argues that these allegations are **speculative** and unsupported, as they are premised on multiple assumptions. (Mot. at 12-13.) **Here, the Court's only inquiry is whether Plaintiff has plausibly alleged reputational and economic harm—not whether Plaintiff will ultimately prevail on its allegations.**

*Order*, p. 3 (emphasis added).

The crux of Microsoft's Motion is that the *amount* of damages is supposedly too implausible and therefore the case should dismissed. *Motion* pp. 2, 6, 14-15, 18. Yet Microsoft's central-most argument is literally irrelevant to a motion to dismiss. Whether TocMail is ultimately awarded damages based on losing 100 users or 100 million users, the amount of relief, the type of relief, and the time period for relief are all for the trier of fact to decide after the presentation of evidence. As explained below, none of these are even considerations at the motion to dismiss stage,

rendering Microsoft's entire injury section moot. Moreover, TocMail is seeking actual damages and disgorgement of profits - two very different remedies. Unlike the Eighth Circuit case cited by Microsoft, in the Eleventh Circuit, disgorgement of profits is not tethered to the amount of actual damages, thereby also rendering Microsoft's injury arguments moot; not to mention that TocMail's allegation of *injury* is independent of the amount and duration of damages, thereby also rendering Microsoft's injury arguments moot (e.g. *Am. Compl.*, ¶ 113).

In short, TocMail's Amended Complaint sufficiently pleads a claim for false advertising, just as the original Complaint did. Microsoft's Motion starts with a patently false pretense and then continues forward in that same vein to offer arguments that are completely without merit. Microsoft's Motion should be denied in full.

## II.  BACKGROUND

### A.  Factual Background from TocMail's Complaint.

Microsoft repeatedly contrasts its decades-long, multi-billion-dollar investments in multi-faceted cybersecurity to TocMail's relatively recent offering of a patented solution to one specific attack. *Motion*, p. 3-4, 10-11, 16-17. Yet, testing performed by Crytpron Security and Rhino Security Labs independently document that Microsoft's multi-billion-dollar, multi-faceted, cloud-based email security is *fully* bypassed (including its link scanners) via a trivial attack. *Am. Comp.*, ¶¶ 51-52. The simple, yet effective, attack is as follows: When Microsoft's link scanner connects to the website, the website redirects the scanner to a benign webpage; but when a Microsoft user connects to the same website, the website redirects the user to a malicious webpage (where the user is harmed by content that Microsoft's scanner never sees, and never knows about). *Id*. at ¶ 12. Hackers often use a specific type of website, known as a forwarding service, to accomplish this attack. *Id.* at ¶ 40.

For five consecutive years, Microsoft promoted its cloud-based link scanner (ATP Safe Links) as its solution for this very attack:

> ...attackers sometimes try to hide malicious URLs within seemingly safe **links that are redirected to unsafe sites by a forwarding service after the message has been received. The ATP Safe Links feature proactively protects your users if they click such a link.** That protection remains every time they click the link…

*Id.* at ¶ 63-64 (emphasis added). These forwarding services virtually always use the visitor's IP address to identify Microsoft scanners. *Id.* at ¶¶ 26-27.  A hacker simply needs to know all of the IP addresses of Microsoft's scanners in order to redirect the scanners to benign content 100% of the time. *Id.* at ¶ 20. Microsoft makes all of these IP addresses publicly accessible. *Id.* at ¶ 45. Therefore, hackers can (and do) redirect Microsoft's cloud-based link scanners to benign content with 100% efficacy.  *Id.* Because hackers redirect ATP Safe Links' IP addresses to benign content with 100% efficacy, TocMail alleges that Microsoft's Safe Links scanner is *defenseless* against this attack - defenseless against the very attack that Microsoft promotes Safe Links as providing protection against. *Id.*  For this, and other reasons, TocMail appropriately alleges that the above promotional message is *literally false.  Id.* at ¶¶ 63-69.[1]

