UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-AMC

TOCMAIL INC., a Florida corporation,

      Plaintiff,

v.

MICROSOFT CORPORATION, a Washington
corporation,

      Defendant.

**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

The Opposition to Microsoft's Motion to Dismiss the Amended Complaint [D.E. 46] (the "Opposition") fails to provide any valid legal argument in opposition to the crux of Microsoft's Motion: that the Amended Complaint fails to state a plausible claim for which Plaintiff is entitled to relief under *Iqbal/Twombly*. On this basis alone, Microsoft's Motion to Dismiss the Complaint (the "Motion") [D.E. 14] should be granted. Critically, the Opposition fails to address how the newly-pled fact that TocMail was just formed in December 2019 precludes TocMail from "nudg[ing] [its] claim[]…across the line from conceivable to plausible," when it had no business or reputation in the marketplace that Microsoft's alleged false advertising could injure. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Without facts or law on its side, TocMail argues that the "Court need not conduct any further analysis and should deny Microsoft's [M]otion" because its false advertising claim is "preserved" from its initial Complaint.  Opp. 14-15. This is not so, especially here, where new allegations confirm that no plausible claim for entitlement to relief can be stated.  TocMail cannot state a plausible cause of action for false advertising under the Lanham Act because it cannot allege the third or fifth elements of a *prima facie* claim: that the three purported "deceptive messages" were material to consumers' purchasing decisions and that TocMail has been or is likely to be injured as a result of Microsoft's alleged false advertising.[1] Given the timeline as pled, TocMail cannot plausibly allege an injury.  TocMail's damages theories are too speculative and not tied to

---

[1] Microsoft's Motion attacked TocMail's false advertising count on two bases: (1) TocMail lacked standing to bring a claim under the Lanham Act under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), and (2) TocMail failed to state a claim for false advertising by failing to allege the first element of a false advertising claim under the Lanham Act: a false or misleading statement. The Court's Order held that TocMail had standing under *Lexmark* and that two of the five alleged deceptive messages were actionable under the Lanham Act. Order at 6-9. The Motion does not reargue standing or that the three purported deceptive messages do not constitute false or misleading statements (insufficiency of the first element of the claim).

the alleged false advertising. Astonishingly, despite the newly-pled fact that TocMail was formed in December 2019, TocMail alleges it is entitled to disgorgement of Microsoft's profits since 2011 and future lost profits through 2035 when its patent expires. But the Opposition fails to rebut Microsoft's argument that TocMail could not have suffered reputational harm, because it had, in fact, no reputation. TocMail freely admits that it seeks a windfall. Because TocMail cannot allege a plausible claim for entitlement to relief, the Amended Complaint should be dismissed with prejudice.

I.       **On its Face, the Amended Complaint Fails to State a Plausible Claim for Relief.**

The Opposition repeatedly and falsely asserts that because the Court determined TocMail sufficiently pled the "false or misleading statements" element of the claim in its initial Complaint, the entirety of the claim remains sufficiently pled and "preserved" in the Amended Complaint.[2] Opp. at 13-15. This is not the law. "[A]n amended complaint does not supplement the original complaint. Instead it completely replaces and supersedes the original complaint, becoming the operative complaint in the action, such that the original complaint no longer presents a live controversy with respect to which the Court can give meaningful relief." *Phoenix Entm't Partners, LLC v. Jellyfish, LLC*, No. 3:17CV929/MCR/GRJ, 2018 WL 10517181, at *2 (N.D. Fla. Apr. 12, 2018). For this reason, TocMail cannot rely on the inoperative Complaint and the Court must individually evaluate the Amended Complaint to determine if it meets the pleading standards of Rule 8. *See generally Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1343, 1347 (M.D. Fla. 2019) ("The allegations … fail to nudge their claims across the line from conceivable to plausible.").

---

[2] The Motion does not argue that TocMail's three purported "deceptive messages" are nonactionable under the Lanham Act or insufficiently pled. Despite this, TocMail inexplicably addresses these messages in pages 11 to 15 of the Opposition.

