UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-CANNON/HUNT

TOCMAIL, INC., a Florida corporation,

      Plaintiff,

v.

MICROSOFT CORPORATION, a Washington
corporation,

      Defendant.

---

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO STRIKE
PLAINTIFF TOCMAIL, INC.'S UNTIMELY "SUPPLEMENTED EXPERT REPORT
OF MARCIE D. BOUR" AND INCORPORATED MEMORANDUM OF LAW**

Defendant Microsoft Corporation ("Microsoft"), pursuant to Rule 37(c)(1) of the Federal
Rules of Civil Procedure, moves the Court to strike the "Supplemented (sic) Expert Report of
Marcie D. Bour" served by Plaintiff TocMail, Inc. ("TocMail") as untimely, improper, and
prejudicial, and preclude Ms. Bour from providing expert testimony at any hearing or trial in this
action based on that report. In support of this motion, Microsoft submits the following
memorandum of law.

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

In violation of Federal Rules of Civil Procedure 16, 26, 37, and Local Rule 16.1, TocMail
is attempting to add fundamentally new expert opinions well-after the close of discovery. Indeed,
nearly two months after the close of expert discovery on March 30, 2021, TocMail served a
"Supplemented Expert Report" by Marcie D. Bour ("Bour") that includes new substantive

opinions (the "Supplemental Report"), attached hereto as "**Exhibit 1**," on May 21, 2021. *See* Paperless Order [ECF No. 55].

In her Supplemental Report, Bour improperly attempts to correct deficiencies in the initial Expert Report of Marcie D. Bour ("Initial Report"), attached hereto as "**Exhibit 2**," after having been apprised of them in Microsoft's rebuttal expert, Dr. Keith Ugone's ("Ugone"), Rebuttal Expert Report ("Rebuttal Report"), and Ugone's deposition. Indeed, Bour admits in her Supplemental Report that she "**made substantive changes**" to her Initial Report, including adding new facts, considerations, opinions, analysis, and damages methodologies for her disgorgement of profits and lost profits calculations, among other things. Not only is the Supplemental Report untimely, but it is not the kind contemplated under Rule 26(e) because it was served "not to correct any existing information, but rather to bolster the existing opinion and include impermissible opinions after the expert disclosures deadline." *All-Tag Corp. v. Checkpoint Sys., Inc.*, No. 9:17-CV-81261, 2019 WL 5073499, at *3 (S.D. Fla. Oct. 9, 2019). As such, Bour's Supplemental Report should be stricken.

## II.     FACTUAL BACKGROUND

### A. TocMail's Willful Violation of the Court's Scheduling Orders.

This Court's orders clearly demonstrate the Supplemental Report was untimely filed. In its March 1, 2021 paperless Order, the Court stated, "All discovery, including expert discovery, shall be completed by March 30, 2021." [ECF No. 55]. No extensions of this expert discovery deadline were requested by the Parties or provided by the Court. On April 30, 2021, a status conference was held, at which time TocMail did not apprise the Court (or Microsoft) of its intention to serve a supplemental expert report, nor did it seek an extension of discovery deadlines or additional discovery. Following the hearing, the Court entered the Second Amended Scheduling Order

confirming that the deadline to "complete and exchange all discovery, including expert discovery" had "expired" on March 30, 2021. [ECF No. 61]. Nevertheless, TocMail served the Supplemental Report on May 21, 2021, nearly two months after the expiration date. *See* Ex. 1.

On May 18, 2021, the Parties met and conferred regarding Microsoft's *Daubert* motion to exclude Bour [ECF No. 69], Microsoft's Motion to File Under Seal Exhibits to its *Daubert* motion [ECF No. 63], and the parties' joint motion to exceed page limits for their *Daubert* motions [ECF No. 65], but TocMail failed to notify Microsoft of its intention to serve the Supplemental Report and ambushed Microsoft with the supplemental report three days later.

