UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-CANNON/HUNT

TOCMAIL, INC., a Florida corporation,

      Plaintiff,

v.

MICROSOFT CORPORATION, a Washington
corporation,

      Defendant.

**DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS
*DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF
PLAINTIFF TOCMAIL, INC.'S EXPERTS MICHAEL WOOD AND MARCIE D. BOUR**[1]

---

[1] On May 21, 2021, the Parties filed a Joint Motion requesting 15 double-spaced pages for their reply memoranda in support of *Daubert* Motions. [ECF No. 65, ¶ 11]. On May 24, 2021, the Court entered a Paperless Order granting the motion but was silent regarding the Parties' joint request for 15 double-spaced pages for their replies in support of *Daubert* Motions. [ECF No. 67]. In an abundance of caution, the Parties filed a Joint Motion for Clarification of the Paperless Order, which is still pending [ECF No. 75]. In the event the Court denies the Parties' request for a 15-page reply, Microsoft requests leave to file an amended reply that is truncated to 10 pages and reserves it right to do so.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   WOOD'S OPINIONS SHOULD BE EXCLUDED ............................................... 2

      A.      Wood Lacks Qualifications and Relevant Experience, Requiring
            Exclusion.................................................................................................... 2

      B.      Wood's Improper Advocacy Opinions Require Exclusion under Daubert. .......... 4

      C.      Wood's Report Provides Nothing but Irrelevant and Unhelpful
            Information that will Confuse a Jury. .................................................... 5

      D.      Wood Fails to Use a Reliable, Replicable, and Accepted Methodology. .............. 6

III.  BOUR'S OPINIONS SHOULD BE EXCLUDED ............................................. 8

      A.      Bour Uses No Methodology to Prove Gross Sales of the Product at Issue:
            Safe Links. ............................................................................................... 8

      B.      Bour's Disgorgement Opinion is Not Helpful Expert Testimony to a Jury. ........ 11

      C.      Bour's Lost Profits Calculation is Unreliable Because it is Based on
            Speculation and a But-For World That Rejects Basic Economic Principles. ....... 12

IV.  CONCLUSION.................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All-Tag Corp. v. Checkpoint Sys., Inc.*,
No. 9:17-CV-81261, 2019 WL 5073499 (S.D. Fla. Oct. 9, 2019) ...........................................3

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*,
432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir.
2008) .................................................................................................................................15

*BGW Design Ltd., Inc. v. Serv. Am. Corp.*,
No. 10-20730-CIV, 2011 WL 13172487 (S.D. Fla. Nov. 30, 2011) ......................................12

*Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*,
582 F.3d 1227 (11th Cir. 2009) ...........................................................................................11

*Burger King Corp. v. Pilgrim's Pride Corp.*,
934 F. Supp. 425 (S.D. Fla. 1996) ........................................................................................8

*Chapman v. Procter & Gamble Distrib., LLC*,
766 F.3d 1296 (11th Cir. 2014) ......................................................................................7, 14

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
No. 14-CV-24277, 2016 WL 7507848 (S.D. Fla. Aug. 1, 2016) ..........................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..............................................................................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) .................................................................................................7

*Davis on Behalf of J.D.D. v. Carroll*,
329 F.R.D. 435 (M.D. Fla. 2018)...........................................................................................2

*Ill. Tool Works, Inc. v. Rust-Oleum Corp.*,
955 F.3d 512 (5th Cir. 2020) ...............................................................................................10

*Legg v. Voice Media Grp., Inc.*,
No. 13-62044-CIV-COHN, 2014 WL 1767097 (S.D. Fla. May 2, 2014) .............................11

*Lincoln Rock, LLC v. City of Tampa*,
No. 8:15-CV-1374-T-30JSS, 2016 WL 6818959 (M.D. Fla. Nov. 18, 2016) .......................15

*McDowell v. Brown*,
392 F.3d 1283 (11th Cir. 2004) .............................................................................................6

*Montgomery v. Aetna Cas. & Sur. Co.*,
898 F.2d 1537 (11th Cir. 1990) .............................................................................................5

*N. Palm Motors, LLC v. General Motors LLC*,
No. 9:19-cv-80872, 2020 WL 6384308 (S.D. Fla. Oct. 30, 2020) .......................................12

*Nutrivida, Inc. v. Inmuno Vital, Inc.*,
   46 F. Supp. 2d 1310 (S.D. Fla. 1998) ................................................................8, 10

*Omar v. Babcock*,
   177 F. App'x 59 (11th Cir. 2006) .......................................................................4

