**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60416-CIV- CANNON/HUNT**

TOCMAIL INC, a Florida corporation,

       Plaintiff,

v.

MICROSOFT CORPORATION, a
Washington corporation,

       Defendant.

_____/

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE SUPPLEMENTED EXPERT REPORT OF MARCIE D. BOUR</u>**

Plaintiff, TOCMAIL INC ("Plaintiff" or "TocMail"), by and through undersigned counsel, hereby respectfully files its Memorandum of Law in Opposition to Defendant, MICROSOFT CORPORATION'S ("Microsoft" or "Defendant"), Motion to Strike Plaintiff's Supplemented Expert Report of Marcie D. Bour ("Bour"), ("Motion") [ECF No. 77], and states:

## I.    INTRODUCTION

Federal Rule of Procedure 26(e)(2) not only permits an expert's report to be supplemented but actually requires it.  The deadline under Rule 26(e)(2) to supplement is the same deadline as the pretrial disclosures, which is September 24, 2021 in this case.  Bour provided her supplements on May 18, 2021, months in advance of that deadline and even seven weeks prior to the deadline for the parties to file *Daubert* motions. In fact, Microsoft has not even answered the Amended Complaint yet.  In its Motion, Microsoft attempts to conflate the Scheduling Order deadlines for initial and rebuttal reports with the deadline for supplementing under Rule 26(e)(2) and spends pages attempting to paint TocMail in bad light arguing that TocMail failed to comply with the Scheduling Order, failed to seek an extension and failed to seek leave to serve a supplemental report.  Such arguments are entirely red herrings.  There was no need to seek an extension under the Scheduling Order or seek leave to file the Supplemented Report because Bour complied with the Rule 26(e)(2) deadline for supplements by months, and the Scheduling Order did not modify the Rule 26(e)(2) deadline for expert supplements. Seeking an extension of a deadline that TocMail was not even close to missing would have been illogical.

In fact, Microsoft's attempt to portray Bour's Supplemented Report as untimely is completely undercut by that fact that Microsoft has already indicated that it will produce updated financial information just prior to trial. Hence, **Bour is still going to have to update her Report**

**anyway**. The real issue in dispute is not whether the Supplemented Report was timely but rather whether the supplements were proper under Rule 26(e)(2).

In an effort to circumvent the fact that Bour's supplements were not only proper but required under Rule 26(e), Microsoft's Motion blatantly omits and fails to acknowledge main updates in Bour's Supplemented Report, even though Microsoft seeks to have all of the supplements stricken and seeks to have her prohibited from testifying to any and all supplements. One of Bour's primary supplements was the removal of consumer seats from her lost profits chart – the original report had both consumer and commercial seats – as TocMail did not receive sufficient documents regarding consumer seats in discovery. Bour's original report was due at the very beginning of discovery on October 1, 2020, approximately six months prior to the close of fact discovery.  Bour testified regarding the consumer seat removal *at deposition* and was thus *required* to provide a supplement regarding the change under Rule 26(e).  This amendment was not to "bolster" existing opinions because Bour is not providing causation opinions in the first place, as detailed at length in TocMail's Opposition to Microsoft's *Daubert* Motion (ECF 73). Given Bour's deposition testimony, Microsoft was fully on notice of this change that lowered the lost profits total that TocMail will seek at trial.

With respect to other supplements, Microsoft's Motion is a gross over-exaggeration of the actual supplements in Bour's Report.  Contrary to Microsoft's contentions, Bour's Supplemented Report does not use any new methodologies, offer new theories or alter the theory of the case, nor is it in any way an attempt to bolster a problematic report or to fix deficiencies or major omissions in her original Report.   The Supplemented Report merely takes what was already in the original Report and clarifies, corrects and updates some information based on information learned after her report was due.  For example, Bour removed the consumer seats input as testified to; she updated

WAAC calculations using current interest rates which had changed from seven months ago when her original Report was due; and Bour used *information that Microsoft provided after her report was already due* to add an alternative lower-bounds calculation of Microsoft's sales of ATP, which did not replace her original charts or calculations. Bour also provided a sensitivity chart that merely took the total lost profits calculation and multiplied it by different percentages.

Although TocMail strongly believes that the supplements are proper, even if the Court deems otherwise, Microsoft is not prejudiced and can claim no harm. Initially, during the parties' meet and confers regarding the Supplemented Report, TocMail explained that certain supplements were required under Rule 26(e) and that it *could not* withdraw the entire Supplemented Report. However, while not necessary but in an offer of good faith, TocMail offered to have Bour issue a replacement supplemented report that would reduce the number of supplements, and TocMail was willing to work with Microsoft on which supplements to remove. *See* two meet and confer emails attached as **Exhibits "1" and "2."** TocMail also offered to allow Microsoft to re-depose Bour on any of the supplements even though not necessary. Microsoft's only proposed resolution was for Bour to withdraw her entire Report, including the supplements that were undisputedly required by Rule 26(e). TocMail's good faith conferral offers were made over six weeks prior to the deadline for *Daubert* motions. Microsoft cannot claim harm.

