UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-CANNON/HUNT

TOCMAIL, INC., a Florida corporation,

    Plaintiff,

v.

MICROSOFT CORPORATION, a Washington corporation,

    Defendant.

**DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF TOCMAIL, INC.'S UNTIMELY "SUPPLEMENTED EXPERT REPORT OF MARCIE D. BOUR" AND INCORPORATED MEMORANDUM OF LAW**

    Nothing in Plaintiff TocMail, Inc.'s ("TocMail") Opposition to Defendant Microsoft Corporation's ("Microsoft") Motion to Strike the Untimely "Supplemented Expert Report of Marcie D. Bour" ("Bour") ("Supplemental Report") [ECF No. 84] (the "Opposition") excuses its tardiness, or the prejudice it has caused Microsoft. TocMail argues the changes in the Supplemental Report are necessarily "timely" and "required" by Rule 26(e). But to the contrary, the Rule's duty to supplement by the pretrial disclosures deadline neither overrides court-imposed deadlines nor allows the types of changes Bour made. It is well-settled that the inclusion of **new** methodologies and **substantive** changes in an expert's report after the close of expert discovery is improper, while mere corrections or updates, such as plugging in new data points or updated interest rates into a **pre-existing** methodology, is proper. The Supplemental Report contains new opinions, new facts, and new methodologies that TocMail admits "were of substance." Opp. at 6-10.

    These improper changes cannot be excused by any delay on Microsoft's part. All of the information Bour relied on had been provided to TocMail nearly three months before the close of expert discovery, and there is no justification for TocMail serving the Supplemental Report two months after the close of discovery. Accordingly, for the reasons set forth below and in Microsoft's Motion to Strike [ECF No. 77] (the "Motion"), the Court should strike the untimely and improper

Supplemental Report under Rules 16(f)(1)(C) and 37(c)(1)(C) of the Federal Rules of Civil Procedure.

**I.     ARGUMENT**

**A. The Supplemental Report Violates the Court's Scheduling Order, Warranting its Striking under Rule 16.**

"Exclusion is [] an appropriate remedy under Fed. R. Civ. P. 16(b), which authorizes the court to control and expedite pretrial discovery through a scheduling order and gives the court broad discretion to preserve the integrity and purpose of a pretrial order, including the exclusion of evidence." *Companhia Energetic Potiguar v. Caterpillar Inc.*, No. 14-cv-24277, 2016 WL 3102225, at *5 (S.D. Fla. June 2, 2016); *All-Tag Corp. v. Checkpoint Sys., Inc.*, No. 9:17-CV-81261, 2019 WL 5073499, at *3 (S.D. Fla. Oct. 9, 2019) (same). Rule 16(f) also affords the district court the discretion to exclude evidence as a sanction for failure to comply with a scheduling or pretrial order. Fed. R. Civ. P. 16(b); *see* Advis. Comm. Notes ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery… [including] striking a pleading [and] attorney's fees.").

Rule 16 "boil[s] down to two basic inquiries: is there a good reason for [a party's] delay [in disclosing an expert report], and does disclosure at this time prejudice the [movant]?" *Webber v. Nat'l Gen. Assurance Co.*, No. 4:14CV490, 2016 WL 3545849, at *2 (N.D. Fla. Feb. 12, 2016). TocMail's recitation of Microsoft's "approximately 17 different productions" of ESI containing "hundreds of thousands of pages of documents and a span of 13 days of depositions" (Mot. at 5, 20) is wholly irrelevant and does not amount to a good reason for its untimely disclosure. Bour relied on only **four** documents that were not listed in the initial Expert Report of Marcie D. Bour ("Initial Report"), which were produced on September 30, 2020, November 6, 2020, December 21, 2020, and January 8, 2021. Mot. at 4. And, the only deposition Bour lists in her "sources of information" is the deposition of Kathryn Griffith taken on March 23, 2021. Mot. Ex. 1 at 58; Opp. at n.5. Bour does **not** cite to or quote from Ms. Griffith's 42-minute-long deposition at any point in the Supplemental Report. This is because Ms. Griffith did not provide any new information during her deposition that TocMail was not already aware of. Ms. Griffith confirmed the accuracy of financial information produced by Microsoft, the source of that information, and the method of gathering that information, and she authenticated that data. Ms. Griffith provided no information that would justify Bour's creation of new damages methodologies in her Supplemental Report. All the information Bour needed to "supplement" her report was provided well in advance of the

