# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60416-CIV- CANNON/HUNT**

TOCMAIL INC., a Florida corporation,

       Plaintiff,

v.

MICROSOFT CORPORATION, a
Washington corporation,

       Defendant.

_____/

**PLAINTIFF'S SECOND AMENDED ANSWERS AND OBJECTIONS TO**
**DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Plaintiff, TOCMAIL INC. ("TocMail" or "Plaintiff"), hereby responds and objects to

Defendant, MICROSOFT CORPORATION's ("Microsoft" or "Defendant"), First Set of

Interrogatories to Plaintiff, TocMail Inc. ("Interrogatories"), served on August 31, 2020, as

follows:

**GENERAL  RESPONSES**

1.      By responding to the Interrogatories, Plaintiff does not waive:  (1) any objections

to the admissibility of, competency of, relevancy of, materiality of, or privilege attaching to any

information provided; or (2) the right to object to other discovery requests or undertakings

involving or relating to the subject matter of the Interrogatories and/or responses herein.  An

objection, answer or response to the Interrogatories in no way constitutes and should not be

construed as an admission of the relevance or admissibility of any information, or the truth or

accuracy of any information.  Plaintiff expressly does not concede the relevance or materiality of

any request herein or the subject matter to which it refers.

2.      Plaintiff objects to the Interrogatories to the extent they seek information that is in the possession, custody or control of third parties or is determined to be outside of Plaintiff's custody, possession or control after reasonable investigation.   Plaintiff will only produce information within its possession, custody or control.

3.      Plaintiff objects to the Interrogatories to the extent that particular Interrogatories call for "all," "each," "any," or "every," on the grounds that they are overly broad and unduly burdensome.  It is impossible to represent, even after a reasonable and diligent search, that all, each, or every bit of information falling within a description can be or has been assembled. Information may be known by many people and may be kept in a myriad of locations and files. Plaintiff cannot warrant or represent that each or all or every bit of information requested has been provided, only that Plaintiff has disclosed that information which it could gather in response to the Interrogatories after a reasonable and diligent investigation.

4.      Plaintiff is engaged in the continuing investigation of the matters inquired about in the Interrogatories.  The responses to the Interrogatories are believed to be accurate as of the date made.  Because Plaintiff's investigation into the matters inquired about is continuing, Plaintiff expressly reserves the right to supplement, correct or amend these responses.  Additionally, these answers and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts, information or documents at hearing or trial.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

5.      Plaintiff objects to the Interrogatories and to each of the Definitions and Instructions set forth in the Interrogatories to the extent such Interrogatories, Definitions, or Instructions purport to impose a duty or obligations beyond those set forth in the Federal Rules of

Civil Procedure, the Local Rules, or any applicable order or ruling by the Court in this action. Plaintiff will respond in accordance with applicable Rules, Procedures and Orders.

6.       Plaintiff objects to the definition of "you," "your" and "TocMail" in Definition No. 9 in the Section titled "Definitions" as the definition is overbroad and/or improper to the extent it seeks to impose discovery obligations on, or seek information from, any individual or entity other than Plaintiff, including Plaintiff's attorneys.  Plaintiff will respond only on behalf of Plaintiff and provide information available to Plaintiff.

7.       Plaintiff objects to the definition of "TocMail's Patent" in Definition No. 10 in the Section titled "Definitions" to the extent such definition suggests that TocMail is not the owner of United States Patent No. 10,574,628.

8.       Plaintiff objects to the definition of "TocMail's Product" in Definition No. 11 in the Section titled "Definitions" to the extent such definition suggests that TocMail's Product does not use the technology found in TocMail's Patent.

9.       Plaintiff incorporates each objection and response set forth herein into the specific answer to the Interrogatory below.

## **DEFINITIONS FOR ANSWERS AND OBJECTIONS**

1.       The term "Office 365" as used throughout the Answers and Objections below refers to Office 365 and Microsoft 365.

2.       The term "ATP" as used throughout the Answers and Objections below refers to Exchange Online Advanced Threat Protection, Office 365 Advanced Threat Protection, and Microsoft Defender for Office 365.

