## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-60416-CIV- CANNON/HUNT

TOCMAIL INC., a Florida corporation,

       Plaintiff,

v.

MICROSOFT CORPORATION, a
Washington corporation,

       Defendant.

_____/

### PLAINTIFF TOCMAIL INC.'S *DAUBERT* MOTION TO EXCLUDE REPORT, OPINIONS, AND TESTIMONY OF MICROSOFT INC's EXPERT KEITH R. UGONE AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and Rules 702 and 403 of the Federal Rules of Evidence, Plaintiff TOCMAIL INC. ("TocMail" or "Plaintiff") hereby moves to exclude the proposed expert testimony of Keith R. Ugone ("Ugone") identified by Defendant, MICROSOFT CORPORATION ("Microsoft" or "Defendant") as a testifying expert.

## I.      INTRODUCTION

Ugone's purported rebuttal report is fraught with unsupported, unhelpful statements and opinions that contradict established case law.

Instead of rebutting the opinions disclosed by TocMail's damages expert, Marcie D. Bour ("Bour"), Ugone offers opinions on new areas not raised by Bour's expert report. Specifically, the majority of Ugone's Report is dedicated to liability causation issues, namely that TocMail will be unable to establish causation in this case for its false advertising claims. Thus, Ugone proffers testimony as a purported causation and liability expert and not as a damages rebuttal expert. However, Bour is solely a damages expert and expressly provided in her Report and at deposition

that she is not expressing any opinions regarding causation or liability.  If Microsoft sought to present expert testimony regarding causation, it needed to do so through a proper affirmative expert report rather than a rebuttal report, in which case TocMail could have presented a rebuttal expert report.  Thus, Ugone's Report should be excluded as untimely and improper or, at a minimum, Ugone should be excluded from testifying as to causation and liability issues.

Even if Ugone's opinions that Bour failed to consider causation facts could be considered "rebuttal" testimony, they are contrary to legal precedent, unhelpful, and prejudicial, because it is perfectly permissible under well-established law for damages experts to presume causation and liability.  Thus, Ugone should be excluded from opining in any fashion that Bour failed to consider causation or liability.

Moreover, Ugone incorrectly opines that Bour failed to apportion which part of gross sales of products containing Safe Links were attributable to false advertisements regarding that feature for purposes of disgorgement of profits. It is well-established Eleventh Circuit law that defendant bears the burden to prove apportionment, *i.e.*, to conduct an apportionment analysis.  Bour provided gross sales calculations in her Report as required by 15 U.S.C. § 1117 for the Microsoft products that contain Safe Links. Yet, Ugone failed to conduct any type of apportionment analysis in his Report or provide any underlying support for his apportionment opinions. Moreover, any testimony by Ugone on apportionment should have been disclosed in an affirmative report.  Thus, Ugone should be excluded from opining that Bour failed to apportion gross sales and should be excluded from providing any type of apportionment at trial, because it was not timely disclosed.

The additional opinions expressed by Ugone in his Report are unreliable, conclusory, and barren of support, and therefore fail to meet the requirements of Federal Rule of Evidence 702. For example, Ugone provided a statement regarding Microsoft's purported overall gross profit

margins for all products without any analysis or support regarding how Ugone arrived at those purported gross profit margins as representative of Microsoft's costs.  He failed to review any underlying records to verify such gross profit margins and merely relied on the unsupported gross margin numbers that Microsoft provided. Even if Microsoft can testify as to its overall gross margins, Ugone should not be permitted to backdoor this unverified information from Microsoft. Allowing Ugone to be a mouthpiece for Microsoft is prejudicial and will mislead the jury.  The probative value of any such testimony would be substantially outweighed by the undue prejudice and risk of confusing a jury.

Further, Ugone's testimony on causation, apportionment, and costs is untimely and should have been disclosed with underlying support by way of an affirmative report. This was not done. Several courts have previously excluded Ugone's testimony as unreliable for lack of support and as unhelpful.[1] This Court should also exclude Ugone's untimely and unreliable burden of proof opinion testimony for similar reasons.

## II.      BACKGROUND

### A.      The Scheduling Order.

The Court's original Scheduling Order required TocMail to disclose its affirmative expert reports under Federal Rule of Civil Procedure 26(a)(2) on October 1, 2020 and Microsoft to disclose its affirmative expert reports under Rule 26(a)(2) on November 2, 2020. (ECF No. 27, p.

---

[1] *See, e.g., Townsend v. Monster Beverage Corporation*, 303 F.Supp.3d 1010, 1038 (C.D. Cal., March 20, 2018) (striking Ugone's testimony because his conclusory assertion that his use of Nielsen data was "consistent with standard economic practice," was unsupported by any outside authority); *LSQ Funding Group, L.C. v. EDS Field Services*, 879 F.Supp.2d 1320, 1336 (M.D. Fla., July 10, 2012) ("Ugone's opinions are barred by *Daubert*" because they are unhelpful and "lack[] factual support . . ."); *SUNOCO Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, Civil Action No. 17-1390-LPS-CJB, 2020 WL 7330715 at *5-*7 (D. Del., Jan. 13, 2020) (excluding Ugone's testimony because "he never engages in an apportionment analysis . . .").

1).  On October 1, 2020, TocMail disclosed the Expert Report of Marcie Bour, TocMail's damages expert.  Microsoft did not produce any affirmative expert reports or disclose any affirmative testimony on or before November 2, 2020.

The Court's original Scheduling Order also required that the Parties disclose any rebuttal expert reports by November 23, 2020.  (ECF No. 27, p. 1).  TocMail did not disclose any rebuttal experts because Microsoft did not disclose any affirmative experts.  Microsoft requested an extension of time to disclose its rebuttal report regarding Bour's Report on lost profits and Microsoft's gross sales, which TocMail consented to even though Microsoft had nearly two months to serve a rebuttal report following Bour's affirmative report on damages.  Microsoft served Ugone's "Rebuttal" Report on December 7, 2020 ("Ugone Report"), attached hereto as **Exhibit "1."**  The Expert Report of Marcie D. Bour ("Bour Report") is attached hereto as **Exhibit "2."**

## B.     Bour's Report.

Bour is a damages expert.  In her Report, she provided opinions regarding (1) Microsoft's sales for purposes of calculating disgorgement of profits and (2) TocMail's lost profits as a measurement of damages.  *Bour Report*, ¶¶ 2-3.  Bour expressly stated in her Report that she "will not be expressing an opinion regarding causation or liability in this matter."  *Id.* at ¶ 4.  Indeed, Bour does not express any opinion regarding causation or liability in her Report.  As acknowledged by Microsoft in its *Daubert* Motion (ECF No. 69, p. 25), Bour repeatedly confirmed at her deposition that she is not opining on causation or liability in this action, but presumes that TocMail will establish causation and liability for purposes of her Report. *See, e.g., Bour Depo*, 26:7-12; 38:14-22;  39:13-22;  40:19-41:18;  42:24-25;  54:20-55:2;  56:23-57:2;  116:19-117:5;  121:3-24; 139:19-140:5; 141:11-17, attached as **Exhibit "3"**.

