# EXHIBIT 3

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
2
                     CASE NO. 0:20-CV-60416-AMC
3
4    TOCMAIL INC., a Florida
     corporation,
5
                   Plaintiff,
6
     vs.
7
     MICROSOFT CORPORATION, a
8    Washington corporation,
9                  Defendant.
10   _____/
11
                              March 15, 2021
12                            9:08 a.m. - 2 p.m. EST
13
14
              VIDEOTAPED DEPOSITION OF MARCIE BOUR
15
               TAKEN VIA ZOOM TELECONFERENCE
16
17
18        Taken on behalf of the Defendant before
19   Alice J. Teslicko, RMR, Notary Public in and for the
20   State of Florida at Large, pursuant to a Notice of
21   Taking Deposition in the above cause.
22
23
24
25

                                             Page 1

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

```
 1   APPEARANCES VIA TELECONFERENCE:
 2
         JOHNSON & MARTIN, P.A.
 3       BY:  JOSHUA D. MARTIN, ESQ.
         500 W. Cypress Creek Road, Suite 430
 4       Fort Lauderdale, FL 33309
         (954) 790-6699
 5       josh.martin@johnsonmartinlaw.com
         Attorneys for the Plaintiff
 6
 7       GREENBERG TRAURIG, LLP
         BY:  MARY-OLGA LOVETT, ESQ.
 8            KYLE DUGAN, ESQ.
              EVELYN COBOS, ESQ.
 9       1000 Louisiana Street, Suite 1700
         Houston, TX 77002
10       (713) 374-3541
         lovettm@gtlaw.com
11       duganky@gtlaw.com
         cobose@gtlaw.com
12       Attorneys for the Defendant
13
14       Also Present:  Michael Wood
                         Jeffrey Hulbert
15                       Cameron Roth
                         Rachel Hymel
16                       Michael Kirby - Videographer
17                            - - -
18
19
20
21
22
23
24
25
```

Veritext Legal Solutions
346-293-7000

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

```
 1                    I N D E X

 2    WITNESS                              PAGE

 3

 4    MARCIE BOUR

 5    Direct Examination by Ms. Lovett           6

 6    Certificate of Oath                      172

 7    Errata Sheet                             175

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page  3
```

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1      A      I was trying to finish and you cut me off.

2      Q      I'm so sorry.  I have a little bit of a

3  delay.  Do finish.

4      A      Thank you.  I said that he would capture

5  inappropriately, and I was correcting that TocMail

6  would capture.

7      Q      Understood.  So let me go back to this

8  again, though, to make sure I understand.

9            In order to establish the causation or the

10  migration of those seats from Microsoft to TocMail,

11  you relied on Mr. Wood for that piece, correct?

12      A      Yes.

13      Q      And in the ensuing time, as we've gone

14  through discovery and you looked at what Mr. Wood and

15  his counsel were able to provide to you, at this point

16  in time you have had to reduce that number down to

17  $6 billion; is that right?  $9 billion, sorry.

18      A      I reduced the number as a result of the

19  decision that there wasn't sufficient information to

20  rely upon at this time.

21      Q      Right.  I think we're saying the same thing.

22  You don't want to put forward to the jury anything for

23  which there is not a reliable basis in fact, correct?

24      A      Correct.  So it's not that I don't believe

25  that there is a portion of the consumer seats that

Page 26

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1  all because of my windshield wiper blade, so that's

2  the $200 million in revenue.

3          What have you done to isolate the value of

4  Safe Links itself?  Because that's the competitive

5  product to TocMail, right?

6          MR. MARTIN:  Objection to form.

7  BY MS. LOVETT:

8      Q    You may answer.

9      A    My understanding is that Safe Links is a

10  critical part of establishing the security for the

11  entire system and for the brand, and that would be the

12  reason why I included the revenue associated with the

13  products that have that safety component.

14      Q    What about Safe Attachments?  That's another

15  product.  More or less value than Safe Links?

16          MR. MARTIN:  Objection to form.

17      A    It's not a question of -- again, with regard

18  to causation -- I'm not rendering an opinion with

19  regard to causation.  My understanding is that Safe

20  Links is a critical part in establishing the security

21  of the brands and what is sold and therefore, I

22  calculated the revenue.

