# EXHIBIT 5

Page 1

1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                    CIVIL ACTION NO. 0:20-cv-60416

3

4      TOCMAIL, INC., a Florida corporation,

5                    Plaintiff,

6      -vs-

7

       MICROSOFT CORPORATION, a Washington
8      corporation,

9

                     Defendant.
10     _____/

11

12

13

                            Zoom Remote Proceedings
14                          Monday, March 22, 2021
                            11:04 a.m. - 5:53 p.m.

15

16          VIDEOTAPED VIDEO TELECONFERENCE DEPOSITION OF
                          KEITH URGONE, Ph.D.

17

18

19

20

21

22

23

                            Taken before Robyn Maxwell, RPR, FPR,
24     RSA, and Notary Public in and for the State of Florida at
       Large, pursuant to Notice of Taking Deposition filed in
25     the above-mentioned cause.

```
 1    APPEARANCES (VIA VIDEOCONFERENCE):
 2
 3        ON BEHALF OF THE PLAINTIFF:
              JOSHUA DAVID MARTIN, ESQUIRE
 4            josh.martin@johnsonmartinlaw.com
              JOHNSON & MARTIN, P.A.
 5            500 W. Cypress Creek Road
              Suite 430
 6            Fort Lauderdale, FL 33309
              954.790.6699
 7
 8
          ON BEHALF OF THE DEFENDANT:
 9            MARY-OLGA LOVETT, ESQUIRE
              lovettm@gtlaw.com
10            JEREMY SIMMONS, ESQUIRE
              simmonsje@gtlaw.com
11            GREENBERG TRAURIG LLC
              1000 Louisiana Street
12            Suite 1700
              Houston, TX 77002
13            713.374.3541
14
              EVELYN ANNE COBOS, ESQUIRE
15            cobose@gtlaw.com
              GREENBERG TRAURIG
16            333 Avenue of the Americas
              Suite 4400
17            Miami, FL 33131
              305.579.0506
18
19
20
          VIDEOGRAPHER:  ALAN PALLER
21
          ALSO PRESENT:
22            RACHEL HYMEN, CAMERON ROTH, AARON WOLKE, MARCY
          GORE
23
24
25
```

                                                    Page 5

1        outcome.

2              At this time counsel will now state their

3        appearances and affiliations for the record.  If

4        there are any objections to proceeding, please

5        state them at the time of your appearance

6        beginning with the noticing attorney.

7              MR. MARTIN:  Good morning.  This is Joshua

8        Martin here on the behalf of the plaintiff,

9        TocMail, Inc.  I also have Aaron Wolke, a

10       paralegal from my office who is attending the Zoom

11       conference today along with Marcy Gore,

12       Plaintiff's retained financial expert in this

13       case.

14             MS. LOVETT:  Good morning.  This is

15       Mary-Olga Lovett with Greenberg Traurig.  I have

16       with me my colleagues, Evie Cobos and Jeremy

17       Simmons who are attorneys with my firm.  And we

18       also have our support service -- trial support

19       specialist, Rachel Hymel, and our paralegal,

20       Cameron Roth.

21             THE COURT REPORTER:  Raise your right hand,

22       please.

23             Do you solemnly swear or affirm the

24       testimony you are about to give in this matter

25       will be the truth, the whole truth and nothing but

1          the truth?

2                    THE WITNESS:  I do.

3     Thereupon,

4                         KEITH UGONE, PH.D.,

5     having been first duly sworn or affirmed, was examined

6     and testified as follows:

7                         DIRECT EXAMINATION

8     BY MR. MARTIN:

9          Q.    Good morning.  Again my name is Josh

10    Martin.  I am counsel for plaintiff in this case.  Can

11    you please state and spell your name for the record.

12         A.    Yes.  My name's Keith Raymond Ugone.  Last

13    name is spelled U-G-O-N-E.

14         Q.    Mr. Ugone, you were retained by Microsoft

15    as a rebuttal expert in this case, correct?

16         A.    Yes.

17         Q.    You produced a rebuttal expert report?

18         A.    Yes.

19                    MR. MARTIN:  Aaron, can you go ahead and

20              put the rebuttal report up, please.

21                    (Plaintiff Exhibit 1 was marked.)

