# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-AMC

TOCMAIL INC., a Florida corporation,

    Plaintiff,

v.

MICROSOFT CORPORATION, a Washington corporation,

    Defendant.

**DEFENDANT MICROSOFT CORPORATION'S AMENDED RESPONSE TO PLAINTIFF TOCMAIL, INC.'S SECOND SET OF INTERROGATORIES**

Defendant Microsoft Corporation ("Microsoft"), by and through its undersigned counsel and pursuant to Rule 26.1(g) of the Federal Rules of Civil Procedure and Southern District of Florida, hereby serves its amended response to Plaintiff TocMail, Inc.'s Second Set of Interrogatories, and states as follows:

**PRELIMINARY STATEMENT**

1. Microsoft's investigation of facts and discovery of documents and other information relating to the claims and defenses at issue is ongoing. Accordingly, Microsoft's responses herein are based upon Microsoft's current knowledge and reasonable belief. Microsoft reserves the right to produce evidence of any subsequently discovered fact, modify and/or supplement any and all of its objections and responses herein, and to otherwise assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed. Nothing in these responses is an admission by Microsoft regarding the existence of any information or the relevance or admissibility of any information, for any purpose.

2. Nothing in these responses is an admission by Microsoft of the existence, relevance, or admissibility of any information, for any purpose, or the truth or accuracy of any statement or

characterization contained in any document. Microsoft reserves all objections and other questions as to the competency, relevance, materiality, privilege, or admissibility related to the use of any document referenced or information provided in response to these requests as evidence for any purpose whatsoever in any subsequent proceeding in this action or any other action.

   3. Microsoft's agreement to produce any category of documents is not a representation that any such documents actually exist in that category, or that Microsoft will produce documents in the category that are subject to immunity or privilege, or that Microsoft will produce documents that are outside of Microsoft's possession, custody, or control. Microsoft's discovery and investigation in connection with this litigation are continuing. As a result, Microsoft's responses are limited to information obtained to date, and are given without prejudice to Microsoft's right to amend or supplement its responses after considering information obtained through further discovery or investigation.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

   1. Microsoft objects to each definition and instruction to the extent it seeks to impose requirements or obligations on Microsoft beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the applicable rules and orders of this Court, or any stipulation or agreement of the parties in this action.

   2. Microsoft objects to TocMail's definition of the term "Safe Links" as "Microsoft's ATP Safe Links" on grounds that it is vague and to the extent it implies that Safe Links is an individual Microsoft product. Safe Links is one of several different security features that is part of Microsoft's Advanced Threat Protection ("ATP") service, which service operates inside Microsoft 365 and is included in some Microsoft 365 products or can be purchased as an add-on service to Microsoft 365 products.

3.      Microsoft objects to the term "IP Cloaking," which is defined by TocMail as links that send benign content when devices with certain IP Addresses connect and send malicious content when devices with other IP Addresses connect. This term is vague, ambiguous, and appears to refer to several IP-based evasion techniques and/or network evasion techniques.

4.      Microsoft objects to the term "IP Cloaked Link," which is defined by TocMail as hyperlinks that "hide malicious content and/or hide a redirect to a malicious site from … EOP and Safe Links[.]" Microsoft objects to the use of this vague and ambiguous definition and any implication and/or mischaracterization that Microsoft's EOP, ATP, and/or Safe Links fails to protect its users from cyber attacks through what TocMail calls "IP Cloaking" or "IP Cloaked Links."

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 10:**

For Safe Links' protected emails, when the original URL redirects EOP to a different site, and Safe Links identifies the original URL as safe when the user clicks on it, does Safe Links redirect the user's device to the original URL?

**RESPONSE:** Microsoft objects to this interrogatory on grounds that the phrases "Safe Links' protected emails" and "identifies the original USL as safe" are subjective, vague and ambiguous. Subject to the foregoing objections, Microsoft states that EOP is a cloud-based filtering service that helps protect organizations against spam and malware. Further, Safe Links is a feature that provides URL scanning of inbound email messages in mail flow, and time of click verification of URLs and links in email messages and in other locations. Thus, Interrogatory No. 10 conflates multiple security services as one service. Microsoft further responds that URLs do not redirect EOP to a different site. Safe Links

performs a reputation determination based on a URL, and depending on Microsoft's (and other third-parties') understanding of a URL's reputation given its knowledge, a time of click detonation may be performed, and a user's browsing entity can depict a warning box or the user's browsing entity is allowed to click-through the original URL.

