UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-CANNON/HUNT

TOCMAIL, INC., a Florida corporation,

     Plaintiff,

v.

MICROSOFT CORPORATION, a Washington
corporation,

     Defendant.

### DEFENDANT MICROSOFT CORPORATION'S ANSWER TO PLAINTIFF TOCMAIL, INC.'S FIRST AMENDED COMPLAINT

Defendant Microsoft Corporation ("Microsoft") hereby submits its Answer to the First Amended Complaint filed by Plaintiff TocMail, Inc. ("TocMail").

### GENERAL DENIAL

Except as otherwise expressly stated herein, Microsoft denies each and every allegation in the First Amended Complaint (the "FAC"), including, without limitation, any allegations contained in the headings and subheadings. Microsoft reserves the right to seek to amend and/or supplement its Answer as may be necessary and appropriate.

### ANSWER

1.     This is an action for damages, disgorgement of profits, and injunctive relief under the Lanham Act for harm suffered by Plaintiff and from future harm Plaintiff will suffer due to Microsoft's dissemination of deceptive promotions regarding the security of its Office 365 email service and Safe Links' supposed capabilities.

**Answer:**     Microsoft admits that TocMail seeks both monetary and injunctive relief under the Lanham Act. Microsoft denies that TocMail is entitled to any damages,

disgorgement of profits, or injunctive relief and denies the remaining allegations in Paragraph 1 of the FAC.

2.      Microsoft has known that its cloud-based email security is defenseless against the most-common hacking attack - an attack vector used by the vast majority of malicious sites. Microsoft promoted its Safe Links as Microsoft's solution to this specific attack vector, knowing that Safe Links does not offer any additional protection against this attack.  Consumers trust Microsoft's false advertising, wrongly believing that they are protected from this specific attack while they actually remain defenseless.

**Answer:**      Microsoft denies the allegations in Paragraph 2 of the FAC.

3.      Plaintiff currently offers a patented, cloud-based, time-of-click, redirect service that protects users from the most common hacking attack.  However, Plaintiff is hindered from selling its patented solution because Microsoft has convinced companies that it has already solved this issue.  More specifically, Microsoft has falsely convinced companies that its Safe Links service has already solved this issue.  Safe Links is Microsoft's cloud-based, time-of-click, redirect service which Microsoft falsely promotes as keeping users safe from the most-common hacking attack, causing Plaintiffs offering to appear to have no value to the very consumers who need it most.

**Answer:**      Microsoft denies the allegations in Paragraph 3 of the FAC.

4.      As a result of Plaintiffs patent, Plaintiff is the sole provider of that which millions of consumers wrongly believed they have been purchasing from Microsoft.  Plaintiff is seeking damages against Microsoft based on these consumers withholding trade from Plaintiff over the lifetime of its patent.

**Answer:**　　　Microsoft admits only that TocMail seeks monetary damages.  Microsoft denies the remaining allegations in Paragraph 4 of the FAC and that TocMail is entitled to any damages.

5.　　　Before migrating to Office 365's cloud, companies used on-premise scanners for email security.  These on-premise scanners were practically immune to the attack that Microsoft's Office 365's email security service is defenseless against.  Given that Microsoft knowingly stripped hundreds of millions of consumers of the protection they once had by migrating consumers to Office 365's cloud, Plaintiff is seeking disgorgement of profits.  There is great public interest in making this misconduct unprofitable.

**Answer:**　　　Microsoft denies the allegations in Paragraph 5 of the FAC.

### THE PARTIES

6.　　　Plaintiff, TocMail, is a Florida corporation doing business within this District.

**Answer:**　　　Microsoft admits that TocMail is a Florida corporation with its principal place of business in this District but denies that it "do[es] business."

7.　　　Defendant, Microsoft, is a Washington corporation with, upon information and belief, its principal place of business in Redmond, Washington doing business throughout the United States, including within this District.  Microsoft is registered to do business in the State of Florida, and has one of its corporate headquarters located within this District as well.

**Answer:**　　　Microsoft admits the allegations in the first sentence of Paragraph 7 of the FAC. Microsoft also admits it is registered to do business in the State of Florida. Microsoft denies the remaining allegations in Paragraph 7 of the FAC.

## JURISDICTION AND VENUE

8.       This is a civil action for damages in excess of $15 billion, disgorgement of profits and injunctive relief for false and misleading advertising under 15 U.S.C. §1125(a)(1)(B).  Plaintiff is seeking judgement for three times Defendant's profits made as a result of Defendant's wrongful actions and three times Plaintiff's damages pursuant to 15 U.S.C. § 1117(a).

> **Answer:**      Microsoft admits that TocMail seeks damages, disgorgement of profits, and injunctive relief, but denies that TocMail is entitled to any damages, disgorgement of profits, or injunctive relief.  Microsoft denies the remaining allegations in Paragraph 8 of the FAC.

9.       This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because TocMail's claims arise under federal law, as well as pursuant to 15 U.S.C. § 1121 because TocMail's claims arise under the Lanham Act.

> **Answer:**      Microsoft admits only that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121. Microsoft denies that TocMail has a valid claim under the Lanham Act or that it is entitled to any relief.

10.       This Court has personal jurisdiction over Microsoft because it is registered to do business in Florida, operates, conducts, engages in and carries on a business in Florida, including within this judicial district, has offices in Florida, and committed a tortious act within Florida, including within this judicial district.  Thus, this Court's exercise of personal jurisdiction over Microsoft is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

> **Answer:**      Microsoft does not contest or challenge personal jurisdiction for this action only, and denies the remaining allegations in Paragraph 10 of the FAC.

11.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to at least 28 U.S.C. §§ 1391.

**Answer:**     Microsoft no longer contests or challenges venue in this Court, and denies the remaining allegations in Paragraph 11 of the FAC.

## GENERAL ALLEGATIONS

**I.     Background of Cloaking and Microsoft's Awareness.**

**A.     The Most Common Hacking Attack.**

12.     Upon information and belief, the majority of malicious websites use an attack called *cloaking*.   Cloaking typically involves the hacker's link sending benign content to security scanners and sending malicious content to everyone else.   Through cloaking, the security scanner never sees the harmful content and, therefore, sends users to the site where they are subsequently hacked by the content that the scanner never sees.

**Answer:**     Microsoft denies the allegations in Paragraph 12 of the FAC.

13.     For example, based on a report by Google, it appears that the majority of malicious websites were using cloaking as early as approximately 2011.   Additionally, a recent study of 2,313 web server configuration files used on live phishing sites found that over 95% of the files were using cloaking.   Cloaking as the most-common hacking attack is consistent with other studies as well.

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the second sentence in Paragraph 13 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations and demands strict proof thereof. Microsoft denies the remaining allegations in Paragraph 13 of the FAC.

**B.     Microsoft's Knowledge of this Attack.**

14.     In January 13, 2012, in the Bing webmaster's blog, Microsoft defined cloaking as follows:  "Cloaking is the process where you determine who the visitor is coming to your website, then show content depending on who that visitor is."

> **Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 14 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

15.     Microsoft has been aware of the widespread use of cloaking for more than a decade. In 2006, Microsoft researchers wrote that cloaking had already become "popular," "commonly used," and "well-known."

> **Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the second sentence in Paragraph 15 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations and demands strict proof thereof. Microsoft denies the remaining allegations in Paragraph 15 of the FAC.

16.     In 2006, Microsoft researchers wrote:  "We have also shown that malicious website operators are using cloaking techniques as well, so it is important for automated exploit detection systems to adopt anti-cloaking techniques in their scanning . . . ." This was written by Microsoft's Cybersecurity & Systems Management Group.  Hence, from 2006 onward, Microsoft knew that "malicious websites operators" are using cloaking to hide their malware, and therefore it is "important" for "exploit detection systems" to "adopt anti-cloaking techniques in their scanning."

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in the first two sentences of Paragraph 16 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.   Microsoft denies the remaining allegations in Paragraph 16.

C.     **Types of Cloaking.**

17.     Per Microsoft's definition of cloaking, the first step for the malicious website is to "determine who the visitor is." Microsoft lists three different traits that websites can use to determine who the visitor is, and then redirect the visitor accordingly:  "When a web client visits a website, certain traits can be used to identify the user and redirect them to a different page.  These include, but are not limited to, redirects based on the referral code, the user agent (bot or human), and IP address." Microsoft lists three traits that can be used to identify who the visitor is:  referral code, user agent, and IP address.

