UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-CANNON/HUNT

TOCMAIL, INC., a Florida corporation,

      Plaintiff,

v.

MICROSOFT CORPORATION, a Washington
corporation,

      Defendant.

**DEFENDANT MICROSOFT CORPORATION'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE REPORT, OPINIONS, AND
TESTIMONY OF MICROSOFT'S EXPERT KEITH R. UGONE**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................... 1

II.   LEGAL STANDARD............................................................................................. 1

III.  ARGUMENT .......................................................................................................... 2

      A.    Dr. Ugone's Rebuttal Report Does Not Provide New, Affirmative Expert
            Opinions. ...................................................................................................... 2

      B.    Dr. Ugone's Rebuttal Report Was Timely Served................................... 9

      C.    Dr. Ugone Did Not Provide a "Burden of Proof" Report. ................... 11

      D.    Dr. Ugone's Rebuttal Report and Opinions Are Reliable and Helpful to a
            Jury.............................................................................................................. 13

IV.   CONCLUSION..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Nissan, Inc. v. Hyundai Motor Am.*,
    No. 618CV380ORL78EJK, 2020 WL 9173027 (M.D. Fla. Nov. 5, 2020)............................14

*All-Tag Corp., v. Checkpoint Systems, Inc.*,
    408 F.Supp.3d 1347 (S.D. Fla. Oct. 7, 2019) ...................................................................10, 11

*Axiom Worldwide, Inc. v. Excite Med. Corp.*,
    591 F. App'x 767 (11th Cir. 2014) .........................................................................................7, 9

*Burger King Corp. v. Pilgrim's Pride Corp.*,
    934 F. Supp. 425 (S.D. Fla. 1996) .......................................................................................11, 12

*Coquina Invs. v. Rothstein*,
    No. 10-60786-CIV, 2011 WL 4949191 (S.D. Fla. Oct. 18, 2011) ...............................8, 14, 15

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..............................................................................................................1, 17

*Elardi v. Royal Caribbean Cruises, Ltd.*,
    No. 19-CV-25035, 2021 WL 1053281 (S.D. Fla. Mar. 12, 2021)............................................17

*Fuller v. SunTrust Banks, Inc.*,
    No. 1:11-CV-784-ODE, 2019 WL 5448206 (N.D. Ga. Oct. 3, 2019)....................................3, 6

*James v. Robert Bosch Tool Corp.*,
    No. 6:13-CV-1534-ORL-37, 2015 WL 470586 (M.D. Fla. Feb. 4, 2015) .........................2, 13

*Lebron v. Royal Caribbean Cruises, Ltd.*,
    No. 16-24687, 2018 WL 3583002 (S.D. Fla. July 26, 2018)...........................................3, 9, 10

*LSQ Funding Group, L.C. v. EDS Field Services*,
    879 F.Supp.2d 1320 (M.D. Fla., July 10, 2012) .....................................................................13

*Northrup v. Werner Enter., Inc.*,
    No. 8:14-CV-1627-T-27JSS, 2015 WL 4756947 (M.D. Fla. Aug. 11, 2015).......................2, 3

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*,
    No. 18-CV-63130, 2020 WL 1666763 (S.D. Fla. Apr. 3, 2020) ...............................................6

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
    326 F.3d 1333 (11th Cir. 2003) .....................................................................................1, 2, 17

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
    No. 13-2451, 2016 U.S. Dist. LEXIS 133828 (D. Minn. Sep. 28, 2016) ..............................7, 8

*SUNOCO Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*,
    No. 17-1390-LPS-CJB, 2020 WL 7330715 (D. Del., Jan. 13, 2020) ................................13, 14

*Townsend v. Monster Beverage Corporation*,
    303 F.Supp.3d 1010 (C.D. Cal., March 20, 2018) ...................................................................13

*Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*,
    674 F. Supp. 2d 1321 (S.D. Fla. 2009) ....................................................................................17

*Whelan v. Royal Caribbean Cruises Ltd.*,
    976 F. Supp. 2d 1328 (S.D. Fla. 2013) ....................................................................................12

*Wiand v. Wells Fargo Bank, N.A.*,
    No. 8:12-cv-00557, 2014 U.S. Dist. LEXIS 63071 (M.D. Fla. May 6, 2014) .................14, 16

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
    No. 15-CV-597-RP, 2017 WL 394511 (W.D. Texas Jan. 27, 2017) ................................10, 11

**Statutes**

15 U.S.C. § 1117(a) ..........................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 16(b) ......................................................................................................................10

Fed. R. Civ. P. 26 .........................................................................................................2, 6, 10, 18

Fed. R. Civ. P. 37 ...............................................................................................................10, 12, 18

Fed. R. Evid. 702 ........................................................................................................................1, 2

