# EXHIBIT 118

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2

                    CASE NO. 0:20-CV-60416-AMC
 3

 4    TOCMAIL INC., a Florida
      corporation,
 5
                    Plaintiff,
 6
      vs.
 7

      MICROSOFT CORPORATION, a
 8    Washington corporation,

 9                  Defendant.
10    _____/
11
                                      March 15, 2021
12                                    9:08 a.m. - 2 p.m. EST
13
14
                VIDEOTAPED DEPOSITION OF MARCIE BOUR
15
                   TAKEN VIA ZOOM TELECONFERENCE
16
17
18        Taken on behalf of the Defendant before
19    Alice J. Teslicko, RMR, Notary Public in and for the
20    State of Florida at Large, pursuant to a Notice of
21    Taking Deposition in the above cause.
22
23
24
25
```

Page 1

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

```
 1   APPEARANCES VIA TELECONFERENCE:
 2
         JOHNSON & MARTIN, P.A.
 3       BY:  JOSHUA D. MARTIN, ESQ.
         500 W. Cypress Creek Road, Suite 430
 4       Fort Lauderdale, FL 33309
         (954) 790-6699
 5       josh.martin@johnsonmartinlaw.com
         Attorneys for the Plaintiff
 6
 7       GREENBERG TRAURIG, LLP
         BY:  MARY-OLGA LOVETT, ESQ.
 8            KYLE DUGAN, ESQ.
              EVELYN COBOS, ESQ.
 9       1000 Louisiana Street, Suite 1700
         Houston, TX 77002
10       (713) 374-3541
         lovettm@gtlaw.com
11       duganky@gtlaw.com
         cobose@gtlaw.com
12       Attorneys for the Defendant
13
14       Also Present:  Michael Wood
                        Jeffrey Hulbert
15                      Cameron Roth
                        Rachel Hymel
16                      Michael Kirby - Videographer
17                            - - -
18
19
20
21
22
23
24
25
```

Page 2

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

I N D E X

| | WITNESS | PAGE |
|---|---|---|
| | MARCIE BOUR | |
| | Direct Examination by Ms. Lovett | 6 |
| | Certificate of Oath | 172 |
| | Errata Sheet | 175 |

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

| | DEFENDANT'S EXHIBITS | |
|---|---|---|
| EXHIBIT | DESCRIPTION | PAGE |
| Exhibit 1 | Powerpoint entitled: "Startup Solves Leading Cybersecurity Issue" | 92 |
| Exhibit 2 | Power Point entitled: "Office Advanced Threat Protection Threat Intelligence" | 167 |

1  all because of my windshield wiper blade, so that's
2  the $200 million in revenue.
3             What have you done to isolate the value of
4  Safe Links itself?  Because that's the competitive
5  product to TocMail, right?
6             MR. MARTIN:  Objection to form.
7  BY MS. LOVETT:
8       Q    You may answer.
9       A    My understanding is that Safe Links is a
10 critical part of establishing the security for the
11 entire system and for the brand, and that would be the
12 reason why I included the revenue associated with the
13 products that have that safety component.
14      Q    What about Safe Attachments?  That's another
15 product.  More or less value than Safe Links?
16           MR. MARTIN:  Objection to form.
17      A    It's not a question of -- again, with regard
18 to causation -- I'm not rendering an opinion with
19 regard to causation.  My understanding is that Safe
20 Links is a critical part in establishing the security
21 of the brands and what is sold and therefore, I
22 calculated the revenue.
23      Q    As the entire brand and what is sold, right?
24      A    The entire brand being sold with Safe Links
25 as a component, yes.

Page 38

1  Q   So do you know what -- you make a comment
2  about the marketing in your report about a press
3  release.  Do you recall that?
4  A   Yeah, the initial marketing.  I mentioned
5  the initial marketing as a press release, yes.
6  Q   And you believe that the press release would
7  have been sufficient -- that that initial press
8  release would have been sufficient to reach all of the
9  potential parties so that Mr. Wood and his company
10 could have realized significant sales in a short
11 period of time, within a year?
12 A   No.
13 Q   Okay.  Why don't you tell me -- why don't
14 you tell me what you believe your report is telling us
15 about the press release?
16 A   Well, the press release is the impetus in
17 the initial marketing that would be done.  There is a
18 budget incorporated that there will be a marketing
19 campaign, a PR firm would handle a marketing campaign.
20     There is s a budget in the first -- there's
21 an annual budget of over $2 million for marketing as
22 well as an allowance for two account reps, two large
23 account reps who would handle corporate accounts,
24 large corporate accounts, and that would --
25 Q   Go ahead, I'm sorry.

Page 44

