**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60416-CIV- CANNON/HUNT**

TOCMAIL INC., a Florida corporation,

              Plaintiff,

v.

MICROSOFT CORPORATION, a
Washington corporation,

              Defendant.

_____/

**PLAINTIFF TOCMAIL INC.'S REPLY IN SUPPORT OF PLAINTIFF'S**
***DAUBERT* MOTION TO EXCLUDE REPORT, OPINIONS, AND TESTIMONY OF**
**MICROSOFT'S EXPERT KEITH R. UGONE**

Plaintiff, TOCMAIL INC. ("TocMail"), hereby respectfully submits its reply in support of its motion to exclude the proposed expert testimony of Keith R. Ugone ("Ugone") identified by Defendant, MICROSOFT CORPORATION ("Microsoft") as a rebuttal expert and states:

## I.      INTRODUCTION

Microsoft's Response is contrary to the facts and well-established law and seeks to turn the burdens of proof on their head. Microsoft tries to redefine well-established principles like causation, deduction of costs, apportionment, and underlying assumptions so it can unabashedly assert that Ugone does not proffer affirmative testimony on these issues. Microsoft's own description of Ugone's opinion demonstrates that he is doing what Microsoft says he is not doing.

Microsoft tries to distinguish between "legal" and "economic" causation, arguing that Ugone's report merely addresses economic causation. However, Microsoft provides no support or authority for this distinction and the case law cited by Microsoft contradicts its position. In fact, the very opinions set forth by Ugone supposedly concerning "economic" causation are the very same arguments made by Microsoft in its Summary Judgment briefs regarding supposed "legal" causation. The entire argument is contradictory.  Moreover, Bour's Report explicitly states that she is not opining on causation (*i.e. all* causation).  Because Bour did not opine on any causation, Ugone *cannot* use a rebuttal report to inject opinions on any causation.

Significantly, regarding apportionment and deduction of costs associated with disgorgement, Microsoft does not cite a single case where a defendant waited until rebuttal to disclose burden of proof testimony and burden of proof testimony was not excluded. The abundance of cases are clear – testimony on issues where Microsoft has the burden of proof disclosed for the first time in Ugone's rebuttal report must be excluded. Moreover, Ugone's own deposition testimony demonstrates his opinions regarding deductions of costs associated with

disgorgement profits are unreliable and no more than arguments lawyers can draw from cross examination of the opposing expert. Thus, they should be stricken.

Finally, Microsoft's untimely disclosure of Ugone's affirmative and burden of proof testimony is not harmless. TocMail could not have produced a rebuttal report because the deadline for rebuttal reports had already passed and Microsoft never sought to amend the scheduling order to cure its untimely disclosure. Accordingly, Ugone's Report and testimony should be excluded.

## II.     ARGUMENT

### A.     Ugone Clearly Opined on Liability Issues.

Microsoft erroneously argues that Ugone did not proffer liability opinion because TocMail purportedly did not cite examples of his opinion "where he states that Microsoft should not be found liable under the Lanham Act." *Microsoft Opposition Brief*, p. 7 ("Opp.") (ECF. No. 107). This argument presents a false dichotomy suggesting that because Ugone did not use the word "liability" he must not have opined on liability. But it is well-established law that causation is an element of liability. *Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512, 2017 WL 1319553, *4 (E.D. Tex. 2017) ("It is perfectly permissible for an expert to assume **liability (of which causation is an element)** and simply focus on the issue of damages.") (emphasis added). All of Ugone's causation testimony is liability testimony, and Ugone proffered a legion of causation testimony, as amply recited in TocMail's Motion. *Motion*, pp. 6-10.

Ugone repeatedly opined regarding whether there was a *nexus* between Microsoft's wrongful conduct and revenues sought as damages, *i.e.*, whether Microsoft's wrongful conduct

caused the damages, *i.e.*, whether Microsoft is liable for those damages.[1] Ugone indisputably presents affirmative opinions on liability.