---

[1] Regarding the Order's reference to Rule 11: The Original Complaint's allegations were founded on Microsoft *knowingly* making companies defenseless against the very attack that it promises protection against. *Orig Comp.*, ¶¶ 3, 17, 22, 32, 36, 101, 118, 200-201. Microsoft represented to the Court that these were nothing more than "preposterous accusations" (*Orig. Motion*, p. 5) (ECF 14); claiming that TocMail simply alleges that Microsoft knowingly misled customers to believe that they were safe from IP cloaking attacks without TocMail offering any proof whatsoever. *Id.* at 7. Thus, the Am. Complaint now includes *a sample of Microsoft's own writings* that document its *intimate knowledge* regarding this attack. *Am. Comp.*, ¶¶ 14-17, 28-30, 47. For example: **"Attackers can identify the crawler (e.g., by knowing the IP addresses from which it operates . . .), and evade detection." (Microsoft, 2013).** *Id*. at ¶ 29 (emphasis added). It is indisputable that Microsoft knew that public IP addresses allow hackers to evade cloud-based scanners as early as 2013. Yet, two years later, Microsoft launched ATP Safe Links with publicly known IP addresses while simultaneously promising customers that it protects them from cloaked "links that are redirected to unsafe sites by a forwarding service after the message has been received." *Am. Compl.*, *Ex.* 3. Thus, Microsoft *knowingly* makes companies defenseless against the attack that it promises protection against.

Because this attack hides (i.e. cloaks) the malicious content from security scanners, this attack is appropriately called *cloaking. Id.* at ¶ 12. Because IP addresses are virtually always used to determine which site to redirect to, the attack is referred to herein interchangeably as *cloaking* or *IP Cloaking*.

**B.      TocMail Sells a Competing Product.**

Microsoft's Motion is inconsistent regarding TocMail's advertising. For example, Microsoft contends that: "TocMail alleges to have begun advertising its service in December 2019" and "TocMail has not alleged any … advertising efforts." *Motion*, pp. 3, 6. Microsoft makes the latter statement in an attempt to falsely allege that "TocMail has not tried to go to market." *Motion*, p. 17. Inexplicably, Microsoft asserts that *https://tocmail.net/#instructions* somehow appears to indicate that "TocMail does not even sell its own service to customers." *Motion*, p. 3. Yet this is the very section of TocMail's website where TocMail initiates the sales process via instant access to a free 30-day trial followed by a charge per month after that trial:

> You can protect yourself right now from the most common email hacking attack — free for 30 days. To get started: … [instructions on how to sign up and access the service] … After the 30 day trial, you will be given the opportunity to continue using TocMail for only $3 per email address per month.

Like many modern B2B SaaS (Business-to-Business Software-as-a-Service) providers, TocMail's sales process begins with the potential customer providing contact information when signing up for a 30-day trial, with no credit card or other form of payment requested upfront. The company is then invoiced before the end of the trial so that the company can pay the invoice in order to keep using the service ("given the opportunity to continue using TocMail").[2]

---

[2] It bears noting that TocMail's website has Login/Logout buttons for users to login/logout of the service when accessing the service via a computer. It contains instructions on how to add icons to mobile devices to access the service directly from phones and tablets. It contains videos showing

TocMail's Amended Complaint truthfully states: "This service is named TocMail, and is accessible at https://tocmail.net" and "TocMail Inc sells its namesake service TocMail." *Am. Compl.*, ¶¶ 90, 96. While such statements are not only true, they must be taken as true when considering a Motion to Dismiss.

Microsoft falsely claims that "[TocMail] did not have an alleged competing service for consumers to purchase at the time of Microsoft's alleged false advertising." *Motion* p. 1. Yet, all three false messages occurred from 2019 through 2020, during which time TocMail was offering its product for sale.[3]

**C.    Microsoft's Mischaracterizations of TocMail's Allegations.**

Microsoft's Motion is filled with blatant mischaracterizations. For example, Microsoft claims that "according to the Amended Complaint, the vulnerabilities of … Safe Links have been known to the public," (p. 6) which is the literal opposite of TocMail's allegations. The entire Am. Complaint is premised on the fact that Safe Links' vulnerabilities are not known to the public *because of Microsoft's false advertising.* Despite being told about Safe Links' weakness, the public does not believe (i.e. know) Safe Links' vulnerability, because of its trust in Microsoft's advertisements. Even worse, they believe that Safe Links is the solution to the very attack that it

the service in action. It contains a full ticketing system for customer support. It provides free access to a 30-day trial for an unlimited number of employees, and more. Hence, TocMail most certainly offers its product for sale.