This evaluation is especially important where, as here, plaintiff has injected new factual allegations in its amended complaint which make it abundantly clear that the claims pled are implausible. *See Miller v. Lamberti*, No. 10-60051-CV, 2011 WL 13214040, at *2 (S.D. Fla. Apr. 7, 2011) (finding "new complaint is …insufficient because the new text inserted by [p]laintiff … is too vague and conclusory to satisfy Rule 12(b)(6)"); *Chicken Kitchen USA, LLC v. Maiden Specialty Ins. Co.*, No. 14-23282-CIV, 2016 WL 3982493, at *3 (S.D. Fla. July 22, 2016) (similar). The case law TocMail quotes in support of its contention also notes this important distinction between an *unchanged, identical* pleading and a *changed* pleading, which undermines its argument. Opp. at 13-14.[3] Thus, the task before this Court is to determine whether TocMail's operative Amended Complaint, with its new allegations, sufficiently sets forth a plausible claim. *Iqbal*, 556 U.S. at 678.

The Amended Complaint contains multiple new allegations that reveal the fatal flaws in TocMail's purported claims. For example, TocMail newly alleges that the purported vulnerabilities of cloud-based scanners, including Safe Links, have been widely known to the public, undermining its claim of widespread deception.[4] *Id.* ¶¶ 25, 29-30, 50-52, 102. Because TocMail alleges the

---

[3] *Spadaro v. City of Miramar*, No. 11-61607-CIV, 2012 WL 3027813 at *2 (S.D. Fla. July 24, 2012) ("because the allegations in the Second Amended Complaint regarding the existence of an enterprise are *unchanged* from the Amended Complaint, the Court rejects the City Defendant's attempt to re-litigate this issue.") (emphasis added). The other cases TocMail relies on do not concern amended pleadings in the same case but rather different pleadings in different cases and courts, but they also pertain to "nearly identical" claims. Opp. at 13-14.

[4] Am. Compl ¶ 25 (Georgia Tech study regarding cloud-based scanners' inability to detect IP Cloaking); ¶¶ 29-30 (2013 Microsoft study discussing network evasion as a "challenge" to cloud-based scanners that "may affect our system" due to cloud-based scanners' "easily-identified blocks of IP addresses"); ¶ 50 (2017 "publicly disclosed" critique researcher Mikail Tunç of IP Cloaking bypassing Safe Links); ¶ 51 (2018 Crypton Security GmbH "publicly disclosed" critique of IP Cloaking bypassing Safe Links); ¶ 52 (2019 Rhino Security Labs "publicly disclosed" critique of IP Cloaking bypassing Safe Links); ¶ 102 ("**consumers has [sic] been warned about vulnerability to IP Cloaking by at least cybersecurity researcher Mikail Tunç, Cryptron**

public was made aware, **by Microsoft itself** in a 2013 study (Am. Compl. ¶¶ 29-30), and by third parties (*id.* ¶¶ 25, 50-52, 102), of vulnerabilities in cloud-based scanners, the Amended Complaint does not plausibly allege how Microsoft's alleged false statements could have deceived consumers and ultimately injured TocMail. The Amended Complaint concedes that despite these publications, companies continue to remain loyal to Microsoft. *Id.* ¶ 102. This fact alone—that there are other reasons companies trust and purchase Microsoft products—undermines the allegations that the alleged false advertisements are material to consumers' purchasing decisions, rendering TocMail's claim implausible.

Other new allegations create an internally inconsistent and wholly unworkable timeline. TocMail alleges that in 2011, Microsoft first announced the general availability of Office 365 (*id.* ¶ 31) and convinced many companies to abandon their on-premise scanners and migrate to Microsoft's cloud-based Office 365 (*id.* ¶¶ 22, 33). TocMail also alleges that Microsoft launched and began advertising Safe Links in 2015 (*id.* ¶¶ 42). It was not until December 2019 that TocMail's product launched and began being advertised.[5] *Id.* ¶ 90. Despite this, TocMail seeks damages starting in 2011, eight years before TocMail's product was available, and even before Safe Links was created and most of the at-issue advertising occurred.[6] Mot. at 12-13; Am. Compl. ¶¶ 42, 64, 75, 90, 93 Ex. 7, 8, 9 (Mot. at 12-13). Even more incredibly, TocMail alleges that it is now too late for it to break into the relevant marketplace because customers "prematurely" moved

---

Security, and Rhino Security Labs. Despite [this], companies continue to trust Microsoft's Safe Links anyway.") (emphasis added).