**B. The Supplemental Report Makes Substantive Changes to the Initial Report.**

Bour admits in her Supplemental Report that she improperly "made **substantive changes**" to her Initial Report and notes the following paragraphs where such substantive changes have been made—nearly to every section:

"a. Summary of Opinions: Paragraphs 15; 21-27; 29-32;
b. Background: Paragraphs 35; 37; 45-53;
c. Defendant's Revenue: Paragraphs 95-96;
d. Summary of Defendant's Revenue: Paragraphs 100-115;
e. Lost Profits, Revenue: Paragraphs 119-120; 123-124;
f. Lost Profits, Cost of Goods Sold: Paragraphs 125-130;
g. Lost Profits, Operating Expenses: Paragraphs 132-142;
h. Discounting Lost Profits to Present Value: Paragraphs 147-166; and
i. Sensitivity Analysis: Paragraph 167."

Ex. 1 ¶ 9 (emphasis added).[1]   In addition, Bour's Supplemental Report changes her damages models, methodologies, and opinions.  First, she admits TocMail asked that she conduct a new analysis, which she refers to as a "sensitivity analysis." Second, Bour details a new methodology

---

[1] *See* redline comparison of Bour's Supplemental Report with her Initial Report showing the various substantive changes made and included for the Court's ease of reference ("Comparative Report"), attached as "**Exhibit 3**."

3

to derive a third disgorgement of profits damages figure. Finally, Bour relies on a new business model for TocMail to derive a new lost profits figure.

Moreover, the Supplemental Report includes a list of Bates-stamped documents that Microsoft produced in the course of discovery upon which Bour relied. *See* Ex. 1 at pp. 53-54. The only new documents listed in the Supplemental Report that were not listed in her Initial Report were Bates-stamped MSFT_TOC00001074, MSFT_TOC00001077, MSFT_TOC00004753, MSFT_TOC00042251. *Compare* Ex. 1 at pp. 53-54 *to* Ex. 2 at pp. 35-36. The first document was produced on September 30, 2020, the second was produced on November 6, 2020, the third was produced on December 21, 2020, and the final document was produced on January 8, 2021.  In other words, **all** of the documents Bour needed to "supplement" her report were provided well in advance of the March 30, 2021 expert discovery cut-off date.  Yet, TocMail waited until nearly five months after receiving this information and two months after the close of expert discovery to serve Bour's Supplemental Report on May 21, 2021.

### III.    ARGUMENT

It is well-settled that "Courts have broad discretion to exclude untimely-disclosed expert reports, even ones designated as 'supplemental' reports." *All-Tag Corp.*, 2019 WL 5073499, at \*3; *Potish v. R.J. Reynolds Tobacco Co*., 15-81171-CV, 2017 WL 5952892, at \*2 (S.D. Fla. Nov. 30, 2017); *Companhia Energetica Potiguar v. Caterpillar Inc*., 14-CV-24277, 2016 WL 3102225, at \*5 (S.D. Fla. June 2, 2016). "[The Eleventh Circuit] [has] held that a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) (citing *Williamson Oil Co. v. Philip Morris USA,* 346 F.3d 1287, 1323 (11th Cir. 2003)). "Exclusion is also an appropriate remedy under Fed. R. Civ. P. 16(b), which authorizes the court to control and

expedite pretrial discovery through a scheduling order and gives the court broad discretion to preserve the integrity and purpose of a pretrial order, including the exclusion of evidence." *All-Tag Corp.*, 2019 WL 5073499, at \*3.

### A. TocMail's Failure to Comply with the Court's Scheduling Orders Warrants Striking of the Untimely Supplemental Report.

A party's failure to comply with a scheduling order, alone, is reason enough to exclude an untimely supplemental report. *All-Tag Corp.*, 2019 WL 5073499, at \*3. Under Federal Rule of Civil Procedure 26(a)(2)(D), a "party must make [expert] disclosures at the times and in the sequence that the court orders." The Court's March 1, 2021 paperless Order stated that "[a]ll discovery, including expert discovery, shall be completed by March 30, 2021." [ECF No. 55]. The Court's April 30, 2021 Second Amended Scheduling Order explicitly confirms this deadline to "complete and exchange all discovery, including expert discovery" has "expired." [ECF No. 61].