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV 11-07098-AB (SHX), 2014 WL 10894452 (C.D. Cal. Oct. 31, 2014) .......5

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) .........................................................................1

*Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*,
   No. 2:15-CV-512, 2017 WL 1319553 (E.D. Tex. 2017) ......................................12

*Snac Lite, LLC v. Nuts 'N More, LLC*,
   No. 2:14-cv-01695, 2016 WL 6778268 (N.D. Al. Nov. 16, 2016) ........................14

*South Miami Holdings, LLC v. FDIC*,
   No. 10cv22032-UU, 2011 U.S. Dist. LEXIS 162938 (S.D. Fla. Aug. 3, 2011) ...................2, 7

*Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*,
   254 F. Supp. 2d 1239 (M.D. Fla. 2003) .............................................................15

*Torres v. Carnival Corp.*,
   No. 12-CV-23370-JLK, 2014 WL 3548456 (S.D. Fla. July 17, 2014) ..................12

*In re Trasylol Prod. Liab. Litig.*,
   709 F. Supp. 2d 1323 (S.D. Fla. 2010) ..............................................................5

*Trilink Saw Chain, LLC v. Blount, Inc.*,
   583 F. Supp. 2d 1293 (N.D. Ga. 2008) .............................................................10

*Ulysse v. Waste Mgmt. Inc. of Fla.*,
   No. 11-CV-80723, 2013 WL 12177854 (S.D. Fla. Oct. 29, 2013) ........................4

*Umana-Fowler v. NCL (Bahamas) Ltd.*,
   49 F. Supp. 3d 1120 (S.D. Fla. 2014) ...............................................................6

**Statutes**

15 U.S.C. § 1117(a) ........................................................................................10, 11

**Other Authorities**

Fed. R. Civ. P. 16(b) .......................................................................................3

Fed. R. Civ. P. 26 ...........................................................................................3

Fed. R. Civ. P. 37(c)(1) ..................................................................................3

Fed. R. Evid. 403 ...........................................................................................12

Fed. R. Evid. 702 ...........................................................................................3

Fed. R. Evid. 1006 .........................................................................................5

## I.     <u>INTRODUCTION</u>

In a futile attempt to shift focus away from its experts' failure to meet the *Daubert* standard, TocMail spends much of its Opposition incorrectly explaining the ultimate burden of proof at trial and the merits of its case. Wholly absent from the Opposition is a valid response demonstrating that TocMail's experts satisfy each of the three elements of the *Daubert* standard—qualifications, reliability, and helpfulness—by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005).

TocMail now claims that Michael Wood ("Wood"), its founder, CEO, sole employee, and inventor of the unproven technology in its product is a "cybersecurity" expert and attempts to improperly bolster Wood's qualifications in this respect by submitting a declaration that provides untimely additional information not provided in his report or his testimony. Wood remains unqualified to provide opinions on the vulnerability of Microsoft customers and the effectiveness of Safe Links and TocMail fails to explain how his experience leads to and/or supports these conclusions. His highly biased opinions blindly favor TocMail's position and are unhelpful to a jury. Wood also failed to test Safe Links with a replicable and accepted methodology.

TocMail's damages expert, Marcie Bour ("Bour"), in determining disgorgement damages, failed to use *any* methodology to determine Microsoft's revenue from Safe Links, and accordingly did not determine Microsoft's gross *infringed* sales, the only thing she had to prove under the Lanham Act. Instead, she restates the raw numbers comprising Microsoft's U.S. and global sales revenues for Microsoft's Advanced Threat Protection ("ATP") (renamed Defender and referred to herein as ATP and/or "Defender") cybersecurity suite and Microsoft's Office 365 suites that include ATP/Defender, both of which are different products comprising suites of services of which Safe Links is a minor feature. This renders her overstated, non-expert opinion confusing and

unhelpful to the jury. Finally, Bour's lost profits calculations are unreliable because they fail to factor in basic economic principles and are based on nothing but speculation and unfounded plaintiff-fed information.

For these reasons, the Expert Report of Michael Wood ("Wood Report"), the Expert Report of Marcie D. Bour ("Bour Report"), and Wood's and Bour's opinions should be excluded.