Thus, the Motion to Strike should be denied. At a minimum, any supplements that the Courts finds proper should not be stricken.

## II.     FACTUAL BACKGROUND RELEVANT TO MOTION

### A.     Procedural History of Case.

The Court entered its first Scheduling Order in this case on May 22, 2020 (ECF 27). The Order required TocMail to disclose its affirmative experts and reports by October 1, 2020.

Rebuttal reports were due November 23, 2020. Importantly, the Scheduling Order did not alter or modify the deadline for expert supplements set by Fed. R. Civ. P. 26(e)(2). The original discovery deadline was February 22, 2021, which deadline was later extended until March 30, 2021. Microsoft had previously filed both a Motion to Dismiss and Motion to Transfer on April 30, 2020. The Court denied the Motion to Transfer on October 15, 2020 (ECF 40). On November 6, 2020, the Court entered its Order on the Motion to Dismiss finding that TocMail stated a claim as to certain false advertisements and dismissing without prejudice other claims (ECF 41). TocMail filed an Amended Complaint on November 13, 2020 (ECF 42), after Bour's original report was served, and Microsoft filed another Motion to Dismiss, which is still pending (ECF 44).

TocMail began sending written discovery in June 2020. The parties began negotiating a proposed ESI discovery plan in July 2020 and TocMail sent multiple requests for production in early August 2020. On October 1, 2020, TocMail disclosed Marcie D. Bour as an expert and produced her initial Expert Report, despite that the Motions to Dismiss and Transfer were still pending and Microsoft had not yet answered the Complaint. Additionally, as of October 1, 2020, Microsoft had only produced approximately 1,075 pages of documents of the approximately 336,145 pages of documents it produced in the case. The financial information Microsoft produced in which Bour used for her damages and disgorgement calculations was only through June 30, 2020, but Microsoft represented it would produce updated financial records. Following October 1, 2020, Microsoft produced documents on a rolling basis through approximately 17 different productions, including five ESI productions in February 2021 and six ESI productions in March 2021. Moreover, the parties conducted depositions on 13 different days in March 2021 concluding on March 30, 2021. As shown, Bour's original Report was due at the early stages of discovery in this case six months before it closed and months prior to the vast majority of

documents being produced by Microsoft.  Expert reports and expert discovery often follow fact discovery, but that was not the case here.

On March 26, 2021, TocMail sent Microsoft a follow-up email requesting updated financial records for Bour, as Bour was waiting on this information to produce her supplemental report.  Microsoft's counsel responded:  "As we previously explained, this is a very labor intensive endeavor.  We are happy to get you updated data, but we usually do it before trial so that we have to most up to date information at trial." *See* March 26, 2021 email chain, attached as **Exhibit "3."** In response, Bour decided to produce an interim Supplemented Report to give Microsoft advanced notice of all updates presently known, and Bour will then again update her Report closer to trial when Microsoft produces the updated financial information.

Bour submitted her Supplemented Expert Report on May 21, 2021, seven weeks prior to the deadline for *Daubert* Motions (July 9, 2021), 18 weeks prior to the deadline under Rule 26(e)(2) for supplemental expert reports (September 24, 2021) and 22 weeks prior to trial.  *See* Second Amended Scheduling Order (ECF 61).

**B.      Summary of Supplements**.

Bour was retained as a damages expert for TocMail and provided opinions on the proper calculation of lost profit damages and certain Microsoft sales for purposes of disgorgement of profits.  *See Initial Report*, attached to Microsoft's Motion as Ex. 2.  Bour was not retained as a causation expert but was rather retained to provide expert models for damage calculations.

The bulk of Bour's Supplemented Report is contained in four main categories of supplements to those lost profit calculations and calculations of Microsoft sales contained in her initial Report. First, Bour's Supplemented Report contains a changed calculation for weighted average cost of capital (WAAC) which was due to interest rates changing based on the economy

changing since her original Report issued on October 1, 2020. *Supp. Report*, ¶ 147-148, attached to Microsoft's Motion as Ex. 1.  Such a change is required under Rule 26(e) and is completely out of her control.  Bour's methodology did not change whatsoever.  Microsoft did not address this required update in its Motion.