Court's March 30, 2021 expert discovery deadline. [ECF No. 55]. And, even if Bour stated at her March 15, 2021 deposition that she had reduced her lost profits figure and reserved her right to supplement in her Initial Report (Opp. at 2, 7, 10), these are not good reasons for the delay. She had not supplemented by the time of her deposition or any time in the more than two weeks between her deposition and the expert discovery cut-off date. Instead, TocMail waited nearly five months after receiving the last bit of ESI Bour relied on, and two months after the close of expert discovery to serve the Supplemental Report on May 21, 2021. With discovery being closed, Microsoft cannot depose Bour on her Supplemental Report or rebut it and is prejudiced. *See infra* Section D.

The Court has broad discretion to apply Rule 16 to enforce its scheduling orders, control its docket, and manage its case load, and should use that discretion here in striking the Supplemental Report served two months after the close of expert discovery without **any** extension or approval from the Court. *See Harris Corp. v. Ruckus Wireless, Inc.*, No. 6:11-CV-618-ORL-41, 2015 WL 3671355, at *7 (M.D. Fla. June 12, 2015) ("To permit Ruckus's untimely service would harm Harris, who has otherwise acted diligently. Therefore, under Rule 16(f), the 2015 Ostiller Amended Expert Report will be stricken.").

**B.  The Supplemental Report is Untimely and Not Allowed Under Rule 26.**

TocMail argues the Supplemental Report is necessarily "timely" and "required" under Rule 26(e), because the Rule states parties have a "duty to supplement" prior to "pretrial disclosures," and it was served prior to the September 24, 2021 pretrial disclosure deadline. Opp. at 13-15. The Eleventh Circuit has made clear, however, that compliance with Rule 26 does not depend solely on the pretrial disclosure deadline in a vacuum. "**Rule 26 does not ... bestow** upon litigants **unfettered freedom to rely on supplements** produced after a court-imposed deadline, **even if the rule's pretrial limit is satisfied**." *Vapco, Inc. v. Perfecta Prod., Inc.*, No. 8:10-CV-399-T-27TBM, 2011 WL 13176159, at *3 (M.D. Fla. Apr. 27, 2011) (citation omitted) (emphasis added) (granting motion to strike due to violation of Rule 26 where discovery closed on January 21, 2011 and "[f]our days later, on January 25, 2011, Defendant received Mr. Nissen's second rebuttal report."); *see Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) ("the court set a deadline of 1 June 2004 for disclosure of Corwin's expert reports and a deadline of 15 October 2004 for financial expert reports … Although Alexander's supplemental report does address the financial impact of EPCOT on Walt Disney World, it was not filed until 19 October. [Thus,] the

3

district court did not abuse its discretion in excluding them."); *All-Tag Corp.*, 2019 WL 5073499, at *2 (granting motion to strike September 18, 2019 supplemental report due to violation of Rule 26 where expert discovery cut-off was August 23, 2019, and rejecting argument that "it was actually not even due until 30 days before trial"). Indeed, "[t]he mere fact that Plaintiff believes [it] is or was under a duty to supplement … does not mean that complying with the duty trumps deadlines in the case and permits trial use of post-deadline disclosures, prejudicial consequences notwithstanding." *Cook v. Royal Caribbean Cruise, Ltd.*, No. 11-20723-civ, 2012 WL 2319089, at *1 (S.D. Fla. June 15, 2012) (striking supplemental expert report and rejecting plaintiff's position that court "would be punishing her for following the duty-to-supplement rule.").