## SPECIFIC ANSWERS AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all means by which TocMail sells or licenses TocMail's Product including all individuals, entities, websites, retailers, wholesalers, distributors, or other third parties authorized by TocMail to sell or license TocMail's Product. For each, specify (i) if it is a Brick and Mortar store, where it is physically located, or, if it is an online store, the URL of that website and all countries where TocMail's Product is offered for sale/licensing; (ii) the time period during which it was authorized to sell or license TocMail's Product, and (iii) the retail price at which it was authorized to sell or license TocMail's Product.

**RESPONSE**:  TocMail started selling its product on December 12, 2019 via Google AdWords. An email from Google with header confirming the date is being provided in response to Microsoft's First Request for Production.  With the exception of press releases, TocMail's product has been exclusively advertised on Google AdWords to date. Google AdWords provides sufficient traffic to TocMail's website and, therefore, no additional advertising platform or method has been needed to date. TocMail sells its service exclusively from its website, tocmail.net.  A commercial license costs $3 per user per month. Personal plans cost $5 per user per month. TocMail's product is offered for sale and license world-wide.  Moreover, TocMail offers a free, company-wide, 30-day trial for its product on its website.  Through the signup email in the free trial, TocMail invoices the company prior to trial expiration at a rate of $3 per company email address per month.  Should the company not pay the invoice, when the free trial expires, and any company employee attempts to login, the user is presented with a popup letting the user know that the trial has expired and the product needs to be purchased along with a link to TocMail's website that contains a number of ways from the company to contact TocMail for purchase and instant

activation. Companies and individuals can also choose to purchase TocMail's product at any time by clicking the "Purchase" link on the TocMail website.

**INTERROGATORY NO. 2:**

Please state the total number of TocMail's Product sold and/or licensed, by week and month, per country where TocMail's Product is sold and/or licensed, from the first sale or license to present, and identifying the date of the first sale or license, offer to sell or license, and/or public use of TocMail's Product. Please also state the total number of users, sales volumes, and profits associated with the sales and licenses of TocMail's Product, by week and month, per country where sold and/or licensed, from the first date of sale or license to present, if different.

**<u>RESPONSE</u>**:  Despite over 33,000 visitors to TocMail's website who responded to an advertisement regarding protection against phishing attacks, and despite TocMail being the sole provider of a pure cloud-based time-of-click solution to thwarting the very attack that Microsoft falsely promoted it solved years ago, TocMail has had no sales due to Microsoft's false advertising. Hence, Microsoft has prevented TocMail from breaking into the market.

**INTERROGATORY NO. 3:**

State TocMail's total gross revenues to the present, by week and month per country where TocMail's Product is sold and/or licensed.

**<u>RESPONSE</u>**:  Despite over 33,000 visitors to TocMail's website who are interested in protection against phishing attacks, and despite TocMail being the sole provider of a pure cloud-based time-of-click solution to thwarting the very attack that Microsoft falsely promoted it solved

years ago, TocMail has had no revenue due to Microsoft's false advertising.  Hence, Microsoft has prevented TocMail from breaking into the market.

**INTERROGATORY NO. 4:**

Identify all persons who have knowledge of any facts or allegations regarding the claims raised in the Complaint or damages sought in this Lawsuit.

**<u>RESPONSE</u>**:  TocMail objects to Interrogatory No. 4 on the grounds that it is overly broad in scope, unduly burdensome and seeks information not relevant to any party's claims or defenses and/or proportional to the needs of the case.  For example, as documented in the expert report of Michael C. Wood, literally millions of technologists have knowledge of IP Cloaking and, therefore, have knowledge of facts regarding claims raised in the Complaint in this action. As another example, there are many ethical and blackhat hackers that know that Safe Links is defenseless against the very attack that it is promoted to protect against. It is impossible to "identify all persons" who have knowledge of the facts that are related to this case. This particular case is not about a single event that a limited number of individuals would have information regarding. On the contrary, this lawsuit involves almost ten years of continued false advertising by Microsoft and other cybersecurity vendors. There is no conceivable manner in which one could identify all persons who have knowledge of "any facts" regarding the claims in this suit.