For disgorgement, Bour provided a detailed analysis of Microsoft's revenues, including a by-product revenue breakdown using Microsoft Product Breakdown Reports and other Microsoft revenue data available to Bour at the time of her Report. *Bour Report*, ¶¶ 2, 9-16, and 33-76. The Microsoft revenue data available at that time included limited revenue information provided by Microsoft for Office 365 products sold with Office Advanced Threat Protection ("ATP"), but not Office 365 product sales associated with the ATP Standalone revenues, because Microsoft did not provide certain pricing data. *Bour Report*, ¶ 14 and fn 3. Bour's revenues analysis also relied on Excel pivot tables provided by Microsoft.[2] *Bour Report*, ¶ 42.

As noted above, Bour's Report includes underlying assumptions regarding causation and liability as relates to Microsoft's products. TocMail has alleged that Microsoft falsely advertised its ability to protect its cloud-based Office users against IP Cloaking threats using its ATP Safe Links. *Bour Report*, ¶¶ 23-24. ATP Safe Links is included in many of the Office 365 and Microsoft 365 subscriptions, as well as other Microsoft products. For those that do not include ATP, it is available as an add-on. *Bour Report*, ¶ 26.

Bour's disgorgement analysis includes by product-revenue breakdowns for Microsoft products containing ATP Safe Links where data was available from Microsoft to do so. *See, e.g, Bour Report*, ¶¶ 13-15. Thus, Bour's Report breaks down revenues to the level of Microsoft products containing ATP Safe Links, except for ATP Standalone revenues, even though Bour is not required to conduct an apportionment analysis. *Id.* Bour's Report does not, however, apportion revenues specifically to those revenues only attributable to the Safe Links feature separately, because, not only is Bour not required to conduct an apportionment analysis under 15 U.S.C. § 1117(a), Microsoft failed to produce any data that would make it possible to do so.

---

[2] The dataset that was drawn upon to create the pivot table was not provided by Microsoft.

In fact, Kathryn Griffith, Microsoft's corporate representative designee regarding Microsoft's financial information, testified at deposition that Microsoft does not maintain financial information at the Safe Links level. *Griffith Depo*, 8:22-9:2; 21:20-24, attached as **Exhibit "4"**. Microsoft acknowledged this in its own *Daubert* Motion: "Because Microsoft sales information is maintained at the product level and not at the feature level, revenues attributable to Safe Links are not available, although revenues for [the larger products of] ATP and Office 365 are available." Thus, Bour did exactly what she was required to do by calculating total gross sales for the products at issue that contain Safe Links.

## C.     Ugone's Report and Testimony.

Ugone's "Rebuttal Expert Report" cannot qualify as a "rebuttal" report because it raises new areas not argued by Bour and does not contradict or rebut evidence on the same subject matter identified in Bour's Expert Report. For example, the majority of Ugone's opinions go to causation and attack Bour's purported inability to establish causation despite the fact that Bour expressly states that she is not opining on causation or liability. Ugone repeatedly admits this during his expert deposition. *See, e.g., Ugone Depo*, 22:2-18 ("Q. Are you providing an opinion on causation . . .? A. I'm providing an opinion that Ms. Bour . . . fails to establish a linkage . . . I'm saying there was a failure to do causation."); *Ugone Depo*, 23:18-24:3 ("A. . . . she basically admitted she's doing no causation analysis. . . . all she's doing is coming up with revenues"); *Ugone Depo*, 62:22-64:19 ("Q. . . When you're referring to an economic nexus there, are you referring to causation? A. Yes, . . . So yes, I'm talking about causation . . . Q. . . . . And you understand that Ms. Bour expressly stated that she is not providing an opinion on causation . . . ? A. Yeah, so I agree she said that numerous times, but that's one of the failings that I'm pointing out . . ."); *Ugone Depo*, 67:3-9 (Q. . . . . So if I'm understanding you correctly . . . you're expressing things that Ms. Bour

should have done in terms of causation . . . ? A. Yes. . . .”); *Ugone Depo*, 71:11-25 (Q. So again, is this all part of your opinion regarding causation? A. The economic and damages related causation, yes.”). *Ugone Depo* excerpts attached as **Exhibit "5"**.

Ugone's Report repeatedly attacks Bour on causation and other issues not raised in Bour's Report. It also comprises untimely, unsupported affirmative opinions that should have been disclosed previously through an affirmative report. As can be seen directly from the "SUMMARY OF OPINIONS", Ugone's Report is replete with improper, untimely, non-rebuttal affirmative opinion testimony.  For example:

- In *Ugone Report*, ¶ 4.a. entitled "<u>Ms. Bour Failed to Analyze Or Consider *The Possibility Microsoft Could Remove The Allegedly Misleading Statements In The Future*</u>" (emphasis added), Ugone affirmatively opines regarding a purported "failed" causation analysis, arguing about whether there is a "nexus to TocMail's alleged economic harm" and a "but-for" analysis. *Id.* This is a causation issue.

- In *Ugone Report*, ¶ 4.b., Ugone affirmatively opines regarding causation, apportionment, and mitigation of damages by proffering arguments on the nexus between proposed cures and amounts of monetary remedies. (*e.g.*, "Ms. Bour does not reconcile why a favorable adjudicated outcome . . . followed by Microsoft removing any statements adjudicated to be false would not cure fully within six months the claimed future harm being asserted by TocMail. . . ."). *Id.* Microsoft bears the burden of proof on apportionment, mitigation, and corresponding deductions.

- In *Ugone Report*, ¶ 4.c. entitled "<u>Ms. Bour's Proposed Monetary Remedies Represent Mathematical Calculations Rather Than Reliable Measures Of Damages Attributable To Alleged Wrongful Conduct</u>," Ugone affirmatively opines on causation and apportionment

by arguing that "Ms. Bour failed to properly evaluate . . . (i) the portion of lost sales, if any, directly ***attributable to the alleged wrongful conduct***, . . . and (iii) ***the portion of*** Microsoft ***revenues with*** a ***nexus to the alleged wrongful conduct***." *Id.* (emphasis added). This is causation and apportionment.