23      Q    As the entire brand and what is sold, right?

24      A    The entire brand being sold with Safe Links

25  as a component, yes.

Page 38

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1      Q    What about, do you know any of the other

2   so-called critical safety features of Microsoft?

3      A    Well, I've read a list of the safety

4   features.

5      Q    What are they?

6      A    I've read it.  I didn't memorize it.  There

7   are various features including encryption and other

8   types of detection.

9      Q    And did you do anything to determine whether

10  or not any of those features was more valuable than

11  Safe Links?

12     A    No.

13     Q    So you're basically establishing that but

14  for Safe Links, Microsoft could not sell any of these

15  products, right?

16          MR. MARTIN:  Objection to form.

17  BY MS. LOVETT:

18     Q    You may answer.

19     A    No, I did not establish that.  I am not

20  establishing causation.  I was giving you the reason.

21  There's a difference between understanding it and

22  testifying to it.

23     Q    Yeah, I understand.  Part of what is your

24  job, though, is to calculate the value of the feature

25  in dispute and what you're telling me is you did not

Page 39

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1    independently calculate a value for Safe Links,

2    correct?

3         A    Correct, other than fact that it contributes

4    to the security.  It's a critical part of security, as

5    part of the brand of Microsoft 365.

6         Q    Sure.  Well, what is really -- what is part

7    of the brand of security is advanced threat

8    protection, which is made of multiple, multiple

9    components.

10        You did not -- I want you to be clear on

11   this for the jury.  You did not go through and

12   determine relative value for any of those other

13   components, did you, ma'am?

14        A    No.

15        Q    Nor did you assign a particular value to

16   Safe Links for that particular component, did you,

17   ma'am?

18        A    No.

19        Q    So for example, if I was going to say --

20   because I do think windshield wipers are a critical

21   part of keeping your car safe.  But if I were going to

22   say these are my windshield wipers -- and I'm

23   approximating -- these are my windshield wipers and

24   they cost $48 and they're, you know, patented, a

25   better solution than any other windshield wiper you

Page 40

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

```
 1    can put on the car, it's the equivalent to me saying
 2    the $35,000 car, I'm going to estimate all the profits
 3    Dodge made from that $35,000 car because this is a
 4    critical part.
 5         A    Well --
 6              MR. MARTIN:  Objection to form.
 7         A     -- I don't agree with your analogy, because
 8    the same -- change the analogy and say that the brake
 9    system, which is touted as being better than any other
10    brake system, fails.  Now, the ability to sell a car
11    without brakes is very different than the ability to
12    sell a car without windshield wipers.
13              So I'm not sure that I agree with your
14    analogy, and I'm not testifying as to causation.
15         Q    You just said the brakes fail.  Is it your
16    testimony that Safe Links fails?
17         A    It's my -- again, I'm not testifying as to
18    causation.  It's my understanding that Safe Links
19    doesn't do -- and that's the reason of this -- my
20    understanding of the reason of the lawsuit is Safe
21    Links doesn't do what it said it does.
22         Q    Now, even if the brakes failed, so I'm going
23    to stay right there, any understanding you have
24    about -- excuse me, any understanding that you have
25    about Safe Links not doing what it says it does comes
```

Page 41

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1    from Mr. Wood, right?

2              MR. MARTIN:  Objection to form.

3    BY MS. LOVETT:

4         Q    You may answer.

5         A    No, my understanding is that there is --

6    there has been discovery to that effect.  I have not

7    seen all the discovery.  I understand that a very

8    large amount of discovery has been produced.

9              My understanding is that there are documents

10   which support that.  I have read some studies which

11   say that Safe Links does not protect against certain

12   types of attacks with cloaking IP.  So I don't agree

13   with your characterization that I completely relied on

14   Mr. Wood.

15        Q    Okay, so let me go back.  You said it's your

16   understanding, but you haven't read the discovery.

17             Who gave you the understanding?

18        A    No, no, I said I hadn't read all of the

19   discovery.  I read the studies, I have read the

20   exhibits to the complaint, and it is my understanding

21   from counsel that there has been more discovery that

22   has been produced that I have not yet had time to

23   review.