22    BY MR. MARTIN:

23         Q.    Aaron from my office is going to be

24    assisting with documents today.  I'm sure you've been

25    familiar with the Zoom process, but we have to use the

Page 7

```
 1   Exhibit Share to show you exhibits that we're going to
 2   look at.
 3        A.   Sure.
 4        Q.   Okay.  This -- this says, "Rebuttal Expert
 5   Report of Keith Ugone, December 7th of 2020."
 6             Is this the rebuttal report that you
 7   produced in this case?
 8        A.   Yes, that appears to be, at least the first
 9   page that I can see.  But, yes, I did produce a rebuttal
10   expert report on December 7, 2020.
11             MR. MARTIN:  Aaron, can you scroll to
12        page 3?  Sorry; go back up.  Sorry, to the first
13        page.  Yeah, page 1.  Okay.  Right there.
14   BY MR. MARTIN:
15        Q.   In paragraph 1 there it says, "I have been
16   retained as an economics and damages expert for Microsoft
17   Corporation."
18             Is that accurate?
19        A.   Yes.
20        Q.   When were you retained in this case?
21        A.   Boy, I'm trying to think of the approximate
22   time period.  But it was, obviously -- I mean, it was in
23   advance of the rebuttal report.  Let's say, you know,
24   maybe around a month, around that time before that,
25   maybe.
```

Page 22

1    BY MR. MARTIN:

2           Q.    Are you providing an opinion on causation

3    in this case?

4           A.    I'm providing an opinion that Ms. Bour, in

5    her report, fails to establish a linkage between her

6    mathematical numbers that she's calculating and the

7    alleged wrongful conduct, the alleged false advertising,

8    the alleged misstatements.  And so from a damage

9    quantification perspective, there's a number of different

10   things that you have to do to translate either a claimed

11   loss in sales or, you know, on the disgorgement side,

12   they have to do to establish a linkage to the wrongful

13   conduct.  Otherwise, it's just numbers.  It's not any

14   sort of damages or monetary remedy.

15          And my opinion is that's what's missing

16   from the -- from the Bour report.  So I wouldn't say I'm

17   doing causation, but I'm saying there was a failure to do

18   causation.

19          Q.    Did you have an opportunity to either watch

20   or listen to Ms. Bour's deposition that took place last

21   week?

22          A.    You needed one more word in there.  You

23   said hear, watch or listen.  I didn't do any of those.

24          Q.    Okay.  Did you get a chance to read her

25   deposition transcript?

Veritext Legal Solutions
800-726-7007                                                          305-376-8800

1   A. Yes.

2   Q. Okay.  Yeah, it was videotaped, so I didn't

3 know if you had a chance to watch the video and that was

4 going to be my next question.  If not, did you read the

5 deposition transcript?

6   A. Yes, I did read the deposition transcript.

7   Q. Is there -- is there anything that you read

8 that would change any of your opinions -- I'm sorry;

9 anything that you read in the deposition transcript that

10 would change any of your opinions that you trust in your

11 rebuttal report?

12   A. No.  In fact, a lot of what I read just

13 strengthened my opinions.

14    MR. MARTIN:  Aaron, can you scroll down?

15 BY MR. MARTIN:

16   Q. And we're going to go through these in

17 details, but before we just start, kind of going through

18 some of the opinions that you provided.  Can you just

19 give me an explanation of what you mean when you say that

20 it strengthened your opinions reading her transcript?

21   A. I mean, a lot of different things.  And

22 what I can do, too, and so I'm going to answer your

23 question, but also as we go through the report, if I

24 think of something to augment the answer, I'll let you

25 know.

Veritext Legal Solutions

800-726-7007                 305-376-8800

Page 24

```
 1              But, you know, she basically admitted she's
 2     doing no causation analysis.  She's relying on others,
 3     but all she's doing is coming up with revenues, but let's
 4     just even start there.
 5              She takes certain products, but she does
 6     not identify the revenues down to Safe Links, as one
 7     example.  She's just taking the broader umbrella products
 8     and coming up with those revenues.  So that's -- that's
 9     one problem.  She just basically admitted that.
10              She admitted that she doesn't -- you know,
11     I'm not even sure that she remembered or knew what the
12     alleged, you know, false statements were, but she has
13     done nothing to analyze whether Microsoft customers saw
14     the false statements -- alleged false statements, whether
15     they were influenced at all or confused by them, whether
16     they were material to those allegedly confused, such that
17     they influenced their purchase decision.  All of those
18     things that would go into the damage quantification
19     process that turns math into a claim for damages is
20     missing from her analysis, and she basically admitted
21     that.
22              She also admitted that TocMail has never
23     made a -- has never made a sale.  She admitted they
24     basically don't have any employees.  They don't have any
25     infrastructure.  You know, I can go on and on and on, in
```