**INTERROGATORY NO. 11:**

When Safe Links redirects a user's device to an original URL, can the original URL redirect the user's device to a different site than it redirected EOP to when EOP visited it?

**RESPONSE:** Microsoft objects to this interrogatory on grounds that it lacks a factual predicate. Subject to the foregoing objections, Microsoft states that URLs do not themselves redirect the user's device. A URL is text, it is not executable code. A URL does not contain business logic or a rules engine and cannot, by itself, effectuate a redirection of a browsing entity. A webserver may provide a user's browsing entity with a response that may result in a redirection. Any server-side website logic can evaluate source traffic and decide how to respond to that traffic which may include where to send it (*i.e.* provide a redirect).

**INTERROGATORY NO. 12:**

When Safe Links redirects a user's device to an original URL, can the original URL redirect the user's device to a different site than Safe Links was redirected to when Safe Links visited it?

**RESPONSE:** Microsoft objects to this interrogatory on grounds that it lacks a factual predicate. Subject to the foregoing objections, Microsoft reincorporates its response to Interrogatory No. 11. Safe Link asynchronously visits a site (sometimes it is at the time of delivery and other times it is at random). Safe Links performs a reputation determination on a URL, and depending on Microsoft's (and other third-parties') understanding of a

URL's reputation given its knowledge, a time of click detonation may be performed, and a user's browsing entity can depict a warning box or the user's browsing entity is allowed to click-through the original URL.

**INTERROGATORY NO. 13:**

Prior to February 2020, was Microsoft aware of any testing performed by Rhino Security Labs, Cryptron Security, or Avanan in regards to tests that involved both IP-based cloaking and Safe Links? If yes, identify which testing Microsoft was aware of, when Microsoft became aware of the testing, the nature of the testing and any known results and/or data of such testing.

**RESPONSE:** Microsoft objects to this interrogatory on grounds that it is irrelevant to the claim at issue in this lawsuit—Microsoft's alleged false advertising of Safe Links—and is not proportional to the needs of the parties. Microsoft also objects to this interrogatory on grounds that the phrase "involved both IP-Based cloaking and Safe Links" is vague and ambiguous. Furthermore, this interrogatory is overbroad in that it is not limited to the relevant time frame in this case and is unduly burdensome to the extent it seeks to obtain all of Microsoft's employees' understanding and knowledge, which is not practical and not proportional to the needs of the case for the claims at issue. Subject to the foregoing objections, Microsoft states that it is generally aware that third-parties test Microsoft's products and/or features. Further, following a reasonable investigation, Microsoft cannot cite the precise test or report, but can state it was generally aware of proof-of-concept information published by Avanan involving IP-based network evasion and Safe Links. It was aware of such testing as of 2016.

**INTERROGATORY NO. 14:**

Identify all phishing kits that Microsoft is aware of that include a .htaccess file that redirects Microsoft IP addresses and/or Microsoft IP address range or ranges. For each phishing kit, identify

5

the name of the phishing kit, the date Microsoft became aware of it, and the Microsoft IP addresses (and/or IP address range or ranges) that .htaccess file redirects.

> **RESPONSE:** Microsoft objects to this interrogatory on grounds that it is irrelevant to the claim at issue in this lawsuit—Microsoft's alleged false advertising of Safe Links—and is not proportional to the needs of the parties. Furthermore, this interrogatory is overbroad in that it is not limited to the relevant time frame in this case and is unduly burdensome. Additionally, .htaccess files do not themselves redirect based on address ranges. A .htaccess file can specify rules that when acted upon may result in a redirection based on an address range or ranges. Additionally, this interrogatory is unduly burdensome to the extent it seeks to obtain all of Microsoft's employees' understanding and knowledge, which is not practical and not proportional to the needs of the claims in this case. Subject to and without waiving the foregoing objections, Microsoft states that it tracks some phishing kits to, among other things, bolster its advanced intelligence and machine learning, and improve user safety. Microsoft states that it began tracking some phishing kits in 2018 and over the last six months, it has collected 3,467 unique phishing kits.