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 17 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

18.     When a user clicks on a search result from Google, Yahoo, and others, the browser automatically adds a referral code to the connection request to identify which site referred the user to the link.  Likewise, when a user clicks a link on a webpage, the browser automatically adds that webpage URL to the referral code so that the link can know which webpage referred the user to the link.  Websites can redirect users to different pages and sites based on the referral code.  The industry-standard term for doing so is *Referrer Cloaking*.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 18 of the FAC.

19.     The term "user agent" refers to the type of software being used to access the link. For example, users typically access links using browsers such as Firefox and Chrome. Browsers identify themselves to links by setting the user-agent field when connecting to the link By looking at the user-agent field, the website can determine which browser is being used, and redirect the user accordingly. Likewise, the scanners run by Google, Microsoft, and Yahoo can set the user-agent field to identify that it is their software that is accessing the link By looking at the user-agent field, the website can redirect security scanners to a benign site, and redirect human visitors (browser users) to a malicious site. The industry-standard term for doing so is *User-Agent Cloaking*.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 19 of the FAC.

20.     Cloaking can also be performed based on the visitor's IP address. For example, if a malicious website detects that the visitor's IP address belongs to a security scanner, the malicious website can redirect the security scanner to a benign site (hiding malicious content from the security scanner with 100% efficacy). However, when the website detects that the visitor's IP address is not a security scanner, it can redirect the visitor to a malicious site where the victim's device is successfully hacked. The industry standard term for IP-based cloaking is *IP Cloaking*. This has been the industry standard term for approximately twenty years.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 20 of the FAC.

**D.**     **Cloud-Based Scanners Cannot Reliably Detect IP Cloaking.**

21.     Over 90% of successful data breaches begin with an email - typically an email containing a malicious link. Companies rely on link scanners to protect them from such links. Link scanners can either be run on the company network (on-premise) or in the cloud.

    **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 21 of the FAC.

22.     Cloud-based scanners have a security defect that on-premise scanners do not have. Specifically, cloud-based scanners cannot reliably detect IP Cloaking. Microsoft convinced many companies to abandon their on-premise scanners to move to Office 365's cloud-based scanners anyway.

    **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 22 of the FAC.

23.     Cloud-based scanners easily detect both Referrer Cloaking and User-Agent Cloaking simply by setting the referral code and user-agent field to whatever they want. For example, a cloud-based scanner can mimic a Google search referral simply by setting the referral code to the same value that Google does. Likewise, if a cloud-based scanner wants to know where a website redirects Firefox users to, the cloud scanner simply mimics a Firefox browser by setting the user-agent field to the same thing that Firefox does. Because referral codes and user-agent fields are so easily mimicked, cloud-based scanners are not particularly vulnerable to such cloaking techniques.

    **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 23 of the FAC.

24.     However, there is one trait that cloud-based scanners cannot mimic: the user's IP address, which is why IP Cloaking (cloaking based on IP address) is impossible for a cloud-based scanner to reliably detect.

> **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 24 of the FAC.

25.     Indeed, a study co-authored by Dr. Wenke Lee, Director of the Institute for Information Security & Privacy at Georgia Tech, explicitly states the following regarding cloud-based scanners: "First, they cannot detect IP cloaking. This is because these systems use centralized servers to collect user views." The study explains why IP Cloaking "cannot" be detected by cloud-based scanners, and therefore proposes an on-premise solution.

> **Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 25 of the FAC, as there is no citation and no document was attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

26.     To understand the severity of Microsoft's deception, it is essential to understand that on-premise scanners are practically immune to IP Cloaking. On-premise scanners share the same IP address as the company devices. Thus, on-premise scanners inherently mimic the user's IP address. In other words, while cloud-based scanners *cannot* mimic the user's IP address, on-premise scanners *inherently* do so, making cloud-based scanners virtually defenseless against detecting IP Cloaking, an attack that on-premise scanners are practically immune to. When a company moves its email security off premise to Microsoft's cloud, in that very moment the company becomes defenseless to IP Cloaking, an attack vector used by the majority of malicious sites.

**Answer:**      Microsoft denies the allegations and characterizations in Paragraph 26 of the FAC.

27.      Because traditional cloud-based scanners are especially vulnerable to IP Cloaking, some security professionals use the term "cloaking" in reference to "IP Cloaking" itself.   For example, a study guide for the Certified Ethical Hacker exam defined website cloaking as follows: "Website Cloaking is the ability of a web server to display different web pages based on the user's IP address."

**Answer:**      Microsoft denies the allegations and characterizations in the first sentence of Paragraph 27 of the FAC.  Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in the second sentence of Paragraph 27, as no citation was provided and no document was attached to the FAC to verify its accuracy, and it therefore denies the allegations related thereto and demands strict proof thereof.

**E.      Microsoft's Knowledge that Cloud-Based Scanners Cannot Reliably Detect IP Cloaking.**

28.      Upon information and belief, it is apparent that Microsoft has been aware of the attack vector of IP-based cloaking for more than a decade.  For example, in 2009, Microsoft noted that hackers were redirecting Microsoft's IP addresses to benign content in order to hide their malware from Microsoft's scanners.

**Answer:**      Microsoft denies the allegations and characterizations in the first sentence of Paragraph 28 of the FAC. Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in the second sentence of Paragraph 28, as no citation was provided and no document was attached to the FAC to verify its accuracy, and it therefore denies the allegations related thereto and demands strict proof thereof.

29.     Additionally, in 2013, Microsoft wrote about "several common challenges that crawlers have." According to Microsoft, one of the common challenges that cloud-based scanners have is as follows:  "Attackers can identify the crawler (e.g., by knowing the IP addresses from which it operates . . .), and evade detection. . . ." In other words, one of the common challenges that cloud-based scanners have is their vulnerability to IP Cloaking.  In fact, in that report, Microsoft wrote that IP-based cloaking "may affect our system" (the cloud-based scanning system that Microsoft researchers were proposing).

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 29 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

30.     In that very same study, Microsoft wrote that when cloud-based scanners "operate from easily-identified blocks of IP addresses[,]" "it is simple to offer them different content from regular web users" and the malicious website "has no difficulty showing an innocent face to any crawler that finds it." When a malicious website knows all of the scanners' IP addresses, it can always redirect the scanner to a benign site 100% of the time, rendering the scanner defenseless to IP Cloaking.  Moreover, as Microsoft acknowledges, "it is simple" to do so.

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 30 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

### F.   Microsoft's Initial Deception.

31.   Despite knowing that cloud-based scanners cannot reliably detect IP Cloaking, Microsoft announced the general availability of Office 365 in 2011, promising "the benefits of cloud computing with the enterprise-grade security you require, whatever the size of your organization." Microsoft even proclaimed that "many organizations discover that Office 365 can provide a higher standard of security at lower cost than they are capable of maintaining with on-premises productivity servers." Due to the stark contrast between on-premise security as compared to Office 365's ability to defend against the ubiquitous use of IP Cloaking, those proclamations were false.

> **Answer:**      Microsoft admits only that Office 365 became available in 2011. Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 31 of the FAC that rely on alleged quotes, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof. Microsoft denies the remaining allegations and characterizations in Paragraph 31 of the FAC.

32.   Nevertheless, Microsoft continued promoting security as a material reason to move email security off premise to Microsoft's cloud-based Office 365.  In fact, Microsoft even promoted security as a main reason to move to Office 365.  For example, Computer Weekly reported that Microsoft's Trustworthy Computing Group stated that out of all of Office 365's features "it is Office 365's security credentials that really sets it apart."

> **Answer:**      Microsoft lacks knowledge or information sufficient to form a belief concerning the last sentence in Paragraph 32 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related

thereto and demands strict proof thereof.  Microsoft denies the remaining allegations and characterizations in Paragraph 32.

33.     Companies began trusting Microsoft's security claims and began migrating to Microsoft's cloud-based Office 365.

**Answer:**     Microsoft admits only that some companies use Office 365.  Microsoft denies the remaining allegations and characterizations in Paragraph 33 of the FAC.