## I.      INTRODUCTION

In its *Daubert* Motion to Exclude the Report, Opinions, and Testimony of Microsoft Corporation's ("Microsoft") Expert Dr. Keith Ugone ("Dr. Ugone") [ECF No. 99] (the "Motion"), Plaintiff TocMail, Inc. ("TocMail") provides a litany of complaints about Dr. Ugone's Expert Rebuttal Report that have nothing to do with the three-pronged *Daubert* analysis. TocMail asserts that (1) Dr. Ugone has provided affirmative expert opinions, which are improper for a rebuttal expert; (2) these affirmative expert opinions require a finding that Microsoft untimely disclosed Dr. Ugone as a rebuttal expert, as he should have been designated as an affirmative expert; and (3) Dr. Ugone has provided "burden of proof" opinions while not meeting his own burden. It is not until page 27 of the 29 ½ page Motion that TocMail discusses the *Daubert* factors, arguing without factual or legal basis that Dr. Ugone's testimony and methodology are unreliable and unhelpful. Thus, TocMail failed to put forth any legal or factual argument supporting its Motion to exclude Dr. Ugone's report, opinions, and testimony under the *Daubert* standard.

For the reasons explained below, Dr. Ugone provides reliable and helpful rebuttal opinions that address the subject matter of TocMail's damages expert Marcie D. Bour's ("Bour") report. Dr. Ugone's opinions will assist the factfinder in weighing the credibility of Bour's opinions, should she be allowed to testify at trial. It is this Court's role as a gatekeeper to apply "the 'liberal thrust' of the Federal Rules," *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993), and in doing so, should find that Dr. Ugone's Rebuttal Report, opinions, and testimony pass muster under *Daubert*, and deny the Motion outright.

## II.     LEGAL STANDARD

"Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of scientific testimony [and] expert technical evidence." *Quiet Tech. DC-8, Inc. v.*

*Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003). The district court must "engage in a three part inquiry to determine the admissibility of expert testimony under Fed. R. Evid. 702. Specifically, [it] must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id*. at 1340–41.

"In the end, although rulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Id.* at 1341 (citation omitted). Thus, "[t]he admissibility standard for expert testimony is a liberal one, and a review of the caselaw after *Daubert* shows that the rejection of expert testimony is the *exception* rather than the rule." *James v. Robert Bosch Tool Corp.*, No. 6:13-CV-1534-ORL-37, 2015 WL 470586, at *2 (M.D. Fla. Feb. 4, 2015) (citation omitted).

## III.   ARGUMENT

### A. Dr. Ugone's Rebuttal Report Does Not Provide New, Affirmative Expert Opinions.

The Court should find that Dr. Ugone is a proper rebuttal witness to TocMail's damages expert, Bour, because he responds to the opinions and conclusions Bour reached in her report and his opinions pertain to the same subject matter as Bour's Expert Report (Mot. Ex. 2, hereinafter "Bour Report"). "Rule 26 provides that rebuttal experts may be permitted to present evidence that contradicts or rebuts evidence on the same subject matter identified by an initial expert witness." *Northrup v. Werner Enter., Inc.*, No. 8:14-CV-1627-T-27JSS, 2015 WL 4756947, at *2 (M.D. Fla. Aug. 11, 2015) (citing Fed. R. Civ. P 26(a)(2)(D)(ii)). "Neither the Rules nor the Eleventh Circuit

has defined or explained the term 'same subject matter.'" *Id*. However, "[c]ourts are empowered to exercise their discretion and judgment in determining if a rebuttal expert report addresses the same subject matter as the opposing party's initial expert report," and in doing so, "[s]everal courts have held that the term 'same subject matter' has been broadly construed." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687, 2018 WL 3583002, at *2, n.2 (S.D. Fla. July 26, 2018); *see also Northrup*, 2015 WL 4756947, at *2 ("the Court is persuaded by other courts that have addressed the term 'same subject matter' and construed it broadly.").

TocMail argues that Dr. Ugone has opined on four topics "not argued by Bour and [that] do[] not contradict or rebut evidence on the same subject matter identified in Bour's Expert Report," which "should have been disclosed in an affirmative expert report": (1) liability, (2) causation, (3) apportionment, and (4) deduction of costs. Mot. at 6-10.  This is not so.

First, as to liability, TocMail cites to paragraph 4.e.i.-iii. of Dr. Ugone's Rebuttal Expert Report (Mot. Ex. 1, hereinafter "Ugone Report" or "Rebuttal Report"), entitled "Ms. Bour's Calculation Of Lost Profits Is Based Upon Flawed And Unsupported Assumptions," as an example of Dr. Ugone's "liability opinions." Mot. at 8.   Dr. Ugone's attack on Bour's faulty assumptions underlying her unreliable lost profits calculation, as described in the Ugone Report in detail (*see* Ugone Report at ¶¶ 54-62), is proper rebuttal opinion. *See Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784-ODE, 2019 WL 5448206, at *22 (N.D. Ga. Oct. 3, 2019) (finding rebuttal expert properly attacked the assumption underlying the affirmative expert's measure of damages). Further, this testimony can, in no way, be characterized as an affirmative liability opinion.  TocMail fails to cite to a single example in Dr. Ugone's Rebuttal Report or testimony where he states that Microsoft should not be found liable under the Lanham Act or urges a factfinder to reach such a conclusion. This is because Dr. Ugone does not have **any** opinions regarding liability.  As such, this critique

of Dr. Ugone's Rebuttal Report should be disregarded.