```
1         Q    So you believe for the next 15 years TocMail
2    would have a 98 percent profitability rate, right?
3         A    Yes.
4         Q    I know you've done a number of these cases.
5    This is the highest profitability rate I've ever seen.
6    Is that a rather high profitability rate, in your
7    experience?
8         A    Yes.
9         Q    Let's go to table six in Dr. Ugone's report,
10   please.
11             So if we blow this up, this is just looking
12   at other security companies and I'll represent for
13   you, but I don't think this is going to be a shock
14   when you look at their annual revenues, they're
15   obviously larger than TocMail and they certainly have
16   more overhead, but they also have more people to
17   manage how they spend what their overhead is and
18   manage SG&A costs.
19             The highest profit margin I can see here
20   among these other cybersecurity companies that only do
21   cybersecurity -- in other words, we're not including
22   Microsoft here because they produce products that are
23   outside of that.  This is all security as a service.
24   The highest gross margin that I see there is 77 and a
25   half percent.  That's Barracuda, but then the net
```

Page 85

TRANSCRIPT CONTAINS CONFIDENTIAL PORTIONS

1  necessary to reach that conclusion.
2            So I have not specifically made the
3  assumption that you're stating.  If that is a
4  necessary assumption for the plaintiff to prove its
5  case, then that is incorporated in my assumption.
6       Q    Can you think of any other reason, just you
7  as a professional, can you think of any other reason
8  outside the statements that a consumer may buy the
9  disputed Microsoft products?
10           Other than these three deceptive statements,
11 allegedly deceptive statements.
12      A    I have not made -- I've made no such
13 determination.
14      Q    So you haven't even thought about other
15 reasons that people might buy Office 365, ATP, a
16 Microsoft service enabled with ATP, other than the
17 allegedly three deceptive statements?
18           MR. MARTIN:  Objection to form.
19      A    No, I haven't.
20      Q    Let's see.  Would you agree that your
21 analysis assumed that every purchaser of an at-issue
22 seat, an at-issue Microsoft seat from February 2020 to
23 May 2035 was exposed to an allegedly misleading
24 statement and was influenced enough by the allegedly
25 misleading statement to buy the disputed product?

```
 1        A    I'm sorry, could you please repeat that
 2   a little bit slower for me?  It was a long statement.
 3        Q    Sure.  No, I get it.  Let me break it down.
 4             Would you agree that your analysis assumes
 5   that each and every purchaser of an at-issue Microsoft
 6   seat from February 2020 to May of 2035 -- which is the
 7   life of your damage model going forward -- was exposed
 8   to an allegedly misleading statement?
 9             Would you agree with that?
10        A    I don't have knowledge to that.
11        Q    Okay.  But you're assuming that for your
12   damages model?
13        A    No, I'm assuming that TocMail will provide
14   sufficient evidence to establish causation.  I have
15   not made a determination as to what that evidence will
16   be, nor what is required, because that would be a
17   legal determination.
18        Q    Okay.  But I'm asking for the assumptions
19   that are built into your report, which I'm entitled to
20   explore.
21             In other words, you made the assumption here
22   that every purchaser going forward from February '20
23   to May of '35 was exposed to an allegedly misleading
24   statement, true?
25        A    No.
```

```
 1                   CERTIFICATE OF OATH
 2
 3        I, Alice J. Teslicko, RMR, a Notary Public
 4   for the State of Florida at large, do hereby
 5   certify that the witness, Marcie Bour, appeared
 6   via teleconference before me and was duly sworn.
 7        Signed and sealed this 19th day of March,
 8   2021.
 9
10
11
                              Alice J. Teslicko, RMR
12
13
14   Commission No. GG249076
     My Commission Expires:
15   December 14, 2022
```

Page 171

```
1                        CERTIFICATE
2    STATE OF FLORIDA      )
                           ) ss.
3    COUNTY OF MARTIN      )
4
             I, ALICE TESLICKO, RMR, a Registered
5    Merit Reporter and Notary Public for the State of
     Florida at Large, do hereby certify that I reported
6    the deposition of Marcie Bour, a witness called by the
     Defendant in the above-styled cause; and that the
7    foregoing pages constitute a true and correct
     transcription of my shorthand report of the deposition
8    of said witness.
9            I further certify that I am not an attorney
     or counsel of any of the parties, nor a relative or
10   employee of counsel connected with the action, nor
     financially interested in the action.
11
             WITNESS my hand and official seal in the
12   City of Stuart, County of Martin, State of Florida,
     this 19th day of March, 2021.
13
14
                                    [signature]
15                                  Alice J. Teslicko, RMR
16   My commission expires:
     December 14, 2022
17   Commission No. GG249076
18
19
20
21
22
23
24
25
```

Page 172