**B.    Microsoft's Attempt to Distinguish Between Purported "Economic Causation" and "Legal Causation" Presents a False Distinction.**

Microsoft incorrectly argues that TocMail "conflates a legal causation analysis with economic causation considerations." *Opp.*, p. 8.  Yet Microsoft takes a contradictory position in other briefs it has presented to this Court regarding what constitutes "legal causation" and "economic causation." Microsoft's opposition brief presents examples of Ugone's opinions that Microsoft deems "economic causation." *Opp.*, pp. 4-5. However, these very opinions supposedly concerning "economic" causation are the very same arguments made by Microsoft throughout its Summary Judgment briefs regarding supposed "legal" causation.  *See, e.g., Microsoft's MSJ*, pp. 1, 6, 11, 20-21, 23-25 (ECF No. 98); *Microsoft's Response MSJ*, pp. 2, 9-11, 15-16, 20, 23-27 (ECF No. 111).  For example, Microsoft argues that Ugone's opinion that the subject ads do not mention IP cloaking is "economic" causation. *Opp.*, p. 4-5. On the other hand, that the ads do not mention IP cloaking is a "legal" argument made throughout Microsoft's summary judgment Response.  Microsoft's contradictory positions are unsound and unreliable.

Second, Microsoft provides no legal precedent, authority, or credible explanation supporting such a distinction. This is a red herring and is a distinction without a difference. In fact, Microsoft's own opposition cites *Select Comfort*,[2] a case in which the defendant sought to

---

[1] *See, e.g.*, *Ugone Report*, ¶ 4.c. (opining regarding relation of "Microsoft revenues with a **nexus to the alleged wrongful conduct**."); *Ugone Report*, ¶ 4.f., (opining regarding whether "Microsoft's profits attributable to the **alleged wrongful conduct**", whether there is "A **Nexus To The Alleged Wrongful Conduct**", and whether there is "claimed ***nexus*** to the allegedly misleading statements."); *Ugone Report*, ¶ 4.e., i.-iii. (opinion relating to whether Microsoft customers "were exposed to the allegedly misleading statements", "were confused by those statements", and would have "altered their purchase behavior" based on Microsoft's false advertising.).

[2] *Select Comfort Corporation*, 2016 WL 5496340, *5-*6 (D. Minn., Sept. 28, 2016).

challenge the plaintiff's expert testimony by criticizing the expert's assumption of causation. *Opp.*,

p. 11. The *Select Comfort* court held against the defendant on the very same causation arguments

that Ugone attempts to proffer here.

> Tempur–Pedic argues that Kenyon's damages opinions are moot because in the absence of evidence of the required elements of injury [and] **causation**, . . . in particular, disgorgement of profits. . . . Tempur–Pedic submits that there is no evidence that Tempur–Choice had a negative impact on Plaintiff's business at all. . . . , **Tempur–Pedic submits that Kenyon did not analyze whether Plaintiff lost a single sale or whether Tempur–Pedic had gained a sale as a result of the alleged false comparisons in the Flyer** and, instead that Kenyon erroneously assumed that to be the case. Tempur–Pedic argues that because Kenyon does not offer any opinion concerning the predicate **issues of injury or causation**, there is no basis for considering Kenyon's opinion and his testimony should be excluded.
>
> The Court disagrees and concludes that in this case it is not unreasonable for Kenyon to assume liability in making his calculations as to disgorgement damages.

*Id.* at *5-6 (emphasis added).

Notably, the *Select Comfort* court did not make a distinction between "legal causation" and

"economic causation," despite that the arguments made by defendant Tempur-Pedic were the same

arguments being made in Ugone's opinion regarding causal connections between Microsoft's

wrongful conduct and damages, and the impact of wrongful conduct on consumer conduct.[3]

Ugone's self-serving statement characterizing his opinion as "economic and damages

causation" instead of "legal causation" does not marvelously convert causation opinion into

rebuttal opinion. Ugone is not a legal authority and his self-serving testimony bears no legal

precedent. Regardless of how Ugone characterizes causation, it is clear that the substance of his

---

[3] *See, e.g., Ugone Report*, ¶ 4.c. (opining regarding relation of "Microsoft revenues with a **nexus to the alleged wrongful conduct**."); *Ugone Report*, ¶ 4.f., (opining regarding whether "Microsoft's profits attributable to the **alleged wrongful conduct**", whether there is "A **Nexus To The Alleged Wrongful Conduct**", whether there is "claimed *nexus* to the allegedly misleading statements."); *Ugone Report*, ¶ 4.e., i.-iii. (opinion addressing whether Microsoft customers "were exposed to the allegedly misleading statements", "were confused by those statements", and would have "altered their purchase behavior" based on Microsoft's false advertising.).

causation opinion should not be allowed. Accordingly, Microsoft's contention that TocMail conflates "legal causation" with "economic causation" should be disregarded.