[3] The false materials are highly-distributed, persistent documents*,* not TV ads that only exist for a brief moment. For example, the deceptive *ATP Product Guide* was "the official" (i.e. only) product guide that potential customers could consult up through 2020. *Am. Comp.*, ¶ 109. Hence, the 2016 date of creation is a red herring. Likewise, Microsoft acknowledged that the deceptive brochure was created in 2019. *Motion*, p. 12. It was highly distributed on a persistent webpage. *Am. Comp.*, ¶ 109. The Am. Complaint provides three persistent examples of deceptive message #3 in the form of two powerpoint presentations persistently downloadable from the web (*Id.* at ¶ 74) and a 2019 brochure. All of the false messages were being delivered after TocMail entered the market; not to mention that Microsoft's argument itself is another red herring given that recent advertisements cause *present* harm when consumers *currently* believe the false message because of them.

is defenseless against. Microsoft twists the fact that cybersecurity experts have warned of Safe Links' vulnerability to cloaking in order to distract from the experts' confirmation that Safe Links is ineffective against cloaking precisely as TocMail alleges.

Microsoft also mischaracterizes the competitive nature of TocMail's and Microsoft's relationship by portraying ATP Safe Links as an insignificant service within ATP. However, ATP Safe Links is responsible for trying to stop the attack used by the majority of malicious websites, making it the single most important service within ATP. *Am. Compl.*, ¶ 12. Therefore, TocMail competes for every customer who purchases ATP for the purpose of defeating cloaking. Regardless, Microsoft's argument is not only deceptive, it is irrelevant. In pleading injury in a Lanham Act false advertising case, injury comes from consumers withholding trade from a plaintiff due to defendant's false advertising, regardless of whether the plaintiff and defendant are competitors or not. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-140 (2014). Although TocMail and Microsoft are competitors, TocMail also alleged the fact that Microsoft's false advertising causes consumers to withhold trade from TocMail (*Am. Compl.*, ¶¶ 4, 95, 113-116) given that some Microsoft customers may purchase ATP for its bundled services, and they also withhold trade from TocMail because they falsely believe they already have cloaking protection included in that bundle.[4]

Microsoft references an allegation out of context to wrongly make it appear that the Am. Compl. implies that Safe Links offers some protection against IP Cloaking: "it does not provide any *additional* protection against IP Cloaking." *Motion* p. 5. Yet, the Am. Compl. explained earlier

---

[4] Microsoft also wrongly contends that TocMail portrays Proofpoint as a competitor that offers a solution to IP Cloaking. The only citation in the Am. Complaint from Proofpoint does not state this. ¶ 40. Also, if Proofpoint does engage in any such false advertising, TocMail could also bring claims against Proofpoint under the Lanham Act, rendering Microsoft's argument moot.

in ¶ 44 that Microsoft's first round of security filters provide zero such protection, and that Safe Links does not provide any additional protection beyond that first round (zero plus zero is zero).

Moreover, Microsoft misportrays the Am. Complaint as concluding that Safe Links must not be able to thwart cloaking because TocMail received a patent on thwarting cloaking. *Motion* p. 10. fn. 4. The Am. Complaint does not convey such a ridiculous notion. Safe Links cannot thwart cloaking because Safe Links cannot thwart cloaking. TocMail's patent has nothing to do with it. Contrary to Microsoft's contention, the Am. Complaint points to, among other things, the tests done by Cryptron and Rhino Security Labs, which confirmed that cloaking evades Safe Links. *Am. Compl.*, ¶¶ 51-52. Microsoft created this fictitious allegation in order to falsely claim that TocMail absurdly bases proximate causation on having a patent. *Motion* p. 10. fn. 4. Again, the Am. Complaint makes no such argument.

## III.    MEMORANDUM OF LAW

### A.    Standard for Motion to Dismiss.

"A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case." *State Farm Mut. Auto. Ins. Co. v. Perform. Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1315 (S.D. Fla. 2017) (citing *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984)). In considering a motion to dismiss, a federal court must view the subject pleading in the light most favorable to the claimant and accept all of the allegations in the subject pleading as true. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999); *TracFone Wireless, Inc. v. GSM Group, Inc.*, 555 F. Supp. 2d 1331, 1334 (S.D. Fla. 2008). "[T]he issue is not whether the [claimant] will ultimately prevail, but 'whether the claimant is entitled to offer evidence to support the claims.'" *TracFone Wireless, Inc.*, 555 F. Supp. 2d at 1335 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A court can consider whether the plaintiff can actually establish elements of its case at the motion for summary judgment stage; but "[a]t the motion to dismiss stage, however, a court considers only the four corners of the complaint, which simply must provide sufficient facts from which the court can reasonably infer the defendant is liable for the retaliatory conduct alleged." *McArthur v. Northstar Funeral Services of Florida, LLC*, No. 10-24517-CIV, 2011 WL 1549007, *5 (S.D. Fla. Apr. 22, 2011) ("While discovery may ultimately reveal that McArthur's claims, like the plaintiff's claims in Murphy, cannot withstand a motion for summary judgment, McArthur has sufficiently pled facts alleging that he engaged in a protected activity for purposes of surviving Northstar's Motion to Dismiss."); *see also Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005).  Thus, "'the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low.'" *Ventrassist*, 377 F. Supp. 2d at 1285.