[5] Am. Compl. ¶ 90 ("**TocMail released the first cloud-based, redirect service that keeps users safe from IP Cloaking in late 2019 … TocMail began advertising … in December 2019.**") (emphasis added).

[6] Am. Compl. ¶ 93 ("But for Microsoft's misdeeds, TocMail would be … reaping the benefits of the entire world safely moving to the cloud using TocMail's technology [in December 2019], [but] TocMail's offering appears useless … as [companies] prematurely moved to the cloud [in 2011] due to Microsoft's false advertising and promotions.").

4

to the cloud in reliance on Microsoft's false advertising, so it will somehow be injured all the way through the patent expiration date in 2035.[7] Am. Compl. ¶¶ 93, 102. In other words, a company that has existed for one year claims to have been injured, or at some unknown point in the future will be injured, by false advertising over a 24-year time period from 2011–2035. On this basis alone, TocMail's inconsistent allegations cannot rise to meet the plausibility standard set forth in *Iqbal/Twombly*. *See Smith v. City of Fort Pierce*, 2018 WL 5787269 at *6 (S.D. Fla. Nov. 5, 2018); *In re Adeleke*, No. 09–16347, 2012 WL 2953195, at *4 (Bankr. S.D. Fla. July 19, 2012).

Based on TocMail's timeline, no reasonable inference can be drawn that the alleged false statements caused TocMail any economic or reputational injury, which TocMail does not rebut. Opp. at 21; *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, because TocMail's new allegations render the claim, as a whole, insufficiently plausible, its Amended Complaint should be dismissed with prejudice. *Miller*, 2011 WL 13214040, at *3 (when "the new text in the [] Amended Complaint … does not remedy the inadequacy of the allegations," it is appropriate to grant a motion to dismiss).

## II.   The Amended Complaint Fails to Allege the Purported "Deceptive Messages" had a Material Effect on Purchasing Decisions.

The only allegations in the Amended Complaint mentioning materiality are threadbare and conclusory allegations. Am. Compl. ¶¶ 82, 84, 111. TocMail tacitly acknowledges this (Opp. at 16) and suggests that the Court engage in a cobbling of other allegations to construct the materiality element of the claim. Opp. at 15-16.  The Court need not undertake such a task, as it is apparent that TocMail has not sufficiently pled materiality.

---

[7] Am. Compl. ¶ 102 ("**TocMail does not anticipate that it will be able to break through in the market** and, therefore, is seeking damages up through the time of its patent expiration [in 2035].") (emphasis added).

The seven allegations that TocMail relies on to belatedly support the materiality element do not mention materiality at all and do not state anything about the reason why Microsoft's consumers decide to purchase Safe Links. Opp. at 15-16 (citing Am. Compl. ¶¶ 76-84). Instead, they support *other* elements of a false advertising claim.[8] *Id*. TocMail's first and second "materiality" allegations go to its theory of the case and the first and second elements of a false advertising claim, that the advertisement is false or misleading and deceived or had the capacity to deceive consumers. Opp. at 15-16. The third, fourth, fifth, and sixth allegations each go to the second element of the claim, the advertisement deceived consumers. *Id*. at 16. Finally, the seventh allegation is a conclusory statement regarding the elements of causation and injury. *Id*.

TocMail also fails to allege materiality because it does not allege anywhere that each of the three alleged deceptive messages is material to consumers' purchasing decisions. *Johnson & Johnson Vision Care*, 299 F.3d at 1250. Neither does TocMail show that the three alleged false statements misrepresent "inherent qualities or characteristics" of Safe Links. *Id.* (finding plaintiff failed to plead materiality because it "did not prove that 1–800's use of the term 'eye doctor' was material to consumer decisions."); s*ee also J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 796–97 (11th Cir. 2020) ("demonstrably false statements that are irrelevant to consumer purchasing decisions are immaterial and cannot be the basis for a false advertising claim").