TocMail's service of the Supplemental Report nearly two months after the expiration of the expert discovery deadline is a violation of Federal Rules 16 and 26 and Local Rule 16.1. TocMail failed to seek leave from the Court to serve the Supplemental Report or obtain an extension from the Court of the expert discovery cutoff deadline. "Rule 26 does not ... bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline, even if the rule's pretrial limit is satisfied." *Vapco, Inc. v. Perfecta Prod., Inc.*, No. 8:10-CV-399-T-27TBM, 2011 WL 13176159, at \*3 (M.D. Fla. Apr. 27, 2011) (citation omitted). "[T]o construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." *Friebel v. Paradise Shores of Bay Cty., LLC*, No. 5:10-CV-120/RS-EMT, 2011 WL 2420230, at \*2 (N.D. Fla. June 13, 2011).  "If that were the rule, deadlines (for example, to furnish documentary evidence, disclose  expert witness opinions and provide tangible evidence of any type) would be

meaningless and parties could wait until the eleventh hour to make substantively significant disclosures and then avoid exclusion by merely submitting a last-minute disclosure, justified by the duty-to-disclose rule." *Cook v. Royal Caribbean Cruise, Ltd.*, No. 11-20723-civ, 2012 WL 2319089, at *1 (S.D. Fla. June 15, 2012).

There is no reason why TocMail should be allowed to have an additional two months after the close of expert discovery to revise Bour's report. "Apart from neglect, there is really no explanation offered for the considerable delay in offering the opinions at issue. This does not amount to substantial justification" under Rule 26. *Beauregard v. Cont'l Tire N. Am., Inc.*, No. 308-CV-37-J-32HTS, 2009 WL 1011121, at *3 (M.D. Fla. Apr. 15, 2009). For this reason alone, the Court should exclude the Supplemental Report as untimely. *Graves v. Plaza Med. Centers, Corp.*, No. 10-23382-CIV, 2017 WL 3895438, at *4 (S.D. Fla. Sept. 6, 2017) (granting motion to exclude where offering party "neither requested an extension of time to file the untimely supplemental report nor requested an enlargement of the discovery period").

**B. Bour's Supplemental Report Should be Stricken Because it was Improperly Served to Bolster Her Existing Opinions and Includes New Opinions After the Expert Discovery Cut-Off.**

Bour's Supplemental Report is a stark deviation from what is permissible under Federal Rule of Civil Procedure 26. *Potish*, 2017 WL 5952892, at *3 ("Rule 26(e) solely permits supplemental reports for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report."). Rather than adding or correcting figures and information, Bour admits that she "made **substantive** changes" following her deposition. Ex. 1 ¶ 9 (emphasis added).  Bour's Supplemental Report includes (1) a new sensitivity analysis, (2) a new lost profits methodology, and (3) new facts explaining a new business model for TocMail—despite TocMail's principal admitting that said business model involved only filing the instant lawsuit, issuing a press release, and emailing a pitch deck to a few investors. Ex. 1 at ¶¶ 15-27, 46-

53, 111-115, 166; Deposition of Michael Wood dated March 18, 2021, "**Exhibit 4**," at 62:23-63:18, 140:22-141:6; TocMail's Second Amended Response to Microsoft's First Set of Interrogatories, "**Exhibit 5**," at Response No. 1, 7.   However, it is well-settled that TocMail "cannot use the duty of supplementation to add to [Bour's] opinions," *Beauregard*, 2009 WL 1011121, at *2, and it "cannot abuse Rule 26(e) and use a supplement to merely bolster a defective or problematic expert witness report." *Potish*, 2017 WL 5952892, at *6.

### 1.   The New Sensitivity Analysis

In her first major change, Bour states "TocMail has [now] asked me to provide a sensitivity analysis of lost profits to assist the jury in its determination of damages." Ex. 1 ¶ 6. Bour states she "**modified the damage model** by changing the percentage of seats used to calculate lost profits." *Id.* ¶ 166 (emphasis added). In other words, Bour admits to changing her damages methodology.