## II.   WOOD'S OPINIONS SHOULD BE EXCLUDED

### A.  Wood Lacks Qualifications and Relevant Experience, Requiring Exclusion.

TocMail's labeling of Wood as a "cybersecurity" expert, rather than a liability expert, does nothing to cure Wood's lack of qualifications to provide any expert opinion in this matter. Opp. at 19. TocMail still intends to establish Microsoft is liable for allegedly falsely advertising Safe Links by having Wood provide expert testimony "regarding how cloaking and IP Cloaking work[,] … [t]he degree of vulnerability of Microsoft's customers to IP Cloaking[,] … [t]he degree of effectiveness of Office 365's ATP Safe Links" and "other cybersecurity topics." *Id.* at 20. But Wood lacks the qualifications necessary to render opinions on Safe Links, its effectiveness, and the specific vulnerabilities that Microsoft's customers are facing. The Opposition does not rebut that Wood has no relevant academic training in cybersecurity, or that his understanding of the technology behind Microsoft's Safe Links and how it works is limited to what can be researched by a lay person—he has not reviewed Safe Links' source code and as no specialized knowledge of it or of the most common threats Microsoft customers actually face, which does not include IP Cloaking, as Wood assumes. Mot. at 6; *see* Opp. at 20-23.

Wood also lacks relevant experience. Experience must be directly relevant to the topics opined on in order to pass muster under *Daubert*. *See Davis on Behalf of J.D.D. v. Carroll*, 329 F.R.D. 435, 441 (M.D. Fla. 2018) (excluding expert under *Daubert* who "has no relevant experience"); *South Miami Holdings, LLC v. FDIC*, No. 10cv22032-UU, 2011 U.S. Dist. LEXIS

162938, at *2-3 (S.D. Fla. Aug. 3, 2011) (same). Where an expert witness such as Wood relies "solely or primarily on experience, then [he] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Adv. Comm. Notes (2000 Amends.). Wood failed to do this. In support of his opinions, Wood explains he has obtained several patents that are unrelated to the technology in Safe Links, has a general interest in the cybersecurity field, has "cybersecurity publications," including a book on cryptography, which topic is not at issue here, cites two URLs to third-party blog websites, and has "business experience." Mot. at 5-6, n.2 (citing Wood Report Appendix 195-197). This "experience," however, is insufficient to qualify him as an expert to opine on Safe Links' efficacy and its consumers' vulnerabilities.

To bolster admittedly insufficient qualifications, the Opposition attaches a declaration from Wood that provides new information and tries to explain why he is purportedly qualified. Opp. Ex. 19. This untimely disclosure should be stricken and not considered by the Court at this late stage.[2] Regardless, the declaration describes irrelevant work experience such as building "a blueprint of an organization's physical network infrastructure," further elaborates on Wood's unrelated patents, confirms the issue of cloaking is a hobby for Wood, and otherwise still does not tie his experience

---

[2] Similar to Bour's untimely and improper Supplemented Expert Report, which Microsoft moved to strike [ECF No. 77], TocMail attempts to shore up Wood's deficiencies by submitting additional information through a declaration after the close of expert discovery. However, Rule 26(a)(2) requires, at the time of expert disclosure, "the witness's qualifications, including a list of all publications authored in the previous 10 years." Rule 26(a)(2)(D) requires, for the disclosure of expert testimony, that a "party must make these disclosures at the times and in the sequence that the court orders." This is because "expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise...compliance with the requirements of Rule 26 is not merely aspirational." *All-Tag Corp. v. Checkpoint Sys., Inc.*, No. 9:17-CV-81261, 2019 WL 5073499, at *3 (S.D. Fla. Oct. 9, 2019). Thus, this untimely disclosure and/or supplementation of Wood's Report through the declaration should not be considered and Wood should be excluded under Fed. R. Civ. P. 37(c)(1) and 16(b). *Id.*; *see also*, Motion to Strike.

to the specific opinions he provides. *Id.*

### B.  Wood's Improper Advocacy Opinions Require Exclusion under *Daubert.*

Where there is a "risk that [an expert's] testimony serves more as advocacy for [the] [p]laintiff [] and less as an objective source of needed information," it is appropriate to exclude the expert. *Ulysse v. Waste Mgmt. Inc. of Fla.*, No. 11-CV-80723, 2013 WL 12177854, at *3 (S.D. Fla. Oct. 29, 2013). Tellingly, the Opposition does not dispute that parts of the Wood Report are a mirror-image of the Amended Complaint. Mot. at 8-9 (comparing Wood Report to Am. Compl.). The Opposition also does not dispute that the Wood Report provides improper "bad company" opinions concluding Microsoft engaged in "willful, intentional deception." Mot at 11 (quoting Wood Report at 3, 4, 8, 33). Instead, TocMail downplays the admitted "references to Microsoft's knowledge" in the Wood Report by suggesting that they are "minimal" and  that Wood did "not mak[e] any *inference* [sic] whatsoever regarding Microsoft's knowledge," which, is exactly what he did. Opp. at 29.  Improper testimony, however little or much, remains improper.  Here, there is no question that Wood is not a neutral expert, but the advocating client.