Second, Bour removed consumer seats from her lost profits chart, another required supplement Microsoft also did not address in its Motion.  Bour's initial Report had two inputs for lost profits on an annualized basis: commercial and consumer.  *Initial Report*, ¶ 83.  This was to allow TocMail to present to the jury lost profit numbers related to commercial, or consumer, or both.  Significantly, Bour expressly testified at deposition that she removed the consumer seat input from the lost profits chart.  *Bour Depo.*, 21:21-22:19, attached hereto as **Exhibit "4."** TocMail instructed her to remove that input after reviewing the sufficiency of documents produced during discovery (Bour is not opining on causation).  Under Rule 26(e), when Ms. Bour testified that she deleted that element, she was required to supplement her Report accordingly in accordance with her deposition testimony.  *See* Fed. R. Civ. P. 26(e)(2) ("the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.").  Microsoft can hardly say it was ambushed by the removal of this element because Bour literally informed Microsoft of its removal at deposition.  Bour is applying the exact same methodology and exact same damages model with the consumer element removed for her lost profits calculation and therefore is not changing her opinion on the methodology for computing lost profits.  Bour's initial Report included a damages model for calculating lost profits and the fundamental damages model in the supplement did not change from the initial Report.[1]

---

[1] Microsoft places emphasis on the fact that Bour called her changes substantive.  TocMail does not dispute that the supplements were of substance. That does make them improper or untimely.

Third, Bour's Supplemented Report also added a sensitivity chart, which Microsoft refers to as her "first major change." *Motion*, p. 7. However, the sensitivity chart merely provides the total lost profits calculation and then applies percentages "to illustrate the impact of varying the number of subscriptions on lost profits in order to assist the jury in its determination of damages." *Supp. Report*, ¶ 166. Bour simply "reduced the subscribers in 10% increments, so that the lost profits are shown based on TocMail having subscribers equal to 90%, 80%, 70%, 60% and 50%. . ." *Id.* Microsoft's contention that Bour modified the damage model was literally a reference to Bour applying percentages to the total lost profits number. The sensitivity chart merely applies percentages to the lost profits number to make it easy for the jury to calculate a damages amount based on its ultimate determination of the percentage of subscribers that would use TocMail but for Microsoft's false advertising. At trial, the jury will decide the number of subscriptions TocMail lost due to Microsoft's false advertising, and Bour simply provided percentage calculations for the jury to apply so that the jury would not have to do so. The chart does not alter her theories nor her opinions in any manner whatsoever or change her lost profits calculations. The fact that Microsoft is screaming "ambush" for Bour simply applying percentages to her lost profits calculation is telling of Microsoft's baseless positions.

Finally, Bour's Supplemented Report provides a third scenario for revenue of Microsoft's ATP for purposes of disgorgement of profits that Bour "based on the monthly paid seats and the revenue per seat." *Supp. Report*, ¶ 21. Microsoft is correct that Bour's initial Report contained only two scenarios for revenue for the jury's consideration. *Motion*, p. 8. Those two scenarios and calculations for revenue based on them remained unchanged in her Supplemented Report. However, Bour could not calculate the third scenario in her initial Report because Bour did not have necessary price lists for those calculations at the time of her initial report. *See Supp. Report*,

¶¶ 2, 111; *see also Motion*, p. 4.  Microsoft produced the price lists after her original report was due and Bour relied on that new information for the third scenario, which did not alter or change the other two scenarios.  Bour certainly did not indicate that the third scenario was a "more 'reasonable' revenue calculation" as Microsoft states, and it is unclear where Microsoft even obtained that language from because it was not in the Report paragraphs cited by Microsoft. *Motion*, p. 9.  Additionally, Bour was not trying to "shore up the deficiencies," as the first two scenarios are the calculations Bour was required to do pursuant to 15 U.S.C. § 1117, not to mention that the global revenue for ATP using revenue per seat data for the third scenario was still $3,485,529,869 if based on the average U.S. price and $5,507,211,168 if based on U.S. average revenue per standalone seat.  *Supp. Report*, ¶¶ 25, 26, 114.[2]  This *lower bound scenario for revenue* was proper because the new scenario was based on information produced during discovery and not available at the time of the initial report.[3]

In its Motion, Microsoft makes up what it refers to as a third change in the Supplemented Report that allegedly involved undisclosed facts and reasoning for lost profits.  *Motion*, pp. 9-11. Again, such argument is a red herring and an attempt to re-argue points from its *Daubert* Motion. The updates referenced in that section of Microsoft's Motion were all minor clarifications to the "Background" Section of Bour's Report based on discovery in the case.  *Supp. Report*, ¶¶ 46-53. Those changes had absolutely no impact on Bour's lost profits calculation, did not alter or change

---

[2] Paragraph 115 of the Supplemented Report contains a typo.  The $5,507,168 figure should be $5,507,211,168 and the figure $3,438,869 should be $3,485,529,869 as can be clearly and expressly seen from the corresponding chart and other paragraphs in the Report.

[3] Microsoft concedes that Bour relied on information produced after her initial Report was due but claims she should have updated it earlier.  Bour was seeking to only supplement her Report one time, and she was waiting to receive promised updated financial information from Microsoft. Bour decided to provide an *interim* update after Microsoft informed TocMail that it was not going to produce the additional financial information until just prior to trial.

any opinions, calculations or theories, and did not result in any reduction in Bour's lost profits calculation as Microsoft argues.[4]   The lower output for lost profits damage was due to removing consumers seats as an input into the model as discussed above.  Moreover, as discussed at length in TocMail's Response to Microsoft's Daubert Motion, Bour is not providing any opinion in this case on causation or liability. *See* ECF 73.