TocMail relies on factually dissimilar cases in support of its position that it merely had to serve the Supplemental Report before the pretrial disclosure deadline. Opp. at 13-14. For example, in *Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 1515769, at *2 (S.D. Fla. Mar. 30, 2020), "the parties jointly moved to modify the Court's Scheduling Order" and the court found "the experts' complete and final reports will be provided to Defendant sometime before … the experts' depositions, mediation," the "deadline for all discovery to be completed," and "the … cut-off date for the parties to supplement or alter their expert reports."[1] Here, it is undisputed that TocMail did not seek leave to modify the scheduling order and the Supplemental Report was served *after* the court-imposed expert discovery cut-off date of March 30, 2021. Contrary to TocMail's unsupported argument, the Supplemental Report is untimely under Rule 26 and should be stricken.

### C. The Supplemental Report's Admittedly "Substantive Changes"[2] are Not of the Kind Contemplated or Permissible Under Rule 26.

In addition to being untimely, the types of changes included in the Supplemental Report are improper. Microsoft highlights three main changes to Bour's Initial Report: (1) a newly

---

[1] The case *SFR Servs. LLC v. Elec. Ins. Co.*, No. 8:19-CV-2013-CPT, 2021 WL 1193284, at *3 (M.D. Fla. Mar. 30, 2021) is inapposite as the court analyzed an expert's affidavit submitted in opposition to a *Daubert* motion. The case at hand is also unlike *Fletcher v. Great Am. Ins. Co.* No. 3:09-CV-324-J-25JRK, 2010 WL 11507486, at *5 (M.D. Fla. Sept. 7, 2010) and the out-of-circuit *Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 837 (W.D. Ky. 2017), where the courts found the expert's opinion "is the same in both reports," and the supplemental report did not "change [] earlier opinions or theories such that they constitute improper new evidence as opposed to supplemental materials," respectively. Contrary to *Fletcher* and *Deere*, as discussed *infra*, the Supplemental Report contains new opinions and methodologies.

[2] "TocMail does not dispute that the supplements were of substance." Opp. at n.1; Mot. Ex. 1, ¶ 9.

undertaken "sensitivity analysis" modified her damage model by inexplicably changing the percentage of seats used to calculate TocMail's lost profits and was now included to "assist the jury"; (2) a new methodology was used to provide a third and additional disgorgement of profits calculation based on Microsoft's monthly paid seats and revenue per seat whereby Bour estimated monthly active users by "recreating [a] chart"; and (3) a newly-reduced and "alternative" lost profits calculation was prepared based on new information from TocMail regarding its business model that had not been disclosed prior to the Supplemental Report. Mot. at 7-10.³

TocMail inaccurately argues that the changes were "proper clarifications and corrections…based on changed information and information from discovery, which supplements fit squarely within what is permissible…under Rule 26(e)(2)." Opp. at 17.  This is neither true nor supported.  Each of the cases relied on by TocMail, *id*. at 15-17, is inapposite, largely falling into the category of mere permissible updates to a pre-existing methodology, rather than, as here, involving new and changed facts, opinions, and methodologies, which are improper. *See, e.g., Johnston v. Borders*, No. 615CV936ORL40DCI, 2018 WL 4215027, at *1 (M.D. Fla. Sept. 4, 2018) (movant conceded expert's "scope, methodology, and conclusions in [the] amended report remain the same").⁴  And while TocMail attempts to argue that this case is not like the *All-Tag*

---

³ Surprisingly, TocMail admits that there are **even more** changes in the Supplemental Report that Microsoft did not acknowledge and spends time explaining how those are proper changes, including updating the weighted average cost of capital (WAAC) calculations using current interest rates, among other things. Opp. at 3-4, 6-7.  TocMail's attempt to shift focus from the admittedly substantive changes in the Supplemental Report is a futile exercise, as they are not relevant issues raised by Microsoft.