Subject to and without waiving the foregoing objections, TocMail incorporates its response to Interrogatory No. 7 below.  Additionally, Michael Wood (CEO of TocMail) and Marcie Bour (Plaintiff's disclosed financial expert) have information regarding damages sought in this Lawsuit. Moreover, the following may have knowledge regarding this lawsuit:  Global Data Review

(*https://globaldatareview.com/cybersecurity/microsoft-lied-about-cloud-security-service-43-billion-lawsuit-alleges*).

**INTERROGATORY NO. 5:**

Identify all instances known to You of consumer confusion, including mistake or deception, relating to any of Microsoft's advertising of Safe Links. For each instance, Your response should include: (i) when and how You became aware of the instance, (ii) when the instance occurred, (iii) all persons with knowledge of such instance, (iv) the source of their knowledge, (v) the circumstances reflecting the confusion, (vi) the advertisement or website allegedly giving rise to the confusion or deception, and (vii) all documents supporting Your response to this Interrogatory.

**RESPONSE**:  TocMail objects to Interrogatory No. 5 on the grounds that it is overly broad in scope, unduly burdensome and seeks information not relevant to any party's claims or defenses and/or proportional to the needs of the case, as the request is not limited in any manner, including for example to issues in this case.  Subject to and without waiving the foregoing objections, TocMail responds regarding confusion to which it is aware as follows:

In 2015, Microsoft released its Exchange Online Advanced Threat Protection service, and promoted it in the corresponding Exchange Online Advanced Threat Protection Product Guide. To the best of TocMail's knowledge, this was the only Product Guide that Microsoft produced for Exchange Online Advanced Threat Protection. In 2016, Microsoft changed the name of Exchange Online Advanced Threat Protection to Office 365 Advanced Threat Protection, and promoted it in the corresponding Office 365 Advanced Threat Protection Product Guide. The only product guides that were available for companies to consult when making a purchase decision promoted the false advertising message that Safe Links supposedly protects users from "links that are redirected to

unsafe sites by a forwarding service after the message has been received." TocMail does not have knowledge regarding the names of the multitudes who consulted the only product guides that Microsoft published.

Likewise, Microsoft's official Office 365 blog introduced Exchange Online Advanced Threat Protection with the blog post aptly entitled "Introducing Exchange Online Advanced Threat Protection." This blog post promoted the false advertising message that Safe Links supposedly protects users from "links that are redirected to unsafe sites by a forwarding service after the message has been received." (The same false message as the Product Guides.)

Likewise, *the* ATP product page (Microsoft's words) was originally: *https://products.office.com/en-us/exchange/online-email-threat-protection*. When the reader wanted to understand the security of Office 365, this page provided a link to *https://products.office.com/en-us/business/office-365-trust-center-welcome* where the reader can download "Office 365 security white paper." This whitepaper promoted the false advertising message that Safe Links supposedly protects users from "links that are redirected to unsafe sites by a forwarding service after the message has been received." (The same false message as the Product Guides, and the same false message as the official blog announcement.) See video being produced by TocMail in response to Microsoft's First Request for Production.

Likewise, Microsoft produced a data sheet for its partners titled "Office 365 Advanced Threat Protection" which had the Microsoft sanctioned language for partners to use when promoting Safe Links. The Partner Datasheet promoted the false advertising message that Safe Links supposedly protects users from "links that are redirected to unsafe sites by a forwarding service after the message has been received." (The same false message as the Product Guides, the

same false message as the official blog announcement, and the same false message as the ATP product page.)

Likewise, Microsoft's partners incorporated this same false message in their brochures. For example, Microsoft Partner Rackspace has 6,600 employees, including hundreds of Microsoft Certified Professionals. Rackspace promotes ATP Safe Links in "The Rackspace Guide to Protecting Your Small Business with Office 365®." The Rackspace Guide promotes the false advertising message that Safe Links supposedly protects users from "links that are redirected to unsafe sites by a forwarding service after the message has been received."