- In *Ugone Report*, ¶ 4.d. entitled "<u>Ms. Bour Failed To Consider That Not All Consumers Were Exposed To, Confused By, Or Altered Their Purchase Behavior Because Of Microsoft's Allegedly Misleading Statements,</u>" Ugone affirmatively opines on causation, setting up strawman arguments asserting that Ms. Bour made "implicit assumptions" (*e.g.*, causation assumptions) "that all consumers who purchased a product with the Safe Links feature (i) were exposed to the asserted statements, (ii) were confused by the statements . . . , and (iii) changed their purchasing behaviors as a result of . . . the allegedly misleading statements". *Id.*; Ugone argues Bour "failed to consider" alleged causation evidence. *Id.*; *Ugone Report*, ¶ 4.d.i.-iii. These are not rebuttal opinions. These are causation opinions that do not address Bour's damages opinion.

- In *Ugone Report*, ¶ 4.e., i.-iii., entitled "<u>Ms. Bour's Calculation Of Lost Profits Is Based Upon Flawed And Unsupported Assumptions,</u>" Ugone proffers numerous causation and liability opinions. For example, Ugone argues "Ms. Bour assumes . . . that absent Microsoft's alleged false advertising each and every Microsoft customer who purchased a product including the Safe Links feature would purchase TocMail's product."[3] *Id.* Ugone's

---

[3] In addition to proffering many affirmative opinions on causation, Ugone repeatedly misstates and mischaracterizes *Bour's Report* regarding presumption of causation and liability. For example, Bour does not assume or opine that "every Microsoft customer who purchased a product including the Safe Links feature would purchase TocMail's product." Likewise, Bour does not assume or opine that 100% of Microsoft customers were exposed to Microsoft's false advertising, were confused, or would have altered their purchase habits.

causation opinions again address whether Microsoft customers "were exposed to the allegedly misleading statements," "were confused by those statements," and would have "altered their purchase behavior" based on Microsoft's false advertising. *Id.* These are not rebuttal testimony and do not contradict Bour's damages opinions.

- *In Ugone Report*, ¶ 4.f., Ugone again proffers causation testimony regarding apportionment, arguing that Bour "does not provide a relevant or reliable measure of Microsoft's profits ***attributable to the alleged wrongful conduct*** . . . ." *Id.* (emphasis added). He erroneously opines: "Ms. Bour Assumes That All Microsoft Revenues From Products Including The Safe Links Feature Represent Revenues With A ***Nexus To The Alleged Wrongful Conduct***." *Ugone Report*, ¶ 4.f., i. (emphasis added).

- In *Ugone Report*, ¶ 4.f., Ugone untimely discloses a legion of affirmative opinions regarding apportionment and deduction of costs. Representative examples include,

  o Ugone opines "<u>Ms. Bour Fails To Meet The Burden Of Identifying Revenues Attributable To Safe Links</u>. . . . Ms. Bour failed to consider . . . that the revenues and profits received by Microsoft on such products with a claimed nexus to the allegedly misleading statements are not solely related to Microsoft's Safe Links feature." *Ugone Report*, ¶ 4.f., ii. This is untimely apportionment testimony for which Microsoft bears the burden of proof. Ugone provides no analysis or support for what revenue portion he believes is attributable to Safe Links.

  o Ugone opines "<u>Ms. Bour Fails To Apportion Microsoft's Revenues Only To Those Revenues Associated With The At-Issue Safe Links Feature</u>. Ms. Bour presents all Microsoft revenues from each product that included the Safe Links feature, and has ***failed to apportion*** those revenues to the ***revenues attributable to Safe Links***." *Ugone*

*Report*, ¶ 4.f. iii. (emphasis added). This just restates the same untimely apportionment testimony Ugone proffers elsewhere. *Id.*

o   Ugone opines "<u>Ms. Bour Presents Only Microsoft Revenues ***Without Accounting For Any Costs***</u>. . . . a proper evaluation of disgorgement also would incorporate ***a deduction for Microsoft's costs*** . . . .." *Ugone Report*, ¶ 4.f. iv. (emphasis added). This is untimely affirmative testimony on deduction of costs – an issue for which Microsoft bears the burden of proof. *Id.*

- In *Ugone Report*, ¶ 4.e., iii., Ugone proffers causation testimony regarding mitigation of damages: "an underlying assumption of Ms. Bour's projections is that TocMail would not be able to mitigate any of the claimed impact of Microsoft's alleged false advertising over the entire projection period." *Id.* This is not rebuttal testimony.

- In *Ugone Report*, ¶ 4.f., iv., Ugone proffers an unsupported, conclusory, and unreliable affirmative opinion on deduction of costs stating: "Over the July 2015 to June 2020 period, Microsoft's gross margin in the Office 365 Commercial product category ranged between 62.0% and 76.0%." *Id.* Ugone provides no analysis or underlying support even though Microsoft has the burden of proof. This is not rebuttal testimony. *Id.*

- The *Ugone Report* also contains numerous other sections that regurgitate his untimely affirmative testimony regarding causation and liability, including, among others, ¶¶ 36-43, 51, 55, 60, 64, 66, 68, and 72, and section headers and sub-headers X.A.-X.D.1. None of this is rebuttal.

- The *Ugone Report* also contains numerous other sections that regurgitate his untimely affirmative testimony on apportionment and deductible costs, including, among others, ¶¶ 63-74, and section headers and sub-headers X.E.-X.E.4. None of this is rebuttal.

### III.    MEMORANDUM OF LAW

**A.    Legal Standard.**

In determining whether expert testimony is admissible under Federal Rule of Evidence 702, a district court must engage in a three-part inquiry and consider whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *U.S. v Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).  "The proponent of expert testimony always bears 'the burden to show that his expert is 'qualified to testify competently regarding the matters he intend[ed] to address; [] the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and [] the testimony assists the trier of fact.'" *Frazier*, 387 F.3d at 1260 (*quoting McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)).  Pursuant to *Daubert*, the Court performs a "gatekeeping" function in "determin[ing] the reliability and relevance" of expert testimony.  *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014).