24             Again, I'm not testifying as to causation,

25   I'm testifying as to the revenue.

Page 42

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1        A     I'm not familiar with the specific case law.

2        Q     Okay.  But what you're telling me is there

3    is no history of past profits over a reasonable time

4    for TocMail?

5        A     Correct.

6        Q     Or over any time, correct?

7        A     Correct.

8              MS. LOVETT:  Let's see, we've been going

9         about an hour and 10 minutes.  Why don't we take

10        a quick restroom break and give Ms. Teslicko

11        a little break and we'll be back.

12             Let's come back here at --

13             THE VIDEOGRAPHER:  Off the record at

14        10:17 a.m.

15             (Whereupon a recess was taken from

16        10:17 a.m. to 10:35 a.m.)

17             THE VIDEOGRAPHER:  We are back on the record

18        at 10:35 a.m.

19   BY MS. LOVETT:

20        Q     All right.  So Ms. Bour, when we last took

21   our break we were talking about some of the

22   calculations you made.  I want to circle back to a

23   theme that you've enforced a couple of times, which is

24   that you're relying on Mr. Wood for causation, to

25   establish the causal link, build the bridge between

                                          Page 54

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1  the alleged deceptive statements and the loss, right?

2       A    Yes.

3       Q    So if he doesn't build that bridge, then the

4  jury doesn't have to -- if the jury finds and if the

5  jury has determined that he has not established that

6  link, then they don't have to consider your

7  calculations.  Because to your point, the calculations

8  would be irrelevant if there's no causation, right?

9            MR. MARTIN:  Objection to form.

10  BY MS. LOVETT:

11       Q    You may answer.

12       A    That would be for the jury to determine.

13       Q    I understand, and I'm asking you to assume

14  with me that if the jury -- I'm talking to you about

15  the same thing, so I'm not making any distinction

16  here -- but if the jury determines that there is no

17  causation, that Mr. Wood has not met his burden on

18  causation, then your opinion here becomes irrelevant;

19  because if there's no causation, there are no damages,

20  true?

21       A    That would be a legal matter.

22       Q    Yes.

23       A    And I'm not going to render a legal opinion.

24       Q    I understand that.  But you said two or

25  three times and I'm just trying to understand what you

Page 55

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1    mean by that, that you're relying on Mr. Wood for

2    causation, right?

3        A    Yes.

4             MR. MARTIN:   Objection.

5        Q    And causation is an integral, you

6    understand -- I assume you would not say that to me

7    under oath if you didn't have some idea of what

8    causation means, right?

9        A    Yes.

10       Q    Okay.  So you're relying on Mr. Wood to

11   establish, to build that bridge between the alleged

12   deceptive statements and any damages, right?

13            MR. MARTIN:   Just objection to the extent

14       that you keep referring to Mr. Wood.  The actual

15       plaintiff is TocMail.

16            MS. LOVETT:   I should say TocMail.  I think

17       your witness said Mr. Wood, so I'm trying to be

18       clear.  But I think we can refer to those two

19       entities interchangeably.

20   BY MS. LOVETT:

21       Q    Ms. Bour, you understand that Mr. Wood is

22   TocMail, TocMail is Mr. Wood, right?

23       A    Yes, and to be clear, I am not going to be

24   providing testimony with regard to causation, whether

25   Mr. Wood or TocMail or some other party that I'm not

Page 56

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1    aware of is providing that testimony.  I'm relying on

2    somebody else establishing that.

3             (The following portion is marked as

4        CONFIDENTIAL - COUNSEL ONLY):

5        Q    Sure.  So if we can go to Ms. Bour's expert

6    report, paragraph 15, which is on page five, and if

7    you can blow up the chart in the middle, please.

8             So Ms. Bour, we talked about how you were

9    calculating revenue and specifically how you were

10   calculating revenue for Microsoft's revenue, right?

11       A    We've talked about revenue in different

12   contexts and I was concerned that you were confusing

13   the different calculations, but this particular table

14   refers to defendant's revenue for purposes of

15   defendant's profits, yes.