Page 62

```
1    an inference in the question.

2              I'm not saying that there's been any proof

3    of damages because, if anything, there has been no

4    reliable proof of lost profit damages.  But what I'm

5    saying is, within her model, this is an inconsistency

6    putting aside all of the other evaluations I have of the

7    work that she did.

8         Q.    Okay.  Do you have an opinion on if TocMail

9    were to prevail in this case at trial, how long it would

10   take for the harm to be cured?

11        A.    I mean, that's -- that's assuming that

12   there is economic harm.  That's the -- that's what I'm

13   saying, there's a little bit of a, you know, a -- I don't

14   know how to say this -- kind of a -- imbedded predicate

15   in your question, where I think from my report there's

16   been no proof of -- we're talking about lost profits

17   now -- there's been no proof of lost profits harm.  The

18   company hasn't made any profits.  There isn't a company.

19   There's all of those issues, but if you want me to put

20   all of those aside, I'm talking about the deficiency in

21   Ms. Bour's model, and that's the opinion I'm giving.

22        Q.    Okay.  So your position is that even if

23   TocMail were to prevail on liability, obtaining an

24   injunction, there still would be no economic harm to

25   cure?
```

Page 63

```
 1        A.    My position is, is that Ms. Bour's analysis
 2   does not reliably prove any lost profits damages.  That's
 3   my opinion.
 4              MR. MARTIN:  Okay.  Can you scroll down,
 5        Aaron?
 6   BY MR. MARTIN:
 7        Q.    Okay.  Looking at C in the middle of the
 8   page there, Ms. Bour's proposed monetary remedies
 9   represent mathematical calculations rather than reliable
10   measure of damages attributable to alleged wrongful
11   conduct; do you see that?
12        A.    I do, yes.
13        Q.    Okay.  In the first sentence there, you
14   indicate that Ms. Bour fails to provide any evaluation of
15   the inputs into her calculations of whether her claimed
16   monetary remedies haven't -- and I'm quoting -- economic
17   nexus to the alleged wrongful conduct.  Is that -- when
18   you're referring to an economic nexus there, are you
19   referring to causation?
20        A.    Yes, but I just want to -- the reason why I
21   say that is, and, again, I'm not an attorney, but
22   sometimes when I use the term causation, I get a sense
23   that there might be something called legal causation or
24   what attorneys think of versus what a damage quantifier
25   thinks about which is economic causation.  So yes, I'm
```

Page 64

```
 1    talking about causation but from a damage quantification
 2    perspective and an economic perspective.  You know, the
 3    legal aspects of what legal causation is, you know, I
 4    can't speak to.  I just want to make sure that's clear,
 5    and that's why I used economic nexus.
 6            Q.    Okay.  And you understand that Ms. Bour
 7    expressly stated that she is not providing an opinion on
 8    causation in this case, economic or legal, as you put it?
 9            MS. LOVETT:  Yeah.  Yeah, objection.  Yeah,
10         never mind.  That is what she's saying.
11            A.    Yeah, so I agree she said that numerous
12    times, but that's one of the failings that I'm pointing
13    out is, she hasn't said anything about whether anybody
14    has seen the alleged misrepresentations, whether anybody
15    was confused by the alleged misrepresentations or,
16    perhaps more importantly, the materially -- materiality
17    aspect of the alleged misrepresentations as to whether
18    anyone changed their purchasing behavior because of the
19    alleged misrepresentation.  And if you don't get over
20    those hurdles, you never get to, you know, the lost
21    profits side.  And that's again just one aspect on the
22    causation, economic and damages causation, you know, to
23    the alleged wrongful conduct.
24    BY MR. MARTIN:
25            Q.    Okay.  So you're -- you're saying you --
```

Page 67

1    didn't have -- didn't have a product until just recently

2    and has no brand name associated with them.

3          Q.    Okay.  So if I'm understanding you

4    correctly, throughout your report you're -- you're

5    expressing things that Ms. Bour should have done in terms

6    of causation in order to properly provide an opinion in

7    this case?