**INTERROGATORY NO. 15:**

Does Microsoft contend that Safe Links protects its users from IP Cloaking and IP Cloaked Links? If so, please describe in the detail the basis for such contention and all facts, documents or other records that support such contention.

> **RESPONSE:** Microsoft objects to this Interrogatory on grounds that the term "protects" is vague and on grounds that it is overbroad in seeking all facts, documents and records. Subject to the foregoing objections, Microsoft responds that it endeavors to protect its clients from malicious content and malicious websites, including, but not limited to, websites that are reached via a redirection. To achieve these goals, Microsoft utilizes many

detection layers, such as IP/Sender reputation, data science techniques, detonation, and IP anonymization, among other things. For example, Safe Links performs Reputation Block, whereby Microsoft checks link reputations and, when it learns a link is bad, this information is updated in the reputation cache and blocked in the future.  If a late detection of a malicious link occurs, Safe Links' Time Travel capability allows it to recall mail so that users cannot open the mail or click on the link in the mail once it has been sent.  Safe Links also provides Dynamic Email Delivery, and performs static URL analysis and remote isolator browsing.  When necessary, Safe Links is equipped to perform Linked Content Detonation in a Sandbox. Safe Links also offers Time-of-Click Detonation, which allows Microsoft to route detonation traffic out of non-Microsoft IP ranges.  Additionally, Safe Links does Heuristic email-based and context-based Clustering, which allows Microsoft to identify cohorts of mail with similar characteristics by analyzing anomalistic patterns. Through this process, Microsoft can block an entire cluster of mail.  Finally, Microsoft gives its clients the tools to create a customized Tenant Allow/Block list which determines whether to allow or block mail from certain senders, for example. Documents located based on a reasonable search that are relevant to IP reputation determination, IP sender reputation, data science techniques, detonation, and the use of IP anonymization have been produced, including, but not limited to the following examples: MSFT_TOC00093502, MSFT_TOC00087121, MSFT_TOC00001197, MSFT_TOC00198911, MSFT_TOC00056667 and directs Plaintiff to the deposition testimonies of Jason Rogers, Amar Patel, and Abhijeet Hatekar, as well as Microsoft's corporate representative depositions.  Discovery is still ongoing and Microsoft reserves the right to modify and/or supplement this response if additional facts are ascertained in the course of discovery or additional previously produced responsive

Case No: 0:20-cv-60416-AMC

documents are identified.

Dated: March 15, 2021　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Evelyn A. Cobos*
　　　　　　　　　　　　　　　　　　　　Evelyn A. Cobos

　　　　　　　　　　　　　　　　　　　　**GREENBERG TRAURIG, LLC**
　　　　　　　　　　　　　　　　　　　　1000 Louisiana Street, Suite 1700
　　　　　　　　　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　　　　　　　　　Telephone: (713) 374-3541
　　　　　　　　　　　　　　　　　　　　Facsimile: (713) 374-3505
　　　　　　　　　　　　　　　　　　　　MARY-OLGA LOVETT
　　　　　　　　　　　　　　　　　　　　Email: lovettm@gtlaw.com

　　　　　　　　　　　　　　　　　　　　**GREENBERG TRAURIG, P.A.**
　　　　　　　　　　　　　　　　　　　　333 S.E. 2nd Avenue, Suite 4400
　　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　　Telephone: (305) 579-0500
　　　　　　　　　　　　　　　　　　　　Facsimile: (305) 579-0717
　　　　　　　　　　　　　　　　　　　　FRANCISCO O. SANCHEZ
　　　　　　　　　　　　　　　　　　　　Florida Bar No. 598445
　　　　　　　　　　　　　　　　　　　　Email: sanchezo@gtlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　orizondol@gtlaw.com
　　　　　　　　　　　　　　　　　　　　EVELYN A. COBOS
　　　　　　　　　　　　　　　　　　　　Florida Bar No. 106937
　　　　　　　　　　　　　　　　　　　　Email: cobose@gtlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　FLService@gtlaw.com

　　　　　　　　　　　　　　　　　　　　***Attorneys for Microsoft Corporation***

Case No: 0:20-cv-60416-AMC

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 15, 2021, the foregoing document is being served this day on all counsel of record on the service list via electronic mail.

/s/ *Evelyn A. Cobos*
EVELYN A. COBOS

## **SERVICE LIST**

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*