**G.     Microsoft's Second Deception.**

34.     Gartner, Inc. ("Gartner") is "the leading research and advisory company" with nearly 17,000 associates, $4.2 billion in revenue, and serving 77% of the Global 500 companies. Gartner provides advice and guidance to assist companies around the world with their technology purchase decisions.  Gartner has been repeatedly included in Fortune's annual list of "The World's Most Admired Companies."

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 34 of the FAC, as no citation was provided and no document was attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

35.     Gartner's opinions appear to be very important to Microsoft, as evidenced by the fact that a Google search indicates that Microsoft references Gartner approximately 16,300 times throughout various pages and documents comprising Microsoft's microsoft.com website.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 35 of the FAC.

36.     In 2012, Gartner squarely depicted Microsoft in the "Leaders" quadrant in its annual *Magic Quadrant for Secure Email Gateways*.

> **Answer:**   Microsoft admits the allegations in Paragraph 36 of the FAC.

37.   In 2013, Gartner squarely depicted Microsoft in the "Leaders" quadrant in its annual *Magic Quadrant for Secure Email Gateways*.

> **Answer:**   Microsoft admits the allegations in Paragraph 37 of the FAC.

38.   However, in 2014, Gartner demoted Microsoft out of the "Leaders" quadrant. Gartner stated:  "Lack of target phishing protections forced Microsoft back into the Challengers quadrant this year." Gartner cautioned that Microsoft "lags behind in advanced targeted attack detection." In fact, the subheading for the July 2014 edition declared that "[t]he secure email gateway market" had "fractured" into two categories:  "providers of basic protection" and providers of "*advanced attack* and information *protection*" (emphasis added).   Gartner characterized Microsoft as a company "lag[ging] behind" in terms of advanced attack detection. A true and correct copy of Gartner's July 1, 2014 "Magic Quadrant for Secure Email Gateways" is attached hereto as **Exhibit "1**."

> **Answer:**   Microsoft states Exhibit 1 speaks for itself, is the best evidence of its terms and content, and no response to Paragraph 38 of the FAC is required. To the extent a response is required, Microsoft denies the allegations and characterizations in Paragraph 38 of the FAC.

39.   In 2014, Gartner only squarely depicted two "Leaders":  Cisco Systems, Inc. ("Cisco") (for its on-premise systems) and Proofpoint, Inc. ("Proofpoint") (for its cloud-based systems).  Hence, from July 2014 to June 2015, Proofpoint was Gartner's only cloud-based email security "Leader," moving Proofpoint to the center of the world's attention in regards to cloud-based email security, while attention was also drawn to Microsoft's lack of "advanced targeted attack protection."

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 39 of the FAC, as no citation was provided and no document was attached to the FAC to verify its accuracy, and therefore denies the allegations and characterizations related thereto and demands strict proof thereof.

40.     In October 2014, Proofpoint seized this moment, reporting that it is "common practice" for cybercriminals to use forwarding servers that implement "IP Cloaking" to evade "security scanner[s]" and "circumvent detection." Proofpoint's report concluded that basic protection is "no longer sufficient" and that "advanced threat detection capabilities" (the very category Microsoft was declared lacking in by Gartner) was essential.

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 40 of the FAC, as no citation was provided and no document was attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

41.     On October 15, 2014, just two weeks after Proofpoint's IP Cloaking report, Microsoft announced on its Office 365 blog that Microsoft was going to make investments over the next 6-12 months in "Advanced threat protection, such as 'Time of Click.'"

**Answer:**     Microsoft admits that it has invested in its cloud-based email filtering service, Advanced Threat Protection (recently renamed Microsoft Defender for Office 365 "Defender"), and its ability to protect users at the time of click. Microsoft lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 41 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

42.     On April 8, 2015, Microsoft announced on its Office 365 blog the availability of its new time-of-click service:  Safe Links.  Right from the launch, Microsoft promoted Safe Links as supposedly protecting against links that use a forwarding service to redirect to an unsafe site after the message has been delivered.  In other words, Microsoft promoted Safe Links as its solution to IP Cloaking.

> **Answer:**     Microsoft admits that its cybersecurity feature, Safe Links, incorporated within a cloud-based email filtering service that was originally named "Advanced Threat Protection," became available in 2015. Microsoft also admits that Safe Links has the ability to protect users at the time of click.  Microsoft denies that the advertising statements at-issue "promoted Safe Links as its solution to IP Cloaking," and denies the remaining allegations and characterizations in Paragraph 42 of the FAC.

43.     Microsoft's cloud-based email security service is Exchange Online Protection (EOP).  Microsoft markets Safe Links as its solution for defeating cloaked links that bypass EOP's time-of-delivery scanning.  Microsoft promises that by checking the link's reputation at the time the user clicks the link, Safe Links is able to keep the user safe.  However, Safe Links is literally defenseless against IP Cloaking; defenseless in the manner described as follows.

> **Answer:**     Microsoft admits that Exchange Online Protection ("EOP") is the default cloud-based email filtering service for Microsoft 365, which provides consumers with security features to protect against threats.  Microsoft also admits that its Safe Links feature in Defender provides consumers with additional layers of protection and is able to check a link's reputation at the time the user clicks the click. Microsoft denies that the advertising statements at-issue "market[] Safe Links as its solution for defeating cloaked links," and denies the remaining allegations and characterizations in Paragraph 43 of the FAC.

44.     As Microsoft acknowledges, when a user clicks on the link, Safe Links "redirects to EOP web servers." In other words, the very same EOP IP addresses that were evaded via IP Cloaking are the IP addresses being used to recheck the link Given that Safe Links uses the exact same IP addresses as EOP itself, it does not offer any additional protection against IP Cloaking - the form of cloaking that hackers use en masse because that is the form of cloaking that cloud-based scanners cannot reliably detect.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 44 of the FAC.

45.     Safe Links and EOP do not merely use the same IP addresses, but they use the same publicly available IP addresses.  Microsoft makes these IP addresses publicly available online. Therefore, it is trivial for hackers to redirect Safe Links/EOP IP addresses to benign sites 100% of the time, and in this manner both EOP and Safe Links are literally defenseless to IP Cloaking (the term "defenseless" used throughout herein refers to the fact that it is trivial for hackers to redirect Safe Links/EOP IP addresses to benign sites 100% of the time).

**Answer:**     Microsoft admits only that some of Microsoft's IP ranges are publicly known.  Microsoft denies the remaining allegations and characterizations in Paragraph 45 of the FAC.

46.     Microsoft knows that Safe Links uses the same publicly available IP addresses as EOP itself.  Therefore, it is apparent that Microsoft has knowledge regarding the security weakness of its design and is knowingly deceiving companies about an issue that places these companies at severe risk.  Also, as discussed above, Microsoft itself wrote how simple it is for websites to use cloaking to evade cloud-based scanners when the website knows the scanners' IP addresses. Microsoft designed Safe Links with publicly available IP addresses nevertheless.

**Answer:**      Microsoft denies the allegations and characterizations in Paragraph 46 of the FAC.

47.      Microsoft itself labels cloaking as an attack vector.  For example, Microsoft states: "A very common vector used by attackers is to weaponize a link after delivery of an email.  With Office 365 ATP Safe Links protection, we can detect such attacks . . . ."

**Answer:**      Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 47 of the FAC, as there is no citation or document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

48.      As for the effectiveness of IP Cloaking, and the ease in which hackers use it, Google has labeled IP Cloaking "arguably the most simple and effective approach" since it "thwarts any sort of detection" by cloud-based scanners.

**Answer:**      Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 48 of the FAC, and therefore denies the allegations related thereto and demands strict proof thereof.

49.      Hence, Microsoft's EOP and Safe Links are literally defenseless against the most-common, most-effective hacking attack.

**Answer:**      Microsoft denies the allegations in Paragraph 49 of the FAC.

**H.      Microsoft Was Notified Regarding Safe Link's Weakness and Safe Link's Weakness Confirmed in Multiple Tests with Publicly Disclosed Results.**

50.      In 2017, security researcher Mikail Tunc notified Microsoft in writing that hackers can use IP Cloaking to fully bypass its cloud-based Safe Links scanner.  Tunc further publicly disclosed this on his website.  Microsoft, through its Security Response Center (MSRC), acknowledged receipt of Mikail Tunc's notice and opened an MSRC case but ultimately informed

him that MSRC had completed its investigation and anticipated not taking further action to correct the issue.