Second, as to causation, TocMail argues, based on flawed logic, that if Bour was not required to, and did not, provide an analysis on causation, then any opinion by Dr. Ugone considering causation is not rebuttal and is therefore an improper affirmative opinion on causation. *See* Mot. at 12, 15-19. As an initial matter, TocMail erroneously conflates a legal causation analysis[1] with economic causation considerations. Dr. Ugone provides a rebuttal opinion that refers to economic, not legal, causation, explaining that Bour failed to consider basic economic principles when reaching her damages figures, making them unreliable. Ugone Report ¶ 41 ("Bour fail[ed] to properly evaluate economic factors inherent in a measure of lost profits or disgorgement"). As expressly stated by Dr. Ugone, and as TocMail is admittedly aware, his critique has "never [been about] legal causation. [It's] about economic or damages-related causation" and Bour's failure "to ultimately come up with, say, a [reliable] lost profits conclusion." Ugone Trs., attached as "**Exhibit 1**," at 70:20-25; Mot. at 17-18 (quoting Ugone Trs. at 71:11-25, testifying he is opining on "economic and damages related causation").

For example, Dr. Ugone attacks the assumptions underlying Bour's damages calculations, stating Bour "does not account for any of the [following] economic causation considerations": that "consumers (a) were exposed to the statements, (b) were confused by the statements in the manner alleged by Plaintiff, and (c) changed their purchasing behaviors." Ugone Report ¶ 43. In support of his rebuttal opinion, Dr. Ugone explains (a) how difficult it is for a consumer to access, locate, and ultimately be exposed to the three "deceptive advertisements" at issue in this case, making it unlikely that any consumer actually saw the advertisements, *id.* ¶ 46, (b) that the advertisements

---

[1] Microsoft does not dispute that damages experts, such as Bour, may assume, and do not have to themselves prove, *legal* causation, as is assumed by Dr. Ugone. Mot. at 16-17; *see* Ugone Report at p. 2.

do not mention IP Cloaking, making it unlikely that any consumer was confused by the advertisements, *id*. ¶ 48, and (c) that consumers who saw the advertisements may not choose to purchase TocMail because TocMail has "no sales and is not commercially successful," there are plenty of competitors that a consumer could turn to, and consumers may value other applications within Microsoft's Advanced Threat Protection ("ATP") or Office 365 with ATP more than they value Safe Links and thus, stay with Microsoft.  *Id*. ¶ 50.

Dr. Ugone also notes that Bour failed to consider the following economic considerations impacting her lost profits calculation through the year 2035: (a) "Bour does not consider in her report or incorporate into her analysis the likelihood of future technological improvements, or changing security concerns, or a change in the competitive environment over a period of nearly 15 years," and (b) Bour does not consider the impact of a change to, or removal of, the advertisements at issue, especially since her calculation requires a finding of liability, making it more likely Microsoft would alter or remove the advertisements.  Ugone Report ¶ 60.

In sum, Dr. Ugone explains that Bour has failed to conduct a "whole market analysis," failing to consider important variables that render her damages calculations unreliable:

> [S]he does not have at all in her report … the reaction function of Microsoft. … [I]s any company just going to let, you know, millions and millions and millions of, you know, potential customers just go away[?] Do they just roll over, or do they find another way to compete? And so she hasn't done a but-for reconstruction to see what the reaction of Microsoft would be in the but-for world, nor does she have any of these customers considering other competitive options in the marketplace. So she's not even taking into account other market dynamics. … She just has this mathematical calculation of 100 percent of the customers would have gone to TocMail, not recognizing Microsoft could adjust in the but-for world, and other competitors could adjust, as well, to capture some of that business rather than having 100 percent of those millions and millions and millions of customers going to a company that has never made a profit and didn't have – didn't have a product until just recently and has no brand name associated with them.

Ugone Ts. (**Ex. 1**) at 65:15-67:2. These are not affirmative "opinions on new areas not raised by Bour's expert report," Mot. at 1, but rather are opinions that emphasize weaknesses in Bour's

methodology, and thus, directly and properly rebut Bour's damages analysis. Pointing to facts Bour failed to consider in her assumptions and critical steps Bour failed to take in her analysis is the very essence of what makes his opinion a proper rebuttal. *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, No. 18-CV-63130, 2020 WL 1666763, at *9 (S.D. Fla. Apr. 3, 2020) ("[R]ebuttal experts may [even] cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert. Nothing constrains an expert preparing a rebuttal report from taking a different approach than the initial expert, from employing a different methodology, or from reframing an issue addressed in the initial report before analyzing it.") (citations omitted); *Fuller*, 2019 WL 5448206, at *22 (because rebuttal expert's "report attacks the assumption underlying Dr. Pomerantz's report … that his calculations would be an appropriate measure of damages" and "in light of this underlying assertion and the Court's view that Rule 26's 'same subject matter' standard should be broadly construed, the Court will not exclude Dr. Stangle's report as outside the scope of Dr. Pomerantz's expert report.").