## C. Ugone's Testimony is Not Rebuttal Testimony; Rebuttal Testimony Must Contradict or Rebut Evidence or Testimony on the Same Subject Matter.

Microsoft acknowledges that "Rule 26 provides that rebuttal experts may be permitted to present evidence that ***contradicts or rebuts evidence*** on the same subject matter identified by an initial expert witness."[4] Microsoft, however, ignores the requirement that rebuttal testimony actually contradict or rebut ***evidence or testimony*** on the same subject matter. Microsoft incorrectly suggests it can proffer testimony on any subject matter so long as it relates, however remotely, in any way, to anything mentioned in the initial expert report, even if the initial expert report does not identify evidence or testimony on the subject matter. That is simply not the case.

While some courts have construed the term "same subject matter" broadly, that does not grant Microsoft an unfettered license for Ugone to opine on matters that do not contradict or refute opinions proffered by Bour. Bour is not opining on causation or liability.Thus, Ugone's affirmative testimony on causation is improper. The cases relied on by Microsoft do not support Microsoft's contentions in this regard. Nor do they support Microsoft's erroneous contention that it may proffer burden of proof testimony on deduction of costs and apportionment in a rebuttal report.

Microsoft cites the *Fuller* case for the proposition that a rebuttal report may attack any assumption underlying an experts report. *Opp.*, p. 7. The *Fuller* court's holding, however, does not

---

[4] *Northrup v. Werner Enter., Inc.*, No. 8:14-CV-1627-T-27JSS, 2015 WL 4756947, at *2 (M.D. Fla. Aug. 11, 2015) (citing Fed. R. Civ. P 26(a)(2)(D)(ii))(emphasis added). "Courts in this district have held that rebuttal opinions are permitted when they directly address an assertion raised by an opponent's experts." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018) (*citing In re Trasylol Prods. Liab. Litig.*, No. 09-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010)). "Thus, a rebuttal opinion should not be used to advance new arguments or present new evidence." *Lebron*, 2018 WL 3583002, at *2.

support Microsoft's argument.[5] In *Fuller*, the plaintiffs' damages expert report disclosed damages calculations without expressly opining on what the appropriate measure of damages would be. He just conducted "number crunching." *Id.* Later, plaintiffs' damages expert confirmed at his deposition that the calculations disclosed in his expert report were an appropriate measure of damages. *Id.* When the defendants' rebuttal expert opined on the issue of an appropriate measure of damages, plaintiffs sought to exclude that testimony on grounds that it was outside the "same subject matter" since the initial report did not expressly opine that the expert's calculations were an appropriate measure of damages. *Id.* The court held: "The Court cannot ignore the **implication** of Dr. Pomerantz's calculations; . . . Understandably, then, Dr. Stangle's report attacks the assumption underlying Dr. Pomerantz's report--**one Dr. Pomerantz confirmed in his deposition--that his calculations would be an appropriate measure of damages**." *Id.* (emphasis added).

While the *Fuller* court used the word "assumption," it is clear that the court was referring to an implication or inference, not an underlying assumption on which the expert based his calculations or opinion. Indeed, the expert's opinion did not rely on this "assumption" (*i.e.*, "inference") to support his calculations. *Id.* Thus, *Fuller* clearly does not use the term "assumption" the way Microsoft asserts. Moreover, the subject matter of the expert report (*e.g.*, damages calculations) was essentially coextensive with the "assumption" or inference (*e.g.*, appropriate measure of damages) that the rebuttal expert opined on, and the plaintiffs had the burden of proof in *Fuller* on the issues being rebutted. Here, unlike in *Fuller*, Ugone's rebuttal report repeatedly proffers causation testimony that does not contradict or rebut evidence or testimony proffered by Bour since she did not provide causation testimony. Moreover, Ugone's report is replete with

---

[5] *See Fuller v. SunTrust Banks, Inc.*, Case No. 1:11-CV-784-ODE, 2019 WL 5448206, at *22 (N.D. Ga. Oct. 3, 2019).

burden of proof testimony on disgorgement related deduction of costs and apportionment.