**B.      Requirement for Stating a Lanham Act False Advertising Claim.**

To state a claim for false advertising, a plaintiff must allege that "(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement."  *Hi-Tech Pharms., Inc. v. HBS Int'l. Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018).

**C.      TocMail Stated a Claim for False Advertising.**

TocMail clearly pled sufficient allegations in its Amended Complaint to state a claim for false advertising under the Lanham Act.[5]

---

[5] In regards to standing, this Court has already determined that "Plaintiff has met its burden of establishing standing to bring its Lanham Act claims." *Order*, p. 5. Microsoft acknowledges the Order's ruling on standing. *Motion*, p. 11 fn. 6.

1.      **Microsoft's False Advertisements and TocMail's Allegations of Falsity.**

**Deceptive Message #1.**

> Sophisticated attackers will plan to ensure links pass through the first round of
> security filters. They do this by **making the links benign, only to weaponize them**
> **after the message is delivered, altering the destination of the links to a**
> **malicious site**. . . . With Safe Links, we are able to protect users right at the point
> of click by checking the link for reputation and triggering detonation if necessary.

*Am. Compl.*, ¶¶ 57-62 (emphasis added).  Among other things, TocMail alleges that "the statement

that 'With Safe Links, we are able to protect users right at the point of click by checking the link

for reputation and triggering detonation if necessary' is literally false as a result of the ubiquitous

use and effectiveness of IP Cloaking." *Id.*

**Deceptive Message #2.**

> ...attackers sometimes try to hide malicious URLs within seemingly safe **links that**
> **are redirected to unsafe sites by a forwarding service after the message has**
> **been received. The ATP Safe Links feature proactively protects your users if**
> **they click such a link.** That protection remains every time they click the link, so
> malicious links are dynamically blocked while good links can be accessed.

*Am. Compl.*, ¶¶ 63-69 (emphasis added).  Among other things, TocMail alleges:  "Safe Links does

not protect users if they click the described links sent by attackers. … to unambiguously promise

that Safe Links protects against 'links that are redirected to unsafe sites by a forwarding service

after the message has been received' is literally false." *Id.*

**Deceptive Message #3.**

> "Ensure document hyperlinks are harmless with ATP Safe Links."; and

> "ensure hyperlinks in documents are harmless with ATP Safe Links."

*Am. Compl.*, ¶¶ 70-75.  Among other things, TocMail alleges in part that such statement is false

because "Safe Links can be trivially bypassed by IP cloaking and, thus, Safe Links does not ensure

that hyperlinks are harmless." *Id.*

Microsoft makes the illogical argument that IP Cloaking has nothing to do with any of the deceptive messages because none of them use the term "IP Cloaking." *Motion* p. 5. The bolded text in Statements #1 and #2 demonstrate that they describe IP Cloaking and then falsely offer Safe Links as the solution. Most importantly, all three statements are false because of IP Cloaking, and that is what matters given that the Am. Complaint alleges that all three are false because of IP Cloaking. *Am. Compl.*, ¶¶ 60, 65, 73.

TocMail clearly pleads that the subject promotional messages by Microsoft are false.

**2.     The Court Already Ruled that TocMail can Proceed with its False Advertising Claim.**

Where a court has already determined in response to a motion to dismiss that a plaintiff sufficiently pled an element of a claim, such element remains sufficiently pled in an amended complaint. *See Spadaro v. City of Miramar*, No. 11-61607-CIV, 2012 WL 3027813 at *2 (S.D. Fla. July 24, 2012) ("because the allegations in the Second Amended Complaint regarding the existence of an enterprise are unchanged from the Amended Complaint, the Court rejects the City Defendant's attempt to re-litigate this issue."); *Joseph v. Bailum*, No. 16-cv-81176, 2017 WL 733393, *6 n.5 (S.D. Fla. Feb. 24, 2017) ("the Court need not rely on argument from Mr. Joseph where Defendants seek dismissal of a claim that the Court has already found to have been sufficiently pled").