TocMail claims paragraphs 76 to 84 of the Amended Complaint, when taken together, explain "how Microsoft's advertisements are directly related to the significant feature of security,

---

[8] To state a false advertising claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "the movant must establish: (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Johnson & Johnson Vision Care, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

which is an essential factor when consumers are purchasing a cybersecurity service." Opp. at 3-4, 15-17. This argument is circular, as cybersecurity is a subset of the general category of security. Accordingly, TocMail fails to plead materiality and a sufficient claim for false advertising. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-CV-775-T-24-TBM, 2012 WL 33155, at *3–4 (M.D. Fla. Jan. 6, 2012) (dismissing false advertising claim where plaintiff's "[materiality] allegation provides nothing more than a legal conclusion" and therefore "failed to allege sufficient facts to support the material-deception element…and state a plausible claim").

### III.   TocMail Fails to Rebut the Argument that the Amended Complaint Cannot Plausibly Allege TocMail Has Been or is Likely to be Injured by the Purported "Deceptive Messages."

Microsoft's Motion argues that TocMail's factual allegations forming the basis for its alleged economic and reputational harm are so speculative that TocMail fails to plausibly allege the injury element of its false advertising claim.[9] Mot. at 11. TocMail dismisses this inevitability with a hand-wave. It creates no nexus between the allegedly false statements and any purported economic damages theories and fails to address—and thus concedes—Microsoft's argument that it has no reputational injury, and for this reason, Microsoft's Motion should be granted.

#### A.   TocMail Cannot Show it is Entitled to Microsoft's Profits, which Damage Theory is Unrelated to the Deceptive Messages and Speculative.

Microsoft does not misstate Eleventh Circuit law on disgorgement of profits simply by citing to an Eighth Circuit case on actual damages, as TocMail contends. Opp. at 20. In fact, both Circuits' precedents are compatible. *United Indus. Corp.* found "to recover money damages under the [Lanham] Act, a plaintiff must prove both actual damages and a causal link between

---

[9] To the extent the Order addressed the speculative nature of TocMail's claims, it undertook this analysis in the context of standing, and not *Iqbal/Twombly*. Opp. at 4 (citing Order at 3-4). Nevertheless, the Court should evaluate the sufficiency of the allegations in the operative Amended Complaint independent of prior pleadings. *See supra*, Section I.

defendant's violation and those damages." *United Indus. Corp. v. Clorox Co*., 140 F.3d 1175, 1180 (8th Cir. 1998). TocMail relies on *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353–54 (11th Cir. 2019), which similarly held "a Lanham Act trademark plaintiff can [recover] five rough categories [of damages]" including "actual business damages." "The primary limiting principle is that the damages may not be 'speculative.'" *Id.* (citing *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564 (11th Cir. 1986)). In other words, TocMail may recover actual damages, which *Hard Candy* describes as "damages from lost sales … due to the infringer's sale of offending goods to intangible harm like reputational damage and loss of good will," so long as they are not speculative, *i.e.* there is a "causal link" between the damages and the misconduct. *Id.* Even accepting TocMail's allegations as true, the causal chain linking Microsoft's alleged misrepresentations to a decrease in TocMail's revenue is very attenuated, and therefore TocMail fails to state a claim. *See Black Diamond Land Mgmt., LLC v. Twin Pines Coal, Inc.*, 707 Fed. Appx. 576, 580 (11th Cir. 2017) (affirming dismissal for failure to plausibly plead alleged misrepresentations proximately caused injury).

TocMail next suggests that even if it cannot prove actual damages, it may still recover a windfall by obtaining an accounting for Microsoft's profits.[10] Opp. at 20. However, even under an equitable theory of damages, TocMail admits it must show Microsoft acted willfully, was unjustly enriched, or it is necessary to deter future conduct, entitling it to any relief. *Id*. at 21 n.7; *see Optimum Techs., Inc. v. Home Depot U.S.A., Inc*., 217 Fed. Appx. 899, 902–03 (11th Cir. 2007). A willful act is one where the infringer "knowingly and deliberately cash[es] in upon the good will of the [infringed]." *Id*. at 903. Unjust enrichment occurs when an infringer has "enriched