Directly contradicting Bour's own statement, TocMail's counsel explained in a meet and confer email that the "[sensitivity] chart does not alter her theories nor her opinions in any manner whatsoever, but instead **includes information that one would expect** to be elicited from Ms. Bour at trial, as it is typical for a range of damages to be presented at trial." *See* meet and confer email, "**Exhibit 6**," at 4 (emphasis added). However, TocMail cannot serve a supplemental report to fill a gap in Bour's Initial Report with information that TocMail admits should have been included by Bour from the start. *Companhia Energetica*, 2016 WL 3102225, at *6. (a party "may not supplement as a way to remedy a deficient expert report.")   Even if Bour's new analysis does not substantively alter her theories or opinions (which it does), Bour could have, but inexplicably did not, supplement her report prior to the close of expert discovery, as the last piece of new

information she relied on in her report was produced on January 8, 2021, well before the March 30, 2021 expert discovery cut-off. For this reason, her Supplemental Report should be stricken.

### 2. A New Methodology is Behind Bour's New Disgorgement of Profits Calculation.

Next, Bour created a brand-new methodology to calculate disgorgement of profits. Bour's Initial Report calculated Microsoft's revenue based on two scenarios, but her Supplemental Report "calculated Microsoft's Revenue based on three scenarios." *Compare* Ex. 1 ¶ 15 *to* Ex. 2 ¶ 10; *see also* Ex. 1 ¶¶ 17, 97 (explaining first scenario and concluding global and U.S. total sales for Office 365, Microsoft 365, and Outlook.com are $85,723,000,000 and $43,531,704,457, respectively); *id.* ¶¶ 19, 20, 98 (explaining second scenario and concluding U.S. revenues for Office 365/Microsoft 365 and related products that include Office ATP and/or Safe Links are $7,265,476,519 and $14,181,675,655, respectively).

The novel "third scenario involved calculating OATP revenue based on the monthly paid seats and the revenue per seat." Ex. 1 ¶ 21. In this new methodology, Bour takes a chart image used as a simple visual aid in an internal Microsoft PowerPoint presentation (as opposed to actual Microsoft financial revenue statements) and, "[u]sing the Microsoft chart[], … estimated data points representing monthly active users by recreating the chart." *Id.* ¶¶ 111, 112. In other words, Bour takes a chart image showing upwards growth and plots her own data points on it. Where she "d[id] not have information for September, October, and November 2019, [she] assumed the monthly active users increased evenly over those three months." *Id.* ¶ 112. For fiscal year 2015, she used a different measurement altogether from the other years in her calculation (which relied on "Monthly Active Users" ("MAU") for Office ATP on a global basis). *Compare id.* ¶ 111 to ¶ 113. Instead, for the year 2015, Bour "used the actual seats for U.S. users as a proxy for the global uses." *Id.* ¶ 113. Bour states she "calculated the global revenue from the sale of OATP based on

these estimates." *Id.* ¶ 114. Inherent flaws with this methodology aside, the result is a new method by which Bour calculated Microsoft's revenue. In this way, she determines "Global OATP revenue is $5,507,168 based on U.S. average revenue per standalone seat and $3,438,869 based on the average U.S. price" "for fiscal years ending in June 30, 2015 to 2020." *Id.* ¶¶ 26, 115. Bour included this substantive change in order to provide a third and more "reasonable" revenue calculation to the jury, when compared to the other two exorbitant calculations. *See id.* ¶¶ 97, 98.

In contravention of Rule 26, TocMail improperly seeks to shore up the deficiencies in Bour's problematic Initial Report long after the close of discovery, after having had the benefit of reviewing Ugone's Rebuttal Report, Bour's deposition transcript, and Ugone's deposition transcript, which discuss these specific issues. TocMail also seeks to rescue its litigation strategy by providing a new, lower revenue calculation. But, "Rule 26(e) … is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009), *aff'd sub nom. Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010). Because Bour has engaged in additional work by creating a new damages methodology to offer the jury a new damages measure and better TocMail's litigation strategy, the Supplemental Report should be stricken.