TocMail intends to present Wood to the jury solely for the purpose of constructing a narrative that reiterates TocMail's theory of the case and telling the jury, from the authoritative standpoint of an expert, the outcome it should reach. *See, e.g.,* Mot. Ex. 1 at 7 (opining "Microsoft knows that Safe Links is vulnerable to IP Cloaking *by design*. In fact, Microsoft tacitly admitted this[.]"), 67 ("[TocMail's solution is perceived as being worthless by the very companies that need it the most, as a direct result of Microsoft's misdeeds."). Eleventh Circuit law is clear that it is proper to exclude such an expert. *See, e.g., Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) (where "the witness simply recounts the facts and then offers an opinion as to the conclusion

which the jury should reach, such expert testimony is not permitted"); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (similar).

Further, while all experts stand to earn money from testifying in a case and are thus subject to some bias, Wood's financial incentive and stake in the outcome of this matter are significantly higher than what is expected with most experts. Here, Wood, TocMail's CEO and inventor of TocMail's product, is not receiving a fee for his time notwithstanding the opinion he provides; instead, his compensation is directly tied to the outcome of this case, and 87% of any award will go directly to him. Mot. at 7-8. His testimony also advises the jury on the ultimate conclusions he wants them to reach in favor of TocMail (*i.e.*, Safe Links does not protect consumers from IP Cloaking while his own product does, and Microsoft knowingly falsely advertised Safe Links capabilities). Mot. Ex. 1 at 4-10, 61-67. In this case, the Court should exercise its inherent authority to exclude Wood's expert testimony as against public policy because Wood has an "overwhelming conflict of interest by way of his direct financial stake in the outcome of this litigation," *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 10894452, at *1 (C.D. Cal. Oct. 31, 2014).

### C. Wood's Report Provides Nothing but Irrelevant and Unhelpful Information that will Confuse a Jury.

The Opposition makes clear that Wood intends to provide the jury with a host of irrelevant, overly-technical information that is outside of the scope of the case.[3] But "[e]xpert testimony

---

[3] The Opposition's reliance on Fed. R. Evid. 1006 is misguided. Opp. at 26. This rule is solely intended to prove the *content* of voluminous writings. It contemplates, for example, exhibits that use charts and tables to admit into evidence the content of hundreds of pages of lab results or years' worth of sales records. It does not create a loophole for an entire expert report to be admitted into evidence. Wood's summaries of his internet research, documents produced by the Parties in discovery, and TocMail's theory of the case are "outside the proper scope of expert testimony because they consist of a narrative of selected [] events and a summary of [Microsoft's] internal documents." *In re Trasylol Prod. Liab. Litig.*, 709 F. Supp. 2d 1323, 1337, 1342 (S.D. Fla. 2010).

which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). The heart of the case is whether the advertising of Safe Links is literally false or misleading. Accordingly, the jury does not need to know the history behind phishing and IP Cloaking, what are "email security scanners and how they work," and other "technical issues such as PHP, Javascript, [and] *.htaccess* files." Mot. at 10, n.3; Opp. at 28. Nor does the jury need to understand "server-side" versus "client-side" attacks, what "blacklisting" and "whitelisting" mean, and even more attenuated, a completely separate Microsoft technology named "Rozzle" that is not the technology at issue in this case. Opp. at 28-29. Expert testimony must be "relevant to the task at hand, [and] logically advance[] a material aspect of the case. The relevance requirement is not satisfied where the proffered testimony does not assist the trier of fact." *McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004).

While there are technical issues in this case that may require explanation by an expert, such as the technology and effectiveness of Safe Links, Wood is not qualified to provide expert opinions on such relevant topics, and the technical topics he proposes he can explain to a jury are irrelevant. Accordingly, exclusion of Wood's report and opinions is appropriate because it "is not helpful and the risk is too great that the trier of fact will be confused or place undue weight on such an opinion." *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1124 (S.D. Fla. 2014).

### D. Wood Fails to Use a Reliable, Replicable, and Accepted Methodology.

In assessing the reliability of the expert testimony, the Court may consider "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *McDowell*, 392 F.3d at 1298.