**C.      Microsoft's Notice that Bour Would be Updating Her Report.**

Contrary to Microsoft's claim that it was "ambushed" by Bour's supplements, Microsoft was clearly on notice that Bour would be updating her Report. Bour's initial Report noted that Microsoft was "currently conducting an investigation to determine if there are any non-privileged, responsive, relevant documents to this request that are reasonably available …" and then explicitly stated that "As a result of not receiving the information timely requested, I was unable to complete certain aspects of my analysis.  I reserve the right to update this Expert Report and my opinions contained herein when such information is received." *Initial Report*, p. 21, FN 20.  She also stated:  "I reserve the right to review the information and opinions included in this report including schedules and/or to further supplement this report upon receipt of any additional information or discovery." *Bour Report*, p. 32.  Microsoft certainly cannot legitimately cry afoul when its own economic expert, Keith Ugone, stated in his Rebuttal Report that:  "My analyses and opinions contained in this report are based upon information available to date. I reserve the ability to review documents, **deposition transcripts**, or other information still to be produced by the Parties to this dispute and to supplement my opinions based upon that review." *Ugone Report*, p. 70 (emphasis

---

[4] Microsoft's contention that "the press release **alone** was an 'impetus' for TocMail's rapid growth" is a gross mischaracterization of Bour's Report and deposition testimony.  Quite the opposite, Bour's damages model includes an annual 2.2 million dollar budget for marketing and sales and an additional annual $300,000 budget for major account sales representatives. *Initial Report*, ¶ 87(b); *Supp. Report*, ¶ 135; s*ee also Bour Depo.*, 44:13-45:12.

added), an excerpt of which is attached as **Exhibit "5"** (*see* ECF 69-33 for full Ugone

Report). Deposition transcripts were not available until after depositions occurred in March 2021

(over five months after Bour's original Report was due) and, thus, Microsoft's rebuttal expert

reserved the right to update his report after those March dates.[5]

Also, as mentioned, Microsoft is clearly aware that Bour will have to update her Report

once again when Microsoft produces updated financial information.

Moreover, Microsoft's counsel expressly requested on multiple occasions at Bour's

Deposition that Bour provide additional information following the deposition – "I'm going to ask

our court reporter to leave a blank here in the deposition where you can – when you have an

opportunity to read and sign your deposition, also under oath, you can fill in anything that you

may remember or that you wish to add for that question, all right." *Bour Depo.*, 167:25-

168:5.  Microsoft's counsel also stated: "We'll leave a blank again for that so that you can fill that

in if you find any, at the time you sign your report -- your deposition." (168:23-25) and "Okay.  So

if you decide to do that, will you inform Mr. Martin so he can inform me, so we not sitting in from

[sic] of a jury in August with a different number of which we're unaware." *Id.* at 126:9-19.  Any

such additional information referenced by Microsoft's counsel would *require* a corresponding

supplement to the expert report. It is hard to understand how Microsoft can claim that the

Supplemented Report is prejudicial to Microsoft or harmful when those questions at deposition

actually invited Bour to provide additional information and corresponding supplementation.

Inexplicably, Microsoft also suggests that TocMail should have somehow known that

Microsoft intended to file its *Daubert* motion over six weeks prior to the deadline based on a meet

---

[5] The deposition of Microsoft's 30(b)(6) designee regarding Microsoft's financial information, Kathryn Griffith, was taken on March 23, 2021, and Bour relied on her deposition testimony in the Supplemented Report to better understand Microsoft's data. *Supp. Report*, Exhibit 1.

of confer of several issues in which counsel did not discuss any "substance" of *Daubert* motions whatsoever and TocMail's counsel reiterated that the deadline for the Motions was July 9, 2021. Microsoft did not convey in any manner its intention to file its *Daubert* motion over six weeks prior to the deadline, and there is no way TocMail could have known that, especially considering the parties just had a Status Conference with the Court in which Microsoft agreed that the deadlines should be pushed back due to the outstanding Motion to Dismiss and the fact that Microsoft has not yet answered the Amended Complaint.

Finally, Microsoft's contention that TocMail should have notified the Court at the status conference that Bour intended to submit supplements to her Report is unsound. TocMail was certainly not hiding the supplements. Rather, TocMail and Bour both understood that her Supplements were not due until September 24, 2021 and, thus, there was no need to notify the Court of supplements permitted under Rule 26(e)(2) for which the deadline was still months away.