⁴ *See Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653, at *7 (M.D. Fla. Oct. 21, 2016) ("corrections did not advance a new theory of damages, but instead corrected Dr. Fishkind's calculation under the method of calculating damages he espoused in his Initial Report"); *KCH Servs., Inc. v. Vanaire, Inc.*, No. CIV.A. 05-777-C, 2010 WL 1416672, at *3 (W.D. Ky. Mar. 31, 2010) (allowing report to rely on "evidence that followed discovery disputes" because it "did not fundamentally change his method of calculating damages from one report to the next"); *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, 2016 WL 3944060, at *1 (S.D. Fla. Mar. 29, 2016) (report allowed following court-approved request for re-inspection of vehicle); *Hoskins Oil Co., LLC v. Equilon Enters., LLC*, No. 3:16-CV-417, 2019 WL 691394, *2 (E.D. Tenn. Feb. 19, 2019) (allowing update of discount rate from 0% to 22%); *Plaseyed v. PCA Nat'l LLC*, No. 05-60099-CIV, 2006 WL 8434621, at *1 (S.D. Fla. Mar. 2, 2006) (both parties had "last-minute disclosure[s]" and expert opinions arose from movant's "own discovery requests"); *In re Accutane Prod. Liab. Litig.*, No. 8:04-MD-2523T30TBM, 2007 WL 201091, at *1 (M.D. Fla. Jan. 24, 2007) (finding "no evidence of sweeping revisions or additions to this witness's opinions"); *Dickens v. Castle Key Ins. Co.*, No. 13-20300-CIV, 2014 WL 11878438, at

case because the court had previously stricken the information in the supplemental report, it remains pertinent because the expert report at issue also included "new, affirmative opinions" which were "impermissible opinions after the expert disclosures deadline." 2019 WL 5073499, at *2–3.

Regarding the first change, TocMail's own description of the new sensitivity analysis confirms Bour undertook a new damages methodology, acknowledging she "took the total lost profits calculation and multiplied it by different percentages" "to illustrate the impact of varying the number of subscriptions on lost profits in order to assist the jury." Opp. at 4, 8.  This analysis does not correct or clarify anything in her Initial Report and is not based on any newly learned information.

As for the second change, the Opposition does not rebut Microsoft's interpretation of the way Bour arrived at her third disgorgement of profits numbers and agrees that Bour added a new calculation, as the "[I]nitial [R]eport contained only two scenarios for revenue." Id. at 8.  Despite this not being a proper update or correction contemplated by Rule 26(e), TocMail argues this "alternative lower bounds calculation"[5] was based on information produced after Bour's Initial Report. Id. at 8-9, 17.  But this is unavailing because Microsoft produced all documents by January 8, 2021, nearly three months before the expert discovery deadline.

TocMail's description of the third change, Bour's new lost profits calculation, as a simple "removal of consumer seats" is a significant mischaracterization.[6] Id. at 3. This change, too, was not a mere correction or update, but was a grossly improper change in opinion to patch up the gaps created by the rampant speculation upon which TocMail's damages theory depends.  Bour's Initial Report based TocMail's lost profits damages on the assumption that all of Microsoft's Advanced Threat Protection ("ATP") customers (i.e. seats) would have purchased TocMail's product instead

---

*1 (S.D. Fla. Dec. 30, 2014) (allowing supplemental report because expert did not have key reports and deposition testimony when he authored the initial report and gave his deposition").

[5] TocMail informs the Court and Microsoft that the Supplemental Report "contains a typo" and Bour's new disgorgement figures in the millions should instead be in the billions because she omitted three digits in each. Id. at 9, n.2. This is yet another untimely, new disclosure from TocMail.

[6] TocMail does not respond to Microsoft's summary of all the new facts that Bour provided on TocMail's new business plan that had not previously been disclosed to Microsoft, Mot. at 10, and merely comments that a line-item for marketing was budgeted as a "cost" in the Initial Report. Opp. at 10, n.4.