Likewise, Microsoft incorporates this same false message in various brochures and webpages. For example, see the brochure titled "Data Resiliency in Microsoft Office 365" and the webpage titled "Malware and Ransomware Protection in Microsoft 365." Both promote the false advertising message that Safe Links supposedly protects users from "links that are redirected to unsafe sites by a forwarding service after the message has been received."

Whether the instance of deception was *the* Product Guides, *the* Product Page, *the* official blog announcement, *the* Partner Datasheet, or partner brochures based on Microsoft approved messaging, millions of purchasers were deceived by *the same false message*. TocMail does not know whether each company received the false message from the product guide, the product page, the partner datasheet, the partner brochures, etc. The same false message was repeatedly delivered on the foremost sources of information regarding Safe Links. Hence, we know the false message that the vast majority of purchasers relied upon, and this is the point.

The product page was changed to *https://products.office.com/en-us/exchange/advance-threat-protection*. This page introduces both a video and a brochure that again portrayed Safe Links as supposedly protecting users from email links that only lead to malicious destinations after

the email has been delivered. This is the number one page on Google when users searched for purchasing Office 365 Advanced Threat Protection. This is the URL that over one thousand third-party webpages directed users to for purchasing Office 365 Advanced Threat Protection.

The product page was once again changed, this time to *https://www.microsoft.com/en-us/microsoft-365/exchange/advance-threat-protection*. This page included the same video and brochure that portray Safe Links as supposedly protecting users from email links that only lead to malicious destinations after the email has been delivered.

Microsoft also produced various PowerPoint presentations specifically for the audience of Business Decision Makers, Technology Decision Makers, and IT Decision Makers. These PowerPoint presentations falsely state that ATP Safe Links *ensures* links are harmless. TocMail does not know the individual instances in which this patently false message was delivered to the various Business Decision Makers, Technology Decision Makers, and IT Decision Makers.  See video being produced by TocMail in response to Microsoft's First Request for Production.

TocMail has produced additional materials, including ESI, documents and videos, in this litigation demonstrating consumer confusion, including mistake or deception.

Finally, Microsoft has produced an abundance of ESI and other documents and materials in this litigation that demonstrate consumer confusion, including mistake or deception.

**INTERROGATORY NO. 6:**

Identify all third parties referenced in Paragraphs 207-209 of the Complaint, and for each third party, identify all documents or URLs in which the third party used "promotional and advertising messages that are false" and to which "Microsoft contributed," as alleged in Paragraphs 208 and 209 of the Complaint.

10

**RESPONSE**: Not applicable in light of the filing of TocMail's Amended Complaint, which does not contain such language.

**INTERROGATORY NO. 7:**

Identify (by full legal name and last known address) all persons (other than Your attorneys) with whom You communicated regarding the subject matter of this Lawsuit, including but not limited to any distributor, retailer, seller, contractor, expert, consultant, or any other third party. Please include (i) a description of those persons' knowledge, (ii) a description of their involvement with the Lawsuit, and (iii) a description of those communications.

**RESPONSE**:  TocMail objects to Interrogatory No. 7 on the grounds that it is overly broad in scope and seeks information not relevant to any party's claims or defenses and/or proportional to the needs of the case.  TocMail also objects to Interrogatory No. 7 to the extent that it seeks attorney/client communications, work-product or any other materials protected by other applicable privileges.  For example, any communications with litigation funding companies are not relevant to any party's claims or defenses and/or proportional to the needs of the case, and are protected by applicable privilege including the work product privilege, common interest privilege and the agency exception. Moreover, TocMail objects on the grounds that Interrogatory No. 7 seeks information or documents protected by rights of privacy or that contain or constitute personal identifying information of third parties.

Subject to and without waiving the foregoing objections, TocMail responds as follows:

- TocMail Shareholders: Esteban Serrano, Osvaldo Jerez, and Juan Pedro Carmenate. They are kept abreast of the filings and read all materials that TocMail submits to the court and Microsoft. They are not involved in this litigation nor are they participating in the litigation

in any manner. They only receive regular updates in the normal course of business. Microsoft can reach them via TocMail's counsel.