Further, "Federal Rule of Civil Procedure 26 requires that 'a party must make expert witness disclosures at the times and in the sequence [that] the court orders.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019) (alterations omitted) (citing Fed. R. Civ. P. 26(a)(2)(D)). Under Eleventh Circuit precedent, "[c]ourts have broad discretion to exclude untimely expert testimony," *Guevara*, 920 F.3d at 718. "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *See Mitchell v. Ford Motor Co.*, 318 Fed.Appx. 821, 824 (11th Cir. 2009) quoting *Leathers v. Pfizer, Inc.*, 233

F.R.D. 687, 697 (N.D. Ga. 2006); *see also Zilabs Inc. v. Samsung Electronics Co.*, No: 2:14-CV-203-JRG-RSP, at 3 (E.D Texas, Nov. 1, 2015)(" The burden is on the party facing sanctions to prove that its failure to comply with Rule 26 was "substantially justified or harmless."); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir.2001) (burden is on the party facing sanctions to prove that its violation was either substantially justified or harmless). "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997) citing *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

**B.     Ugone's Report is not a Rebuttal Report and violates the Court's Scheduling Order.**

Microsoft elected not to proffer affirmative expert reports on liability or causation. Bour did not testify on liability or causation, so any testimony by Ugone on these issues in his "rebuttal" damages report is not "rebuttal" testimony. Microsoft also failed to produce any affirmative expert reports on apportionment and deductible expenses - and Microsoft bears the burden of proof on both these issues.  Under Rule 26, Microsoft should have produced affirmative expert reports on any issues for which it bears the burden of proof.

"Federal Rule of Civil Procedure 26 requires that 'a party must make expert witness disclosures at the times and in the sequence [that] the court orders.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019) (alterations omitted) (citing Fed. R. Civ. P. 26(a)(2)(D)). Microsoft did not do so. Microsoft was required to produce any affirmative expert reports and affirmative testimony by November 2, 2020, per the Court's scheduling order. Instead, Microsoft waited to disclose a legion of affirmative opinions in Ugone's Report – cloaked under the guise of "rebuttal" – more than a month after the affirmative report deadline. *See, e.g.,* the numerous

examples of Ugone's affirmative testimony on causation, apportionment, and deductible expenses from his purported "rebuttal" report recited above and discussed below. Thus, Ugone's Report violates the Court's scheduling order.

Under Eleventh Circuit precedent, "[c]ourts have broad discretion to exclude untimely expert testimony" *Guevara*, 920 F.3d at 718. Exclusion is "an appropriate remedy under Fed. R. Civ. P. 16(b), which authorizes the court to control and expedite pretrial discovery through a scheduling order and gives the court broad discretion to preserve the integrity and purpose of a pretrial order, including the exclusion of evidence." *All-Tag Corp.*, *v. Checkpoint Systems, Inc.*, 408 F.Supp.3d 1347, 1353 (S.D. Fla. Oct. 7, 2019) *citing Companhia Energetic Potiguar v. Caterpillar Inc.*, No. 14-cv-24277, 2016 WL 3102225, at *5 (S.D. Fla. June 2, 2016). Courts may use their discretion to exclude evidence and testimony not disclosed in accordance with the Court's scheduling order. *Id*.

Microsoft has not complied with the court's affirmative report deadline but rather submitted testimony-in-chief through Ugone's "rebuttal" report. Ugone's Report does not qualify as a "rebuttal" report as it does not contradict or rebut Bour's Report. It merely proffers affirmative testimony that should have been disclosed more than a month earlier. As held in *All-Tag Corp.*, affirmative expert testimony not disclosed by the affirmative report deadline but later disclosed in a rebuttal report should be excluded as untimely where the opposing party "no longer has any time left to rebut" the affirmative opinion. *All-Tag Corp.*, 408 F.Supp.3d at 1352-1354 (excluding affirmative testimony disclosed in rebuttal report, because not harmless). Microsoft had over two months to respond to TocMail's burden of proof expert reports, but TocMail was not provided any time to respond to the affirmative testimony disclosed by Microsoft in Ugone's Report. TocMail was harmed because it was deprived of an opportunity to submit a rebuttal-expert report in

response to Microsoft's untimely disclosure of burden of proof testimony. Thus, this Court should exclude Ugone's Report.

Indeed, "Rule 37(c)(1) provides a self-executing sanction for untimely expert reports."[4] *Jordan v. Claudio Filippone, HolosGen, LLC*, Case No. 20-20023, 2021 WL 1390370 at * (S.D. Fla. April 13, 2021) (excluding rebuttal expert testimony because defendants did not meet burden to show substantial justification or harmlessness); *see also Kroll v. Carnival Corp.*, 2020 WL 4793444, at *5 (S.D. Fla. Aug. 17, 2020) ("District courts, including those in Florida, are not hesitant to exclude or substantially limit expert opinion testimony at trial when an expert is masquerading as a rebuttal expert because the attorney missed the deadline for expert witness disclosures. . . ."); *cf., Elion v. Jackson*, No. 05-0992, 2006 WL 2583694, at *1 (D.D.C. Sept. 8, 2006) (*citing Klonoski v. Mahlab*, 156 F.3d 255, 269, 271 (1st Cir.1998)) ("The overwhelming weight of authority is that preclusion is required and mandatory absent some unusual or extenuating circumstances . . .'"); *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785-86 (7th Cir.2000) (The sanction of exclusion is "automatic and mandatory unless the party to be sanctioned can show that its violation ... was either justified or harmless.").

Rule 37(c)(1) states, in relevant part, that if a party fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This would be illusory if a party can ignore its obligation to timely produce

---

[4] According to Rule 37, Fed. R. Civ. P., Notes of Advisory Committee on Rules—1993 Amendment, regarding Rule 37(c)(1): "The revision provides ***a self-executing sanction*** for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A)." *Id.* (emphasis added).

burden of proof experts and then call the witness anyway. Microsoft should not be rewarded for flaunting the scheduling order.

Microsoft's failure to timely disclose affirmative testimony by the affirmative report deadline lacks any justification, yet alone substantial justification. Ugone is Microsoft's witness. The evidence and information for Ugone's opinions are in Microsoft's possession. Moreover, as noted in *Tennessee Valley Authority*, a party's failure to comply with Rule 26(a)(2) is "unjustified and harmful" where the expert witness could have prepared a written report based upon the then-available information and later supplemented the report after reviewing the later-provided discovery. *United States upon relation of Tennessee Valley Authority v. Easement and Right-of-way Over 4.42 Acres of Land, More or Less, in Whitfield County, Georgia*, 782 Fed.Appx. 945, 950 (11th Cir. 2019) *citing Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008).  Microsoft had sufficient information for Microsoft to have an expert to prepare and submit the required affirmative reports by the affirmative report deadline. It failed to do so. Accordingly, the Court should exclude Ugone's Report.

**C.     Ugone Should be Excluded from Testifying that Bour Failed to Consider Causation.**

None of Ugone's testimony regarding causation or liability constitutes rebuttal testimony and thus it should be excluded. Bour explicitly stated in her Report, "I will not be expressing an opinion regarding causation or liability in this matter." *Bour Report*, ¶ 4. Bour was retained as a damages expert, not a causation or liability expert. *Id.* ¶¶ 2-3. And Bour confirmed this over and over again in response to questions posed during her expert deposition. *See, e.g., Bour Depo*, 26:7-12; 38:14-22; 39:13-22; 40:19-41:18; 42:24-25; 54:20-55:2; 56:23-57:2; 116:19-117:5; 121:3-24; 139:19-140:5; 141:11-17, attached at **Exhibit "3"**.