16       Q    Yes.  I went through with you to begin with

17   TocMail's projected revenues, which you projected over

18   the next 15 years or so, the life of the patent, and I

19   did that specifically so we could contrast it with

20   Microsoft's revenue here, which is the revenue ending

21   at Microsoft's June 30 fiscal year for 2016, 2017,

22   2018, 2019, and 2020, correct?

23       A    Yes.

24       Q    All right.  So when we look at where you get

25   the revenue, I'm looking down here specifically at

Page 57

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1       A     Oh, I'm sorry.  I didn't know that was a

2   question.

3       Q     Oh, yes.

4       A     High level was to assess and gather

5   information with regard to the revenues related to

6   sales of Microsoft product that incorporated in the

7   bundle sold Safe Links or products that were Safe

8   Links threat protection on a standalone basis.

9       Q     All right.  So you agree with me again that

10   also in this disgorgement analysis you did not factor

11   for the value that Safe Links contributed to those

12   broader products into which it was incorporated, but

13   merely just took the sale of the product as a whole,

14   correct?

15           MR. MARTIN:  Objection to form.

16       A     The assumption is that the value contributed

17   was such that it was appropriate to use the sales as a

18   whole.

19       Q     Yes, and you arrived at your assumption that

20   the value was of such great value that it should

21   include the product as a whole; for example, the whole

22   sale of a Microsoft service or the whole sale an ATP

23   or Outlook 365 Suite, because you were convinced of

24   the "critical nature of Safe Links to the performance

25   of the overall product"?

Page 116

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1           MR. MARTIN:  Objection to form.

2    BY MS. LOVETT:

3        Q    You may answer.

4        A    My answer, again, is that TocMail will

5    provide evidence of that as proof of causation.

6        Q    Yes, but you -- so you assume that that

7    would be something that TocMail would prove, right?

8        A    Correct.

9        Q    And so there are basically, essentially two

10   business models which TocMail through Mr. Woods --

11   Mr. Wood has described to you.  One is the business

12   model via which TocMail would operate as a plug-in to

13   existing already hosted email servers, correct?

14       A    That is the primary business model.  So I'm

15   not sure exactly what else you're talking about.

16       Q    Well, I'm talking about -- in your email you

17   talk about and in the presentation that we saw to the

18   investors for Mr. Wood the possibility of actually

19   hosting email -- I asked you earlier about this in the

20   deposition, I believe -- about the ability to host

21   email up to 5 million users and then incorporate the

22   TocMail program into that hosting.

23       A    It's my understanding that they wouldn't

24   actually host the email.  That it would be posted

25   through another provider, but it would be provided as

                                          Page 117

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1      A     No.

2            MR. MARTIN:  Objection to form.

3      Q     So you can't tell the jury, even if we stop

4  right now -- today is March 15th, 2021.  If we stopped

5  on March 16th, 2021 and just pulled all those out

6  of -- pulled out all of those three alleged

7  misstatements or deceptive statements out of the

8  marketplace, you still think Mr. Wood would be

9  entitled to going-forward damages on the order of

10  $9 million -- $9 billion?

11            Let me get that straight for the jury,

12  $9 billion, with a "B"?

13      A     Again, I'm not testifying as to causation,

14  but my understanding is that unless something is

15  done -- and I'm going to use a lay term -- to

16  remediate, to correct the false benefits that have

17  accrued to the Microsoft brand from the years of

18  marketing, I don't know if it would change anything.

19      Q     And your assumption is based on -- your

20  understanding is from whom?

21      A     Again, I just said I'm not testifying to

22  that.  That is just my general understanding.

23  Somebody else is going to provide testimony as far as

24  causation.

25      Q     No, I understand, but where did you get your

Page 121

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1   assumption is that the false statements contributed
2   towards the image of Microsoft and Microsoft being
3   safe from IP cloaking and that enabling it to promote
4   the brand and promote Cloud-based products.
5       Q    So you have not made the assumption for your
6   lost profits claim that consumers would only have
7   bought the disputed Microsoft products because of the
8   inclusion of the allegedly deceptive statements?
9       A    Again, I stated my assumption.  I have not
10  made an assumption with regard to the sale of each of
11  the products as a result of this, and that's beyond
12  the scope of what I'm doing.
13      Q    Okay.  Well, I want to be clear for the jury
14  and for you.  There are three allegedly deceptive
15  statements here.  To carry its burden, TocMail has to
16  show that the statements led to the consumer's
17  choosing Microsoft, not anything else but those
18  particular deceptive statements.
19          Have you made that assumption?
20          MR. MARTIN:  Objection to form.
21  BY MS. LOVETT:
22      Q    You may answer.
23      A    I have made the assumption that the
24  plaintiff will be able to -- the plaintiff will
25  prevail on liability and causation and whatever is

Page 139

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1    necessary to reach that conclusion.