8          A.    Yes.  For -- to employ proper damage

9    quantification techniques.

10         Q.    So is it your opinion that TocMail could

11   not establish causation through other avenues of

12   evidence, other people testifying, things like that, it

13   has to be through Ms. Bour?

14              MS. LOVETT:  Objection; assumes facts not

15          in evidence.  Specifically that there are any

16          other such identified witnesses.

17              You may answer, Mr. Ugone.

18         A.    Yeah, I guess the way I would phrase it is,

19   is that, you know, obviously, in any presentation in a,

20   you know, court or legal environment, there can be

21   various presentations that are made.  But ultimately, my

22   understanding is Ms. Bour's assignment was to evaluate

23   the claim damages.  So in a sense, regardless of what

24   evidence may be presented, there's many, many different

25   aspects of the work that she undertook that is deficient

Page 71

```
 1   that.
 2               MR. MARTIN:  All right, Aaron, go back to
 3         page 4.
 4   BY MR. MARTIN:
 5         Q.    Okay.  I'm looking at D, "Ms. Bour failed
 6   to consider that not all consumers were exposed to,
 7   confused by or alter their purchase behavior because of
 8   Microsoft's allegedly misleading statements."
 9               Do you see that?
10         A.    Yes.
11         Q.    And so here, you're referencing -- you said
12   "Ms. Bour implicitly assumes that all consumers who
13   purchased a product with the Safe Link" -- "Safe Links
14   feature," and then there's three little sub points there.
15               Do you see that?
16         A.    I do, yes.
17         Q.    So again, is this all part of your opinion
18   regarding causation?
19         A.    The economic and damages related causation,
20   yes.
21               Did somebody see the alleged or the
22   offending statement?  Were they confused by it, and was
23   it material?  Did it alter their purchase decisions?  And
24   Ms. Bour's report is devoid of any even acknowledgement
25   of those concepts.
```

Page 227

1           EXCEPT FOR ANY CORRECTIONS MADE ON
            THE ERRATA SHEET BY ME, I CERTIFY
2           THIS IS A TRUE AND ACCURATE TRANSCRIPT.
3
4           Keith Urgone, Ph.D.
5
            Sworn to and subscribed before me this
6
        day of              2021.
7
    Personally known      or I.D. _____
8
9
10
                    Notary Public in and for the
11                  State of Florida at Large
12  My commission expires:
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 228

1                     CERTIFICATE OF OATH OF WITNESS

2

3    THE STATE OF FLORIDA        )
                                 )  SS:
4    COUNTY OF PALM BEACH        )

5

6

7                     I, Robyn Maxwell, Registered Professional

8    Reporter, Registered Professional Reporter, Notary Public

9    in and for the State of Florida at Large, certify that

10   the witness, KEITH UGONE, Ph.D., personally appeared

11   before me on March 22, 2021 and was duly sworn by me.

12                     WITNESS my hand and official seal this

13   22nd day of March, 2021.

14

15

16

17

18

19   _Roß Maxwell_

20

    _____

21      Robyn Maxwell, RPR, FPR, CLR
       Realtime Systems Administrator

22         Notary Public, State of Florida at Large
          Notary No. GG 194507

23         My Commission Expires: 4/4/2022

24

25

Page 229

```
 1                REPORTER'S DEPOSITION CERTIFICATE

 2

 3    THE STATE OF FLORIDA  )

 4    COUNTY OF PALM BEACH   )

 5

 6                I, Robyn Maxwell, Florida Professional

 7    Reporter, certify that I was authorized to and did

 8    stenographically report the deposition of KEITH UGONE,

 9    Ph.D., the witness herein on March 22, 2021; that a

10    review of the transcript was requested; that the

11    foregoing pages numbered pages 1 through 231; and that

12    the transcript is a true and complete record of my

13    stenographic notes.

14                I further certify that I am not a

15    relative, employee, attorney, or counsel of any of the

16    parties, nor am I a relative or employee of any of the

17    parties' attorney or counsel connected with the action,

18    nor am I financially interested in the action.

19        DATED this 22nd day of March, 2021.

20

21

22              Rof Maxwell

23        _____

          Robyn Maxwell, RPR, FPR, CLR

24        Realtime Systems Administrator

25
```