> **Answer:**    Microsoft admits only that Mikail Tunc contacted Microsoft's Security Response Center and that Microsoft opened a case for Mr. Tunc.  Microsoft denies the remaining allegations and characterizations in Paragraph 50 of the FAC.

51.    In 2018, testing by Cryptron Security GmbH ("Crypton Security") confirmed that Microsoft did indeed take no further action, as Cryptron's testing showed that hackers can still use IP Cloaking to bypass Microsoft's cloud-based ATP Safe Links scanner.  Cryptron publicly disclosed this on its website.

> **Answer:**    Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 51 of the FAC, and therefore denies the allegations related thereto and demands strict proof thereof.

52.    In 2019, testing by Rhino Security Labs, Inc ("Rhino Security Labs") confirmed that hackers cans still use IP Cloaking to bypass Microsoft's cloud-based ATP Safe Links scanner. Rhino Security Labs also reported that hackers can use IP Cloaking to bypass all known cloud-based, redirect services that existed at the time of testing.  Rhino Security labs publicly disclosed this on its website.

> **Answer:**    Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 52 of the FAC, and therefore denies the allegations related thereto and demands strict proof thereof.

53.    In 2020, TocMail's CEO conducted a test in conjunction with Tunc.  This test confirmed that ATP Safe Links' cloud-based scanners are presently bypassed using IP Cloaking, which results have been disclosed to Microsoft.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 53 of the FAC.

54.     Despite warnings about Safe Links' inability to protect against the ubiquitous use of IP Cloaking, Microsoft continued to falsely portray Safe Links as its solution to cloaked links. Microsoft's willful deception regarding a severe security issue for many years warrants treble disgorgement of profits.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 54 of the FAC.

**I.      Microsoft's False and Misleading Advertisements.**

55.     Over a five-year period, Microsoft engaged in a sustained marketing campaign to falsely promote the narrative that Safe Links solves the cloud security flaw of IP Cloaked links and, therefore, companies can safely move to Microsoft's cloud service.  Despite Microsoft's Office 365 being literally defenseless against IP Cloaking, Microsoft has promoted and advertised that its Safe Links is the solution to this specific attack vector even though it is apparent that Microsoft knows that Safe Links does not offer any additional protection against IP Cloaking.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 55 of the FAC.

56.     Examples of Microsoft's false and misleading advertising include the following widely-disseminated, false messages:

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 56 of the FAC.

1.      **Deceptive Message #1:  Safe Links Protects Users Right at the Point of Click.**

57.     Microsoft's Advanced Threat Protection for Office 365 (recently renamed as Microsoft Defender for Office 365) contains ATP Safe Links and ATP Safe Attachments.

**Answer:**          Microsoft admits the allegations in Paragraph 57 of the FAC.

58.     Microsoft makes the following deceptive message in its *Office 365 Essentials*: *Advanced Threat Protection* brochure that was posted to Microsoft's official Advanced Threat Protection purchase page:

> Sophisticated attackers will plan to ensure links pass through the first round of security filters.  They do this by making the links benign, only to weaponize them after the message is delivered, altering the destination of the links to a malicious site. . . . With Safe Links, we are able to protect users right at the point of click by checking the link for reputation and triggering detonation if necessary.

A true and correct copy of the *Office 365 Essentials:  Advanced Threat Protection* brochure is attached hereto as **Exhibit** "**2**."

**Answer:**          Microsoft states Exhibit 2 speaks for itself, is the best evidence of its terms and content, and no response to Paragraph 58 of the FAC is required. To the extent a response is required, Microsoft admits the quoted statement was made in its *Office 365 Essentials*: *Advanced Threat Protection* brochure but denies that this was a "deceptive message." However, Microsoft lacks knowledge or information sufficient to form a belief regarding where the brochure was posted online, as there is no citation or URL provided to verify its accuracy, and therefore denies such an allegation and demands strict proof thereof.

59.     Microsoft's *time-of-delivery* service, i.e., "the first round of security" in the above message, is called Exchange Online Protection (EOP).  Microsoft acknowledges in its promotion that sophisticated attackers will plan to ensure that links bypass that first round of security.  On the

other hand, Safe Links is Microsoft's *time-of-click* service.  Microsoft promises that Safe Links will protect users from the cloaked links that bypass EOP, i.e., "first round of security," "right at the point of click by checking the link for reputation and triggering detonation if necessary."

> **Answer:**   Microsoft admits that Safe Links has the ability to protect users "right at the point of click by checking the link for reputation and triggering detonation if necessary." Microsoft denies the remaining allegations and characterizations in Paragraph 59 of the FAC. Microsoft further states Exhibit 2 speaks for itself and is the best evidence of its terms and content.

60.   However, the statement that "With Safe Links, we are able to protect users right at the point of click by checking the link for reputation and triggering detonation if necessary" is literally false as a result of the ubiquitous use and effectiveness of IP Cloaking, as explained in detail above.  Alternatively, at a very minimum, this message is misleading, confusing and/or deceiving.

> **Answer:**   Microsoft admits only that Exhibit 2 contains the quoted sentence, which document speaks for itself and is the best evidence of its terms and content. Microsoft denies the remaining allegations and characterizations in Paragraph 60 of the FAC.

61.   In fact, despite Microsoft claiming that Safe Links can protect users against attackers that "pass through the first round of security filters" (EOP), ATP Safe Links runs on EOP servers.  In other words, ATP Safe Links has the exact same IP addresses as EOP, and therefore, Safe Links offers no added protection to detect IP Cloaking compared to EOP despite Microsoft's claim.

> **Answer:**   Microsoft denies the allegations and characterizations in Paragraph 61 of the FAC.

62.     The same *Office 365 Essentials:  Advanced Threat Protection* brochure states: "Our average malware catch rate for Office 365 email is the highest in the industry at 99.9%. . . Office 365 Advanced Threat Protection catches threats before they disrupt your organization." However, it is literally false to state a 99.9% malware catch rate via "the first round of security filters" (EOP), or "with Safe Links...at the point of click," or even with Safe Links combined with EOP, given the ubiquitous use of IP Cloaked malware that bypasses the shared IP addresses of EOP and ATP Safe Links.  Hence, even the statement of catching 99.9% of malware is false itself. Moreover, it is literally false to portray Safe Links as protecting users at the time of click within the context of supposedly catching 99.9% of all malware.  Alternatively, at a very minimum, this message is misleading, confusing and/or deceiving.

**Answer:**      Microsoft admits only that Exhibit 2 contains the quoted words in the first sentence of Paragraph 62, which is not provided in its entirety, and states that Exhibit 2 speaks for itself and is the best evidence of its contents. Microsoft denies the remaining allegations and characterizations in Paragraph 62 of the FAC.

**2.     Deceptive Message #2:  Attackers Redirect to Unsafe Sites via a Forwarding Service After the Message Has Been Received; But with Safe Links, Malicious Links are Dynamically Blocked while Good Links Remain Accessible.**

63.     Microsoft markets, promotes and advertises ATP and Safe Links with the following statement:

...attackers sometimes try to hide malicious URLs within seemingly safe links that are redirected to unsafe sites by a forwarding service after the message has been received.  The ATP Safe Links feature proactively protects your users if they click such a link That protection remains every time they click the link, so malicious links are dynamically blocked while good links can be accessed.  (emphasis added)

A true and correct copy of the 2015 ATP Product Guide is attached hereto as **Exhibit** "**3**"; a true and correct copy of the 2016 ATP Product Guide is attached hereto **Exhibit** "**4**"; a true and correct

copy of the 2017 Office 365:  Everything You Wanted to Know is attached hereto as **Exhibit** "**5**";
a true and correct copy of the 2019 ATP Partner Datasheet is attached hereto as **Exhibit** "**6**"; and
a true and correct screenshot of a 2020 webpage from Microsoft's website is attached hereto as
**Exhibit** "**7**."