Third, TocMail wrongly assumes that because certain "apportionment" calculations are a burden that Lanham Act defendants bear, any use of the term "apportionment" by Dr. Ugone means that he has provided an affirmative burden of proof opinion. Mot. at 19-20. The opinions TocMail is referring to are Dr. Ugone's rebuttal of Bour's disgorgement of profits calculation.[2] *Id.*

---

[2] TocMail attempts to shift the focus away from the *Daubert* standard to the Parties' damages burdens, with its confusing use of the term "apportionment." What Dr. Ugone refers to in his Rebuttal Report as the "apportionment" of gross sales is a basic revenue analysis to be undertaken by Bour (*i.e.*, determining revenue attributable to Safe Links by apportioning it (or parsing it out) from the revenues of ATP and Office 365 with ATP products). Dr. Ugone is not referring to a Lanham Act defendant's burden to prove costs and sales not attributable to the alleged wrongful conduct (*i.e.*, sales of Safe Links that did not result from the alleged false advertising) to be discounted from revenues. *See Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 776 (11th Cir. 2014). But Bour did not conduct this initial sales analysis to determine sales of Safe Links, and thus, TocMail's assertion that Dr. Ugone is engaging in an apportionment analysis is misplaced. He has provided no affirmative testimony on this point.

at 19. Dr. Ugone opines that Bour did not use a reliable method to determine Microsoft's sales of the infringed product, Safe Links, because Safe Links is not sold as a standalone product and Bour made no effort to determine revenues attributable to Safe Links based on its market value.  Ugone Report ¶¶ 22, 69, 72. Instead, she utilized the gross revenues of other Microsoft products that are not at issue, and that include Safe Links as only one feature in a much broader suite of products and services. Bour Report ¶ 75; Ugone Report ¶ 4.f.ii. ("the revenues and profits received by Microsoft on such products … are not solely related to Microsoft's Safe Links feature."); ¶ 66 (explaining that the Microsoft gross revenues for ATP and Office 365 with ATP that Bour utilized to reach her number "are not a reliable input into a calculation of disgorgement" and are "overstated as she failed to appropriately [identify] those revenues attributable to Microsoft's Safe Links feature."), ¶ 68 ("Bour failed to acknowledge in her report or account for the fact that **all** of the products included numerous other products and features in addition to Safe Links").

Such rebuttal is proper.  For example, in *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 13-2451, 2016 U.S. Dist. LEXIS 133828 (D. Minn. Sep. 28, 2016), the court excluded an affirmative expert who provided a model of disgorgement damages but failed to provide "an accounting of profits under the Lanham Act … attributable to infringing conduct." *Id.* at *18. The "Court agree[d]" "that there are no legal grounds for Plaintiff to seek disgorgement of profits for Tempur-Pedic's sales of unrelated products." *Id.* "While under a disgorgement model Plaintiff must only prove Tempur-Pedic's sales, those sales must be of the allegedly falsely advertised products.  Here, the falsely advertised products are the Tempur-Choice line of mattress products, not all of Tempur-Choice's products." *Id.* Likewise, it is appropriate for Ugone to opine that Bour must prove the sales of the alleged falsely advertised product at issue, Safe Links, and not the sales of ATP or Office 365 with ATP.

In further support of his rebuttal opinion, Dr. Ugone discusses the many features available within the suite of services sold as ATP and Office 365 with ATP. Ugone Report ¶¶ 20, 25, Ex. 4. Dr. Ugone points out that Bour failed to consider the value of popular applications such as Outlook, Excel, or PowerPoint, for example, that are included within the "Office 365 with ATP" product, when she conclusively asserted that the gross revenues of ATP or Office 365 with ATP is an appropriate disgorgement of profits figure in this case. *See id.* at ¶ 50.c. Thus, Dr. Ugone is directly challenging the factual underpinnings of Bour's opinions, which is proper rebuttal testimony. *See Coquina Invs. v. Rothstein*, No. 10-60786-CIV, 2011 WL 4949191, at *3 (S.D. Fla. Oct. 18, 2011) ("A rebuttal expert can testify as to the flaws that she believes are inherent in another expert's report that implicitly assumes or ignores certain facts. Thus, a rebuttal expert may testify that … the expert's report implicitly assumes (or erroneously fails to consider) facts X, Y, and Z [and thus] the expert's analysis is seriously flawed … This is a well-accepted way to criticize damages estimates.") (citation omitted).

Finally, TocMail alleges that Dr. Ugone has improperly provided an "affirmative opinion on deduction of costs." Mot. at 10.  Not so. TocMail uses the same flawed logic described above to argue that because Lanham Act defendants bear the burden of proving any costs that should be deducted from the revenues attributable to the infringed product, any consideration of costs by Dr. Ugone is therefore an affirmative opinion addressing defendant's burden of proof.  *Id*. But Dr. Ugone did not engage in a deduction of costs analysis to arrive at a reduced disgorgement figure— and could not have—because Bour did not first determine revenues attributable to Safe Links, as TocMail is required to do before Microsoft could prove costs to be deducted. Ugone Report ¶ 72. *See Axiom Worldwide, Inc.*, 591 F. App'x at 776 ("The Lanham Act requires a plaintiff to prove the infringing defendant's sales only; the burden then shifts to a defendant to prove 'all elements

of cost or deduction claimed.'") (citing 15 U.S.C. § 1117(a)).