Other cases cited by Microsoft are no more helpful for Microsoft. The holding of the *Ohio State Troopers* case, for example, is in line with TocMail's position. *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, No. 18-CV-63130, 2020 WL 1666763, *9-*11 (S.D. Fla. Apr. 3, 2020). *Ohio State Troopers* involved expert reports regarding class certification. The parties' class certification briefs included arguments regarding class-wide damages and materiality. The court held: "**it is not permissible to use Butler as a rebuttal expert on an issue on which Sharp is not offered**. It is on this issue of materiality that Butler delves into the kind of "separate and distinct analysis" that is improper for a rebuttal expert."*Id.* at *10 (emphasis added).

The *Ohio State Troopers* court also held the defendant's rebuttal witness on materiality should have been disclosed as an affirmative witness and the untimely disclosure was not harmless because, even though the plaintiffs were able to take the rebuttal witness's deposition, "they were not able to fully cure that surprise by offering their own expert on materiality in response to Butler in light of the class certification discovery and briefing deadlines." *Id.* at *10-11.

Likewise, here, it is not permissible to use Ugone as a rebuttal witness on an issue on which Bour was not offered, *i.e.*, on causation. It is also not proper to use Ugone as a rebuttal witness on issues for which Microsoft has the burden of proof and should have been disclosed in an affirmative report. Like in *Ohio State Troopers,* the fact that TocMail deposed Ugone does not fully cure the harm to TocMail because the discovery, briefing, and expert report deadlines did not permit TocMail an opportunity to offer a rebuttal report on those issues.

Microsoft's reliance on the *Northrup* case is also misplaced. In *Northrup*, plaintiff argued that defendant's expert was "an improper rebuttal witness because Plaintiff did not name an expert in the same field." The *Northrup* court held: "There is no requirement that a rebuttal witness's area

of expertise match the area of expertise of the opposing party's initial expert." *Northrup*, 2015 WL 4756947 at *3. *Northrup* did not address the disclosure of causation testimony in a rebuttal report where the affirmative expert on damages did not opine on causation. *Id.* Northrup also did not address untimely disclosure of burden of proof testimony by a rebuttal expert. *Id.*

Thus, Ugone should be precluded from testifying on causation, an issue on which Bour is not offered. *Ohio State Troopers*, at *10.

**D.    Ugone's Opinions Regarding Safe Links Specific Revenues and Costs are Burden of Proof Opinions and Should have been Disclosed in an Affirmative Report.**

It is black letter law that the defendant (*i.e.*, Microsoft) has the burden of proof regarding apportionment <u>and</u> deduction of costs for disgorgement of profits damages.[6]

Microsoft falsely asserts that TocMail has the burden to prove sales revenues specific to Safe Links separate from ATP and Office 365 with ATP. *Opp.*, p. 11. This argument improperly shifts the burden of proof regarding apportionment from Microsoft to TocMail. As held in *Axiom Worldwide,* "the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act."[7]

In its typical contradictory fashion, Microsoft argues on one hand that Bour "must prove the sales of the allegedly falsely advertised *product at issue*, Safe Links" but on the other hand argues that "Safe Links is not sold as a standalone product" and is "only one feature." *Opp.*, p. 7 (emphasis added). Microsoft acknowledged in its own *Daubert* Motion that "Because Microsoft sales information is maintained at the product level and not at the feature level, revenues