Even when the same plaintiff pled a similarly allowed claim in another case from another judge, courts still deem such claims as already allowed and deny motion to dismiss such claims. *See Stern v. Bank of America Corp.*, No. 11-21349-CIV, 2012 WL 112935, *4 (S.D. Fla. Jan. 12, 2012) ("In *U.S. Bank*, the claim for open account is indistinguishable from the claims in this case. . . . [and] Judge Altonaga found [that] nearly identical claim by this very Plaintiff to sufficiently state a claim for open account. . . This Court agrees and denies the motion to dismiss.").  In fact,

even when allegations in a complaint are deemed sufficient to state a claim in another district, in another state, courts still accept those allegations as sufficient and deny motions to dismiss. *See Mollicone v. Universal Handicraft,* No. 17-21468-Civ, 2017 WL 5897438, at *6 (S.D. Fla. Nov. 28, 2017) ("The California court already found those allegations to be sufficient, therefore this Court will not revisit that decision.").

The Court has already determined that TocMail stated a claim for false advertising. Specifically, the Court found that TocMail sufficiently stated a claim for Deceptive Message #2 because TocMail alleged: "Safe Links does not protect users if they click the described links sent by attackers." *Order*, p. 7. TocMail's Am. Complaint alleges the same: "Safe Links does not protect users if they click the described links sent by attackers." *Am. Compl.*, ¶ 65; *see also* ¶¶ 42-45, 54-55, 66-69. Hence, TocMail's Am. Complaint preserves the already allowed Message #2.

Regarding Deceptive Message #3 (which was Statement #5 in the original Complaint), the Court found: "The Complaint alleges that Statement #5 is false because it assures customers that, with Safe Links, hyperlinks in documents are harmless, which is 'literally false' or misleading. (Compl. ¶ 87.) *Thus, Plaintiff has alleged that Statement #5 is false, and has sufficiently pled a claim for false advertising based on this statement.*" *Order*, p. 9 (emphasis added). TocMail's Am. Complaint alleges the same in ¶¶ 72-73 (compare to *Orig. Compl.* ¶¶ 86-87 which was the basis of the Court's allowance). Hence, TocMail's Am. Complaint preserves the already allowed Message #5 (now #3).

Regarding Statement #1, the Court specifically noted in the Order that, in the original Complaint, TocMail did not allege "that Defendant's representation that Safe Links is 'able to protect users right at the point of click by checking the link for reputation and triggering detonation if necessary' is false." *Order*, p. 6. Hence, TocMail updated its allegations in the Amended

Complaint to allege verbatim as the Court noted with respect to Statement #1. *Am. Compl.*, ¶ 60. Thus, TocMail has stated a false advertising claim with respect to Statement #1.

The Court also explicitly stated that TocMail "allege[d] the remaining elements of a false advertising claim: that the statement deceived, or had the capacity to deceive, consumers; *the deception had a material effect on the consumers' purchasing decision*; the misrepresented service affects interstate commerce; and *Plaintiff has been injured as a result of the false or misleading statement.*" *Order*, p. 7 (emphasis added). The Order cited *Compl.*, ¶¶ 190-197 as the basis for such ruling, and these allegations are included in the Am. Complaint in ¶¶ 107-114. (*See also* additional allegations for each element under their own respective headings in ¶¶ 55-86, 89-104.) Thus, The Court already determined that TocMail sufficiently pled all of the elements, including materiality and injury. Regardless, Microsoft's Motion attempts to reargue these two elements (*Motion* p. 9) starting from the false pretense that they were not already previously allowed. *Id.* at p. 1. However, considering that TocMail's Amended Complaint merely preserves the already allowed false advertising claim for Statements #2 and #5 and simply updated Statement #1 as noted by the Court, the Court need not conduct any further analysis and should deny Microsoft's motion.

### 3.     TocMail's Sufficiently Pleads Materiality.

A false advertisement is material under the Lanham Act if "it is likely to influence purchasing decisions." *Thermolife Int'l LLC v. Vital Pharm. Inc.*, No. 19-cv-61380, 2019 WL 4954622 *3 (S.D. Fla. Oct. 7, 2019). TocMail has alleged throughout its Am. Complaint specific and particular facts supporting that Microsoft's false advertisements influence purchase decisions. Examples include: (1) "Plaintiff is hindered from selling its patented solution because Microsoft has convinced companies that it has already solved this issue"; (2) "Over a five-year period, Microsoft engaged in a sustained marketing campaign to falsely promote the narrative that Safe