---

[10] Microsoft's Motion does not at all assert that TocMail cannot prove the *amount* of damages, and agrees that this determination is not appropriate at the motion to dismiss stage.

themselves by tapping the reputation and good will of the [infringed]." *Id*. Because TocMail judicially admits that it did not exist until December 2019 and it did not have a product on the market or a reputation, if any, until that time, Microsoft could not have deliberately cashed in on the good will of TocMail or enriched itself by tapping the reputation and good will of TocMail by deceiving consumers in 2011. *Optimum Techs.*, 217 Fed. Appx. at 902–03; Am. Compl. ¶ 90. Further, there is no need to deter future alleged misconduct as ATP/Safe Links and TocMail's service are wholly different products and the at-issue advertisements do not claim Safe Links is the solution to IP Cloaking. Mot. at 5, 10-11, 12-13, n.9.

The Opposition fails to rebut Microsoft's argument that any alleged deception leading consumers to move to cloud-based scanners in 2011, upon which TocMail's disgorgement theory is based, is not in any way tied to the three "deceptive messages," which occurred between 2015-2020. Mot. at 12-13; Am. Compl. ¶¶ 64, 75, Ex. 7, 8, 9. Instead, the Opposition conclusively asserts that the Amended Complaint "explicitly states that Microsoft used the three deceptive messages to deceive companies into moving to its cloud-based scanners," despite this impossibility given the timeline alleged. Opp. at 21. Such a conclusion cannot survive the Rule 12 stage.

### B. TocMail's Lost Profits Damage Theory is Speculative and Implausible.

Attempting to distract the Court, TocMail misrepresents Microsoft's argument as one concerning the *amount* of damages TocMail can prove. Opp. at 18-19. This is simply not true. Microsoft's Motion clearly targets TocMail's inability to allege a plausible lost profits damages theory—indeed to show it is entitled to *any* relief, as opposed to an *amount* of relief. Mot. at 14-16. Despite TocMail's assertion that it pled injury, namely that consumers withhold trade from it (Opp. at 19; Am. Compl. ¶ 113), its allegation must be plausible. Taking TocMail's allegations as true, they are not. TocMail started in December 2019 (Am. Compl. ¶ 90), obtained its patented

solution to IP Cloaking two months later (Mot. at 3, n.1, Ex. 1), the day before filing its lawsuit (D.E. 01), and had not made any sales in those two months (Am. Compl. ¶ 102). In that short timeframe and without alleging it had any prospects of sales or a positive reputation, TocMail cannot plausibly allege it has been injured by Microsoft's alleged false advertising. Am. Compl. ¶ 102; *Black Diamond Mgmt.*, 707 Fed. Appx. At 580–81; *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1331–32 (11th Cir. 2008). Importantly, in recasting Microsoft's argument as one of an amount of damages, TocMail has not addressed the improperly speculative nature of its alleged injury and damages theory or its failure to state a plausible claim entitling it to relief. As such, the Amended Complaint should be dismissed with prejudice.

### C.  TocMail Fails to Rebut Microsoft's Argument that TocMail's Reputational Damages Theory is Speculative and Implausible.

TocMail categorically dismisses Microsoft's argument that TocMail's alleged reputational damages are too speculative to state a plausible claim for entitlement to relief and instead opts to self-servingly conclude its allegations "are clearly sufficient." Opp. at 21. Given TocMail's failure to rebut Microsoft's argument, the Court should determine TocMail failed to state a sufficient claim for relief.

### CONCLUSION

For the foregoing reasons, this Court should grant Microsoft's Motion to Dismiss the Amended Complaint with prejudice.

Dated: December 14, 2020

Respectfully submitted,

_/s/ Mary-Olga Lovett_
Mary-Olga Lovett
**GREENBERG TRAURIG, LLC**
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile:  (713) 374-3505
Email: lovettm@gtlaw.com

_/s/ Evelyn A. Cobos_
Evelyn A. Cobos
**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
        orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 106937
Email: cobose@gtlaw.com
        FLService@gtlaw.com

***Attorneys for Defendant***,
MICROSOFT CORPORATION

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 14, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Evelyn A. Cobos*
EVELYN A. COBOS

## SERVICE LIST

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*