### 3. New Undisclosed Facts and Reasoning are Behind Bour's Newly Reduced Lost Profits Calculation.

Finally, Bour changed her lost profits calculation by introducing new facts regarding TocMail's business model. TocMail's theory of the case has always been that it would be able to quickly capture all of Microsoft's Safe Links customers (sometimes called seats) without much effort. Am. Compl. [ECF No. 42] ¶¶ 93-95; Ex. 2 ¶¶ 81-83; Deposition of Marcie Bour dated March 15, 2021, "**Exhibit 7**," at 24:14-22, 35:21-36:1. Bour's original lost profits calculation was

based on the assumption that by April of 2020—a mere four months after TocMail launched—the issuance of a single press release in November 2019 would spur *every* Microsoft Defender/ATP and Office 365 with ATP customer to switch to TocMail. Ex. 2 at ¶ 82 ("the remaining [Microsoft] customers would switch to TocMail in April 2020"); Ex. 7 at 145:12-147:7. Bour testified that the press release **alone** was an "impetus" for TocMail's rapid growth, but was unable to point to materials on which she relied like marketing plans, market research, or back-up data, instead admitting that her "numbers were developed in conjunction with Mr. Wood." Ex. 7 at 44:13-47:1. Beyond a press release, no business plan to launch the company and capture its market share was explained or relied on to support the lost profits calculation in her Initial Report, and Bour assumed TocMail would retain its market share without competitors. Ex. 7 at 44:13-47:1, 80:3-8, 99:20-100:1.

The Supplemental Report explains for the first time that TocMail has "three models for the delivery of its product" and specifies to whom its product will be marketed. Ex. 1 ¶¶ 46-47. Bour also provides new information about TocMail's hiring plan and how "little capital would be required to set up [TocMail's] cloud-based subscription model." *Id.* ¶¶ 50, 53. Bour concludes by stating that TocMail would have "a market share equivalent to Microsoft's" by April 2020. *Id.* ¶ 52. Thus, rather than relying on the dubious issuance of a single press release and a market that would simply take care of itself (Ex. 7 at 80:3-8), enabling TocMail to steal all of Microsoft's Safe Link customers (Am. Compl. ¶ 95; Ex. 2 at ¶ 82), Bour now relies on new information provided by *TocMail*—not additional information provided by Microsoft—regarding its purported "business model" (that was not disclosed in discovery) to capture its own market share the size of Microsoft's. Ex. 1 ¶ 27.

Here too, Bour's untimely Supplemental Report does "not [] correct any existing information, but rather [] bolster[s] the existing opinion and include[s] impermissible opinions after the expert disclosures deadline." *All-Tag Corp.*, 2019 WL 5073499, at *3. Because "Federal Rule of Civil Procedure 26(e) does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies, and there is no reason why the new assumptions and methodologies used in the second report could not have been adopted and disclosed in the first during the discovery period," Bour's Supplemental Repot should be stricken. *Jones Creek Invs., LLC v. Columbia Cty., Ga.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015); *see Vapco, Inc.*, 2011 WL 13176159, at *3 (granting motion to strike untimely report, finding the supplemental report "enlarges the scope of [the expert's] original report and introduces a wholly new opinion, not a supplement to his initial opinion. The report is also untimely under the court's scheduling orders.").

### C. Bour's Supplemental Report Should be Excluded as it is Prejudicial to Microsoft and Is Not Substantially Justified or Harmless.

"When a party fails to comply with Rule 26, the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless." *Companhia Energetica*, 2016 WL 3102225, at *5. (citing Fed. R. Civ. P. 37(c)(1)). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009).