The Opposition states Wood testified that there is a "standard test" for assessing whether a link scanner is vulnerable to IP Cloaking. Opp. at 30. Despite this, Wood states he "designed his test *based on* [a renown hacker's] article." *Id.* (emphasis added). And this mere fact leads TocMail to conclusively state that "the methodology for Wood's test…was generally accepted in the field." *Id*. Nowhere does the Opposition or the Wood Report state that Wood's test *is* the "standard test" that is supposedly accepted in the cybersecurity community. Nor is there any indication that Wood's test can be or has been replicated or subject to peer review. Instead, it appears that Wood's test was only conducted once, and no one has verified that the alleged outcome would occur a second time. Further, TocMail's purported disclosure of the test's source code or link to a video demonstration of the test does not make Wood's test repeatable or acceptable in the field. *Id*. Accordingly, where all we have is TocMail's assertion that its test is generally accepted, that is insufficient to meet the *Daubert* requirement of reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("the expert's bald assurance of validity is not enough" to establish reliability); *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1315 (11th Cir. 2014) ("[i]n performing the requisite gatekeeping function, a trial judge's assessment of proposed testimony does not mean 'taking the expert's word for it.'").

To the extent TocMail argues that the Tunc video linked in the Wood Report is an illustrative visual aid and not the test itself, Opp. at 30-31, the Court is still without any information as to how the test was created, how it was run, and whether it was verified, again calling into question the methodology used and reliability of the test. *South Miami Holdings*, 2011 U.S. Dist. LEXIS 162938, at *2-3 (excluding expert who "lacks recent relevant experience, [] lacks the breadth of experience … and he has employed no discernable methodology upon which to base his putative opinions").

### III.     BOUR'S OPINIONS SHOULD BE EXCLUDED

#### A.  Bour Uses No Methodology to Prove Gross Sales of the Product at Issue: Safe Links.

In response to Microsoft's argument that Bour does not use any methodology, or at least a reliable one, to arrive at the disgorgement damages she proposes, TocMail attempts to shift the focus away from the *Daubert* standard to the Parties' damages burdens, which TocMail incorrectly conflates. Opp. at 5-10. In so doing, TocMail fails to even address the reliable methodology *Daubert* prong and thus concedes Microsoft's argument.[4]

Microsoft does not dispute that to obtain disgorgement of profits under the Lanham Act, "the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, and deductible costs and expenses to arrive at net profits." *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315–16 (S.D. Fla. 1998). Unlike other cases where the product at issue is sold on a standalone basis with easily identifiable revenues, the software at issue in this case is Safe Links, a single cybersecurity feature within a larger, multi-featured and multi-functional security product, ATP. Mot. at 16-17. Safe Links cannot be purchased on its own; it is one minor feature of ATP or an Office 365 suite that includes ATP. *Id.* But the burden remains the same. Applied to the facts of this case, Bour is required to prove gross sales of the "infringing product" at issue, Safe Links. *Burger King Corp. v. Pilgrim's Pride Corp.*, 934 F. Supp. 425, 426 (S.D. Fla. 1996) ("Plaintiff has the burden of showing the amount of [d]efendant's sales of the *infringing* product.") (emphasis added).

Yet, in determining TocMail's disgorgement damage figure, Bour simply cited Microsoft's

---

[4] Microsoft does not argue that Bour fails the qualification prong of *Daubert*. Despite this, TocMail attaches a declaration from Bour detailing her credentials. Opp. Ex. 2. Like her improper Supplemented Report, and the improper Wood declaration, this untimely disclosure of evidence, after the close of expert discovery, should not be considered by the Court. *See supra*, n.2.

revenues for ATP and Office 365 with ATP, two much larger, multi-dimensional products that encompass many services, of which Safe Links is one small feature. Mot. at 19. Consequently, Bour fails to provide meaningful revenues for her disgorgement analysis. *Id*. Bour needed to, but failed to, apply some methodology to determine revenues attributable to Safe Links (*e.g.*, by determining the value of Safe Links and then determining (or apportioning) Safe Links' revenue based on the revenues of ATP and Office 365 with ATP). Mot. Ex. 8 at 114:14-21 ("Q: …you have provided the revenue for disgorgement overall from Microsoft products, but not a specific revenue garnered from the standalone sale of Safe Links itself, nor have you calculated what percentage or value Safe Links in and of itself has in that revenue, correct? A: Correct."); 167:2-10 ("Q: …Edge Block, 3 AV Scanners, Reputation Blocking, Heuristic Clustering, ATP Safe Links, Anti-Spam Phish Spoof Impersonation, ATP Phish ML Models and Link Detonation, and ATP Safe Links -- you didn't make an effort to assign a specific value or a value as a driver for the Office 365 products into your analysis, true? A: True.").