## III.   MEMORANDUM OF LAW

In determining whether to strike a supplement to an expert report, the court should consider first whether the supplemental disclosure is timely under Federal Rule of Civil Procedure 26(e)(2). *SFR Servs. LLC v. Electric Ins. Co.*, No. 8:19-cv-2013-CPT, 2021 WL 1193284, *3-4 (M.D. Fla. March 30, 2021); *see also Southpoint Condo. Assn., Inc. v. Lexington Ins. Co.*, No. 19-cv-61365, 2020 WL 1515769, *3 (S.D. Fla. March 30, 2020).[6] However, even if the disclosure was not proper, then each supplement should not be stricken that is "substantially justified or harmless."

---

[6] Microsoft only argues that Bour's Supplemented Expert Report was untimely, not her original Report. Rule 26(a)(2) governs a parties disclosure of its original expert witnesses and written reports whereas Rule 26(e)(2) governs supplements to the expert's report. *Southpoint Condo.*, 2020 WL 1515769, *2. Thus, when considering timeliness, the court should look at whether the party violated "Rules 26(a) **or (e)**." *Southpoint Condo.*, 2020 WL 1515769, *3 (emphasis added).

*SFR Servs.*, 2021 WL 1193284 at *4. "'In general, excluding expert testimony is viewed as a 'drastic' sanction requiring careful consideration.'" *Id.* (citations omitted).

**A.  Bour's Supplemented Expert Report Was Timely.**

In its Motion, Microsoft attempts to conflate several issues concerning expert reports under Rules 26(a) and 26(e), Scheduling Orders and deadlines and frivolously argues that TocMail willfully violated the Scheduling Orders.  Microsoft suggests that any supplemental report, proper or not, is untimely if served after the discovery deadline.  Such an argument is misleading and plainly wrong.  If Bour's Supplemented Report contained proper supplements under Federal Rule of Civil Procedure 26(e), then it was unquestionably timely.

**1.  The Supplemented Report Complied with the Deadline in Rule 26(e)(2).**

Federal Rule of Civil Procedure 26(e)(2) provides:  "*Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's **duty to supplement** extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information **must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.**" (emphasis added).   Additionally, Federal Rule 26(a)(2)(E) provides: "*Supplementing the Disclosure.* The parties must supplement these disclosures when required under Rule 26(e)."   Thus, Rule 26 places a "duty" on experts to supplement their reports, including with respect to information provided during the expert's deposition.  The deadline for an expert to supplement his or her report is the time for the party's pretrial disclosures, which in this case is September 24, 2021.  *See Southpoint Condo.*, 2020 WL 1515769, *2; *Second Amended Scheduling Order* (ECF 61).

A supplemental expert report is timely even if served after the expert's deposition and after the discovery cut-off deadline as long as served prior to the party's pretrial disclosure deadline.

*Fletcher v. Great Am. Ins. Co.*, No. 3:09-cv-324-J-25JRK, 2010 WL 11507486, *4 (M.D. Fla. Sept. 7, 2010). Moreover, a party is "not required to seek leave of Court to modify case management deadlines" when a supplemental report is served prior to the deadline under Rule 26(e)(2). *Id.*; *see also SFR Servs.*, 2021 WL 1193284 at *4 ("absent a directive from the court to the contrary – Rule 26(e) permits Rule 26(a)(2)(B) expert witnesses to supplement their disclosures up until the pretrial disclosure deadline."). Even Rule 37(c)(1), which is the Rule relied on by Microsoft for grounds to strike Bour's Supplemented Report, does not apply to reports timely filed in accordance with Rule 26(e):  "If a party fails to provide information or identify a witness as required by Rule 26(a) **or (e)** . . . ." Fed. R. Civ. P. 37(c)(1) (emphasis added); *see also Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 836-37 (W.D. Ky. 2017) (refusing to strike Supplemental Expert Report that "contain[ed] over 700 pages of new materials and was disclosed 'the night before pre-trial filings were due'" because Rule 26(e)(2) "does not set limitations on the amount or length of permissible supplemental disclosures" and "[t]he only limitation that the Rule imposes is that supplemental disclosures must be made by the deadline for pretrial disclosures.")

Here, Bour's Report was served on May 21, 2021, 18 weeks prior to the September 24, 2021 deadline under Rule 26(e)(2) for supplemental expert reports.  The Court's Scheduling Order did not modify the Rule's deadline for expert supplements.  Thus, Bour's Supplemented Report was clearly timely under Rule 26(e)(2).  No Scheduling Order modification or extensions of deadlines were necessary.  Additionally, there is no requirement to seek leave to submit a supplemental report under Rule 26(e) as Microsoft wrongly argues.  Microsoft's reliance on cases for its argument that "a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed" is entirely misplaced because, as mentioned, the Court here did not alter or change the deadline under Rule 26(e)(2) for

14

supplemental reports.  *See Motion*, p. 4.  The Court's Scheduling Order only set deadlines for initial and rebuttal reports and, thus, the deadline for supplements is September 24, 2021. Therefore, TocMail did not violate the Scheduling Order.