of Microsoft products containing the Safe Links feature, but for Microsoft's alleged false advertising. *See* Initial Report ¶¶ 80, 82 ("To measure TocMail's lost profits, I forecasted lost revenue as a basis for revenue using the number of seats for Microsoft Office products sold with ATP." "The remaining customers would switch to TocMail in April 2020."). But now that TocMail cannot prove that it would have captured all of Microsoft's 100 million consumers (since TocMail failed to ask Microsoft consumers about their purchase decisions to support this assumption and link its damages to the alleged wrongful act), Bour removed Microsoft's consumer seats and instead relied on the assumption that TocMail would have "a market share *equivalent to* Microsoft's" by April 2020 to calculate a new lost profits number. Mot. at 10 (emphasis added); *see* Supplemental Report ¶ 27 ("Lost Profits to TocMail have been calculated based on TocMail's business model, which is based on TocMail capturing a market share equivalent to Microsoft's seats for Office products sold with ATP. In other words, TocMail will not necessarily have the same customers as Microsoft, but rather TocMail's market share will consist of the same number of customers."); *Id.* ¶ 52 (similar). This subtle change in words, in turn, imparts a large change in TocMail's speculative damages theory and attempts to fix its shortcomings.

That TocMail intends to update Bour's report before trial "anyway" is a non-issue. Opp. at 2-3. TocMail states the Supplemental Report is but "an *interim* update" and would again update the report before trial when it requests that Microsoft provide updated information on revenues earned from Office 365 and ATP for the months after the data was initially produced. *Id.* at 9, n.3. Microsoft agreed to provide this information so that Bour can update her damages figures. Unlike the three changes Microsoft takes issue with *supra*, however, this type of update (*i.e.*, inserting updated data points) ***is*** contemplated by Rule 26(e), as it would not modify any opinions or methodologies, or introduce new facts about TocMail's business.[7] This contemplated future update does not justify the changes in the Supplemental Report.

In sum, "[TocMail's] claim that [it was] required to make this additional disclosure as a 'supplemental' disclosure under Rule 26(e) rings hollow. [TocMail] may not use Rule 26(e) to justify [its]untimely disclosure of a [new] opinion." *Vapco*, 2011 WL 13176159, at *3. The

---

[7] Along these same lines, as mentioned by TocMail and discussed *supra* at n. 4, the Motion does not attack Bour's "update [of the] WAAC calculations using current interest rates which had changed from seven months ago when her original Report was due," Opp. at 3-4, as this, too, is a simple insertion of updated interest rates that should not alter opinions, methods, or litigation strategies.

7

Supplemental Report provides new substantive opinions, new facts, and new methodologies to shore up its litigation strategy and revise the flaws in the Initial Report.[8] This is wholly improper and not the type of update contemplated by Rule 26. *Potish v. R.J. Reynolds Tobacco Co.*, No. 15-81171-CV, 2017 WL 5952892, at *3 (S.D. Fla. Nov. 30, 2017) (supplementing under Rule 26(e) cannot be used to bolster a defective report, engage in additional work, change opinions, offer new ones, or perfect a litigation strategy). Therefore, the Supplemental Report should be stricken.

### D. Prejudice Caused by the Untimely Supplemental Report Requires Striking under Rule 37.

The parties agree that if TocMail violates Rules 26(a) or (e), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Mot. at 11; Opp. at 19. TocMail asks the Court to engage in a balancing of factors analysis to determine whether the sanction of exclusion is warranted. Opp. at 19. In this case, it is.

First, TocMail's ability to prove that it has damages (*i.e.*, it has been injured by Microsoft), is an essential element of its Lanham Act claim. Here, Bour has changed TocMail's underlying damages theory regarding its ability to capture all of Microsoft's customers and admitted she makes "substantive changes" and provides "alternative lower bounds calculations" to "make it easy for the jury" to find damages. Opp. at 4, n.1, 8, 17; Supplemental Report ¶¶ 6, 9, 31, 166. Second, for the reasons discussed in this Reply, TocMail's excuses for sitting on these new opinions for two months are unjustifiable as they are not based on new information learned in discovery.

Third, allowing TocMail's untimely and improper "supplements" will unduly burden and prejudice Microsoft.

> There is simply no good reason for this delay, and therefore the failure to disclose the report is not 'substantially justified' …. and that disclosure of the report at this late stage will force [Microsoft's] counsel to take [Bour's] deposition quickly. Moreover, if the deposition leads to new (or modified) opinions, [Microsoft] may want to have [its rebuttal expert Dr. Ugone] respond to them, which would be very difficult given the short time remaining before trial. In short, allowing in the expert testimony would not be 'harmless' under Rule 37, and the prejudice to [Microsoft] counsels against finding 'good cause' under Rule 16.