- Mikail Tunç has been informed of this lawsuit and has been provided a copy of the expert report of Michael C. Wood, as he may be a witness in this action.  His known business address is Shift Left Security LTD, Ground Floor, Unit B Lostock Office Park, Lynstock Way, Lostock, Bolton, England, BL6 4SG.

- David Switzer (creator of mkhtaccess_red) has been informed of this lawsuit and provided a copy of the expert report of Michael C. Wood, as he may be a witness in this action. TocMail does not have knowledge regarding his legal address.

- Hector Monsegur (aka Sabu) has been provided a partial copy of the expert report of Michael C. Wood. TocMail does not have knowledge regarding his legal address.

- Gil Friedrich (CEO of Avanan) was contacted about this lawsuit given that Avanan has written on multiple occasions regarding Safe Links' lack of defense against IP Cloaking. TocMail does not have knowledge regarding his legal address.

- Everett Stern contacted TocMail to offer his firm's assistance in gathering information necessary for expert reports and other evidence for this case. Mr. Stern has been provided a copy under confidential arrangements of the expert report of Michael C. Wood so that he can be ready to provide assistance for rebuttal to Microsoft's experts if TocMail should choose to employ his services. TocMail does not have knowledge regarding his legal address.

- Potential Investors: TocMail sought to raise capital due to the lack of sales and the resulting litigation costs. This litigation was referenced in a password protected webpage accessible only to potential investors (*https://tocmail.net/investors/*). The sum total reference of the

lawsuit being: "TocMail Inc. is engaged in a $43 billion lawsuit against Microsoft Corp. alleging unfair competition created by Microsoft's false advertising. TocMail's lawsuit further alleges Microsoft participated in contributory false advertising with Symantec, Mimecast, ProofPoint, and Vade Secure." TocMail used Invstor.com to raise awareness of TocMail seeking funds, and does not know if any investors actually saw this message. In fact, TocMail cannot name a single investor that it knows that saw this message. The message is stated herein for completeness. TocMail was going to hire an investor outreach company called Marquee Equity, but later decided not to move forward. Employees at Marquee Equity may have been exposed to the message above. No specifics of either the allegations nor other aspects of the litigation have been discussed with Marquee Equity nor with any potential investors.

- Friends: Kenedy Goyes and Victor D'Agostino who are personal friends of Michael Wood. For their own curiosity, they have read the initial complaint. No specifics regarding the case were discussed with them, nor are they involved in this lawsuit in any manner whatsoever.  TocMail objects to disclosure of their addresses as confidential and irrelevant.

- Family: Family members of Michael Wood and TocMail's shareholders know that a lawsuit with Microsoft is ongoing. No specifics regarding the litigation are discussed with them, nor are they involved in this lawsuit in any manner whatsoever.  TocMail objects to disclosure of their addresses as confidential and irrelevant.

- Litigation funding companies:  TocMail had communications with litigation financing companies. TocMail objects to providing any additional information concerning such communications as set forth above.

13

**INTERROGATORY NO. 8:**

State the categories and amounts of damages sought by TocMail in the Lawsuit, providing for each category of damages: (i) the basis, (ii) a calculation for how You arrived at the amount, and (iii) identify all documents that support Your alleged damages.

**<u>RESPONSE</u>**: TocMail objects to Interrogatory No. 8 as premature to the extent that discovery and TocMail's investigation is ongoing. TocMail also objects to Interrogatory No. 8 to the extent it seeks information that has or will be provided by expert witnesses. TocMail also objects to Interrogatory No. 8 to the extent that it seeks attorney/client communications, work-product or any other materials protected by other applicable privileges. Moreover, TocMail objects to Interrogatory No. 8 because thousands of pages of documents that TocMail will rely on to calculate disgorgement of profits and calculation of damages were designated by Microsoft as "Confidential – Counsel Only" pursuant to the terms of the Agreed Confidentiality Order and TocMail has not had access to them. Thus, it is impossible for TocMail to fully answer Interrogatory No. 8. Subject to and without waiving the foregoing objections, TocMail responds to the best of its ability as follows:

TocMail is seeking two components of damages under 15 U.S.C. § 1117: (1) damages sustained by TocMail and (2) Microsoft's profits. For damages sustained by TocMail, TocMail is currently seeking treble damages due to lost profits and reputational damage. This can be calculated at least by using the number of ATP users provided by Microsoft. See the Expert Report of Marcie D. Bour for details and calculations and additional documents produced in this case by TocMail and by Microsoft.