Bour is <u>not</u> required to opine or provide analysis on causation or liability as part of her damages expert report. "It is perfectly permissible for an expert to assume liability (of which causation is an element) and simply focus on the issue of damages." *Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512, 2017 WL 1319553, *4 (E.D. Tex. 2017); *see also N. Palm Motors, LLC v. General Motors LLC*, No. 9:19-cv-80872, 2020 WL 6384308 *1-2 (S.D. Fla. Oct. 30, 2020) (denying motion to exclude damages expert where defendant argued that the expert failed to consider facts of causation but expert was not "a liability or causation expert"); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. für Chemische Industrie*, No. 11-cv-681, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) ("[A] damages expert does not need to perform her own causation analysis to offer useful expert testimony."); *Gaedeke Holdings VII, Ltd. v. Baker*, No. CIV-11-649, 2015 WL 11570978 at *3 (W.D. Okla. Nov. 30, 2015) ("Proof of causation often comes from fact witnesses, and it is appropriate for expert witnesses to assume causation will be established and then proceed to calculate the damages."); *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No. 4:15 CV 1934, 2013 WL 4776277, at *8 (E.D. Wis. Sept. 6, 2013) ("damages experts are permitted to 'assume that the defendant's alleged misdeeds caused the plaintiff's loss'"); *Orthofix, Inc. v. Gordon*, No. 1:13-cv-01463, 2016 WL 1273160, at *3 (C.D. Ill. Mar. 31, 2016) ("It is entirely appropriate for a damages expert to assume liability for the purpose of his or her opinion. To hold otherwise would be illogical."); *RMD, LLC v. Nitto Ams., Inc.*, No. 09-2056, 2012 WL 5398345 at *10 (D. Kan. Nov. 5, 2012) ("For purposes of presenting his damage calculation methods . . . Vianello is permitted to presume causation"); *CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.*, No. CIV-04-0651, 2006 WL 2054646 at *4 (W.D. Okla. July 24, 2006) ("For the purposes of presenting his damage calculation methods, Mr. Swanson is entitled to presume causation."); *Children's Med. Ctr. of Dallas v. Columbia Hosp. at Med. City Dallas*

*Subsidiary*, 3-04-CV-2436, 2006 WL 616000, at *7 (N.D. Tex. Mar. 10, 2006) ("It is not necessary for Jacobs, or any other damages expert, to establish the requisite causal connection between liability and damages. Rather, plaintiff may establish causation by other means.").

Because Bour did not testify regarding causation or liability, any testimony attacking Bour's report on causation or liability does not contradict or refute her expert testimony and is not rebuttal testimony. "A rebuttal expert report presents expert opinions refuting the arguments made by the opposing party in its initial expert report." *Nordock Inc. v. Sys. Inc.*, 927 F. Supp. 2d 577, 584 (E.D. Wis. 2013). Under Federal Rule 26(a)(2)(D)(ii), the scope of a rebuttal expert report is limited. As defined in Rule 26(a)(2)(D)(ii), an expert report qualifies as a rebuttal report only if it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed.R.Civ.P. 26(a)(2)(D)(ii). "Rebuttal experts cannot testify in their parties' case-in-chief." *Specter v. Texas Turbine Conversions, Inc.*, Case No. 3:17-cv-00194, 2020 WL 7234369 at *4 (December 8, 2020, D. Alaska) (*citing Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008)).

Yet, the majority of Ugone's Report constitutes testimony on causation and liability. *See, e.g.*, excerpts from *Ugone Report* recited in Background section above and *Ugone Report*, ¶ 4.a.-¶ 4.f. and ¶¶ 36-43, 51, 55, 60, 64, 66, 68, and 72. Moreover, Ugone repeatedly admits during his deposition that his "rebuttal" opinion constitutes causation opinion. *See, e.g., Ugone Depo*, 22:2-18 ("Q. Are you providing an opinion on causation . . .? A. I'm providing an opinion that Ms. Bour . . . fails to establish a linkage . . . ***I'm saying there was a failure to do causation***.")(emphasis added); *Ugone Depo*, 67:3-9 (Q. . . . So if I'm understanding you correctly . . . you're expressing things that Ms. Bour should have done in terms of causation . . . ? A. Yes. . . ."); *Ugone Depo*,

71:11-25 (Q. So again, is ***this all part of your opinion regarding causation?*** A. The economic and damages related causation, ***yes***.") (emphasis added).

Ugone also acknowledges that Bour did not opine on causation and his testimony is intended to point out Bour's purported failure to do a causation analysis.  *See, e.g., Ugone Depo*, 62:22-64:19 ("A. . . . So ***yes, I'm talking about causation*** . . . Q. . . . And ***you understand that Ms. Bour expressly stated that she is not providing an opinion on causation*** . . . ? A. ***Yeah***, so I agree ***she said that numerous times, but that's one of the failings that I'm pointing out*** . . .") (emphasis added). Thus, Ugone intentionally structured his testimony to address causation, knowing Bour did not provide a causation opinion, and even though she was not required to under well-established law.

If Microsoft wanted to put forth a causation expert, it should have disclosed an affirmative report on causation. "[P]roper expert rebuttal cannot explore new areas not raised in initial reports." *Specter,* 2020 WL 7234369 at *4 *quoting TCL Comm. Tech. Hold. Ltd. v. Telfonaktenbologet LM Ericsson*, SACV 14-00341 JVS (Anx) consolidated with CV 15-02370 JVS, 2016 WL 7042085, at *4 (C.D. Cal. Aug. 17, 2016). Ugone's causation testimony is new affirmative testimony that was not raised in an initial report. Thus, it should be excluded.

Even if the Court finds that any of Ugone's causation testimony constitutes rebuttal opinion – which it does not – that does not automatically render it admissible. *Nunez v. Coloplast Corp.*, Case No. 19-cv-24000-SINGHAL/Louis, 2020 WL 2315077 at *3 (S.D. Fla. May 11, 2020). Ugone's testimony should still be excluded because it is highly prejudicial, likely to confuse a jury, and has almost no probative value. "Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Frazier*, 387 F.3d at 1263. Under Rule 403, relevant

evidence may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." A court enjoys broad discretion in applying the Rule 403 balancing test. *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1274 (S.D. Fla. 2011).