2          So I have not specifically made the

3    assumption that you're stating.  If that is a

4    necessary assumption for the plaintiff to prove its

5    case, then that is incorporated in my assumption.

6          Q    Can you think of any other reason, just you

7    as a professional, can you think of any other reason

8    outside the statements that a consumer may buy the

9    disputed Microsoft products?

10          Other than these three deceptive statements,

11    allegedly deceptive statements.

12          A    I have not made -- I've made no such

13    determination.

14          Q    So you haven't even thought about other

15    reasons that people might buy Office 365, ATP, a

16    Microsoft service enabled with ATP, other than the

17    allegedly three deceptive statements?

18          MR. MARTIN:  Objection to form.

19          A    No, I haven't.

20          Q    Let's see.  Would you agree that your

21    analysis assumed that every purchaser of an at-issue

22    seat, an at-issue Microsoft seat from February 2020 to

23    May 2035 was exposed to an allegedly misleading

24    statement and was influenced enough by the allegedly

25    misleading statement to buy the disputed product?

Page 140

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1      A     I'm sorry, could you please repeat that

2  a little bit slower for me?  It was a long statement.

3      Q     Sure.  No, I get it.  Let me break it down.

4            Would you agree that your analysis assumes

5  that each and every purchaser of an at-issue Microsoft

6  seat from February 2020 to May of 2035 -- which is the

7  life of your damage model going forward -- was exposed

8  to an allegedly misleading statement?

9            Would you agree with that?

10     A     I don't have knowledge to that.

11     Q     Okay.  But you're assuming that for your

12 damages model?

13     A     No, I'm assuming that TocMail will provide

14 sufficient evidence to establish causation.  I have

15 not made a determination as to what that evidence will

16 be, nor what is required, because that would be a

17 legal determination.

18     Q     Okay.  But I'm asking for the assumptions

19 that are built into your report, which I'm entitled to

20 explore.

21           In other words, you made the assumption here

22 that every purchaser going forward from February '20

23 to May of '35 was exposed to an allegedly misleading

24 statement, true?

25     A     No.

                                        Page 141

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1                    CERTIFICATE OF OATH

2

3            I, Alice J. Teslicko, RMR, a Notary Public

4         for the State of Florida at large, do hereby

5         certify that the witness, Marcie Bour, appeared

6         via teleconference before me and was duly sworn.

7              Signed and sealed this 19th day of March,

8         2021.

9

10

11                         _____

12                         Alice J. Teslicko, RMR

13

14    Commission No. GG249076

      My Commission Expires:

15    December 14, 2022

16

17

18

19

20

21

22

23

24

25

                                        Page 172

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

```
 1                    CERTIFICATE
 2   STATE OF FLORIDA       )
                           )   ss.
 3   COUNTY OF MARTIN       )
 4
           I, ALICE TESLICKO, RMR, a Registered
 5   Merit Reporter and Notary Public for the State of
     Florida at Large, do hereby certify that I reported
 6   the deposition of Marcie Bour, a witness called by the
     Defendant in the above-styled cause; and that the
 7   foregoing pages constitute a true and correct
     transcription of my shorthand report of the deposition
 8   of said witness.
 9           I further certify that I am not an attorney
     or counsel of any of the parties, nor a relative or
10   employee of counsel connected with the action, nor
     financially interested in the action.
11
           WITNESS my hand and official seal in the
12   City of Stuart, County of Martin, State of Florida,
     this 19th day of March, 2021.
13
14
15                         Alice J. Teslicko, RMR
16   My commission expires:
     December 14, 2022
17   Commission No. GG249076
18
19
20
21
22
23
24
25
                                         Page 173
```