> **Answer:**        Microsoft states Exhibits 3, 4, 5, 6, and 7 speaks for themselves, are the best
> evidence of their terms and content, and no response to Paragraph 63 of the FAC is
> required. To the extent a response is required, Microsoft admits only that the quoted
> statement appears in Exhibits 3, 4, 5, and 6.  The allegations in Paragraph 63 are
> otherwise denied.

64.     Microsoft has been delivering this message for five years from the launch of ATP
in 2015 (Ex. 3), 2016 (Ex. 4), 2017 (Ex. 5), 2019 (Ex. 6), up to the present (Ex. 7).  Specifically,
for five years, Microsoft has promised Safe Links' protection against dynamic links whose
malicious content is cloaked "by a forwarding service." The exhibits contained herein are all
representative samples.  Microsoft has promoted these same words in other materials as well over
the last five years.

> **Answer:**        Microsoft denies the allegations and characterizations in Paragraph 64 of
> the FAC. Microsoft further states Exhibits 3, 4, 5, 6, and 7 speak for themselves and are
> the best evidence of their terms and content.

65.     Upon information and belief, IP Cloaking is the most commonly used tactic of
malicious users of forwarding services.  As correctly explained by Proofpoint, these forwarding
services use IP Cloaking to redirect to unsafe sites after the message has been received, the type
of attack that Safe Links is defenseless against (see above).  Safe Links does not protect users if
they click the described links sent by attackers.  Hence, to unambiguously promise that Safe Links

protects against cloaked links in the context of forwarding services is literally false.  In other words, to unambiguously promise that Safe Links protects against "links that are redirected to unsafe sites by a forwarding service after the message has been received" is literally false.  Alternatively, at a very minimum, it is misleading, confusing and/or deceiving.

> **Answer:**        Microsoft denies the allegations and characterizations in Paragraph 65 of the FAC.

66.      Microsoft's promotion also contains a categorical promise of protection. Specifically, Microsoft promises protection every time a user clicks a link so that [category 1] malicious links are dynamically blocked while [category 2] good links can be accessed. Microsoft's promotion promises specific outcomes based on two categories:  malicious links vs. good links.

> **Answer:**        Microsoft denies the allegations and characterizations in Paragraph 66 of the FAC. Microsoft further states that Exhibits 3, 4, 5, 6, and 7 speak for themselves and are the best evidence of their terms and content.

67.      By presenting the protection categorically, Microsoft is promising that all malicious links are dynamically blocked while all good links can be accessed.

> **Answer:**        Microsoft denies the allegations and characterizations in Paragraph 67 of the FAC.

68.      This categorical assertion of Safe Links' protection is literally false.  Alternatively, at a very minimum, it is misleading, confusing and/or deceiving.

> **Answer:**        Microsoft denies the allegations and characterizations in Paragraph 68 of the FAC.

69.     Alternatively, this categorical assertion within the context of forwarding services is literally false.  Alternatively, at a very minimum, this categorical assertion within the context of forwarding services is misleading, confusing, and/or deceiving.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 69 of the FAC.

### 3.     Deceptive Message #3:   ATP Safe Links ensures hyperlinks are harmless.

#### a     False Advertising 3a:

70.     Microsoft created power point presentations that are to be used for the marketing and promotion of ATP.  True and correct copies of reduced images from slides of PowerPoint presentations of Microsoft's Office 365 ProPlus Pitch Deck are attached hereto as **Exhibit** "**8**" and a true and correct copy of Microsoft's Office 365 ProPlus Mac Pitch Deck is attached hereto as **Exhibit** "**9**."

**Answer:**     Microsoft admits the allegations in the first sentence of Paragraph 70 of the FAC. Microsoft states Exhibits 8 and 9 speak for themselves, are the best evidence of their terms and content, and no response to Paragraph 70 of the FAC is required.

71.     All slides are intended to be shown to customers except for slide 1.  Slide 1 indicates that these PowerPoint presentations are to be used when presenting to Business Decision Makers, Technology Decision Makers, and IT Decision Makers ("Audience:  BDM, TDM, ITDM"), the "CORE content" is "slides 2-28," the presentations contain "approved messaging," and "Messages and wording have been reviewed by stakeholders."

**Answer:**     Microsoft denies the characterizations in Paragraph 71 of the FAC because its customers do include Business Decision Makers, Technology Decision Makers, and IT Decision Makers. Microsoft denies the remaining allegations and characterizations in

Paragraph 71 of the FAC and states Exhibits 8 and 9 speak for themselves and are the best evidence of their terms and content.

72.     In the "CORE content" of the power point presentations, Microsoft provides approved messaging to promote and market to decision makers that its security "ensure[s] hyperlinks in documents are harmless with ATP Safe Links."

**Answer:**     Microsoft states Exhibits 8 and 9 speak for themselves, are the best evidence of their terms and content, and no response to Paragraph 72 of the FAC is required. To the extent a response is required, Microsoft admits only that the quoted phrase in Paragraph 72 appears in language that accompanies the PowerPoints in Exhibits 8 and 9, but does not appear on the PowerPoint slides themselves, and denies the remaining allegations and characterizations in Paragraph 72.

73.     However, the statement that Safe Links ensures hyperlinks in documents are harmless is literally false.  Alternatively, at a very minimum, it is misleading, confusing and/or deceiving.  As discussed in detail above, Safe Links can be trivially bypassed by IP cloaking and, thus, Safe Links does not ensure that hyperlinks are harmless.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 73 of the FAC.

74.     A Google search result demonstrates that both PowerPoint presentations were publicly retrievable from the following site:  https://o365pp.blob.core.windows.net.  Azure's cloud Storage        system        uses        the        following        URL        convention: https://mystorageaccount.blob.core.windows.net.

**Answer:**     Microsoft denies the allegations in Paragraph 74 of the FAC, and states that on July 18, 2021, the listed websites in Paragraph 74 were not accessible.

**b**     **False Advertising 3b:**

75.     Microsoft also makes nearly the identical representation in its 2019 "Exchange Online Business Class Email System" brochure:  "Ensure document hyperlinks are harmless with ATP Safe Links." A true and correct copy of the brochure is attached hereto as **Exhibit "10**." For the reasons discussed, this statement is literally false.  Alternatively, at a very minimum, this message is misleading, confusing and/or deceiving.

> **Answer:**     Microsoft states Exhibit 10 speaks for itself, and is the best evidence of its terms and content. Microsoft admits only that the quoted sentence in Paragraph 75 appears in Exhibit 10. Microsoft denies the remaining allegations and characterizations in Paragraph 75 of the FAC.

**II.     Additional Allegations Concerning Microsoft's False Advertising.**

**A.     Materiality**

76.     Security is material to the purchase of Office 365, as it is an important feature consumers consider when purchasing software.

> **Answer:**     Microsoft denies the allegations in Paragraph 76 of the FAC.

77.     Indeed, according to Microsoft's own statements, security is material to the purchase decision of Office 365.  Coinciding with the launch of Office 365, Microsoft explicitly stated:  "When allowing an external service provider to store and manage their data, companies and other organizations *must consider security*." (emphasis added).

> **Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 77 of the FAC, as there is no citation and no document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

78.     In fact, Microsoft's CEO correctly acknowledges that "Businesses and users are going to embrace technology only if they can trust it."

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 78 of the FAC, as there is no citation and no document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof.

79.     Such trust in Microsoft's security is material to the purchase decision of Office 365: "When moving your organization to cloud services, security concerns add another layer of consideration; one of trust.  You have to be able to trust your service provider . . . Microsoft is recognized as an industry leader in cloud security. . . . Office 365 provides robust email protection against spam, viruses and malware with Exchange Online Protection (EOP)."

**Answer:**     Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 79 of the FAC, as there is no citation and no document attached to the FAC to verify its accuracy, and therefore denies the allegations related thereto and demands strict proof thereof. Microsoft also denies the phrase "Such trust in Microsoft's security is material to the purchase decision of Office 365."

80.     Moreover, Microsoft expressly acknowledged in its Form 10-K for fiscal year ending in June 30, 2020, that "The security of our products and services is important in our customers' decisions to purchase or use our products or services."

**Answer:**     Microsoft states its Form 10-K speaks for itself, is the best evidence of its terms and content, and no response to Paragraph 80 of the FAC is required. To the extent a response is required, Microsoft admits only that the quoted sentence in Paragraph 80

appears in its Form 10-K for fiscal year ending in June 30, 2020. Microsoft denies the remaining allegations and characterizations in Paragraph 80 of the FAC.