What Dr. Ugone did instead is rebut Bour's disgorgement calculation. He states, "[e]ven if Ms. Bour had properly identified Microsoft's revenues [attributable to Safe Links], which as discussed above she has not, a proper calculation of disgorgement also would incorporate a deduction for Microsoft's costs," which information was produced by Microsoft and available to Bour. Ugone Report ¶ 72. Thus, he explains, Bour's "calculation is *incomplete* as she presents no estimate of Microsoft's incremental costs." *Id.* ¶ 64.d. (emphasis added). These are supported and proper rebuttal opinions that directly undermine Bour's overstated and unreliable disgorgement figure (based on the revenues attributable to other products not at issue) because she failed to account for the simple fact that costs exist in the real world.

As explained above, Dr. Ugone's Rebuttal Report pertains to the "same subject matter" of the Bour Report and responds to Bour's opinions and conclusions without providing new, affirmative opinions. Therefore, TocMail's argument that Dr. Ugone's Rebuttal Report "does not qualify as a rebuttal report," Mot. at 13, should be disregarded. *Lebron*, 2018 WL 3583002, at *4.

### B. Dr. Ugone's Rebuttal Report Was Timely Served.

The fact that Microsoft did not put forth an affirmative expert opinion does not mean that that Dr. Ugone has provided improper affirmative opinions under the guise of a rebuttal report, as TocMail wrongly suggests. Mot. at 12-15. For the reasons explained above, Dr. Ugone has properly been designated as a rebuttal expert.  As stated in TocMail's Motion, "Microsoft requested an extension of time to disclose its rebuttal report … which TocMail consented to[.] Microsoft served Ugone's Rebuttal Report on December 7, 2020." *Id.* at 4. Thus, Microsoft timely served Dr. Ugone's Rebuttal Report, and therefore, TocMail's invocation of Rules 16(b), 26(a)(2), and 37(c)(1) are inappropriate.  *Id*. at 13-15.

Even assuming *arguendo*, that Dr. Ugone provided "affirmative testimony," which he has

not, "[a] party's failure to properly disclose an expert, including improper designation of an expert [as a rebuttal expert] under Rule 26(a)(2)(D)(ii), is harmless when no prejudice results to the opposing party." *Lebron*, 2018 WL 3583002, at *2. TocMail has suffered no prejudice whatsoever, as Dr. Ugone's Rebuttal Report was served on December 7, 2020 and expert discovery closed on March 30, 2021, during which time TocMail deposed Dr. Ugone on his opinions (including those it now asserts are "affirmative" and untimely) and had ample time to respond to his opinions if it so chose.[3] TocMail's position that it "was not provided any time to respond to ... Ugone's Report" is simply untrue. Mot. at 13.

Further, TocMail's reliance on *All-Tag Corp.*, *v. Checkpoint Systems, Inc.*, 408 F.Supp.3d 1347, 1353 (S.D. Fla. Oct. 7, 2019) and *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. 15-CV-597-RP, 2017 WL 394511 (W.D. Texas Jan. 27, 2017), to argue that Dr. Ugone has provided untimely, affirmative opinions in an attempt to meet Microsoft's burdens, are misplaced. Mot. at 13, 22-23. In *All-Tag*, the plaintiff served its expert, Dr. Hunter's, affirmative expert report on July 17, 2019, and on August 23, 2019, served a rebuttal report from Dr. Hunter. *All-Tag Corp.*, 408 F. Supp. 3d at 1353. The defendant moved to strike the rebuttal report as untimely, as it contained improper new, affirmative opinions. *Id.* at 1352. Critically, Dr. Hunter self-described a section of his rebuttal report as an affirmative report. *Id.* ("Dr. Hunter himself made clear that ... Section IV of his report is 'an affirmative report [] based on Ms. Irwin's approach.'"). Thus, the court found the rebuttal report was "untimely and raises an entirely new theory of damages" and struck Section IV of the rebuttal report. *Id*. at 1352–53. In *YETI Coolers*, the court found the expert rebuttal

---

[3] On May 21, 2021, two months *after* the close of expert discovery, TocMail served a supplemental report of Bour which contained new affirmative opinions, analysis, and conclusions that attempt to fix the deficiencies in her initial report that Dr. Ugone critiqued. *See* ECF No. 82 (Microsoft's Motion to Strike Bour's Supplemental Expert Report as Untimely).  Bour's supplemental report was untimely and wholly improper.

report "is plainly not a rebuttal report. …Dr. Erdem's report does not attempt to rebut any of YETI's experts. It is undisputed that Dr. Erdem did not review any YETI expert reports before preparing her own report and admitted during her deposition that 'I'm not rebutting anybody.'" 2017 WL 394511, at *2. Unlike the experts in *All-Tag* and *YETI Coolers*, Dr. Ugone clearly read the Bour Report, references her report and its shortcomings throughout his Rebuttal Report, and has never characterized his Rebuttal Report as containing affirmative opinions or stated that he is not rebutting anyone.