---

[6] *Nutrivida, Inc. v. Inmuno Vital, Inc.,* 46 F.Supp.2d 1310, 1315 (S.D.Fla.1998); *Axiom Worldwide, Inc. v. HTRD Group Hong Kong Ltd.*, 2013 WL 3975675 at *11 (MD Florida, July 31, 2013) (*quoting Id*. at 1315) ("the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, . . . "); *Yeti Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 394511 at *6 (W.D. Texas Jan. 27, 2017).
[7] *Axiom*, 2013WL 3975675 at *11, quoting *Nutrivida*, 46 F.Supp.2d at 1315.

attributable to Safe Links are not available, although revenues for [the larger products of] ATP and Office 365 are available." (ECF 69, p. 17). Thus, the gross sales of ATP and Office 365 with ATP, which include Safe Links as a component, are the relevant product sales related to Microsoft's false advertising of its security products. Ugone's argument that "Bour made no effort to determine revenues attributable to Safe Links based on its market value" is an apportionment issue for which Microsoft bears the burden of proof. Likewise, Microsoft's argument that Bour improperly utilized the gross revenues of ATP and Office 365 with ATP "that are not at issue, and that include Safe Links as only one feature" is an apportionment argument for which Microsoft bears the burden of proof. *Opp.*, 11. It is also misleading, since ATP and Office 365 with ATP both include Safe Links as a component feature, as admitted by Microsoft. Thus, they are at issue.

In an attempt to circumvent well-established Eleventh Circuit law on apportionment, Microsoft mischaracterizes the *Select Comfort* case, an out-of-circuit district court case that actually supports TocMail. *Opp.*, p. 7. Contrary to Microsoft's argument, the court in *Select Comfort* rejected the defendant's contention that the plaintiff needed to apportion the infringing conduct. Specifically, the defendant argued that the damages expert "did not distinguish between Tempur-Choice sales made lawfully and those based on allegedly actionable conduct." *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 2016 WL 5496340, * 6 (D. Minn. Sep. 28, 2016). In rejecting the defendant's argument, the court stated "in a disgorgement analysis, Plaintiff need only prove Tempur-Pedic's sales of the allegedly falsely advertised products." *Id.*

Microsoft attempts to twist the separate finding in *Select Comfort* that the plaintiff could not obtain profits for entirely unrelated products – i.e., mattress lines that were the not the mattress lines that were subject of the false advertising. *Id.* at 6. Here, TocMail is only seeking profits from Microsoft's products that contain Safe Links, the subject of the false advertising, and that is all

that Bour opined on.  Under all applicable law, Microsoft then has the burden to apportion any revenue or costs/expenses that it claims should be deducted to calculate profits of Safe Links.[8]

Significantly, the *Select Comfort* court, in holding that expert witnesses were not permitted to offer testimony on legal matters or legal conclusions, advised the parties that if defendant's damages rebuttal expert "should venture into legal analysis (**including any statements characterizing Kenyon's analysis as "incomplete"** in terms of its legal burden), the Court will entertain an appropriate objection." *Id.* at *9 (emphasis added). Yet, that is exactly what Ugone's opinion does. *See Ugone Report*, ¶ 64; *Opp.*, p. 13. (Ugone opining that Bour's "calculation is incomplete as she presents no estimate of Microsoft's incremental costs.").

Microsoft also relies on *Coquina* to argue that its untimely burden of proof testimony is merely rebuttal. *Opp.*, p 12. However, the rebuttal testimony challenged in *Coquina* referenced by Microsoft did not involve burden of proof testimony not disclosed in an affirmative report. Also, the challenged damages expert had provided an affirmative and rebuttal report.[9] Unlike *Coquina*, Ugone did not provide an affirmative report regarding his burden of proof opinions on apportionment and deductible costs of disgorgement he now proffers in his rebuttal report.