Links solves the cloud *security* flaw of IP Cloaked links … Microsoft expressly acknowledged in its Form 10-K for fiscal year ending in June 30, 2020, that 'The *security* of our products and services is important in our customers' decisions to purchase or use our products or services.'"; (3) "If Microsoft's customers knew that Microsoft's cloud-based scanners were defenseless against the attack vector used by the majority of malicious sites, they would have kept their servers on-premise . . ."; (4) "But for Microsoft's misdeeds, TocMail would be introducing the first cloud-based redirect service capable of keeping users safe from IP Cloaking to a world that had been waiting for such an invention to be made."; (5) "None of these companies would willingly remain defenseless against the most-common hacking attack, yet these consumers remain loyal to Microsoft out of trusting Microsoft's false advertisements and promotions. . ."; (6) "Microsoft's false advertising has a substantial influence over consumers . . ."; (7) "this deception causes these users to withhold trade from Plaintiff." *See Am. Comp.*, ¶¶ 3-4, 76-84, 89, 93, 95, 102, 108, 110-111, 115-116 (emphasis added).

Given that TocMail has alleged in detail that Microsoft's deceptive messages influenced purchase decisions in so many different ways, Microsoft's contention that TocMail did not sufficiently plead materiality has no merit.  While TocMail agrees that a plaintiff cannot simply allege "threadbare recitals of a cause of action's elements," that was not the case here.[6]

Microsoft seeks to confuse the issue by citing inapplicable case law to wrongly claim that there is only one formulaic way to plead materiality. Microsoft relies on *Johnson & Johnson Vision Care v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) for the premises that "A

---

[6] The Am. Complaint details *one* of its allegations of materiality in ¶¶ 76-84. Microsoft cites the *last paragraph* out of context to falsely portray it as a stand-alone conclusory statement; not only ignoring the context of the entire section, but also ignoring TocMail's other allegations of materiality throughout the Am. Complaint. *Motion* p. 9.

plaintiff may establish [the] materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product." *Motion*, p. 9. That case was an appeal of a preliminary injunction, not a motion to dismiss. Regardless, that case supports TocMail, not Microsoft. First, the court stated that materiality is established if the defendant misrepresents any ("an") inherent quality or characteristic of the product, concurring with the fact that misrepresenting any inherent quality affects purchase decisions, which is the point. TocMail has alleged that Microsoft misrepresented the inherent quality of security thereby causing a material effect on purchase decisions. *See Am. Comp.*, ¶¶ 76-84, 108, 110-111. Second, the court did not state that this is the *only* way to establish materiality. Hence, the case does not support Microsoft's argument that there is only one way to plead materiality. *Motion* pp. 10-11.

Microsoft also claims, without legal support, that it is impossible for misrepresentations regarding Safe Links' capabilities to be material to purchase decisions "because consumers cannot choose to purchase Safe Links separate from the entire ATP security suite." *Motion*, p. 10. This nonsensical argument is akin to a Ferrari dealer stating that any misrepresentations regarding the horsepower of the engine cannot be material to purchase decisions because people buy the entire car. Of course misrepresentations of a component within a product can influence purchase decisions, as stated by Microsoft's own cited case law - as inherent qualities and features are components within the whole that are material to purchase decisions.

Microsoft's arguments are without merit, and TocMail has sufficiently pled materiality.

### 4. TocMail Sufficiently Pleads It Has Been or is Likely to Be Injured.

#### a. TocMail Sufficiently Pled an Injury.

TocMail alleges throughout the Am. Complaint that it has been injured by Microsoft's false advertising. *Am. Compl.*, ¶¶ 1, 3-4, 93-95, 102, 113-117. This includes one allegation that "Plaintiff

has been injured by Microsoft's false and misleading advertising by consumers withholding trade from Plaintiff, presently and in the future." *Id.* at ¶ 113; *see also* ¶¶ 4, 95, 114-116. Such an allegation "easily satisf[ies] the injury requirement at this stage." *See Hilton Resorts Corp. v. Sussman*, No: 6:19-cv-305-Orl-40DCI, 2019 WL 2717164, *2 (M.D. Fla. June 28, 2019); *see also USA Nutraceuticals Group, Inc. v. BPI Sports Holdings, LLC*, No. 15-CIV-80352, 2016 WL 4254257, *5 (S.D. Fla. Feb. 16, 2016) ("Economical or reputational injury 'occurs when deception of consumers causes them to *withhold trade* from the plaintiff,' i.e. a loss of sales.") (emphasis in original) (*quoting Lexmark*, 572 U.S. at 133); *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1233 (M.D. Fla. 2017) ("Warner next argues that the Amended Complaint omits the necessary allegations of injury and causation. . .  With respect to injury, the Amended Complaint alleges that Warner's advertising has caused 'loss of goodwill' and 'loss of sales.'… Those allegations are similar to the allegations in <u>Lexmark</u>, and Warner cites no authority to support its contention that Plaintiff must allege in 'detail' how its goodwill was damaged or how its sales declined. … ; <u>Lexmark</u>, 134 S.Ct. at 1393 … Warner may instead seek discovery on the nature and extent of Plaintiff's damages."). TocMail sufficiently pled injury.