Bour's untimely Supplemental Report is extremely prejudicial to Microsoft, as she has attempted to correct deficiencies in her Initial Report, after having been apprised of them in Ugone's Rebuttal Report and Ugone's deposition, after the close of discovery. Bour is not merely supplementing her report by updating numbers. She has developed new methodologies and altered TocMail's theory of the case, which new opinions Microsoft was not aware of at the time it

addressed Bour's opinions in its Rebuttal Report and cannot now rebut. For this reason, "[a]n expert's duty to supplement under Rule 26(e), is not a right to supplement at will." *United States v. Marder*, 318 F.R.D. 186, 190 (S.D. Fla. 2016) (citation omitted). The resulting prejudice alone is reason to exclude the Supplemental Report. *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) ("Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational.") (citation omitted) (affirming order striking expert's affidavit and finding "the failure to comply with Rule 26(a) was both unjustified and harmful to the defendants").

Further, although TocMail was apparently preparing its Supplemental Report, it never sought an extension of time or leave from the Court to serve it, it did not raise a deadline or newly-obtained information issue with the Court at the April 30, 2021 status conference, nor did it confer with Microsoft regarding Bour's Supplemental Report at any time, including during conferrals regarding Microsoft's *Daubert* Motion just three days before TocMail served the Supplemental Report. Instead, TocMail waited until long after the close of discovery to ambush Microsoft with the new opinions. This is gamesmanship, a willful violation of the Court's scheduling orders, and for TocMail to suggest that this behavior is allowed by Rule 26(e)'s supplementation requirement shows its lack of regard for the Rules and this Court's authority,[2] none of which should be tolerated. Ex. 6 at 4; *see Cook*, 2012 WL 2319089, at *1-2 (rejecting plaintiff's argument that she

---

[2] In its November 6, 2020 Order Granting in Part Defendant's Motion to Dismiss [ECF No. 41], the Court admonished "Plaintiff and his counsel," reminding them that they "shall be guided by the dictates of Federal Rule of Civil Procedure 11 in drafting the amended pleading." Plaintiff continues engaging in frivolous and willful actions and filings, including its intent to rely on the wholly improper Supplemental Report, even after being made well-aware of the issues raised herein by Microsoft.

12

was "following the duty-to-supplement rule" by serving an untimely supplemental report). Accordingly, at times like this, "[e]xclusion is [] an appropriate remedy under Fed. R. Civ. P. 16(b), which … gives the court broad discretion to preserve the integrity and purpose of a pretrial order, including the exclusion of evidence." *All-Tag Corp*, 2019 WL 5073499, at *3.

## IV.    CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court find TocMail in violation of Federal Rules of Civil Procedure 16, 26, 37, and Local Rule 16.1, and pursuant to Federal Rule of Civil Procedure 37(c)(1), impose the sanctions of excluding the "Supplemented Expert Report of Marcie D. Bour" served by TocMail as untimely, improper, and prejudicial, precluding Ms. Bour from providing expert testimony at any hearing or trial in this action based on the Supplemental Report, awarding Microsoft reasonable expenses and attorneys' fees incurred in relation to this Motion, and any further relief the Court deems just and proper.

## CERTIFICATION REGARDING PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for Microsoft certifies that they have conferred with counsel for TocMail via email on May 22, 24, and 25, 2021, and on June 10 and 11, 2021 in a good faith effort to resolve the issues raised in this Motion and the parties were unable to reach an agreement.

Dated:  June 16, 2021                    Respectfully submitted,

                                                    By */s/ Evelyn A. Cobos*
                                                    EVELYN A. COBOS

                                                    **GREENBERG TRAURIG, LLP**
                                                    Mary-Olga Lovett (*admitted pro hac vice*)
                                                    Texas Bar No. 00789289
                                                    1000 Louisiana, Suite 1700

Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
            orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
            FLService@gtlaw.com

*Attorneys for Defendant,*
**MICROSOFT CORPORATION**

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of June, 2021, I served for foregoing document

on all counsel of record identified on the below Service List in the manner specified.

<u>/s/ *Evelyn A. Cobos*</u>
EVELYN A. COBOS

## <u>SERVICE LIST</u>

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*