TocMail states that because Microsoft does not track revenue specifically attributable to Safe Links, TocMail had no responsibility to calculate such revenue itself and instead merely had to provide "total gross sales for the products at issue *that contain* Safe Links" and then "it was Microsoft's expert's responsibility to apply 'a proper apportionment analysis.'"[5] Opp. at 9 (emphasis added). Under TocMail's interpretation of the law, it could have identified all Microsoft's revenues and demanded that Microsoft determine revenues attributable to Safe Links. This turns the law on its head, shifting TocMail's burden to Microsoft. It is only after TocMail

---

[5] In a further attempt to get away from the *Daubert* standard and Bour's failure to meet it, TocMail previews its forthcoming summary judgment motion, citing to emails and depositions of Microsoft's fact witnesses, and making statements about ultimate liability, which of course has no bearing on the reliability and helpfulness of Bour's testimony and report and does not address the merits of the *Daubert* Motion at issue. Opp. at 11-12.

proves gross sales of Safe Links (which it failed to do), that the burden would then shift to Microsoft to discount costs and infringed sales not due to the alleged wrongful conduct to arrive at profits.[6] *Nutrivida*, 46 F. Supp. 2d at 1315–16. The fact that Safe Links is not sold as a standalone product does not excuse Bour from estimating gross sales attributable to it. Put in other terms, if a car manufacturer's windshield were the infringed product at issue, plaintiff would need to prove gross sales attributable to the windshield, not gross sales of all cars and trucks.

Moreover, damages under the Lanham Act are "subject to the principles of **equity**." 15 USC §1117(a) (emphasis added). "Disgorgement of profits is appropriate only if it is equitable and the defendant's profits are attributable to the Lanham Act violation." *Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 514 (5th Cir. 2020). It would not be equitable or logical for TocMail to be awarded Microsoft's revenue from sales of ATP or Office 365, which exponentially exceed any reasonable estimate of sales attributable to Safe Links. For example, Office 365 contains many valuable services such as Word, PowerPoint, Outlook, Excel, Yammer, Microsoft Teams, and Skype, all of which are irrelevant to the purported Lanham Act violation (the advertising of Safe Links). Mot. 23 n.8. "[T]here should be some connection between harm and recovery so that the award does not contravene the Lanham Act's mandate that any monetary award constitute compensation and not a penalty." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293,

---

[6] TocMail conflates the Parties' burdens by confusing use of the term "apportionment." What Microsoft refers to as the "apportionment" of gross sales that TocMail must perform is a basic revenue analysis to be undertaken by Bour (*i.e.*, determining revenue attributable to Safe Links by apportioning it (or parsing it out) from the revenues of ATP and Office 365 with ATP products). This is not the same as defendant's burden to arrive at profits by discounting costs and sales not attributable to the alleged wrongful conduct. But Bour did not conduct this sales analysis, and thus, TocMail's request for a windfall, and assertion that Microsoft's failure to "apportion sales of Safe Links" entitles it to one, puts the cart before the horse. Opp. at 7-8. Further, as discussed *infra* n.10, TocMail has no avenue by which it can prove causation, without which it cannot prove injury and be entitled to any damages.

1323 (N.D. Ga. 2008). Bour has no method to determine Microsoft's profits "attributable to the Lanham Act violation" or "connected" to the advertising of Safe Links because she failed to estimate Microsoft's revenue from Safe Links, and therefore should be excluded.

### B. Bour's Disgorgement Opinion is Not Helpful Expert Testimony to a Jury.

Under the Lanham Act, "plaintiff shall be required to prove defendant's sales." 15 USC §1117(a). Bour *proved* nothing. And by failing to do any calculation to determine Microsoft's revenues from Safe Links, she failed to perform expert work. Instead, Bour merely regurgitates the raw numbers for Microsoft's U.S. and global revenues for ATP and Office 365 with ATP from pivot tables Microsoft produced in discovery. Mot. at 19. But this is the kind of information that the jury can read on its own without the assistance of an expert witness, rendering Bour's disgorgement opinion unhelpful and insufficient to meet the *Daubert* standard of expert testimony. *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV-COHN, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014) (excluding expert because his opinion "does not help the factfinder understand the evidence or issues in the case. … Counting the number of subscribers … though perhaps time-consuming, is within the understanding of the average lay person.").