> **2.     The Supplemented Report was Proper under Rule 26(e).**

Microsoft's actual primary argument is that Bour's Supplemented Report was not proper under Rule 26(e)(2). TocMail does not contest that a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert report or cure a major omission as Microsoft argues, but such was not the case here.

Rule 26(e) places a "duty" on experts to supplement reports.  Fed. R. Civ. P. 26(e)(2); *see Lincoln Rock, LLC v. City of Tampa*, No. 8:15-cv-1374, 2016 WL 6138653, *3 (M.D. Fla. Oct. 21, 2016) ("'[t]here is nothing in Rule 26 prohibiting a witness, even an expert witness, from timely providing new or modified opinions to complete or correct information previously provided or reported' and 'the witness who learns of new material information not previously disclosed is obliged to timely disclose the information to the parties.'"); *KCH Servs., Inc. v. Vanaire, Inc.*, 05-777-C, 2010 WL 1416672, *3 (W.D. Ky. March 31, 2010) ("the plaintiff had a duty to supplement his reports once new evidence was discovered that the plaintiff intended to use in calculating damages."); *Sanchez-Knuston v. Ford Motor Co.*, 14-61344-CIV, 2016 WL 3944060, *1 (S.D. Fla. March 29, 2016) ("Fed.R.Civ.P. 26(e)(2) contemplates the supplementation of an expert report, so long as additions or changes are disclosed prior to the date the parties' pretrial disclosures are due.").  Supplements under Rule 26(e)(2) are proper to: "(1) to correct an error or inaccuracy; (2) to respond to an opposing expert pointing out gaps in the supplementing expert's chain of reasoning; or (3) to reflect an expert's changed opinion." *Hoskins Oil Co., LLC v. Equilon Enters., LLC*, No. 3:16-CV-417, 2019 WL 691394, *2 (E.D. Tenn. Feb. 19, 2019).

Courts routinely refuse to strike supplements to expert reports.  *See, e.g., SFR Servs.*, 2021 WL 1193284, *5 (refusing to exclude supplement because "[t]o begin, it is difficult for EIC to argue that it has been caught 'off-guard' or 'ambush[ed]' by Butler's affidavit, insofar as the affidavit does not provide any 'new theories' by Butler and instead includes information that one would fairly expect SFR to elicit from Butler at trial."); *Plaseyed v. PCA Nat'l. LLC*, 05-60099-CIV, 2006 WL 8434621, *2 (S.D. Fla. March 2, 2006) (denying motion to strike supplemental expert report where supplemental opinion "arose over time and in response to Plaintiff's own discovery requests" and, thus, "has evolved and requires supplementation"); *In re Accutane Products Liability Litigation*, No. 8:04-md-2523-T-30TBM, 2007 WL 201091, *1 (M.D. Fla. Jan. 24, 2007) (denying motion to strike expert's supplemental report served after the close of expert discovery and after the expert had been deposed where the expert's "core opinions remained the same" even though the supplements contained "a degree of new or additional rationale"); *Dickens v. Castle Key Ins. Co.*, No. 13-20300-CIV, 2014 WL 11878438, *1 (S.D. Fla. Dec. 30, 2014) (denying motion to strike supplemental expert report served after the close of discovery even though the defendant argued it contained new opinions); *Johnston v. Borders*, No. 6:15-cv-936-Orl-40DCl, 2018 WL 4215027, *1 (M.D. Fla. Sept. 4, 2018) (allowing amended expert opinion because "Rule 26(e) permits an expert report to be supplemented for purposes of 'adding information that was not available at the time of the initial report.'"); *Hoskins Oil Co.*, 2019 WL 691394 at *1-2 (finding that a change from a 0% discount rate to a 22% discount rate on lost profits was a proper supplement under rule 26(e)(2) even though it was served ten and a half months after the initial expert report was served); *Lincoln Rock*, 2016 WL 6138653, *3 ("Although, as Defendant contends, Dr. Fishkind's corrections are based on information available to him at the time of his Initial Report, Rule 26(e)(1)(A) required Dr. Fishkind to correct his Initial Report. . .

.These corrections did not advance a new theory of damages, but instead corrected Dr. Fishkind's calculation under the method of calculating damages he espoused in his Initial Report."); *Tampa Bay Water v. HDR Engineering, Inc.*, No. 8:08-cv-2446, 2011 WL 3475548, *5 (M.D. Fla. Aug. 9, 2011) (denying a motion to strike a supplemental expert report served after discovery closed where "[t]he opinion was the natural outgrowth of [the expert's] initial report").