---

[8] For the reasons set forth in Microsoft's *Daubert* motion [ECF No. 69] and reply in support thereof [ECF No. 78], Bour's Initial Report is riddled with deficiencies and lacks a reliable methodology that is helpful to the trier of fact, and thus should be excluded by the Court.

*Webber*, 2016 WL 3545849, at *2. Even setting aside the costs associated with reopening expert discovery for depositions and preparing a new rebuttal report, TocMail's offer to do so is in complete disregard for this Court's Scheduling Order and docket management. *Friebel v. Paradise Shores of Bay Cty., LLC*, No. 5:10-CV-120/RS-EMT, 2011 WL 2420230, at *2 (N.D. Fla. June 13, 2011) ("[T]o construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation.").

Fourth, TocMail was in possession of all information Bour relied on in her Supplemental Report for months prior to it being served. Opp. at 10-12. Thus, Bour's boilerplate reservation of the "right to update this Expert Report and my opinions contained herein when such information is received" is a nonstarter. *Id*. at 10. No reservation of rights justifies contravention of the Federal Rules of Civil Procedure. Moreover, as discussed *supra*, (1) the last relevant piece of ESI she purportedly needed was produced January 8, 2021, ahead of the March 30, 2021 expert discovery cutoff date; (2) any delay in obtaining deposition transcripts is irrelevant, as not a *single* deposition was cited or quoted even once in the body of the Supplemental Report and no new or changed information was provided by Ms. Griffith at her deposition (which was merely listed in Bour's sources considered); and (3) Bour was already aware at her deposition that she would be removing consumer seats from her analysis, yet she needlessly waited nearly 10 weeks later to produce her Supplemental Report.

Finally, TocMail's assertion that Microsoft invited Bour to provide a supplemental report is untrue and would still not excuse its improper supplementation. Opp. at 20-21. Instead, Microsoft's counsel apprised Bour at her deposition that she could use an errata sheet to fill-in information she forgot to state on record in response to two questions asked regarding Dr. Ugone's rebuttal report. Microsoft's counsel instructed Bour, "when you have an opportunity to read and sign your deposition, also under oath, you can fill in anything that you may remember or that you wish to add for th[e] question": "Do you agree that [Dr. Ugone] summarizes your analysis correctly in terms of the mechanics?" Opp. Ex. 4 at 167:25-168:5, 167:19-20. Moments later, Microsoft's counsel raised Bour's ability to utilize her errata sheet once more. *Id*. 168:20-25 ("Q: Are there any factual misstatements or errors in Dr. Ugone's report? A. I have – I don't know. Q. Okay. We'll leave a blank again for that so that you can fill that in if you find any, at the time you sign your report – your deposition."). These remarks are a far cry from an invitation to conduct a new

9

sensitivity analysis, create a new disgorgement model, and change TocMail's theory of the case to support lost profits.

## II. CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 16(f)(1)(C) and 37(c)(1)(C), exclude the "Supplemented Expert Report of Marcie D. Bour," preclude Bour from providing expert testimony based on the Supplemental Report, and award Microsoft reasonable expenses and attorneys' fees incurred in relation to this Motion. In the alternative, Microsoft requests that the Court re-open expert discovery to allow Microsoft to depose Bour and prepare a supplemental expert rebuttal report, and for TocMail to bear the burden of all fees and costs incurred by Microsoft.

Dated: July 7, 2021

Respectfully submitted,

By */s/ Evelyn A. Cobos*
EVELYN A. COBOS

**GREENBERG TRAURIG, LLP**
Mary-Olga Lovett (*admitted pro hac vice*)
Texas Bar No. 00789289
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
      orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
      FLService@gtlaw.com

*Attorneys for Defendant,*
**MICROSOFT CORPORATION**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, I served for foregoing document on all counsel of record identified on the below Service List in the manner specified.

/s/ <i>Evelyn A. Cobos</i><br>
EVELYN A. COBOS

## SERVICE LIST

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*