Independent of damages sustained by TocMail, TocMail is seeking Microsoft's profits based on the total revenue received from the sale of Office 365, which is warranted because the

false advertising campaign influenced purchases of Office 365. However, TocMail reserves the right to seek disgorgement of profits based on revenue received by Microsoft from Office 365, the sale of ATP, the sale of products that include ATP, or any combination thereof.  TocMail also reserves the right to determine whether the disgorgement time period shall start in 2015 (with the introduction of Safe Links) or 2019 (with the launch of TocMail). TocMail is also seeking treble disgorgement of profits.  Treble disgorgement of profits is warranted for Microsoft's consistent, willful, knowing engagement in false advertising or, alternatively for future deterrence.

The basis includes, among other things, a recognition that not one company would have migrated to Office 365 cloud-based email service if Microsoft had not repeatedly engaged in false advertising. More specifically, companies would have waited for a solution to IP Cloaking before moving email security to the cloud. No company would willingly make themselves defenseless against such a common, trivial, effective attack. As Microsoft's CEO correctly states: "Businesses and users are going to embrace technology only if they can trust it." Consumer trust in Office 365 was built by false advertising from its launch until present. Were it not for the false advertising, there would be no trust and thereby no purchases.

Microsoft robbed TocMail of its moment in history. TocMail has solved one of the biggest, if not the biggest, cybersecurity issues. Yet, Microsoft's advertising falsely convinced the industry that this issue had already been solved years ago when Microsoft fully knew that it had not actually solved that issue. This results in tremendous injury to TocMail in terms of, among other things, consumers withholding trade from TocMail and significant harm to TocMail's brand.

Instead of TocMail being able to create a brand based on its historic achievement, Microsoft built its security brand on the very product whose Product Guide and other advertising materials espouse literally false messaging. TocMail is the sole provider of a cloud-based time-of-

click redirect service that prevents forwarding services from being able to redirect users to unsafe sites after the message has been delivered. In other words, TocMail is the sole provider of that which Microsoft falsely advertises regarding its Safe Links service.

Microsoft has also, among other things, prevented TocMail from being recognized as the first-to-market with a solution to the one security issue that prevented email security from safely moving to the cloud.

Also, as the sole provider of a patented technology, the damages sought are commensurate with the money that TocMail would have made over the lifetime of its patent were it not for Microsoft's misdeeds.

TocMail is also seeking an injunction against Microsoft to prohibit Microsoft from using the name "Safe Links."

TocMail's Amended Complaint further provides for the trier of fact to require corrective advertising which would affect damages calculations accordingly.

**INTERROGATORY NO. 9:**

Identify all individuals who are or have been involved in the design and development of any product or software program that embodies or practices the subject matter disclosed or claimed in TocMail's Patent. In addition, for each individual identified, state the employer(s) and title(s), and describe all of their current and past job responsibilities.

**RESPONSE**:  TocMail objects to Interrogatory No. 9 on the grounds that it is overly broad in scope and seeks information not relevant to any party's claims or defenses and/or proportional to the needs of the case.  Subject to and without waiving the foregoing objections, TocMail responds as follows:  Michael Wood, TocMail's CEO and product programmer.

**INTERROGATORY NO. 10:**

If TocMail contends that Microsoft has infringed TocMail's Patent, describe fully and in detail each instance how Microsoft's Safe Links service infringes, directly or indirectly, by satisfying each asserted claim limitation, and identify all individuals with knowledge relating to your response to this interrogatory.

**RESPONSE**:  TocMail does not contend that Microsoft has infringed TocMail's U.S. Patent No. 10,574,628.

**INTERROGATORY NO. 11:**

Separately for each claim of TocMail's Patent, identify fully the factual bases for any alleged objective indicia of non-obviousness, including, without limitation any alleged long-felt but unsolved need, failure of others, licensing of TocMail's Patent, unexpected results, expressions of skepticism, copying, and commercial success of the claimed invention.