Ugone's testimony poses the danger of unfair prejudice and misleading a jury because he attacks Bour for not engaging a causation analysis that she was not required to do. This testimony has no probative value because it merely attacks strawman issues instead of Bour's damages testimony. *See, e.g.*, *Ugone Report*, ¶ 4.d.i.-iii. (arguing that Bour inappropriately made "implicit assumptions" "that all consumers who purchased a product with the Safe Links feature (i) were exposed to the asserted statements, (ii) were confused by the statements . . . , and (iii) changed their purchasing behaviors as a result of . . . the allegedly misleading statements").

Bour was not required to opine on those issues. She was not retained as a causation expert. If Microsoft were permitted to present Ugone's "rebuttal" testimony to the jury, it would mislead the jury into believing that Bour's damages testimony was deficient for not including a causation analysis. Ugone's opinions regarding causation and liability would portray a message to the jury that is contrary to law. The prejudice from confusing the jury would far outweigh what little if any probative value would come from this testimony.  Thus, Ugone's testimony on causation should be excluded as prejudicial.

**D.      Microsoft Bears the Burden of Proving Its Deductions and Any Apportionment.**

**1.      Ugone Should Be Excluded from Opining that Bour Failed to Apportion Gross Sales or to Account for Costs and Deductions.**

Ugone's testimony regarding (i) cost and deductions, and (ii) apportionment of damages should also be excluded, because it is burden of proof testimony that should have been disclosed in an affirmative expert report. "[T]he Lanham Act squarely places the burden on the infringer to

prove deductions, [and] 'any doubts about the actual amount of gross sales or profits will be resolved against the infringing party.'" *Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279, 1290 (S.D. Fla. 2010) (*quoting Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F.Supp.2d 1310, 1316 (S.D. Fla. 1998)).

As expressly set forth in the Lanham Act: "In assessing profits the plaintiff shall be required to prove defendant's sales only; ***defendant must prove all elements of cost or deduction claimed***." 15 U.S.C. § 1117(a)(emphasis added). Moreover, it is indisputable that "under the Lanham Act and the common law, it is the infringer's burden to prove any proportion of its total profits which may not have been due to the infringement." *Nutrivida*, 46 F.Supp.2d at 1315; *Axiom Worldwide, Inc. v. HTRD Group Hong Kong Ltd.*, No. 8:11–cv–1468–T–33TBM, 2013WL 3975675 at *11 (MD Florida, July 31, 2013) *quoting Id*. at 1315 ("the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, . . . "); *see also Yeti Coolers, LLC v. RTIC Coolers, LLC*, A-15-CV-597-RP, 2017 WL 394511 at *6 (W.D. Texas Jan. 27, 2017)("[I]t is black letter law that apportionment of damages is a topic on which the infringer bears the burden of proof.").

In this case, TocMail timely submitted Bour's expert report demonstrating Microsoft's gross sales of products relating to Microsoft's false advertising, e.g., revenues for Microsoft products that include ATP Safe Links. The jury will be told the amount of Microsoft's gross revenues for these products.

Microsoft, however, bears the burden of establishing how much by way of costs and deductions should be subtracted from their gross revenues for products containing ATP Safe Links. 15 U.S.C. § 1117(a). Microsoft also bears the burden of conducting an apportionment analysis, *i.e.,* proving what portion of the gross sales were not attributable to the false advertising. *Nutrivida*,

46 F.Supp.2d at 1315. Under Rule 26, "the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." *See* Fed.R.Civ.P. 26 advisory committee's note (1993 amendments).[5] Thus, "[a] party presents its arguments as to the issues for which it has the burden of proof in its initial expert report." *Nordock,* 927 F. Supp. 2d at 584. The dates for these disclosures were clearly set forth by the Court's Scheduling Order. (ECF No. 27, p. 1).

Microsoft, however, elected not to produce an expert report on the key "issues for which it has the burden of proof," including on "all elements of cost or deduction claimed" from its gross profits and apportionment as required under 15 U.S.C. § 1117(a). *Id.* Instead, Microsoft waited to disclose its burden of proof testimony in Ugone's "rebuttal" report where Ugone sets forth contentions with respect to Microsoft's deductions and apportionment of damages. For example, Ugone opines that Bour failed to conduct an apportionment analysis. *See, e.g., Ugone Report*, ¶ 4.f. iii. ("Ms. Bour presents all Microsoft revenues from each product that included the Safe Links feature, and has ***failed to apportion*** those revenues to the ***revenues attributable to Safe Links***.") (emphasis added). Ugone also opines that Bour's Report is deficient because she does not account for costs and deductions. *See, e.g., Ugone Report*, ¶ 4.f. iv. ("<u>Ms. Bour Presents Only Microsoft Revenues *Without Accounting For Any Costs*</u>. . . . a proper evaluation of disgorgement also would incorporate ***a deduction for Microsoft's costs*** . . . (in conjunction with other ***deductions***).") (emphasis added).

---

[5] "The reason for staggered deadlines is to give the responding party the chance to digest the first party's expert report and take the expert's deposition. This allows the responding party to make sure it understands the full extent of the first party's expert's opinions and the basis for them before disclosing a responsive report." *Metso Minerals Indus., Inc. v. Johnson Crushers International, Inc.*, 2012 WL 1926415, No. 10-C-0951, at 2-3 (E.D. Wisc. May 25, 2012).

This is improper: "a party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Noffsinger v. The Valspar Corp.*, No. 09-C-916, 2011 WL 9795 at *6 (Jan. 3, 2011, N.D. Ill.) (*citing Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir.2008)).  Microsoft's failure to disclose burden of proof testimony until the disclosure of its rebuttal expert violates the terms and purpose of the scheduling order, preventing TocMail from an opportunity to designate a rebuttal witness and produce rebuttal testimony. This is the quintessential harm Rule 37 sanctions are intended to address.

Microsoft's cannot meet its burden to demonstrate its failure to timely disclose burden of proof testimony on costs and apportionment is substantially justified or harmless. All the information Microsoft needed for this testimony was available to Microsoft at the time of the affirmative report deadline. The remedy is straight forward. Ugone's untimely burden of proof testimony on these issues should be excluded.

This case is nearly identical to several cases where courts excluded untimely expert testimony submitted in rebuttal reports regarding damages under the Lanham Act. Both the *All-Tag Corp. v. Checkpoint Systems, Inc.* and *Yeti Coolers, LLC v. RTIC Coolers, LLC* are instructive.