81.    According to Microsoft, being perceived as a leader in security is necessary to convince enterprise customers to move to Office 365.  As reported in a 2019 CollabTalk research study co-commissioned by Microsoft:  "Microsoft is making tremendous investments in data security and compliance... because they understand that to convince enterprise customers... the company needs to be a leader in security."

> **Answer:**       Microsoft denies the allegations and characterizations in the first sentence of Paragraph 81 of the FAC.  Microsoft lacks knowledge or information sufficient to form a belief concerning the allegations in the second sentence of Paragraph 81 of the FAC, as no citation is provided and no document is attached to the FAC and therefore denies the allegations related thereto and demands strict proof thereof.

82.    Security is material to purchase decisions.  Therefore, any false advertising and promotions regarding the security of Office 365 is material to the purchase decision of Office 365.

> **Answer:**       Microsoft denies the allegations and characterizations in Paragraph 82 of the FAC.

83.    All false advertising identified herein by Microsoft relates to the security of Office 365 and is therefore material to purchase decisions of Office 365.

> **Answer:**       Microsoft denies the allegations and characterizations in Paragraph 83 of the FAC.

84.    All false advertising identified herein regarding Safe Links is material to the purchase decision of Microsoft's Office 365 Advanced Threat Protection (recently renamed to Microsoft Defender for Office 365) as well as purchase decisions for Office 365 itself.

**Answer:**    Microsoft admits only that Microsoft's Office 365 Advanced Threat Protection was recently renamed to Microsoft Defender for Office 365. Microsoft denies the remaining allegations and characterizations in Paragraph 84 of the FAC.

## B.    Deception

85.    The advertisements identified herein from Microsoft deceived a substantial portion of the target audience.   These false advertisements were delivered in the most prominent documents and webpages that Microsoft offered to prospective customers of Office 365, including product guides, partner datasheets, dedicated product webpages, sales collateral, and more.   In the alternative, these false advertisements had the tendency to deceive a substantial portion of the target audience.

**Answer:**    Microsoft denies the allegations and characterizations in Paragraph 85 of the FAC.

## C.    Interstate Commerce

86.    Microsoft's advertisements and products identified herein are both primarily delivered over the internet throughout the United States and, upon information and belief, other locations.   Hence, both the advertised products and the advertisements themselves traveled in interstate commerce, and involve interstate commerce.

**Answer:**    Microsoft admits only that Office 365 and Advanced Threat Protection are sold and advertised throughout the United States. Microsoft denies the remaining allegations and characterizations in Paragraph 86 of the FAC.

III.     **TocMail's Patent Solution and Damages.**

  A.     **TocMail's Patented Solution.**

87.     IP Cloaking was the single unsolved security issue that prevented cloud-based scanners from achieving a level of security equal to, or greater than, on-premise scanners.  In other words, solving the issue of IP Cloaking is solving the larger problem of making cloud-based scanners just as secure as on-premise scanners.  It was the only issue that needed to be solved before companies could safely move their email security off premise to the cloud.

  **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 87 of the FAC.

88.     Link scanning technology has existed for more than fifteen years.  During this time, link scanning vendors have been trying to solve the impossible problem of reliably detecting IP Cloaked redirects via cloud-based scanners.   TocMail's CEO had a novel, outside-the-box epiphany that uses IP Cloaking *avoidance* instead of IP Cloaking *detection*.  In short, TocMail's technology keeps users safe from IP Cloaked links without even trying to detect if the link is using cloaking or not.  Through this ingenious approach, companies can now have the benefits of cloud-based email scanners without sacrificing security.

  **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 88 of the FAC.

  B.     **Reputational and Economic Injury**

89.     Microsoft's cloud-based scanners have been defenseless against IP Cloaking from their launch until today.  If Microsoft's customers knew that Microsoft's cloud-based scanners were defenseless against the attack vector used by the majority of malicious sites, they would have kept their servers on-premise, as no company would give up the majority of its malware protection

to move to cloud-based Office 365.  Microsoft's customers were safe from IP Cloaking when using their on-premise email scanners.

> **Answer:**      Microsoft denies the allegations and characterizations in Paragraph 89 of the FAC.

90.     TocMail released the first cloud-based, redirect service that keeps users safe from IP Cloaking in late 2019.  This service is named TocMail, and is accessible at https://tocmail.net. TocMail began advertising its TocMail service in December 2019.

> **Answer:**      Microsoft admits only that TocMail's purported cloud-based redirect service is named TocMail, that its website is https://tocmail.net, and that it signed up for Google Ad Words in December 2019, which service it later discontinued. Microsoft denies the remaining allegations and characterizations in Paragraph 90.

91.     TocMail's technology was designed by Michael Wood, an inventor who created a prior internet technology sold to Micromuse in exchange for stock, the value of which exceeded $95 million by the time the stock lockup expired.  Michael Wood serves as TocMail's CEO, and serves as the software developer for TocMail's current and pending products.

> **Answer:**      Microsoft admits only that Michael Wood serves as TocMail's CEO. Microsoft denies the remaining allegations and characterizations in Paragraph 91 of the FAC.

92.     The TocMail service rewrites links in emails so that users are taken to TocMail's cloud-based redirect service each time they click on the link TocMail's patented service is the only cloud-based redirect service that keeps users safe from IP Cloaking.

> **Answer:**      Microsoft denies the allegations and characterizations in Paragraph 92 of the FAC.

93.     But for Microsoft's misdeeds, TocMail would be introducing the first cloud-based redirect service capable of keeping users safe from IP Cloaking to a world that had been waiting for such an invention to be made.  Instead, as explained below, TocMail is introducing the first cloud-based redirect service capable of keeping users safe from IP Cloaking to a world that believes the problem was already solved many years ago.  Therefore, instead of reaping the benefits of the entire world safely moving to the cloud using TocMail's technology, TocMail's offering appears useless to the very companies that need it the most, as they prematurely moved to the cloud due to Microsoft's false advertising and promotions.

> **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 93 of the FAC.

94.     Instead of being rightly perceived as finding a solution to the attack vector used in the majority of successful data breaches, Microsoft's false advertisements cause TocMail to be perceived as useless instead (useless to those who falsely believe they are already subscribing to a solution to the very same problem).  Hence, Microsoft's false advertisements cause significant reputational damage to TocMail.

> **Answer:**     Microsoft denies the allegations and characterizations in Paragraph 94 of the FAC.

95.     Based on information and belief, TocMail estimates that there are approximately 100 million subscriptions to Microsoft's Safe Links' service.  Given that TocMail is the sole provider of a cloud-based, time-of-click redirect service capable of keeping users safe from IP Cloaking, all 100 million subscriptions would have subscribed to TocMail as TocMail is their only option.  None of these companies would willingly remain defenseless against the most-common hacking attack, yet these consumers remain loyal to Microsoft out of trusting Microsoft's false

advertisements and promotions.   Hence, Microsoft's false and misleading advertising causes significant economic harm to TocMail by causing millions of consumers to withhold trade from TocMail.

> **Answer:**   Microsoft denies the allegations and characterizations in Paragraph 95 of the FAC.

### C.   Damages

96.   In solving the issue of IP Cloaking, Plaintiff's CEO has solved the attack vector used in the majority of successful data breaches.   TocMail Inc sells its namesake service TocMail. TocMail is a cloud-based, time-of-click, redirect service that keeps users safe from cloaked links.

> **Answer:**   Microsoft admits only that TocMail's purported service is named TocMail. Microsoft denies the remaining allegations and characterizations in Paragraph 96 of the FAC.

97.   Microsoft offers ATP Safe Links. Microsoft promotes ATP Safe Links as a cloud-based, time-of-click, redirect service that keeps users safe from cloaked links. Hence, TocMail and Safe Links compete for the exact same customers (those who wish to purchase a cloud-based, time-of-click, redirect service that keeps them safe from cloaked links).   TocMail Inc and Microsoft Corp. are competitors.

> **Answer:**   Microsoft denies the allegations and characterizations in Paragraph 97 of the FAC.