Because it is clear Dr. Ugone has rebutted Bour's opinions and report, and has not provided affirmative expert opinions, the Court should find that Dr. Ugone's Rebuttal Report was timely served in accordance with the Scheduling Order's Rebuttal Expert disclosure deadline.

### C. Dr. Ugone Did Not Provide a "Burden of Proof" Report.

TocMail also argues that Microsoft provided "untimely burden of proof testimony." Mot. at 22. This argument is similarly misguided. TocMail states that "Microsoft bears the burden of establishing how much by way of costs and deductions should be subtracted from their gross revenues for products containing [] Safe Links[4] [and that] Microsoft also bears the burden of conducting an apportionment analysis, *i.e.,* proving what portion of the gross sales were not attributable to the false advertising." *Id*. at 20. TocMail claims Microsoft was required to "present[] its arguments as to the issues for which it has the burden of proof in its initial expert report," *id*. at 21, and thus concludes that Dr. Ugone's Rebuttal Report provided untimely affirmative expert opinions on these topics, warranting "Rule 37 sanctions." *Id.* at 22. Not so.

---

[4] Microsoft disputes that Bour's disgorgement calculation, based on revenues for products that contain Safe Links, is appropriate and should instead be based on the revenues for the infringed product itself, Safe Links. *Burger King Corp. v. Pilgrim's Pride Corp.*, 934 F. Supp. 425, 426 (S.D. Fla. 1996) ("Plaintiff has the burden of showing the amount of [d]efendant's sales of the *infringing* product."); Ugone Report ¶ 69.

As explained above, Dr. Ugone did not provide affirmative opinions on either apportionment or deduction of costs. *See supra* Section A. Dr. Ugone did not deduct costs or eliminate sales of Safe Links not attributable to the alleged false advertising because, again, he could not undertake such an analysis since Bour did not meet her initial burden of determining gross sales of Safe Links. *See Burger King Corp.*, 934 F. Supp. at 426 ("Plaintiff has the burden of showing the amount of [d]efendant's sales of the *infringing* product.") (emphasis added). Rather, he undermines Bour's disgorgement of profits damages calculation, explaining how she failed to derive the *relevant* Safe Links revenue and why it is methodologically flawed for her to instead rely on gross revenues for ATP and Office 365 with ATP. Ugone Report. ¶¶ 69-72. Indeed, despite any disagreement as to the substance of Dr. Ugone's opinions, TocMail acknowledges that Dr. Ugone opines on Bour's failures and the deficiencies in her report; in other words, that he provides rebuttal opinions. Mot. at 21.

Regardless, TocMail's discussion about Microsoft's affirmative burden of proof is irrelevant to the *Daubert* analysis that the Court must conduct. Moreover, even if the burden is on Microsoft to conduct an apportionment analysis, the fact that Dr. Ugone did not do one is not grounds for exclusion, as TocMail argues, because he was offered by Microsoft solely to rebut Bour. *See* Mot. at 24-26. And, even if Bour's overstated "Microsoft gross revenues" analysis is accepted, a deduction of costs exercise is arithmetic that a jury can do itself. *See Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1332 (S.D. Fla. 2013) (expert testimony should "concern[] matters that are beyond the understanding of the average lay person" and "is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves.").

Accordingly, the Court should find that Dr. Ugone has timely provided a proper rebuttal to

Bour's Report and did not provide an improper affirmative "burden of proof" analysis.

### D.  Dr. Ugone's Rebuttal Report and Opinions Are Reliable and Helpful to a Jury.

Importantly, Dr. Ugone's Rebuttal Report and opinions meet the three-pronged *Daubert*

analysis at issue, and are reliable and helpful to a jury.[5]  "The district court has … considerable

leeway in deciding in a particular case how to go about determining whether particular expert

testimony is reliable." *James*, 2015 WL 470586, at *2.

TocMail claims Dr. Ugone does not meet the second prong of the *Daubert* standard because

his methodology and opinions are unreliable.[6] Mot. at 28-30 (*e.g.*, Dr. Ugone does "not use reliable

methodology and provides no authority or analysis to explain why his methodology should be