Microsoft amazingly argues that Ugone did not conduct a cost analysis because "'a proper calculation of disgorgement [by Bour] also **would incorporate a deduction for Microsoft's costs,' which information was produced by Microsoft and available to Bour.**" *Opp.*, p. 9 (emphasis added).  However, Microsoft represented in its discovery responses that it did not have

---

[8] Microsoft also improperly cites patent infringement cases, which are governed by patent infringement statutes and law, to suggest plaintiffs have a burden of apportionment.  Patent infringement law and damages, which often involve reasonable royalties, are very different from the Lanham Act, which expressly permits disgorgement of profits and expressly places the burden of apportionment on defendants and only requires a plaintiff to prove sales.
[9] *Coquina Invs. v. Rothstein*, 2011 WL 4949191, 11, n. 2 (S.D. Fla. Oct. 18, 2011).

such cost and expense information. TocMail's Requests for Production Nos. 28-30 confirm this:

> . . . there are no systematic profitability reports (profit and loss) . . . specific to Office 365 features or workloads, including Safe Links and ATP, and revenue and expenses are not attributable at the feature level. . . . costs related to ATP and Safe Links are not discretely identifiable within Microsoft's cost reporting system.

Microsoft's Response to Request for Production No. 28, at **Exhibit 1**.

> . . . costs and expenses are not attributable at the feature level. . . . costs related to ATP and Safe Links are not discretely identifiable within Microsoft's cost reporting system. . . . there are no responsive documents kept in the ordinary course of business reflecting advertising and promotional costs for ATP.

Microsoft's Response to Request for Production No. 29, at **Exhibit 1**.

> . . . there are no systematic profitability (profit and loss) reports . . . , including Safe Links and ATP, and revenue and expenses are not attributable at the feature level. . . . costs related to ATP and Safe Links are not discretely identifiable within Microsoft's cost reporting system. . . . **there are no responsive documents kept in the ordinary course of business to show costs and expenses related to ATP and Safe Links or reflect profits from this feature**.

Microsoft's Response to Request for Production No. 30, at **Exhibit 1** (emphasis added).

Thus, Microsoft's argument now that Bour should have incorporated a deduction for costs in her disgorgement analysis is not only directly contradictory to 15 U.S.C. § 1117 and all applicable law, which expressly states that it is the defendant's burden to deduct costs, Microsoft's argument is especially unsound because Microsoft expressly stated that it did not have any cost/expense information. In fact, Ugone's opinion that Bour should have deducted costs only highlights how unreliable his opinion actually is because it could not be more wrong.

**E.    Ugone's Disgorgement Opinions Regarding Apportionment and Deductible Costs are Untimely Burden of Proof Opinions.**

Microsoft also argues: "even if the burden is on Microsoft to conduct an apportionment analysis, the fact that Dr. Ugone did not do one is not grounds for exclusion, as TocMail argues, because he was offered by Microsoft solely to rebut Bour." Painting the moniker "rebuttal expert"

12

on Ugone does not make it so. If he provides untimely burden of proof testimony, it should be excluded because it is not rebuttal testimony. Microsoft turns the law on its head. Microsoft was required to proffer burden of proof testimony by way of an affirmative report and not by trying to shoehorn it into a rebuttal report, denying TocMail an opportunity to proffer its rebuttal. As amply demonstrated in TocMail's Motion, and numerous cases on point, Ugone's burden of proof testimony on apportionment and deductible costs should have been disclosed in an affirmative report and thus are untimely and should be excluded. *Motion*, p. 21-24.[10]

Further, Microsoft's argument that "a deduction of costs exercise is arithmetic that a jury can do itself" does not excuse Microsoft's failure to timely produce burden of proof testimony. *Opp.*, p. 16. To the contrary, Microsoft's admission demonstrates that Ugone's deduction of costs opinion is unhelpful because a jury would be able to conduct the analysis Microsoft seeks to proffer. *LSQ Funding Group, L.C. v. EDS Field Services*, 879 F.Supp.2d 1320, 1336 (M.D. Fla., July 10, 2012) ("Dr. Ugone's simple arithmetic calculation is not beyond the understanding of the average lay person and therefore would not help the trier of fact. . .  Dr. Ugone's opinions are barred by Daubert."). Thus, it should be excluded. *Id.* For the same reason, Microsoft's reliance on *Whelan* is also misplaced, as it merely recites the same principles under which Ugone's testimony was excluded in *LSQ Funding*.[11] Regardless, it is unclear how a jury would calculate such costs considering Microsoft has already indicated it does not have such information.