### b.    Microsoft's Argument regarding TocMail's Lost Profits is Based on Issues Not Appropriate for the Motion to Dismiss Stage.

Microsoft wrongly conflates the element of injury with the amount of damages. At the motion to dismiss stage, the only question is whether or not a plaintiff is entitled to *any* relief; neither the type of relief nor the amount of damages is applicable at the motion to dismiss stage. *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323, 2012 WL 920675, at *2 (S.D. Fla. Mar. 19, 2012) ("[T]he test of a complaint pursuant to a motion to dismiss lies in the claim, *not in the demand*. Thus, the only issue on a motion dismiss is whether the claim as stated would give the plaintiff a right to *any* relief, rather than to the particular relief demanded.") (emphasis added);

*Fed. Dep. Ins. Corp. v. Burson*, 3:14-CV-0033, 2015 WL 11564167 *8 (N.D. Ga. June 30, 2015) ("Those facts might impact amount of damages, but not the fact of damages themselves. . . Plaintiff eventually will bear the burden of proving an amount of damages, but that is not a question that must be answered now [at the motion to dismiss stage].").

Microsoft's entire injury section is based on the amount of damages contrary to binding precedent that a complaint "is sufficient if it shows that the plaintiff is entitled to *any* relief which the court can grant, regardless of whether it asks for the proper relief." *See Dotschay v. Nat. Mut. Ins. Co.*, 246 F.2d 221 (5th Cir. 1957) (emphasis added). TocMail properly pleads injury in the Am. Compl. independent of both amount and duration in ¶ 113. The *additional* allegations in ¶¶ 114-115 concerning the withholding of trade of 100 million users are merely intended to provide Microsoft notice of the amount of damages that TocMail will be seeking at trial. Nevertheless, the amount of damages is not an issue of consideration at this present stage. Microsoft wrongly attempts to establish the supposed relevance of the amount of claimed damages by citing a case that was at **the summary judgment stage**, and is completely inapplicable here. *Motion*, p. 14-15 (citing *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325 (11th Cir. 2008)).

Microsoft's Motion even invents a supposed internal inconsistency:

> TocMail's allegations are fatally inconsistent, speculative, and implausible. TocMail alleges that Microsoft's alleged false advertising 'deceived a *substantial portion* of the target audience' yet claims it is entitled to damages for *all* 100 million subscribers, some of which admittedly were not deceived by the messages. *Id.* at ¶¶ 85, 95 (emphasis added). For this reason alone, TocMail's damage theory fails.

*Motion*, p. 15. Portraying this as an inconsistency is incorrect because the "target audience" and "subscribers" are two different subsets of consumers. A substantial portion of prospects (target audience) viewed the ads thereby becoming the 100 million deceived subscribers. Hence, it is Microsoft's allegation of inconsistency that is inconsistent, and therefore its "theory fails."

Microsoft's argument is not only without merit, it is not even a legitimate consideration.

      **c.**      **Microsoft Misstates Eleventh Circuit Law on Disgorgement of Profits.**

Microsoft inappropriately cites an *Eighth Circuit* case to wrongly claim that "to recover money damages under the Act, a plaintiff must prove … actual damages." *Motion*, p. 12. However, in the *Eleventh Circuit*, disgorgement of profits is not tethered to proof of actual damages. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019) (finding that for disgorgement of profits, "the plaintiff is not required to present any evidence of particular financial harm that it suffered so as to justify legal redress" because the entire focus is on the defendant's gain); *see also Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, No. 16-21203-CIV, 2018 WL 10322164, *5 n.7 (S.D. Fla. Jan. 13, 2018) ("The law in this Circuit is well settled that a plaintiff need not demonstrate actual damages to obtain an award reflecting a [defendant's] profits under § 35 of the Lanham Act.") (citing *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988)); *Neva, Inc. v. Christian Duplications Intern'l, Inc.*, 743 F. Supp. 1533, 1552 (M.D. Fla. 1990).