Further, the disgorgement figures are overinflated because ATP and Office 365 suites with ATP both include a myriad of products not at issue. Moreover, Bour's use of revenue for products not at issue does not fit the theory of TocMail's case. *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1231–32 (11th Cir. 2009) (Where an "experts' methodology did not fit [plaintiff's] liability theory…their opinion did not meet the requirements of *Daubert*."). In *Tenet Health Care*, the Court found "[t]he experts made no attempt to figure out what Tenet could have lawfully charged, so they did not know how much Tenet had overcharged," rendering the expert's "method unhelpful and thus inadmissible." *Id.* at 1232. Here, Bour made no attempt to

assign a value to Safe Links and determine how much of Microsoft's ATP and Office 365 revenue

was attributable to Safe Links, rendering her damages methodology unhelpful and inadmissible.

Additionally, using revenue from products that are not at-issue runs the risk of confusing

the jury. "Federal Rule of Evidence 403 permits the court to exclude otherwise relevant evidence

if its probative value is substantially outweighed by a danger of…confusing the issues [and]

misleading the jury," which it should do here. *Torres v. Carnival Corp.*, No. 12-CV-23370-JLK,

2014 WL 3548456, at *1 (S.D. Fla. July 17, 2014) (excluding expert testimony that had a

"substantial risk of confusing the jury and wasting time").

### C. Bour's Lost Profits Calculation is Unreliable Because it is Based on Speculation and a But-For World That Rejects Basic Economic Principles.

Bour's lost profits calculation is not grounded in supporting facts or reality and is not the

product of a reliable measure of damages attributable to the wrongful conduct (*i.e.* the purported

false advertising's impact on consumers). TocMail incorrectly recasts Microsoft's argument as one

requiring that Bour provide a causation opinion.[7] Opp. at 13. Microsoft does not, however, dispute

that damages experts may assume, and do not have to themselves prove, *legal* causation; this is

true because without legal causation there can be no finding of liability and thus no damages for a

damages expert to calculate. *Id*. However, the Opposition conflates legal causation with economic

---

[7] TocMail's opposition rests upon distinguishable cases. Opp. at 14-15. In *Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*, the defendant argued that the damages expert "must testify regarding causation." No. 2:15-CV-512, 2017 WL 1319553 at *4. (E.D. Tex. 2017). In *N. Palm Motors, LLC v. General Motors LLC*, GM argued the expert should be excluded because he "did not include in his calculations facts that, according to GM, caused Napleton's damages." No. 9:19-cv-80872, 2020 WL 6384308 at *1 (S.D. Fla. Oct. 30, 2020). Microsoft does not contend that Bour must testify on causation or include facts that caused TocMail's alleged damages. Microsoft argues that Bour's failure to verify facts underlying TocMail's causation theory renders her opinions baseless. Bour's but-for world is based on speculative and absurd facts that ignore marketplace realities (*e.g.*, a world where TocMail has no competitors), making her lost profits calculations too speculative to be reliable under *Daubert. BGW Design Ltd., Inc. v. Serv. Am. Corp.*, No. 10-20730-CIV, 2011 WL 13172487, at *3 (S.D. Fla. Nov. 30, 2011) (striking lost profits damages expert whose "opinions [were] based largely on speculation and conjecture.").

causation—an analysis Bour should have conducted to support her damages figures.

As stated by Microsoft's rebuttal expert, Dr. Ugone, Microsoft's critique has "█████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████." Ugone Trs., attached as "**Exhibit 1**," at 70:20-25. Indeed,

Bour has failed to conduct a "███████████████████."



*Id*. at 65:15-67:2.

Bour's lost profits calculation assumes that by April of 2020—a mere four months after

TocMail launched—the issuance of a single press release in November 2019 would spur *every*

Microsoft ATP and Office 365 with ATP customer to switch to TocMail. Mot. Ex. 7 at ¶ 82 ("the

remaining [Microsoft] customers would switch to TocMail in April 2020")[8]; Mot. Ex. 8 at 145:12-

147:7. Bour testified that the press release alone was an "impetus" for TocMail's rapid growth,

---

[8] The Opposition argues that Microsoft misrepresents Bour's disgorgement model, which it now claims is based on Microsoft not falsely advertising and TocMail obtaining a market share that is as large as Microsoft's. Opp. at 18-19. But this is the new theory in her improper Supplemented Report which should not be considered. Further, TocMail's argument that the Supplemented Report is timely but for Microsoft filing its *Daubert* motion prior to the deadline is absurd, as the report is improper irrespective of the *Daubert* motion deadline, and TocMail's failure to confer prior to serving it is unjustified. Opp. at n.1.

and that "the market would take care of itself with the press release and sales[.]" *Id.* at 44:13-47:1; 80:3-8. Bour also assumed that TocMail would retain this market share until 2035, without any competition in the market. *Id.* 99:20-100:1. Bour even assumed a 98% profitability for TocMail, despite admitting it is "a rather high profitability rate in [her] experience." *Id.* 84:23-85:8. These assumptions are wildly unrealistic, not supported by basic principles of economics, and were admittedly plaintiff-fed. *Id.* at 44:13-47:1 (admitting the "numbers were developed in conjunction with Mr. Wood."). *See Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 7507848, at *8 (S.D. Fla. Aug. 1, 2016) (excluding expert who "blindly relied on [plaintiff]-fed information…without doing h[er] own independent investigation").