Here, Bour is a damages expert that was retained to provide an opinion on Microsoft's revenue for purposes of disgorgement of profits and lost profits calculations.  In her initial Report, she provided such calculations and the details, bases and analyses behind them. As discussed at length above, Bour's supplements were proper clarifications and corrections to those calculations based on changed information and information from discovery, which supplements fit squarely within what is permissible, necessary and expected in a supplemental report under Rule 26(e)(2). Specifically, Bour removed one input from her lost profits model that lowered the total lost profit calculation based on discovery,[7] updated WAAC calculations based on a changed interest rate from seven months ago when her original Report was due, provided an updated alternative lower bounds calculation of Microsoft's sales of ATP that was based on information produced by Microsoft after her original Report was due but did not replace her original charts or calculations, and provided a sensitivity chart that merely took the total lost profits calculation and applied percentages to it, which is information that would be elicited at trial anyway. Changing elements in a model does not represent a change in the model itself. *See KCH Servs.*, 2010 WL 1416672 at *3 ("While elements of damages were added based on new information, Gemini did not fundamentally change his method of calculating damages from one report to the next. After his

---

[7] *See Hamilton County Emergency Communications District v. Level 3 Communications, LLC*, 2019 WL 5445295, *4 (E.D. Tenn. Oct. 23, 2019) (denying motion to strike where "the corrections appear to affect at most one column of data for three of the ten years covered by the WARs").

initial report, Gemini's qualifications and the nature of his expected testimony remained largely the same. By the plaintiff's fulfilling of its duty to supplement Gemini's reports under Rule 26(e), Gemini did not become a 'moving target' for purposes of a *Daubert* motion by the defendants.").

Those supplements are not, as Microsoft argues, new methodologies, new theories or new damages models, and review of the supplements establishes that Bour most certainly did not offer "fundamentally new expert opinions." Rather, her core opinions are unchanged and her expected testimony regarding the proper way to calculate lost profits and revenue remains the same.

Moreover, Bour's initial Report did not have any major omissions, deficiencies or problems. While Microsoft argues that Bour's supplements were intended to cure deficiencies or bolster opinions, Microsoft fails to explain what the deficiencies were and how the supplements purportedly attempted to cure or bolster them. Because Bour was not using Rule 26(e) to "bolster a defective or problematic expert witness report" or produce a "direct and untimely rebuttal," it was entirely proper and thus timely. Even if Bour had used her Rule 26(e) Report to respond to Microsoft's criticisms, which she did not, it would have been permissible. *See SFR Servs.*, 2021 WL 1193284, *4 ("an expert 'need not stand mute' in response to an opposing party's efforts to exclude his testimony by way of a *Daubert* motion . . . As one court has observed, to hold otherwise would render expert witness practice 'even more expensive and unwieldy' because it would force an expert 'to anticipate and rebut every possible criticism' in advance."); *Allgood v. General Motors Corp.*, No. 102CV1077, 2006 WL 2669337, *5 (S.D. Ind. Sept. 18, 2006) (denying motion to strike because "The supplemental declarations of plaintiffs' experts were lengthy but either responded to GM's specific *Daubert* criticisms or harmlessly repeat information provided in the earlier reports.").

In support of its argument, Microsoft relies heavily on *All-Tag Corp. v. Checkpoint Systems, Inc.*, 2019 WL 5073499 (S.D. Fla. Oct. 9, 2019) to argue that Bour's supplemented report should be stricken.  However, in *All-Tag*, **the court had previously stricken the very opinion that the plaintiff was now trying to get in through the supplemental report.**  *Id.* at *2.  The Court stated:  "Plaintiff first attempted to improperly sneak an affirmative expert opinion into Dr. Hunter's rebuttal report.  *See* DE 263.  The Court ordered that affirmative opinion stricken on October 7, 2019. *Id.* That should have been the end of the matter.  Now, Plaintiff, in violation of the Court's June 7, 2019 Order [DE 167], inserts the exact affirmative opinion the Court ordered stricken in its prior Order [DE 263] into a new 'supplemental' report . . . ."  *Id.*  Regardless, the Court still "carefully reviewed" the original report and supplemental report and concluded that the "'supplemental' report is a direct and untimely rebuttal to the rebuttal report of [defendant's expert],. . . not a mere supplementation of his prior report." *Id.* at *3.  Plaintiff tried to "squeeze in new affirmative and rebuttal opinions masked as 'supplemental' reports." *Id.* at *5. Of course, the Court in *All-Tag* struck rebuttal opinions masked as a "supplemental report" that it had already stricken previously.  Rather, here, Bour's supplements were all proper.

**B.     Even if Certain Supplements Are Deemed Not Proper, They Are Justified or Harmless.**

Even if a court deems certain supplements not proper, the court should still not strike the supplements if they were "'substantially justified or harmless.'"  *SFR Servs.*, 2021 WL 1193284 at *4. "In making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Southpoint Condo.*, 2020 WL 1515769, *3. Where a supplement does not constitute a "new" expert opinion but simply "build[s] upon the

original reports," the supplement is harmless even if untimely.  *Ward v. Carnival Corp.*, No. 17-24628, 2019 WL 1228063, *3 (S.D. Fla. March 14, 2019); *Hoskins Oil Co.*, 2019 WL 691394 at *4 (finding supplemental expert disclosure harmless where defendants had "sufficient time to discuss [the expert's] changes with their expert witness" prior to trial and could cross examine the witness on the stand.").   Additionally, "[a]ny undue prejudice that may have resulted from a surprise supplemental report is removed [where the other party] was on notice that a supplemental report would be submitted . . . ."  *Fletcher*, 2010 WL 11507486 at *6.