**RESPONSE**:  TocMail objects to Interrogatory No. 11 on the grounds that it is overly broad in scope, unduly burdensome and seeks information not relevant to any party's claims or defenses and/or proportional to the needs of the case.  This case involves false advertising claims under the Lanham Act, not patent infringement claims.  TocMail refers Defendant to the expert report of Michael C. Wood for documentation regarding the problem that Microsoft, Google, Facebook, and other large companies failed to solve after almost two decades of trying to do so. The report also explains how this problem has become the largest cybersecurity issue. Thus, TocMail's CEO has solved a long-standing, deeply felt need that even the largest companies could not solve despite investing significant time, energy, and money in attempting to do so.

**INTERROGATORY NO. 12:**

Identify all valuations that have valued, in whole or in part, TocMail, TocMail's Product, and/or TocMail's Patent, any related patent applications, trade secrets, or any other intellectual property of TocMail.

**<u>RESPONSE</u>**:  TocMail objects to Interrogatory No. 12 on the grounds that it is overly broad in scope, unduly burdensome and seeks information not relevant to any party's claims or defenses and/or proportional to the needs of the case.  TocMail also objects to the phrase "any related," as it is ambiguous, vague, and unduly burdensome. Moreover, TocMail objects to the extent that Interrogatory No. 12 seeks information that is in the possession, custody or control of third parties, and objects to any valuations other than valuations placed upon the intellectual property owned by TocMail.  Subject to and without waiving the foregoing objections, TocMail responds as follows: None of the intellectual property owned by TocMail has been assigned a valuation either by TocMail nor by any third-party.

Dated: March 30, 2021                               Respectfully submitted,

                                                                        By:   /s/Joshua D. Martin
                                                                        Joshua D. Martin
                                                                        Florida Bar No. 028100
                                                                        josh.martin@johnsonmartinlaw.com
                                                                        JOHNSON & MARTIN, P.A.
                                                                        500 W. Cypress Creek Rd., Suite 430
                                                                        Fort Lauderdale, Florida 33309
                                                                        Telephone: (954) 790-6699
                                                                        Facsimile: (954) 206-0017

                                                                        *Attorneys for TocMail Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 30th day of March 2021, the foregoing document is

being served this day on all counsel of record on the service list via electronic mail.

By:   /s/ Joshua D. Martin
          Joshua D. Martin

## SERVICE LIST

### *TOCMAIL INC. v. MICROSOFT CORPORATION*
### 20-60416-CIV- CANNON/HUNT

**Joshua D. Martin**
E-Mail: josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd.
Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

**Francisco O. Sanchez**
E-Mail: sanchezo@gtlaw.com
       orizondol@gtlaw.com
**Evelyn A. Cobos**
E-Mail: cobose@gtlaw.com
       MiaLitDock@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

**Mary-Olga Lovett** *(admitted pro hac vice)*
E-Mail: lovettm@gtlaw.com
**Rene Trevino** *(admitted pro hac vice)*
E-Mail: trevinor@gtlaw.com
GREENBERG TRAURIG LLC
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 374-3505

**<u>VERIFICATION</u>**

STATE OF _Virginia_  )
                     )
COUNTY OF _Hampton_  )

     BEFORE ME, the undersigned authority, personally appeared __Michael Calvin Wood__, the _____CEO_____ of TOCMAIL INC., being by me first duly sworn on oath deposes and says that the foregoing Answers to Interrogatories are true and correct, and that he/she has read the Answers to Interrogatories and knows the content thereof.

TOCMAIL INC.

Signature: _Michael C. Wood_

Print: _Michael Calvin Wood_

Title: _CEO_

SWORN TO AND SUBSCRIBED before me this _30th_ day of _March_____, 2021.

**Terrill Jenkins**

REGISTRATION NUMBER
7901183
COMMISSION EXPIRES
**December 31, 2024**

My commission expires: 12/31/2024

NOTARY PUBLIC, State of _Virginia_

_Terrill Jenkins_
Print name of notary

Notarized online using audio-video communication

20