*All-Tag Corp.* involved false advertising claims under the Lanham Act. The court had issued a scheduling order with dates for "Affirmative Expert Reports" and "Rebuttal Expert Reports." Plaintiff's expert witness included affirmative opinion on damages in his "rebuttal" report that was served a month after the deadline for affirmative expert reports. The court found the damages expert's "rebuttal expert report is untimely" because his "report is properly considered a new affirmative expert opinion, rather than a rebuttal report."  *All-Tag Corp.,* 408 F.Supp.3d at 1352-1354. The court held that the proper remedy was to exclude the affirmative opinion testimony proffered in the expert damages rebuttal report. *Id.* The court noted that "[e]xclusion is [] an

appropriate remedy under Fed. R. Civ.P. 16(b), which authorizes the court to control and expedite pretrial discovery through a scheduling order and gives the court broad discretion to preserve the integrity and purpose of a pretrial order, including the exclusion of evidence." Here, like the *All-Tag Corp.* case, Ugone's "rebuttal" expert report is clearly new affirmative opinion that is untimely. Ugone's testimony on deductible costs and apportionment are directed to issues on which Microsoft has the burden of proof and should have been disclosed before the affirmative report deadline.

*Yeti Coolers,* a trade dress infringement case, is also instructive. *Yeti Coolers, LLC v. RTIC Coolers, LLC*, A-15-CV-597-RP, 2017 WL 394511 (W.D. Texas Jan. 27, 2017). Like here, the defendant in *Yeti Coolers* did not disclose its affirmative damages expert report at the deadline for burden of proof reports. Like here, the defendant in *Yeti Coolers* waited until the rebuttal report deadline to disclose its damages expert. Like here, the Lanham Act required that "plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Like here, the defendant in *Yeti Coolers* did not seek to amend the scheduling order. Instead, the defendant in *Yeti Coolers* disclosed its apportionment expert testimony by way of a rebuttal report.

The *Yeti Coolers* court rejected the defendant's contention that the report was timely disclosed as a rebuttal report. The report did not "attempt to rebut expert opinions offered by Yeti as to a claim or defense on which Yeti has the burden of proof." *Id.* at 4. The *Yeti Coolers* court noted that "Yeti's only burden of proof on trade dress damage is to prove RTIC's total sales of the allegedly infringing coolers. It has no burden to prove costs or any other deductions from the total sales figures." *Id.*

23

Likewise, in this case TocMail is only required to prove Microsoft's gross revenues. TocMail does not have the burden of proof on costs or any other deductions. This was Microsoft's burden of proof and TocMail's only opportunity to address it would be in rebuttal to Microsoft's affirmative report, which Microsoft failed to submit. This Court should follow *Yeti Coolers* and strike the late-disclosed opinions of Microsoft's damages expert on apportionment and deductible costs.

Other district courts have also reached the same result in similar cases. For example, in *Nordock Inc.*, the plaintiff brought trade dress and unfair competition claims in addition to patent infringement claims. 927 F.Supp.2d 577. The defendant did not disclose burden of proof expert opinions until the rebuttal-report deadline. *Id.* The court reviewed the expert's opinions and struck all of the opinions that were not actually rebuttal opinions. 927 F.Supp.2d at 585. Thus, TocMail respectfully requests that this Court follow suit and exclude Ugone's untimely burden of proof testimony as other courts have under the same or similar circumstances.

Finally, Ugone's testimony on deductible costs and apportionment of profits should be excluded because, like his causation testimony, it will mislead a jury to erroneously believe TocMail bears the burden of proof instead of Microsoft. This poses an undue risk of confusing the jury and accordingly Ugone's testimony should be excluded.

2. **Ugone Failed to Conduct Any Type of Apportionment Analysis in his Report and Should be Excluded from Conducting One at Trial.**

Ugone's Report is devoid of any analysis or underlying support for his opinions on apportionment of profits and costs and deductions. Ugone's opinions on these issues distill into no more than his complaint that Bour purportedly did not do an apportionment analysis or deduct costs from profits. However, Ugone is Microsoft's witness and Microsoft has the burden to prove apportionment and deductible costs.

24

Rule 26 requires an expert witness to disclose a report that contains "a complete statement of all opinions the witness will express ***and the basis and reasons for them***." Fed. R. Civ. P. 26(a) (2)(B)(i) (emphasis added); *see Jacobson v. R.J. Reynolds Tobacco Company*, Case No.: 1:12-cv-23781-UU, 2013 WL 12094859 at *1 (S.D. Fla. Sept. 11, 2013)(excluding expert from testifying concerning cigarettes additives because additives not discussed in expert report); *Salomon Construction and Roofing Corp. v. James McHugh Construction Co.*, Case No.: 1:18-cv-21733-UU, 2019 WL 5256980 at *4-*8 (S.D. Fla. March 22, 2019) (excluding expert testimony not addressed in expert report).

"The purpose of the expert disclosure rule is to 'provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008). Thus, Rule 37(c)'s "self-executing sanction[s]" also precludes an expert from testifying at trial regarding methodologies, analysis, or procedures not disclosed in an expert's report. *See, e.g.*, *Rembrandt Vision Technologies*, 725 F.3d at 1380-82 (applying Eleventh Circuit law to exclude expert testimony from trial where testing procedures and methodology were not disclosed in expert report).

Ugone's Report does not contain "a complete statement of . . . the basis and reasons for" his opinions. Fed. R. Civ. P. 26(a) (2)(B)(i). Ugone's Report provides no analysis or underlying evidentiary support for his opinions on apportionment and costs and deduction from profits. Instead, he provides conclusory statements and criticizes Bour for not conducting the apportionment analysis that Microsoft had the burden to conduct under 15 U.S.C. § 1117(a). Microsoft's own *Daubert* motion demonstrates its misunderstanding regarding who carries to the

burden of proof. (ECF. 69, p. 22) For example, Microsoft asserts: "Because Microsoft sales information is maintained at the product level and not at the feature level, revenues attributable to Safe Links are not available, . . . it was up to Bour, the expert, to assign a value to the individual Safe Links feature within the broader products in which it is included, and then use that valuation to determine what percentage of revenues from ATP and Office 365 are directly attributable to Safe Links." *Id.* This is wrong. Microsoft's statements directly conflict with long and well-established law that Microsoft as defendant has the "burden to prove any proportion of its total profits which may not have been due to" the false advertising. *See, e.g., Nutrivida*, 46 F.Supp.2d at 1315. Microsoft cites Ugone's Report as support for its erroneous contention regarding who carries the burden of proof. *Id.*   And consistent with Microsoft's misunderstanding of the law, Ugone's Report is devoid of any analysis or underlying support on these issues for which Microsoft has the burden of proof. This absence of underlying support and analysis deprives TocMail of any meaningful opportunity to respond to or prepare for cross-examination of Ugone's testimony on these issues.