98.   TocMail's service is protected by United States Patent No. 10,574,628 ("628 Patent").   TocMail's patent solves the design flaw found in all competing cloud-based time-of-click redirect services - the design flaw that makes TocMail's competitors vulnerable to IP Cloaking.   TocMail's patent prevents its competitors from being able to fix their design flaw until

the patent expires.  Hence, TocMail anticipates that prior to its patent expiration, TocMail will remain the sole provider of a cloud-based, time-of-click redirect service capable of keeping users safe from IP Cloaking - the attack vector used for the majority of data breaches.

**Answer:**        Microsoft denies the allegations and characterizations in Paragraph 98 of the FAC.

99.        Microsoft, Mimecast, Proofpoint, and other cloud-based, time-of-click, redirect services have the exact same design flaw.  This design flaw is best explained by way of example. Consider an email with a link to *CloakedLink.com*.  *CloakedLink.com* sends security scanners to *BenignLink.com* and it sends everyone else to *MaliciousLink.com*.  In other words, Microsoft's Safe Links gets redirected to *BenignLink.com*.  Therefore, since *BenignLink.com* appears to be safe, Safe Links redirects the user to the original link (*CloakedLink.com*).  *CloakedLink.com* redirects the user's device to *MaliciousLink.com* - a site that installs malware on the user's device. The user is now hacked.

**Answer:**        Microsoft denies the allegations and characterizations in Paragraph 99 of the FAC.

100.        The design flaw shared by all of TocMail's competitors is that they send users to the original URL when the links are deemed safe.  This is how cloud-based, time-of-click, redirect services have been designed for the last fifteen years.  TocMail's CEO had an epiphany - a very elegant solution to a seemingly intractable problem.  When TocMail determines that the final destination is approved, TocMail sends the user device straight to the final destination (not the original link). The original link (*CloakedLink.com*) cannot harm the user because the user is never sent there.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 100 of the FAC.

101.    By patenting this approach, TocMail's competitors are forced to always send their users to the original link (*CloakedLink.com*), which can then send their users anywhere it wants. Hence, as long as the competitors must send their users to the original links, TocMail will remain the sole provider of a cloud-based, time-of-click, redirect service that keeps users safe from IP Cloaking.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 101 of the FAC.

102.    Microsoft's false advertising has a substantial influence over consumers, even though consumers has been warned about vulnerability to IP Cloaking by at least cybersecurity researcher Mikail Tuns, Cryptron Security, and Rhino Security Labs.  Rhino Security Labs' warning was penned by Hector Monsegur - one of the world's most famous hackers who turned FBI informant.  Despite his strongly worded warning, companies continue to trust Microsoft's Safe Links anyway.  As a result, TocMail does not anticipate that it will be able to break through in the market and, therefore, is seeking damages up through the time of its patent expiration.  Thus, TocMail is seeking damages based on loss of approximately 100 million subscriptions at an approximate rate of $2.50 profit per user per month over the lifetime of the patent (which expires May 7, 2035).

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 102 of the FAC. Microsoft denies that TocMail is entitled to any relief whatsoever, including damages.

103.     To put this into perspective, TocMail is the sole provider of the only cloud-based, time-of-click, redirect service that thwarts the attack used in the majority of data breaches. Moreover, for the next fifteen years, TocMail anticipates remaining the sole provider of the only cloud-based, time-of-click, redirect service that thwarts the attack used in the majority of data breaches.   TocMail is seeking damages and disgorgement of profits commensurate with the magnitude of its patented technology.

**Answer:**        Microsoft denies the allegations and characterizations in Paragraph 103 of the FAC. Microsoft denies that TocMail is entitled to any relief whatsoever, including damages and disgorgement of profits.

**D.        Disgorgement of Profits**

104.     Microsoft has knowingly, willfully, and intentionally deceived companies over a sustained period of almost ten years.  Moreover, Microsoft's deceit affects the very safety of these companies.  Such outright knowing deceit warrants treble disgorgement of Microsoft's profits.  In the alternative, such unjust enrichment warrants treble disgorgement of Microsoft's profits.  In the alternative, deterring Microsoft from doing the same in the future warrants treble disgorgement of Microsoft's profits.

**Answer:**        Microsoft denies the allegations and characterizations in Paragraph 104 of the FAC. Microsoft denies that TocMail was unjustly enriched and denies that TocMail is entitled to any relief whatsoever, including treble disgorgement of profits.

## COUNT I

### False and Misleading Advertising under 15 U.S.C. § 1125(a)(1)(B)

105.    Plaintiff re-alleges and re-avers paragraphs 1-104 as though fully set forth herein.

**Answer:**     Microsoft adopts and reasserts each and every allegation contained above, as though fully set forth herein.

106.    This is an action for false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**Answer:**     Microsoft admits TocMail purports to bring a claim for false or misleading advertising under the Lanham Act, but denies that TocMail is entitled to any relief under the Lanham Act whatsoever.

107.    Microsoft has misrepresented the nature, characteristics and/or qualities of its cloud-based email security service, including its ATP Safe Links service, in commercial advertising and/or promotion resulting in Plaintiff being damaged and/or likely to be damaged by such acts.  Microsoft continues to misrepresent the nature, characteristics and/or qualities of its cloud-based email security service, including its ATP Safe Links service, in commercial advertising and/or promotion resulting in Plaintiff being damaged and/or likely to be damaged by such act.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 107 of the FAC.

108.    More specifically, Microsoft's misrepresentations are in regards to the safety of its cloud-based email security service, including its ATP Safe Links service, as described in significant detail above.  A claim that a seller falsely represents the safety of its product or service is a traditional claim of consumer misrepresentation.

**Answer:**     Microsoft denies the allegations and characterizations in Paragraph 108 of the FAC.

109.     As discussed at length above, Microsoft has made statements of fact in commercial promotion, advertising and marketing that are literally false.  Alternatively, at a very minimum, Microsoft has made statements of fact in commercial promotion, advertising and marketing that are misleading, confusing and/or deceiving.  All such statements of fact are found in, among other things, Microsoft's primary promotional materials, including but not limited to:

   i.       the official *Exchange Online Advanced Threat Protection Product Guide*;

   ii.      the official *Office 365 Advanced Threat Protection Product Guide*;

   iii.     the *Office 365 Essentials:  Advanced Threat Protection* brochure downloadable from Microsoft's previous primary promotional webpage for ATP

   iv.      the PowerPoint presentations designed to be given to key decision makers

   v.       approved promotional materials to be used by Microsoft Partners

   **Answer:**      Microsoft denies the allegations and characterizations in Paragraph 109 of the FAC.

110.     Microsoft's actions deceive or have a tendency to deceive the target audience, including consumers and purchasers of its cloud services, and may influence and/or have influenced consumers to refrain from purchasing Plaintiff's service.  Additionally, such actions may influence and/or have influenced consumers to purchase Microsoft's service rather than Plaintiffs service.  No evidence of deception is required for literally false statements.  For misleading, confusing and/or deceiving statements, consumer surveys, market research and other evidence demonstrate that Microsoft's statements are misleading, confusing and/or deceiving.

   **Answer:**      Microsoft denies the allegations and characterizations in Paragraph 110 of the FAC.

111.    As a result, Microsoft's actions have had and continue to have a material effect on purchase decisions.  Microsoft explicitly states that security is material to purchase decisions in its Form 10-K for fiscal year ending in June 30, 2020:  "The security of our products and services is important in our customers' decisions to purchase or use our products or services."

**Answer:**        Microsoft states its Form 10-K speaks for itself and is the best evidence of its terms and content. Microsoft admits only that the quoted sentence in Paragraph 111 appears in its Form 10-K for fiscal year ending in June 30, 2020. Microsoft denies the remaining allegations and characterizations in the Paragraph 111 of the FAC.

112.    Microsoft has used the subject promotional and advertising materials identified herein to deceptively market its Office 365 and ATP service to millions of consumers in all fifty states, across state lines - a service that is also delivered to all fifty states, across state lines.  Thus, Microsoft's deceptive advertising and promotion affects interstate commerce.