---

[5] TocMail does not dispute the first element of the *Daubert* standard: that Dr. Ugone is qualified.
[6] That Dr. Ugone has been excluded in factually dissimilar matters has no bearing on his ability to meet the *Daubert* factors and provide rebuttal testimony in this matter. Mot. at 3. In *Townsend v. Monster Beverage Corporation*, 303 F.Supp.3d 1010, 1039 (C.D. Cal., March 20, 2018), Dr. Ugone provided a rebuttal opinion on an expert's price premium damages model for a class-wide measure of damages in an unfair and deceptive trade practices case, and the court excluded only a mere 9 paragraphs from his entire rebuttal report. In *LSQ Funding Group, L.C. v. EDS Field Services*, 879 F.Supp.2d 1320, 1336 (M.D. Fla., July 10, 2012), the Court found the *Daubert* motion against Dr. Ugone was moot, but also found Dr. Ugone calculated "three undisputed figures" "not beyond the understanding of the average lay person" in a suit to recover payment for fraudulently submitted invoices. Finally, *SUNOCO Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390-LPS-CJB, 2020 WL 7330715, *5 (D. Del., Jan. 13, 2020), is a patent infringement suit where Dr. Ugone was offered as an affirmative expert to provide a lost profits calculation. The Court excluded his testimony, finding the affirmative expert was required to engage in an apportionment analysis, which Dr. Ugone, and Bour here, failed to do. The Court found that in all situations, including "situations where a defendant's accused product is made up of multiple components, only some of which infringe … the concept of apportionment is meant to ensure that a patentee is awarded damages adequate to compensate for the defendant's *infringement*, such that damages are tied to the scope of the claimed invention." *Id.* at *5. The Court found the affirmative expert "was required to … apportion: (a) the value attributable to the patent license rights from (b) the value attributable to the additional 'basket of services' provided[.] In only that way could one ensure that [plaintiff's] ultimate damages calculations are tied to the actual scope of the claimed invention." *Id.*  Unlike in *SUNOCO*, Dr. Ugone is not the affirmative expert here, and thus was not required to engage in any apportionment analysis.  The main rebuttal Dr. Ugone currently provides against Bour is that she failed to engage in any analysis to determine the value of the Safe Links feature within the much larger products containing a multitude of features and programs that are not at issue.

used.").  However, rebuttal experts are not required to come up with a methodology and can simply critique the affirmative expert's methodology. "There is no requirement that a rebuttal expert offer a competing damages analysis, for example; his opinions properly may be limited to criticizing the analysis and conclusions presented by another party." *Action Nissan, Inc. v. Hyundai Motor Am.*, No. 618CV380ORL78EJK, 2020 WL 9173027, at \*3 (M.D. Fla. Nov. 5, 2020) (citation omitted) (allowing rebuttal expert "to offer only criticisms of Plaintiffs' expert's report without more."); *see Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-cv-00557, 2014 U.S. Dist. LEXIS 63071, \*5-6 (M.D. Fla. May 6, 2014) (noting "a rebuttal expert may appropriately criticize the methodology of an opposing expert" and such criticism, alone, is adequate rebuttal); *Coquina Invs.*, 2011 WL 4949191, at \*3 (noting that a rebuttal expert can simply point out flaws in an affirmative expert's opinions, including implicit and erroneous assumptions and considerations not taken into account).  In both instances TocMail raises, Dr. Ugone provided well-reasoned criticism of Bour's affirmative opinions.

First, TocMail asserts Dr. Ugone's "testimony regarding apportionment of profits is unreliable because he provides no analysis to show how numbers were obtained." Mot. at 28. But, as discussed, Dr. Ugone engaged in no such analysis, and provided no alternate disgorgement "number" for the jury in his Rebuttal Report. Thus, TocMail's critique of Dr. Ugone makes no sense because it has not, and cannot, point to any "number" reached by Dr. Ugone. *Id.* Dr. Ugone critiques Bour's disgorgement calculation by noting her failure to consider costs, which information was readily available to her, thereby rendering her figures unreliable. Ugone Report at ¶¶ 73-74. Dr. Ugone notes that *had* Bour provided a reliable measure of Microsoft's revenues attributable to Safe Links, which she has not, she should have applied Microsoft's gross margin in the Office 365 Commercial product category from July 2015 to June 2020 to more accurately

14

estimate Microsoft's gross margins. *Id.* (citing Ugone Report Exhibit 9).[7]  He explains, these gross

margins represent a conservative measure of costs, as there are likely additional incremental costs

that would apply. *Id.* By highlighting gaps in Bour's analysis, Dr. Ugone has engaged in a proper

rebuttal exercise. *See Coquina Invs.*, 2011 WL 4949191, at *3.

      Second, TocMail asserts that Dr. Ugone's "testimony regarding costs associated with lost

profits … is unreliable" because "[h]e does not use [a] reliable methodology." Mot. at 29-30. Here,

Dr. Ugone is properly responding to the unrealistic assumption that TocMail would operate "at a

profit rate of over 98% from 2020 to May 2035" underlying Bour's lost profits calculation. Ugone

Report ¶ 58. This is an unusually high profit rate, as Bour admits. ECF No. 69-32 at 84:23-85:8.

In support of his position, Dr. Ugone provides a table of five competitors' gross and net margins,

ranging from 63% to 78%, and notes Microsoft spends 13% of its revenue on research and

development ("R&D") and 14-16% of its revenue on marketing.[8] Mot. at 29-30; Ugone Report ¶¶

57-58, Table 6. In contrast, Bour assumed TocMail would have no R&D costs over a 15-year

period and that TocMail would spend only 0.18% of its projected 2020 revenue on marketing.