Likewise, Microsoft's argument that Ugone's apportionment opinion is not affirmative opinion because he merely seeks to "undermine" Bour's disgorgement calculation is without merit. An apportionment analysis naturally undermines a gross revenues disgorgement calculation.

---

[10] *See Yeti Coolers*, 2017 WL 394511 at *6; *All-Tag Corp.*, 408 F.Supp.3d at 1353; *Nordock Inc.*, 927 F. Supp. 2d 577 at 584.
[11] *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1332 (S.D. Fla. 2013).

Microsoft's proposed exception would judicially eliminate the burden of proof required under 15 U.S.C. § 1117(a) for defendants. Moreover, Microsoft's description of Ugone's "undermining" opinion can only be understood to be apportionment opinion. As Microsoft admits, Ugone opines regarding "relevant" Safe Links revenue and why Bour's opinion is purportedly flawed for relying on revenues for ATP and Office 365 with ATP. But this is exactly what Bour is permitted to do under 15 U.S.C. § 1117(a). It is Microsoft's burden to prove any apportionment for Safe Links.

Also, as discussed above, Microsoft refused to produce any information regarding revenues or costs specific to the Safe Links component of ATP. Microsoft has repeatedly asserted that it does not have this information. Microsoft cannot on the one hand refuse to produce revenues, costs, and apportionment information and then on the other hand protest that TocMail's expert did not take into account the very information it refused to produce. In either case, this is improper apportionment testimony that should have been disclosed in an affirmative report.

**F.    Case Law Regarding Excluding Burden of Proof Testimony in Rebuttal Reports.**

Microsoft spends many words trying to distinguish the *YETI Coolers* case and the *All-Tag Corp.* case. Yet Microsoft does not cite a single case where burden of proof testimony proffered in a rebuttal report was not excluded. Significantly, Microsoft made no attempt to distinguish *Nordock Inc.* cited by TocMail. *Mot.*, pp. 10, 21, and 24. *Nordock* held "[a] party presents its arguments as to the issues for which it has the burden of proof in its initial expert report."[12] Other courts' holdings are consistent: "Because Defendant elected to only disclose its expert witnesses on the rebuttal expert witness disclosure date, however, Defendant's expert witnesses will no [sic] be permitted to testify to any expert opinion regarding an issue on which Defendant has the burden

---

[12] *Nordock Inc. v. Sys. Inc.*, 927 F. Supp. 2d 577, 584 (E.D. Wis. 2013).

of proof."[13] This Court should likewise preclude Microsoft's rebuttal expert from testifying to any

issue on which Microsoft has the burden of proof that was not disclosed until rebuttal.

### G.      Ugone's Conclusory Opinions Regarding Deduction of Costs for Disgorgement Damages and Lost Profits Costs are Unreliable and Unhelpful.

Microsoft argues that Ugone's opinion regarding deduction of costs for disgorgement

damages is reliable and supported by gross margin charts produced with his expert report. *Opp.* at

15, n.7. However, the Microsoft reports and Ugone's regurgitation of the gross margins from those

reports in his charts provide no data that would permit verification of the gross margin numbers

by TocMail's expert. Regarding Microsoft's gross margins, Ugone testified: "Those are all right

on the source documents, You don't need to do any calculation. Those were provided in the source

document." *Ugone Depo.* 145:1-14 at **Exhibit 2**. He testified he did not conduct any independent

analysis, accepted the numbers from Microsoft's summary report as accurate, and does not know

what the numbers included (*e.g.*, whether they included overhead).[14] Further, Ugone merely states

that "the monthly gross margin percentages presented in Exhibit 9 ***could*** be applied . . . ." *Ugone*

*Report*, ¶ 74 (emphasis added). The possibility that these "could be" applied is not equivalent to

an opinion and is no more than "arguments lawyers can draw from cross examination."[15]

Regarding Ugone's testimony on lost profits costs, Microsoft does not contest TocMail's

assertion that Ugone's opinion is not supported by reliable data or methodology. Instead, Microsoft

---

[13] *Mabrey v. U.S.*, No. 2:5-cv-00051-RLH-GWF, 2006 WL 1891127 at *5  (D. Nev. July 7, 2006); "Amendments to Rule 26 further state that ". . . in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue.'" *Id.* at *2.