Perhaps unlike other circuits, the Eleventh Circuit allows a windfall award to plaintiffs. *Burger King Corporation v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999); *Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1290 (S.D. Fla. 2010). That is because, in the Eleventh Circuit, "[a]n accounting for profits has been determined to further the congressional purpose by making infringement unprofitable." *Hard Candy, LLC*, 2018 WL 10322164, *5 n.7; *see also Neva*, 743 F. Supp. 1552 ("an accounting of a defendant's profits is permissible without a showing of lost sales by the plaintiff because it furthers the Lanham Act's purpose of making violations less profitable by depriving the defendant of being unjustly enriched and by providing a deterrent against future violations"). Hence, while a plaintiff may need to establish the element

of injury to state a false advertising claim, proof of the amount of injury is irrelevant to disgorgement of profits, making Microsoft's argument likewise irrelevant.[7]

Microsoft also argues that false advertising regarding ATP Safe Links should not result in disgorgement of profits of Office 365. However, the trier of fact can indeed award profits for any product that customers purchased as a result of the defendant's wrongdoing. *See Superior Consulting Servs., Inc. v. Shaklee Corp.*, No: 6:16-cv-2001-Orl-31GJK, 2018 WL 2182303, *2 (M.D. Fla. May 9, 2018).

Finally, Microsoft wrongly claims that TocMail cannot seek disgorgement for Microsoft knowingly deceiving companies into moving to its cloud-based scanners because this "is not in any way tied to the three 'deceptive messages.'" *Motion*, p. 12. On the contrary, the Am. Complaint explicitly states that Microsoft used the three deceptive messages to deceive companies into moving to its cloud-based scanners. *Am. Comp.*, ¶ 55.  Thus, Microsoft's argument is nothing more than a denial.

> ### d.   Microsoft's Argument Regarding TocMail's Reputational Damage is Based on the Same False Statement that the Court already Rejected.

Microsoft's denials are inappropriate at this stage. Nevertheless, TocMail's allegations of reputational harm are clearly sufficient.  *Am. Compl.*, ¶¶ 89-95, 113-116; *see Incarcerated Entm't*, 261 F. Supp. 3d at 1233 (*see supra* Section 4a. for quotation).

## IV.   CONCLUSION

TocMail respectfully requests that the Court deny Microsoft's Motion to Dismiss.

---

[7] "A plaintiff shall be entitled to a defendant's profits if any of three circumstances exist: '(1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct.'" *Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010) (*citing Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 902 (11th Cir. 2007)). TocMail has pled that it is seeking disgorgement consistent with the three circumstances under which a plaintiff is "entitled." *Am. Compl.*, ¶¶ 104, 117.

Dated: December 7, 2020        Respectfully submitted,

By: /s/Joshua D. Martin
Joshua D. Martin
Florida Bar No. 028100
josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd., Suite 430
Fort Lauderdale, Florida  33309
Telephone:  (954) 790-6699
Facsimile:  (954) 206-0017

*Attorney for Plaintiff, TocMail Inc*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 7th day of December 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   /s/ Joshua D. Martin
Joshua D. Martin

## SERVICE LIST

### *TOCMAIL INC. v. MICROSOFT CORPORATION*
### 20-60416-CIV- CANNON/HUNT

| | |
|---|---|
| **Joshua D. Martin**<br>E-Mail:<br>josh.martin@johnsonmartinlaw.com<br>JOHNSON & MARTIN, P.A.<br>500 W. Cypress Creek Rd.<br>Suite 430<br>Fort Lauderdale, Florida 33309<br>Telephone: (954) 790-6699<br>Facsimile: (954) 206-0017 | **Francisco O. Sanchez**<br>E-Mail: sanchezo@gtlaw.com<br>   orizondol@gtlaw.com<br>**Evelyn A. Cobos**<br>E-Mail: cobose@gtlaw.com<br>   MiaLitDock@gtlaw.com<br>GREENBERG TRAURIG, P.A.<br>333 S.E. 2nd Avenue, Suite 4400<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br><br>**Mary-Olga Lovett** *(admitted pro hac vice)*<br>E-Mail: lovettm@gtlaw.com<br>GREENBERG TRAURIG LLC<br>1000 Louisiana Street, Suite 1700<br>Houston, Texas 77002<br>Telephone: (713) 374-3541<br>Facsimile: (713) 374-3505 |