Bour has assumed that not one consumer would have purchased a product containing the Safe Links feature but for the purported deceptive messages at issue, and without the messages, each of these consumers would have been TocMail consumers. Am. Compl. ¶ 95. Bour failed to consider, "█████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████." Ex. 1 at 71:21-25. Bour has done nothing to verify her assumptions.[9] Nor has anyone else.[10] But, a simple verification of these underlying assumptions

---

[9] TocMail conclusively states Bour's reliance on these assumptions is proper and dismisses Microsoft's argument without any authority, failing to rebut same. Opp. at 16-19.

[10] Expert discovery has closed and TocMail has not put forth a survey expert, advertising expert or other expert to opine on causation. Contrary to TocMail's view, such testimony cannot be elicited for the first time at trial. Opp. at 15-16; *see Chapman*, 766 F.3d at 1316 (a party "cannot perform an end run around the *Daubert* Order by calling witnesses who have not been vetted for reliability," affirming summary judgment where plaintiff failed to have, but was "*required* to have *Daubert*-qualified, general and specific-causation-expert testimony that would be admissible at trial to avoid summary judgment"). And, "circumstantial evidence and the assumption, based on the similarities of the parties' products and the claims [d]efendant made in its advertising, that consumers chose [d]efendant's products over [p]laintiff's products…is not sufficient to support a finding that [d]efendant's alleged false advertising was the cause of [p]laintiff's injury here." *Snac Lite, LLC v. Nuts 'N More, LLC*, No. 2:14-cv-01695, 2016 WL

14

prove they are false (or flawed at best), rendering Bour's damages opinions unsupported and unreliable under *Daubert*. Mot. at 21-22. For example, the deceptive messages at issue are difficult to locate within the Microsoft website, often buried in lengthy product guides, and they were made to an intended audience of IT professionals, thus supporting a likelihood that the statements would not be viewed by many, and certainly not all, customers. *Id*. at 21. Discovery has also shown that only 2.7% of commercial tenants (*i.e.* companies) worldwide even had the Safe Links policy within ATP or Office 365 turned on, so advertising statements about Safe Links would likely not have affected companies' purchase decisions. *Id*. at 18. Bour even fails to consider that consumers could choose to purchase other competitors' products over TocMail's. *Id*. at 26.

Bour's failure to consider basic economic principles like the existence of competitors and Microsoft's reaction in the market, and her failure to verify the effect (if any) the messages had on purchasing decisions, render her opinions unsupported and too speculative to meet the reliability prong of *Daubert. See Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6818959, at *8 (M.D. Fla. Nov. 18, 2016) (excluding expert report relying on conclusory observations, assumptions, and speculation); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1346 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) (same).

## IV.    CONCLUSION

For the foregoing reasons, Wood's and Bour's opinions and expert reports should be excluded in their entirety and they should be barred from testifying at trial.

---

6778268, at *13 (N.D. Al. Nov. 16, 2016) (granting defendant's motion for summary judgment). At this stage, TocMail should have evidence of alleged causation upon which Bour should have relied to form reliable, non-speculative opinions about TocMail's lost profit damages. *Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co*., 254 F. Supp. 2d 1239, 1249 (M.D. Fla. 2003) (granting motion for partial summary judgment and striking expert's lost profit damages model as it was based on "pure speculation").

Dated:  June 16, 2021

Respectfully submitted,

By */s/ Evelyn A. Cobos*_____
EVELYN A. COBOS

**GREENBERG TRAURIG, LLP**
Mary-Olga Lovett (*admitted pro hac vice*)
Texas Bar No. 00789289
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
           orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
           FLService@gtlaw.com

***Attorneys for Defendant,***
**MICROSOFT CORPORATION**

16

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of June, I served for foregoing document on all counsel of record identified on the below Service List in the manner specified.

/s/ *Evelyn A. Cobos*
EVELYN A. COBOS

## <u>SERVICE LIST</u>

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*

17