Here, even if the Court deems certain supplements in Bour's Supplemented Report not proper under Rule 26(e)(2), the supplements were harmless or substantially justified.  Therefore, even in such a situation, none of the supplements should be stricken.  For the first factor, Bour's supplements were necessary to correct and update Bour's calculations based on, among other things, deposition testimony concerning the removal of one element of lost profits that TocMail instructed her to remove after reviewing the sufficiency of documents produced during discovery, as well as changed interest rates.   Moreover, for the second factor and as discussed above, Bour's initial Report was due at the very early stages of discovery in this case and her Supplemented Report was disclosed just a few weeks following the production of hundreds of thousands of pages of documents and a span of 13 days of depositions.  While that alone justifies the timing of her Supplemented Report, Bour was also waiting for Microsoft's updated financial information to limit her supplements to one Report, which Microsoft will now not produce until just before trial.

For the third factor, Microsoft cannot claim that it was prejudiced because Microsoft was on notice that Bour would be updating her Report.  Microsoft's counsel even invited Bour to provide additional information following her deposition.  *See Tampa Bay Water*, 2011 WL 3475548, *5 (allowing supplemental report where the expert "was prompted by counsels' inquiry

at his deposition in November 2010, to examine the question of fault or responsibility for the construction errors and omissions he previously identified."). Moreover, Microsoft is going to be providing updated financial information that is going to require Bour to update her calculations anyway. Regardless, Bour submitted her Supplemented Expert Report on May 21, 2021, seven weeks prior to the deadline for *Daubert* Motions (July 9, 2021), 18 weeks prior to the deadline under Rule 26(e)(2) for supplemental expert reports (September 24, 2021) and 22 weeks prior to trial. Microsoft had ample time to consider Bour's supplements, and a continuance is not even necessary here, which satisfies the fourth factor.

Even if Microsoft could legitimately claim surprise, which it cannot, any claimed harm would be cured by simply allowing Bour to be re-deposed on the supplements, which TocMail already offered. *See Dickens*, 2014 WL 11878438, *1 ("Defendant's claim of prejudice is significantly undercut by its refusal of Plaintiff's offer to re-depose Mr. Petreikis"); *SFR Servs.*, 2021 WL 1193284 at *5 (denying motion to strike and finding "any such surprise can be cured at this juncture by reopening discovery solely with respect to Butler's testimony.") (citations omitted); *Fletcher*, 2010 WL 11507486 at *6 (finding any undue prejudice could be cured by allowing the opposing party to depose the expert regarding the supplemental report, even though discovery had already closed).

Given the justifiable or harmless nature of all the amendments, none should be stricken, even if the Court deems any of them improper under Rule 26(e) and/or untimely.

## IV.    CONCLUSION

TocMail respectfully requests that the Court deny the Motion to Strike. At a minimum, the entire Supplemented Report should not be stricken but only any supplements that the Court were to find improper under Rule 26(e)(2).

Dated: June 30, 2021                    Respectfully submitted,

                                        By:   /s/ Joshua D. Martin
                                        Joshua D. Martin
                                        Florida Bar No. 028100
                                        josh.martin@johnsonmartinlaw.com
                                        JOHNSON & MARTIN, P.A.
                                        500 W. Cypress Creek Rd., Suite 430
                                        Fort Lauderdale, Florida 33309
                                        Telephone: (954) 790-6699
                                        Facsimile: (954) 206-0017
                                        *Attorneys for Plaintiff, TocMail Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 30th day of June 2021, the foregoing document is being served this day on all counsel of record on the service list via electronic mail.

                        By:    /s/ Joshua D. Martin
                               Joshua D. Martin

## SERVICE LIST

### *TOCMAIL INC. v. MICROSOFT CORPORATION*
### 20-60416-CIV- CANNON/HUNT

**Joshua D. Martin**
E-Mail: josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd.
Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

**Francisco O. Sanchez**
E-Mail: sanchezo@gtlaw.com
        orizondol@gtlaw.com
**Evelyn A. Cobos**
E-Mail: cobose@gtlaw.com
        MiaLitDock@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717


**Mary-Olga Lovett** *(admitted pro hac vice)*
E-Mail: lovettm@gtlaw.com
**Rene Trevino** *(admitted pro hac vice)*
E-Mail: trevinor@gtlaw.com
GREENBERG TRAURIG LLC
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 374-3505