Failure to comply with Rule 26 "has significant consequences since an expert witness may not testify to subject matter beyond the scope of the report unless the failure to include that information was substantially justified or harmless." *Jacobson*, 2013 WL 12094859 at *1. There is no justification for Ugone's failure to provide analysis or underlying support for burden of proof testimony. Ugone is Microsoft's witness. Microsoft bears the burden to prove apportionment and deductible costs. All of the information regarding apportionment and deductible costs are in Microsoft's possession, not TocMail's. Microsoft's election not to disclose analysis or underlying support for its burden of proof testimony is not substantially justified, because it is contrary to well-established law.

Accordingly, Ugone should be precluded from testifying at trial regarding costs and deductions and apportionment of profits, and at a minimum he should be precluded from conducting any type of apportionment analysis or deductible costs of profits analysis at trial.

**E.      Ugone's Testimony Does Not Meet the Requirements of Rule 702.**

Ugone's opinions regarding lost profits and apportionment do not meet the requirements of Rule 702 and are unreliable. As the proponent of Ugone's expert testimony, Microsoft has "the burden of establishing qualification, reliability, and helpfulness." *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1245 (11th Cir. 2018) *quoting McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005). Microsoft can only carry that burden by satisfying the requirements of Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[6]

---

[6] The Eleventh Circuit has distilled the expert admissibility inquiry into three factors:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Rule 702 contemplates that the district court serve as gatekeeper for the admission of expert testimony in order to ensure that any and all expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "The importance of Daubert's gatekeeping requirement cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Under Rule 702, "'the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citation omitted).

"'Under *Daubert*, any step that renders the expert's analysis unreliable … renders the expert's testimony inadmissible.'" *Id.* (citation omitted). Notably, "'[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.' 'Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *Id.* at 1258 (citations omitted). "To reach a valid conclusion, an expert must have 'an underlying basis of support.'" *United States v. Zajac*, 748 F. Supp. 2d 1340, 1349 (D. Utah 2010) (citation omitted).[7]

Ugone's testimony regarding apportionment of profits is unreliable because he provides no analysis to show how numbers were obtained, provides no underlying support, and provides no

---

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786).

[7] As the Supreme Court framed it in *Kumho Tire*: "[T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

analysis to explain why Microsoft's gross margins should be used for apportionment. Ugone's

Report proffers the opinion that:

> a proper evaluation of disgorgement also would incorporate a deduction for Microsoft's costs. Over the July 2015 to June 2020 period, Microsoft's gross margin in the Office 365 Commercial product category ranged between 62.0% and 76.0%.

Ugone Report, ¶ 4.iv.

Ugone's opinion is conclusory and not supported by any evidence or analysis. Yet

Microsoft has the burden of proof at two levels: (i) to prove costs and deductions; and (ii) to show

that its expert's testimony is reliable under Rule 702. Under Rule 702, Ugone's testimony

regarding profit margins must be excluded, because expert opinion that contains unsupported

conclusions is unreliable. *LSQ Funding Group, L.C. v. EDS Field Services*, 879 F.Supp.2d 1320,

1336 (M.D. Fla. July 10, 2012) (excluding Ugone's expert opinion in part because it "lacks factual

support and does not comport with the proper measure of damages"); *Coquina Invs. v. Rothstein*,

No. 10–60786–Civ, 2011 WL 4949191, at *2, *7 (S.D. Fla. Oct. 18, 2011) (holding opinions

unsupported by reasonable evidence or based on speculation are unreliable); *Cook ex rel. Estate

of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005) ("[A] trial court

may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not

adequately explained.").

Ugone's testimony regarding costs associated with lost profits should also be excluded

because it is unreliable. He does not use reliable methodology and provides no authority or analysis

to explain why his methodology should be used. Ugone fails to use consistent data measures for

benchmarks. For example, when it suits Ugone, he uses Microsoft marketing expenses and R&D

expenses for his benchmark, even though Ms. Griffith, Microsoft's designated corporate

representative regarding financial information, testified that Microsoft does not segregate these

costs at the product level or sub-feature level.[8] But when it doesn't suit him, Ugone uses gross margins for other cybersecurity companies as his benchmark. *See, e.g.*, Ugone Report, ¶¶ 4.e.ii., and 58. Ugone provides no analysis or explanation as to why Microsoft data should be used in one instance and data for other cybersecurity companies should be used in the other instance. Even more importantly, Ugone never provides any analysis or authority for why either of these purported benchmarks are relevant or reliable measures of costs. *See, e.g., Ugone Report*, ¶¶ 4.e.ii., 54.d., 57(a), 58, 62.b.

Accordingly, Ugone's testimony regarding costs associated with lost profits and his testimony regarding apportionment should also be excluded under Rule 702.

## IV.    CONCLUSION

WHEREFORE, Plaintiff, TOCMAIL INC., hereby moves the Court to exclude the testimony of Keith Ugone because it is untimely, conclusory and unsupported, and not proper rebuttal testimony.

---

[8] *See, e.g., Griffith Depo*, 21:25-22:20 ("A. Generally, when talking to Microsoft's finance teams about identifying cost related to development of product it is typically not available, often not even at the product level let alone at the feature level or subfeature level that you are asking about."); *Id.* at 22:22-23:4 ("Q. Do you know how much money Microsoft spends annually on marketing Safe Links separately from other products? A. I don't believe Microsoft tracks their marketing spent at that level of granularity. Q. What about for ATP? A. Again, I don't believe Microsoft tracks their marketing spent at that level of granularity.")

Dated:  July 9, 2021                        Respectfully submitted,

                                            By:    /s/Joshua D. Martin
                                            Joshua D. Martin
                                            Florida Bar No. 028100
                                            Email: josh.martin@johnsonmartinlaw.com
                                            **JOHNSON & MARTIN, P.A.**
                                            500 W. Cypress Creek Rd.
                                            Suite 430
                                            Fort Lauderdale, Florida  33309
                                            Telephone:  (954) 790-6699
                                            Facsimile:  (954) 206-0017

                                            *Attorneys for Plaintiff, TocMail Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 9th day of July 2021, I electronically served the foregoing document on all counsel of record on the attached service list via electronic mail.

                        By:    /s/ Joshua D. Martin
                               Joshua D. Martin

## SERVICE LIST

***TOCMAIL INC. v. MICROSOFT CORPORATION***
**20-60416-CIV- CANNON/HUNT**

**Joshua D. Martin**
E-Mail: josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd.
Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

**Francisco O. Sanchez**
E-Mail: sanchezo@gtlaw.com
           orizondol@gtlaw.com
**Evelyn A. Cobos**
E-Mail: cobose@gtlaw.com
           MiaLitDock@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

**Mary-Olga Lovett** *(admitted pro hac vice)*
E-Mail: lovettm@gtlaw.com
**Rene Trevino** *(admitted pro hac vice)*
E-Mail: trevinor@gtlaw.com
GREENBERG TRAURIG LLC
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 374-3505