**Answer:**        Microsoft denies the allegations and characterizations in the Paragraph 112 of the FAC.

113.    Plaintiff is a competitor of Microsoft and has suffered injury to a commercial interest in sales or business reputation proximately caused by Microsoft's misrepresentations. Among other things, Plaintiff has been injured by Microsoft's false and misleading advertising by consumers withholding trade from Plaintiff, presently and in the future due to trusting Microsoft's false advertising.  In the alternative, Plaintiff is likely to be injured by Microsoft's false advertising by consumers withholding trade from Plaintiff due to trusting Microsoft's false advertising.

**Answer:**        Microsoft denies the allegations and characterizations in the Paragraph 113 of the FAC.

114.    Additionally, Plaintiff's business reputation has been injured by Microsoft's false and misleading advertising due to consumers believing that Plaintiff offers nothing of value to them due to their trusting Microsoft's false claims to already be providing the service that Plaintiff provides.  Specifically, Plaintiff is the sole provider of that which Microsoft falsely claims to offer, making every dollar gained by Microsoft trade that is being withheld from Plaintiff.

**Answer:**      Microsoft denies the allegations and characterizations in the Paragraph 114 of the FAC.

115.    Upon information and belief, Microsoft has procured roughly 100 million subscriptions for protection against links that appear to be benign, only to change destination when clicked.  Yet, Microsoft's ATP Safe Links does not keep users safe from such links.  This deception causes these users to withhold trade from Plaintiff.  These users also wrongly perceive Plaintiff's security offering as holding no value to them, which irreparably harms Plaintiff's commercial interest and business reputation.  Although Plaintiff has solved what is arguably the single biggest issue in cloud security, Microsoft's misrepresentations have caused it to appear as if Plaintiff claims only to have solved a non-existent problem.

**Answer:**      Microsoft denies the allegations and characterizations in the Paragraph 115 of the FAC.

116.    The withholding of trade by millions of users has resulted in substantial damages to Plaintiff and will continue to result in substantial damages to Plaintiff over the lifetime of Plaintiff's '628 Patent.  The mere cessation of false advertising by Microsoft will not prevent future injury to Plaintiff because Microsoft has already convinced purchasers to trust its security and does not need to continue the false advertising campaign to retain them.  Such damages are in addition to the injury to Plaintiff's business reputation.

**Answer:**      Microsoft denies the allegations and characterizations in the Paragraph 116 of the FAC.

117.     Plaintiff is also seeking an award of Microsoft's profits from both the direct sale of Microsoft's ATP security service and from the sale of Office 365 derived from purchasers trusting Microsoft's deceptive ATP security claims.  Consumers would not have moved to Microsoft's cloud-based Office 365 if they knew they were not protected from a hacking attack used by the majority of malicious sites - an attack they were previously protected from.  Disgorgement of ill-gotten profits is separate from and independent of actual damages and is necessary here to deter future conduct and to prevent Microsoft from being unjustly enriched.  Among other things, companies were safe from IP Cloaking with their on-premise security, but Microsoft knowingly made companies defenseless against this widely used attack in order to procure billions in profit. The very severe harm inflicted on companies, governmental institutions, and more necessitates future deterrence.  There is great public interest in making the misconduct unprofitable.

**Answer:**      Microsoft denies the allegations and characterizations in the Paragraph 117 of the FAC.  Microsoft denies that TocMail is entitled to any damages or disgorgement of profits.

118.     Microsoft's actions described herein have been and continue to be willful, deliberate and intentional.  Among other things, as discussed above, in 2017, Microsoft was officially notified that its ATP security can be bypassed via IP Cloaking, which is the most commonly used evasion technique.  Nevertheless, Microsoft continued and still continues to promote ATP Safe Links as effective protection against the very attack that hackers use to thwart ATP Safe Links itself.

**Answer:**      Microsoft denies the allegations and characterizations in the Paragraph 118 of the FAC.

119.    Microsoft's misrepresentations are causing and will continue to cause damage to Plaintiff including, but not limited to, irreparable harm.  Irreparable harm includes the loss of customers and goodwill.

**Answer:**      Microsoft denies the allegations and characterizations in the Paragraph 119 of the FAC.

120.    Plaintiff is entitled to a temporary and permanent injunction against Microsoft, as well as all other remedies available including, but not limited to, compensatory damages, disgorgement of profits, treble damages and treble disgorgement of profits, and costs and attorneys' fees.  Plaintiff seeks all available remedies.

**Answer:**      Microsoft denies the allegations and characterizations in the Paragraph 120 of the FAC. Microsoft denies that TocMail is entitled to any form of relief whatsoever.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TOCMAIL INC, prays for judgment against Defendant, MICROSOFT CORPORATION, as follows:

A.      Finding Defendant liable for the actions described herein;

B.      For temporary and permanent injunctive relief enjoining Defendant and its respective officers, employees, and agents, and all persons or entities in active concert or participation with Defendant, from misrepresenting the safety, nature, characteristics and qualities of its Advanced Threat Protection (Microsoft Defender for Office 365) service and/or Safe Links service and requiring Defendant to take corrective action regarding Defendant's past actions, including Ordering that:

1)      Defendant immediately cease promoting Advanced Threat Protection (Microsoft Defender for Office 365) and/or Safe Links as offering effective protection against cloaked links;

2)      Defendant immediately cease claiming that its Advanced Threat Protection (Microsoft Defender for Office 365) and/or Safe Links or any of its security services ensure that hyperlinks are harmless;

3)      Defendant immediately cease promoting Advanced Threat Protection (Microsoft Defender for Office 365) and/or Safe Links as offering effective protection against forwarding services that redirect to unsafe sites after email messages have been delivered;

C.      Ordering Defendant to pay Plaintiff monetary relief under 15 U.S.C. § 1117(a) in an amount equal to Defendant's profits as a result of Defendant's wrongful actions;

D.      For damages, including ordering Defendant to pay Plaintiff monetary relief under 15 U.S.C. § 1117(a) for damages sustained by Plaintiff in excess of $15 billion, as a result of Defendant's wrongful actions;

E.      Ordering Defendant to pay Plaintiff three times Defendant's profits made as a result of Defendant's wrongful actions and three times Plaintiff's damages;

F.      Finding that this case is exceptional pursuant to 15 U.S.C. §§ 1117(a) due to Defendant's willful and intentional acts described herein and, accordingly, award Plaintiff its reasonable attorneys' fees;

G.      Finding that Plaintiff is entitled to recover its costs of Court;

H.      Finding that Plaintiff is entitled to prejudgment and post judgment interest; and

I.      For such other and further relief the Court deems just and proper.

**Answer:**        Regarding TocMail's Prayer for Relief, including subparagraphs A through I, Microsoft denies that any grounds for entering judgment against Microsoft, or for injunctive relief, monetary damages, disgorgement of profits, treble damages, pre-judgment or post-judgment interest, attorney's fees or costs, or any other relief against Microsoft and for TocMail, exist.

## DEMAND FOR JURY TRIAL

Microsoft admits that TocMail demands a trial by jury but denies it is entitled to the requested relief.

Dated:  July 30, 2021                    Respectfully submitted,

                    By */s/ Evelyn A. Cobos*_____
                    EVELYN A. COBOS

                    **GREENBERG TRAURIG, LLP**
                    Mary-Olga Lovett (*admitted pro hac vice*)
                    Texas Bar No. 00789289
                    1000 Louisiana, Suite 1700
                    Houston, Texas 77002
                    Telephone: (713) 374-3541
                    Facsimile: (713) 754-7541
                    Email: lovettm@gtlaw.com

                    **GREENBERG TRAURIG, P.A.**
                    333 S.E. 2nd Avenue, Suite 4400
                    Miami, Florida 33131
                    Telephone: (305) 579-0500
                    Facsimile: (305) 579-0717
                    FRANCISCO O. SANCHEZ
                    Florida Bar No. 598445
                    Email: sanchezo@gtlaw.com
                             orizondol@gtlaw.com
                    EVELYN A. COBOS
                    Florida Bar No. 092310
                    Email: cobose@gtlaw.com
                             FLService@gtlaw.com

                    ***Attorneys for Defendant,***
                    **MICROSOFT CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of July, I served for foregoing document on all counsel of record identified on the below Service List in the manner specified.

<u>/s/ *Evelyn A. Cobos*   </u>
EVELYN A. COBOS

## <u>SERVICE LIST</u>

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*