Ugone Report ¶ 57. Based on this, Dr. Ugone concludes that Bour "fail[ed] to capture the costs

TocMail likely would incur if it made its claimed lost sales. As a result, Ms. Bour's claimed lost

---

[7] To the extent TocMail argues these margins are unverified and unsupported, Mot. at 3, 28-29, this argument falls flat. Exhibit 9 to the Ugone Report is a chart containing a month-by-month breakdown of Microsoft's gross margins for Office 365 Commercial product category from July 2015 to June 2020, with corresponding Bates numbers indicating where each month's margins were produced in discovery. Further, these numbers were authenticated at the deposition of a Microsoft 30(b)(6) witness. *See* Griffith Trs., attached as "**Exhibit 2**," at 11:5-25.

[8] TocMail's argument that Dr. Ugone's critique "fails to use consistent data measures" because he uses R&D and marketing expenses from Microsoft but gross margins for five cybersecurity competitors when assessing TocMail's overinflated 98% profitability rate, is easily explainable. Mot. at 29-30. The first set of data points are confidential, internal financial information that cannot be discerned for competitors, while the latter is publicly available information with two of the competitors referenced in TocMail's Amended Complaint. Ugone Report ¶ 58, n.190. Thus, Dr. Ugone is not using data points that "suit him;" he is using the comparative data available to him.

profits calculations [and profit rates] are unreliable and overstated." *Id.* ¶ 59. Thus, each of Dr. Ugone's opinions are proper rebuttal as they directly criticize Bour's calculations. *See Wiand*, 2014 U.S. Dist. LEXIS 63071 at *5-6.

Finally, TocMail argues Dr. Ugone does not meet the last *Daubert* prong because his opinions "pose[] the danger of unfair prejudice and misleading a jury because he attacks Bour for not engaging a causation analysis that she was not required to do" and "will mislead the jury [on] the burden of proof." Mot. at 24. As explained above, Dr. Ugone does not discuss legal causation but opines on the unreliability of Bour's lost profits calculations due, in part, to her faulty assumptions that fail to account for economic market factors, and, as such, Dr. Ugone's testimony could not mislead or confuse a jury. *See supra* Section A.   Indeed, Dr. Ugone's testimony is helpful, providing necessary context for the jury to consider including these real-life economic considerations that Bour's damage figures ignore. For example, (i) Bour assumed TocMail could release a single press release and the market would take care of itself so that within four months of TocMail's launch it would capture all 100 million of Microsoft's customers; (ii) Bour did not factor in an R&D budget for TocMail and assumed that there was no need for future improvements of TocMail's product; (iii) Bour assumed TocMail would have a 98% profitability rate, which she admitted is an unusually high profitability rate in her experience; (iv) Bour assumed TocMail should be valued as a $1 Billion company despite never having a valuation; (v) Bour failed to acknowledge that competitors exist; (vi) Bour failed to acknowledge that the advertising statements at issue are very difficult to locate; and (vii) Bour failed to acknowledge that Microsoft can revise or take down their advertisements at any time. Ugone Report ¶¶ 55, 57, 58, 60; *see also* Microsoft's Daubert Motion to Exclude Bour (ECF No. 69) at 22-24.

Even if there were a chance that Dr. Ugone's opinions could mislead a jury, these concerns

can be appropriately addressed through cross examination and the Court's instruction to the jury on the burden of proof at trial. *Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Quiet Tech*, 326 F.3d at 1341 (same); *see Elardi v. Royal Caribbean Cruises, Ltd.*, No. 19-CV-25035, 2021 WL 1053281, at \*2 (S.D. Fla. Mar. 12, 2021) (denying *Daubert* motion, finding "these opinions would be helpful to the trier of fact, and to the extent there are objections or disagreements with any of the opinions rendered, counsel may conduct vigorous cross-examination and present contrary evidence at trial."); *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (denying *Daubert* motion, noting movant's criticisms of expert "go to the weight to be given to his testimony and not the admissibility, which may be properly counter-balanced by pointing out any weaknesses in the testimony on cross-examination").

Because Dr. Ugone's Rebuttal Report, opinions, and testimony are reliable and will assist the trier of fact in weighing the credibility of Bour's opinions, should she be allowed to testify at trial, Dr. Ugone meets the *Daubert* standard.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Dr. Ugone's Rebuttal Report, opinions, and testimony should not be excluded or stricken under Rules 26(a)(2), 37(c)(1), or *Daubert*, and the Motion should be denied in its entirety.

Dated:  August 6, 2021

Respectfully submitted,

By */s/ Evelyn A. Cobos*
EVELYN A. COBOS

**GREENBERG TRAURIG, LLP**
Mary-Olga Lovett (*admitted pro hac vice*)
Texas Bar No. 00789289
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
        orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
        FLService@gtlaw.com

***Attorneys for Defendant,***
**MICROSOFT CORPORATION**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 6th day of August, I served for foregoing document on

all counsel of record identified on the below Service List in the manner specified.

<u>/s/ *Evelyn A. Cobos*</u>
EVELYN A. COBOS

<u>**SERVICE LIST**</u>

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*