[14] *Ugone Depo.*, 146:11-25; 147-19-25; 150:-12-25 ("Yeah, I don't have the specific line items that comprise the costs of goods sold."). **Exhibit2**.

[15] *Wiand v. Wells Fargo Bank*, N.A., 2014 WL 1819616 at *2 (M.D. Fla. May 6, 2014) (rebuttal expert "should not be called simply to support arguments lawyers can draw from cross examination of the opposing expert.")

argues Ugone's opinions do not need to be reliable since Ugone merely offers criticism, relying on *Action Nissan*.[16] *Opp.*, p. 17-18. This is wrong. *Action Nissan* states: "There is no requirement that a rebuttal expert offer a competing damages analysis, for example; his opinions properly may be limited to criticizing the analysis and conclusions presented by another party."[17]  But Ugone did not limit his opinion to criticism and proffered alternative analysis, which must be helpful to a jury and supported by reliable evidence and methodology. It was not and must be excluded.

For the same reason, Microsoft's reliance on the *Wiand* and *Coquina* cases is misplaced.[18] These cases merely recite the proposition that a rebuttal expert may limit rebuttal testimony to criticism, which Ugone did not do as discussed. Moreover, as set forth in *Wiand*, a rebuttal expert "should not be called simply to support arguments lawyers can draw from cross examination of the opposing expert." *Id.* at *2. To the contrary, many of Ugone's opinions consist of arguments lawyers can draw from cross-examination. They should be excluded.

**H.    Microsoft's Untimely Disclosure of Ugone's Report is Not Harmless.**

Microsoft argues, in conclusory fashion, that its untimely affirmative and burden of proof testimony is harmless because there was purportedly time for TocMail to provide a rebuttal. However, any such additional expert reports were clearly not permitted by the Court's Scheduling Order. Microsoft had the burden of seeking any Scheduling Order amendment, as it was Microsoft that proffered Ugone's untimely affirmative testimony, but it never did so and its argument fails.

## III.    CONCLUSION

Accordingly, TocMail respectfully requests that the Court grant TocMail's Motion.

---

[16] Ugone never provides any analysis or authority for why gross margins for these cybersecurity companies are comparable, should be used as a benchmark, or are relevant or reliable measures of costs. *See Mot.*, pp. 29-30.

[17] *Action Nissan, Inc. v. Hyundai Motor Am.*, 2020 WL 9173027, at *3 (M.D. Fla. Nov. 5, 2020).

[18] *Wiand*, 2014 WL 1819616,  (M.D. Fla. May 6, 2014); *Coquina Invs.*, 2011 WL 4949191 at *3.

Dated:  August 27, 2021                  Respectfully submitted,

                                         By:   /s/Joshua D. Martin
                                         Joshua D. Martin
                                         Florida Bar No. 028100
                                         Email: josh.martin@johnsonmartinlaw.com
                                         **JOHNSON & MARTIN, P.A.**
                                         500 W. Cypress Creek Rd.
                                         Suite 430
                                         Fort Lauderdale, Florida  33309
                                         Telephone:  (954) 790-6699
                                         Facsimile:  (954) 206-0017

                                         *Attorneys for Plaintiff, TocMail Inc.*


### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of August, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                       By:    /s/ Joshua D. Martin
                              Joshua D. Martin

17

## SERVICE LIST

### *TOCMAIL INC. v. MICROSOFT CORPORATION*
### 20-60416-CIV- CANNON/HUNT

**Joshua D. Martin**
E-Mail: josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd.
Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

**Francisco O. Sanchez**
E-Mail: sanchezo@gtlaw.com
          orizondol@gtlaw.com
**Evelyn A. Cobos**
E-Mail: cobose@gtlaw.com
          MiaLitDock@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

**Mary-Olga Lovett** *(admitted pro hac vice)*
E-Mail: lovettm@gtlaw.com
**Rene Trevino** *(admitted pro hac vice)*
E-Mail: trevinor@gtlaw.com
GREENBERG TRAURIG LLC
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 374-3505