UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-CANNON/HUNT

TOCMAIL, INC., a Florida corporation,

    Plaintiff,

v.

MICROSOFT CORPORATION, a Washington corporation,

    Defendant.

**DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

I. **INTRODUCTION**

Microsoft is entitled to summary judgment because it has shown there is an absence of evidence to support TocMail's case or that TocMail will be unable to prove its case at trial, where it bears the burden of proving each element of its Lanham Act claim. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). In its Opposition to Microsoft's Motion for Summary Judgment [ECF No. 109] (the "Opposition"), TocMail claims it presented evidence of literal falsity (which it did not), and further claims that Microsoft has presented insufficient evidence that Safe Links is effective against IP Cloaking by pointing to its use of IP Anonymization. Opp. at 3. However, "a negation of the non-moving party's claim is not required" and Microsoft's Motion for Summary Judgment [ECF No. 98] (the "Motion") need only "show[]…an absence of evidence." *Doe v. Drummond Co.*, 782 F.3d 576, 604 (11th Cir. 2015). TocMail also lacks sufficient evidence to prove the remaining elements of its claim. *See* Opp. at 3. It incorrectly dismisses the element of deception as "irrelevant," fails to put forth any consumer-oriented evidence that the ads are material to purchase decisions, and asserts, without support, "it is likely that at least one company would have purchased TocMail's solution." *Id*.

The absence of the evidence needed to support each element of TocMail's claim is apparent in its failure to respond to many arguments raised in the Motion. For example: (1) TocMail's literal falsity argument fails because (a) its theory that Safe Links has the same IP addresses and server as Exchange Online Protection ("EOP") was disproven, (b) the Mikail Tunc video is nothing more than a hypothetical illustration and does not show Safe Links failing to protect against IP Cloaking, and (c) the Court must consider the ads' intended audience, sophisticated IT professionals, whose expertise informs their purchasing decisions, Mot. at 10-12, 18; (2) TocMail cannot prove deception because TocMail failed to ask a single consumer how it perceived the ads,

*id.* at 20; (3) TocMail cannot prove materiality because it has no consumer survey, market research, or expert opinion on the messages' effect on consumer purchasing decisions, *id*. at 22; and (4) Microsoft's ads have not proximately caused injury to TocMail from 2011 to 2035. *Id*. at 24-25.

The ads at issue do not state that Safe Links provides protection from IP Cloaking or that it provides absolute protection from any attack; they simply state Safe Links provides protection from malicious links, which is true. Mot. at 13-15, 17. The Opposition oversimplifies Safe Links, reducing it to two components, reputation and detonation (Opp. at 4)—a characterization contradicted by the record[1]—and argues that alleged "gaps" in these two layers render the ads literally false. *Id.* at 2, 11. But it is undisputed that Safe Links has other features which protect users from malicious links, including IP Cloaked links. *Supra* n.1; Microsoft's Material Facts [ECF No. 100] ("SMF") ¶ 5; Microsoft's Additional Facts [ECF No. 112] ("Add'l Facts") ¶¶ 17-26. Thus, an alleged "gap" in one layer does not mean that all Safe Links layers failed and a consumer was harmed by an attack, or that Safe Links cannot provide any protection from attacks. Thus, TocMail lacks evidence to prove the elements of its claim and cannot survive summary judgment.

II.  **ARGUMENT**

  **A.  TocMail Lacks Evidence to Prove the Messages were Literally False.**

TocMail asserts the messages are literally false because they implicitly promote Safe Links

---

[1] *See, e.g.,* Opp. at 2 (acknowledging IP Anonymization component); Mot. at 4 (discussing various features), *id.* at 17 (discussing consumer policies); ECF No. 100-3, Interrog. No. 15 (discussing features and layers of protection to combat IP network evasion); ECF No. 100-4, Interrog. No. 17 (same). While reputation check and detonation may be its "primary" components, Safe Links utilizes a multi-layered approach to protect consumers from attacks through malicious links. ECF No. 100-4, Interrog. No. 17. In December 2019, when TocMail's product launched, Safe Links had many features to protect users from cyberattacks including IP evasion. For example: URL Reputation Block, Time Travel capability to recall mail, Dynamic Email Delivery, Linked Content Detonation in a Sandbox, Time-of-Click Detonation, IP Anonymization to route detonation traffic out of non-Microsoft IP ranges, Heuristic Clustering to analyze similar groups of mail, and customizable Tenant Allow/Block lists, among others. *Id*.

2

"as having a capability that it does not have." Opp. at 8-9. TocMail relies on *Novarti Consumer Health, Inc. v. Johnson & Johnson-Merck Cons. Pharms. Co.*, 290 F.3d 578, 589 (3d Cir. 2002) and *Johnson & Johnson-Merck v. Procter & Gamble Co.*, 285 F. Supp. 2d 389, 391 (S.D.N.Y. 2003), *id.* at 9, which are distinguishable because they analyzed quantifiable ads for heartburn medication: the first case took issue with the word, "Nighttime," and the latter, the ad, "One pill. 24 Hours. Zero Heartburn." Both were objectively verifiable: *i.e.*, whether the medication worked over night, and whether one pill provides heartburn relief for 24 hours. In contrast, Microsoft does not specify *how <u>effective</u>* Safe Links is or *how <u>much</u> <u>protection</u>* it affords, and the messages do not use the words "IP Cloaking" or "IP network evasion." Mot. at 13-16. There is no evidence that any of the messages leave consumers with the "necessary implication" that Safe Links provides complete protection from IP Cloaking. SMF ¶ 6. In context, the ads communicate that Safe Links provides protection from malicious links or redirects, which it does. Mot. at 13-19. TocMail offers no evidence that Safe Links is incapable of providing ***any*** protection from IP Cloaking.

TocMail also claims the messages are literally false because Microsoft does not use the IP Anonymization feature often enough—tacitly admitting such capability—and when redirects are not anonymized, "hackers only see Microsoft's IP addresses, not any third-party IP address." Opp. at 10. But the April 2019 email TocMail relies on explains that URLs matching certain criteria were used to <u>**test**</u> the effectiveness of an anonymous proxy server, which merely resulted in a test sample of about 4.25% of URLs and proved IP Anonymization was effective. *Id*. at 4-5; Microsoft Reply to TocMail Fact ¶ 75. TocMail wrongly concludes that, for URLs falling outside the criteria, "Safe Links simply does not use IP Anonymization for any of **these** redirects." Opp. at 2 (emphasis added). But this is not true, as Microsoft's engineer explained that after the test period, Microsoft is "using different criteria," as acknowledged by TocMail. Microsoft Reply to TocMail Fact ¶ 75;

3

Opp. at 10 (acknowledging "recent changes in IP Anonymization"). Thus, TocMail's statistics about how many and which links are routed through IP Anonymization are incorrect and cannot render the messages literally false. Opp. at 2, 4-5, 10. Further, TocMail's assertion that "attackers can still redirect Sonar to benign content with 100% efficacy *today*" is of no consequence. *Id*. at 10. The Sonar detonation server is just one layer of protection provided by Safe Links and any "gap" in that layer does not mean that Safe Links will ultimately fail to protect the user. *See supra* n.1. Without proof that Safe Links has no capability to protect against malicious links, or even IP Cloaking as it contends, TocMail cannot establish literal falsity.

   1. **Message #1 is Not Literally False.**

TocMail does not dispute Message #1's statement that Safe Links "check[s] the link for reputation." *See* Opp. at 10-11. Instead, it states Safe Links' reputation server *can be* "meaningless" against IP Cloaked links. *Id*. at 11. But this would occur *only if* that link were not previously known by the reputation server to have a bad reputation. SMF ¶ 2; Add'l Facts ¶ 11. However, the reputation server is constantly updated as Safe Links acquires new information about links and there are also other layers of protection. Add'l Facts ¶¶ 12, 16, 17. TocMail further argues IP Cloaking is "a prominent gap in detonation," Opp. at 11, but a gap in either the reputation or detonation servers does not prove the entire Safe Links feature failed or that it provides no protection from IP Cloaking, and thus does not prove literal falsity.

Because Message #1 is true, TocMail argues that its own interpretation of a Microsoft video containing the message "clearly depicts the very behavior that Safe Links fails to detect." Opp. at 11. But TocMail's opinion is not evidence, and the video does not depict an IP Cloaking attack or Safe Links failing to work. TocMail concludes, without support, that "detonation literally does not

4

contain *any* mechanism to thwart such redirects." *Id*.[2] These conclusory statements by TocMail are insufficient evidence to prove literal falsity. *GhostBed, Inc. v. Casper Sleep, Inc.*, No. 0:15-CV-62571-WPD, 2018 WL 2213002, at *6 (S.D. Fla. May 3, 2018) (finding "Ghostbed has not presented any evidence … that Casper posted false/misleading comments").

### 2. Message #2 is Not Literally False.

Further exemplifying TocMail's utter lack of evidence is its focus on semantics, arguing that Microsoft's use of the article "a" instead of "the" with the term "link" in its Motion "shows that Microsoft knows that Safe Links does not provide the protection promised in the actual ad." Opp. at 12. This is not evidence and should be disregarded outright. Message #2 uses both articles, and in either case the outcome is the same, as Safe Links performs the same process described in the ad for *every* link each time it is clicked, rendering Message #2 true. Mot. at 14-15.

TocMail does not dispute the first two sentences in Message #2 are true. Opp. at 12. The last two sentences are true because Safe Links' reputation server remembers and blocks previously known malicious hyperlinks in email, and they stay blocked each time they are clicked, while good links, that do not have a bad reputation and are not found to be bad following detonation, are accessible. Mot. at 15. TocMail agrees the reputation server acts as a memory. ECF No. 97 ¶ 2.

Finally, TocMail's conclusion that Safe Links "provided zero protection" against IP evasion at the time TocMail entered the market, Opp. at 12, is directly contradicted by the record evidence. *See supra* n. 1 (detailing layers of protection offered by Safe Links in December 2019); Add'l Facts ¶¶ 17-26 (detailing how each layer is an effective tool to protect against malicious

---

[2] TocMail also takes issue with Advanced Threat Protection's ("ATP") 99.9% rate of blocking malware by stating it blocks 84%. Opp. at 11. But not all phishing or malware attacks use IP Cloaking techniques. Add'l Facts ¶ 3. Moreover, the "99.9% malware protection" statement is not one of the at-issue messages, Mot. at 13-16, thereby rendering TocMail's quibbles about this statement unable to prove Message #1 is literally false.

links, including IP Cloaked links). Thus, TocMail has no evidence to prove Message #2 is literally false.[3] *Webster v. Dean Guitars*, 955 F.3d 1270, 1274 (11th Cir. 2020) (affirming finding that plaintiff "had not presented evidence of a false or misleading statement" to support his claim).

### 3. Message #3 is Not Literally False.

TocMail inadequately rebuts Microsoft's argument that Message #3 is not actionable or literally false by not distinguishing any of Microsoft's cases finding that ads using the term "ensure" are puffery and by relying on an inapposite case to argue the word "ensure" has been found to be actionable without considering the context of the ad. Opp. at 13. TocMail cites *Process Controls Int'l. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 930 (E.D. Mo. 2010), denying a motion to dismiss because the plaintiff "alleged adequate factual detail … to reasonably infer" that the ad, "a quality control checklist ensures that the unit complies with industry and regulatory standards. Nobody else can do this.," was literally false or misleading. The ad formed a "specific, measurable claim" because the checklist had "steps that ensure ... compl[iance] with all industry and regulatory standards, and that no other remanufacturer uses such a process." *Id.* But here, the ads do not state Safe Links is the "only" product to offer a service or promise to meet any industry standard or provide any measurable amount of protection or efficacy. Mot. at 13-16. Further, TocMail provides no authority for its conclusion that "ensure" is synonymous with "guarantee." *Id.* at 14.; *c.f. Williams v. Aztar Indiana Gaming Corp.*, 351 F. 3d 294, 299 (7th Cir. 2003) (finding

---

[3] TocMail argues "an independent reason why all three messages are literally false" is that Safe Links "stripped companies from the protection they already had," Opp. at 13, n.3, because around 2011, "Microsoft convinced many companies to abandon their on-premise scanners to move to Office 365's cloud-based scanners," but cloud-based scanners like Safe Links purportedly "cannot reliably detect IP Cloaking." Am. Compl. ¶¶ 5, 21-30. TocMail argues one study analyzed 4 million Office 365 accounts and found 96% of companies had "active hacker movement," but the study only discusses "lateral movement behaviors," and does not mention whether the consumers even used Safe Links. Opp. at 6; ECF No. 110-34. Blaming hacker activity on Microsoft is not supported by any evidence, is not tied to any of the messages at issue, and should be disregarded.

the phrase "ensure your complete, 100% satisfaction" was puffery).

Additionally, Message #3 tells consumers that they can set their policy settings to improve their organizations' protection. Mot. at 16-17 ("Ensure hyperlinks in documents are harmless with ATP Safe Links: … through ATP Safe Links policies; [by] Creat[ing] a custom blocked URL list … [and by] View[ing] ATP reports in the Office 365 Security and Compliance Center dashboard."). TocMail's only rebuttal evidence is testimony that a customized block list can be bypassed. Opp. at 13-14. But, a block list is only one way consumers can ensure protection from malicious links and it only pertains to the reputation service—and a gap in one of many protective layers does not prove Safe Links does not provide any protection from harmful links or that Message #3 is literally false. ECF No. 112, Opp. to TocMail Fact ¶ 4; Add'l Fact ¶¶ 11, 18.

In sum, because there is an absence of evidence to establish each message is literally false, summary judgment should be entered for Microsoft. *Stiefel Lab'ys, Inc. v. Brookstone Pharms., L.L.C.*, 535 F. App'x 774, 777 (11th Cir. 2013).

### B. TocMail Cannot Prove the Messages Were Misleading or Deceptive.

Even if the Court finds that there are issues of fact as to whether the three at-issue messages were literally false, the Court should grant summary judgment for Microsoft because of the absence of evidence needed to establish deception and materiality.[4] *Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp.*, No. 1:16-CV-24138-UU, 2017 WL 5707516 (S.D. Fla. Nov. 13, 2017) provides a blueprint for the Court. Like TocMail, the plaintiffs in that case bet on literal falsity and chose not to conduct a survey, arguing that "deceptiveness is presumed." *Id.* at *7.

---

[4] TocMail's effort to salvage its claim by referencing a so-called "domino effect" in one E.D. Wash. case (wherein if a genuine issue of fact exists as to the first element, it precludes summary judgment on every other element of the claim), has **no merit**. Opp. at 24, n.7. It is well-settled in this Circuit that a lack of evidence on ***any*** element of a Lanham Act claim requires entry of summary judgment for defendant. *See, e.g., J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 798 (11th Cir. 2020) (granting summary judgment for failure to present evidence of materiality).

Judge Ungaro found "there is a factual issue about the truth or falsity of the advertisement [and] [w]hen, as here, an advertisement is not literally false, a plaintiff must present evidence of deception." *Id.* The court determined because "there is no consumer survey or expert testimony," "PNASF cannot carry its burden of showing that the post deceived or had the capacity to deceive consumers. Accordingly, summary judgment is appropriate." *Id.* at *8. The court also "searched the record for evidence that the post had a material effect on patients or referring physicians…[and] found none. PNASF has no consumer survey or expert testimony to show that consumers altered their purchasing decisions…summary judgment is appropriate." *Id.*

Such is the case here. TocMail has not proven the messages are literally false, and "assuming [the messages] could be [] construed [as misleading], a plaintiff….must 'present evidence of deception' in the form of consumer surveys, market research, expert testimony, or other evidence." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1377 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312 (11th Cir. 2012). TocMail did not provide evidence of deception, entitling Microsoft to summary judgment even if the ads are misleading.

### C. TocMail Lacks Evidence to Prove the Messages Had a Material Effect on Consumers' Purchasing Decisions.

To establish that a literally false advertisement had a material effect on consumers' purchasing decisions, this Circuit will consider expert testimony, affidavits, or survey evidence on materiality, but either way, ***sufficient*** evidence is required to meet this element,[5] and TocMail has

---

[5] *See, e.g., Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1253 (S.D. Fla. 2006) (finding though plaintiff put forth "evidence, in the form of statements from company representatives, that a warranty provides additional value to consumers…they have not put forth sufficient evidence so as to entitle them to … summary judgment"); *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1108 (M.D. Fla. 2019) (finding genuine issues of material fact existed regarding materiality element supported by damages expert's report); *Gibson v. Resort At Paradise Lakes, LLC*, No. 8:16-CV-791-T-36AAS, 2018 WL 10373435, at *16 (M.D. Fla. Feb. 2, 2018) (finding plaintiffs failed to present evidence of materiality despite providing declaration because it did not

none whatsoever. SMF ¶¶ 37-41; ECF No. 110, TocMail's Reply to SMF ¶¶ 37, 39, 41.

TocMail provides nothing more than conclusory *ipse dixit* in arguing that "safety and efficacy are inherent qualities of a product," Opp. at 15, which cannot establish the materiality prong of the Lanham Act. *See Belcher Pharms., LLC v. Hospira, Inc.*, 419 F. Supp. 3d 1292, 1297–98 (M.D. Fla. 2020), *aff'd*, 1 F.4th 1374 (11th Cir. 2021); *Club Exploria, LLC v. Austin*, No. 618CV576ORL28, 2020 WL 6585802, at *11 (M.D. Fla. Nov. 10, 2020).

Further, TocMail's conclusion that it is "logical" and "self-evident" that Microsoft misrepresented the inherent quality of the "security capability" of Safe Links because it is a cybersecurity product, Opp. at 15, is baseless because the advertising *statements* must misrepresent an inherent quality that is material to purchase decisions, as TocMail's own case law explains. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224–25 (11th Cir. 2008) (framing the issue as "whether the statements have a material effect on purchasing decisions"); *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010) (analyzing "whether statements expressing serious concerns regarding the safety and efficacy of MCQ were material.").

TocMail asserts it has "an abundance of undisputed evidence documenting materiality," yet each piece is disputed and fails to establish materiality, which requires a "consumer-oriented" inquiry. Opp. at 16; Reply to TocMail Fact ¶ 90; *J-B Weld Co., LLC*, 978 F.3d at 796.  First, TocMail says Microsoft "explicit[ly] acknowledge[s] that security is an inherent quality of its products," Opp. at 16, but this is not a consumer statement and it is not specifically tied to Safe Links or the ads at issue. Second, the email TocMail cites to purportedly showing "companies specifically inquire as to evasion itself," *id.*, was sent *after* that client purchased ATP, does not show the client asked about evasion (rather it was a prep question for internal discussion), and thus

---

show whether consumers' purchase decisions were materially affected by the ads).

9

is not indicative of why the client bought ATP, nor is it tied to the three messages. *See* Reply to Fact ¶ 91. Third, that one Microsoft employee stated that some organizations "want safe links and phish protection and care less about safe attachments," Opp. at 16, is not a consumer opinion related to the ads. Reply to Fact ¶ 92. Fourth, an engineer stating, "Safe Links' Detonation 'is an essential component' against phishing attacks," Opp. at 16, is not indicative of what influences consumer purchase decisions. Finally, whether "70% of ATP users actively use Safe Links," Opp. at 16, is irrelevant to the inquiry of whether those users bought ATP because of the messages.

TocMail has no evidence to prove that the messages at issue materially influenced consumers' purchases, requiring summary judgment. *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 365 (S.D. Fla. 1996), *aff'd sub nom.*, 136 F.3d 139 (11th Cir. 1998) (granting summary judgment because plaintiff "fail[ed] to produce evidence that the challenged advertisements['] deception was material in that it was likely to influence purchasing decisions").

### D. TocMail Lacks Evidence to Prove it Has Been or is Likely to Be Injured by the Three Messages.

Contrary to TocMail's assertion, Microsoft does not "repeatedly conflate[] injury with actual damages." Opp. at 17. Microsoft argues that TocMail cannot "prove[] an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Ctrl Components, Inc.*, 572 U.S. 118, 140 (2014).

First, TocMail has no injury to sales, and can only point to cases discussing that a lack of sales is sufficient to confer statutory standing under the Lanham Act. Opp. at 20-21 (citing *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1117 (S.D. Cal. 2018) and *Par Sterile Prod., LLC v. Fresenius Kabi USA LLC,* No. 14 C 3349, 2015 WL 1263041, at *2 (N.D. Ill. Mar. 17, 2015)). But evidence is required at summary judgment. "Without a commercial presence, [TocMail] cannot establish that they suffer a direct injury from any of [Microsoft's]

10

actions. Most notably, as [TocMail] themselves admit, they cannot show that they have actually lost sales or profits to [Microsoft's alleged] competing products [] given their absence from the [] market." *Joint Stock Soc'y v. UDV N. Am., Inc.*, 53 F. Supp. 2d 692, 709 (D. Del. 1999), *aff'd*, 266 F.3d 164 (3d Cir. 2001) (granting summary judgment for defendant).[6] TocMail has not rebutted that it has no commercial presence, and whether it has done additional ineffective advertising after the close of discovery is irrelevant. Opp. at 22. Second, TocMail only notes it did not abandon its theory of reputational injury, *id*. at 24, but fails to provide evidence of such injury. SMF ¶ 33.

Next, TocMail's arguments to support the likelihood of injury directly contradict its own allegations and the record. Opp. at 18-19. Specifically, there is no "two-player niche" market, and TocMail acknowledges that "Mimecast, Proofpoint, **and other** cloud-based, time-of-click, redirect services" exist. Am. Compl. ¶¶ 39-42, 99; *see also* ECF No. 97-69 at -388 ("Proofpoint appears to be going after [Microsoft] dedicated customers very hard."). Further, TocMail's theory that Microsoft has advertised it offers something only TocMail can offer, Opp. at 19-20, fails because none of the messages use the words "IP Cloaking," Mot. at 6, and therefore none advertise what TocMail claims it "is the sole provider" of. Am. Compl. ¶ 4. Unlike in *De Simone v. VSL Pharms., Inc.*, 395 F. Supp. 3d 617, 631 (D. Md. 2019), Opp. at 19, TocMail does not have a monopoly; it does not even have one sale. SMF ¶ 30. Thus, Microsoft could not have had to falsely represent to offer the product TocMail offers (years before TocMail existed) to become marketable.

---

[6] The same concept is set forth in *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1331–32 (11th Cir. 2008). Microsoft does not rely upon *Natural Answers* for its standing test, Opp. at 23, but instead for its precedence that a plaintiff can "suffer no such commercial or competitive injury" if it was not selling or promoting its product "at the time of the alleged injury" because it "could not have lost any customers or potential customers." *Id.* This was derived from "[t]he congressionally-stated purpose of the Lanham Act" to protect parties who have had "competitive or commercial interests affected by the defendant's conduct," which has not changed, despite an evolution in standing under the Act. *Id.*

TocMail makes the fundamental flaw of equating likely injury with speculative injury[7], which lacks any reasonable basis and is too attenuated to meet its burden. *Lexmark Int'l, Inc.*, 572 U.S. 118 at 133. TocMail relies on sheer speculation to assume: (i) "given that TocMail solved the most-common attack used against cloud-based scanners, clearly it is likely that at least one company would purchase TocMail's solution,"[8] (ii) that "companies…believe that Microsoft is providing them the same protection," and (iii) extrapolates that based on its website marketing, including of its new and irrelevant product TocDocs, the fact that 10,000 visitors did not purchase its product is reflective of what 1 million consumers would do, and Microsoft is to blame. Opp. at 22. But TocMail has not surveyed, polled, or spoken to a single consumer, and does not know what they believe or would do. This speculation cannot establish injury. *See generally, H20 To Go, L.L.C. v. Martinez*, No. 05-21353-CIV, 2005 WL 2065220, at *5 (S.D. Fla. Aug. 22, 2005) (rejecting plaintiff's "speculative statements based on his belief that [d]efendant's continued operation of the franchise is causing and will continue to cause injury").

### E. TocMail Cannot Recover Damages.

The Court need only assess TocMail's ability to recover damages should it find that **all** elements of the claim are met, which they are not. Even so, "the degree to which [TocMail's]

---

[7] A windfall based on speculation is improper. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1334 (8th Cir. 1997) (even "where a defendant is guilty of misrepresenting its own product without targeting any other specific product, it is erroneous to apply a rebuttable presumption of harm in favor of a competitor. Otherwise, a plaintiff might enjoy a windfall from a speculative award of damages by simply being a competitor in the same market. Thus … the plaintiff must shoulder the full burden of proof of both cause in fact and injury.").

[8] TocMail's assertion that one customer who asked Microsoft about its evasion protection would have purchased TocMail's product but for the alleged false ads is unsupported and speculative. Opp. at 20, n.6. Not only was this company already an ATP customer when it inquired and thus could not have been deceived to purchase ATP by Microsoft's response, but TocMail has no evidence to suggest that this customer had heard of TocMail and that it would have purchased TocMail's product over other competitors. Reply to Fact ¶ 80. This speculation is insufficient to prove Microsoft's actions proximately caused or is likely to cause TocMail injury.

damage theories rest on speculation raises the dispositive issues to the level of being questions of law. It is also quite clear that in such situations, the issues need not, and should not, go to the jury." *Resol. Tr. Corp. v. Stroock & Stroock & Lavan*, 853 F. Supp. 1422, 1429 (S.D. Fla. 1994).

### 1. TocMail Has Not Proven it is Entitled to Disgorgement of Profits.

"[W]illfulness is a highly important consideration in awarding profits under § 1117(a), but not an absolute precondition." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Thus, to disgorge a defendant's profits, a plaintiff may show willfulness, or it must show either the defendant was unjustly enriched or that it is necessary to deter future conduct. *See PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019). TocMail has shown none.

Willful conduct has not occurred here. TocMail claims Microsoft has been aware of cloaking since 2006 and therefore, its promotion of Safe Links as purportedly protecting against IP Cloaking is willful.[9] Opp. at 26. There is no evidence that Microsoft "hid flaws" from customers, *id.*, or that Microsoft has "knowingly and deliberately cash[ed] in upon the good will of" TocMail or its product, which it could not do because TocMail was not created until nearly 5 years after the launch of Safe Links and after the majority of the ads in question were disseminated. SMF ¶ 15; *PlayNation*, 924 F.3d at 1170. Finally, Microsoft is not "on notice" that the ads at issue, or any ads that post-date the Complaint, are literally false or deceptive because TocMail has not provided sufficient evidence to establish this. Opp. at 26, n.9.

TocMail cannot prove unjust enrichment, which as TocMail's case law explains, occurs "when an infringer has enriched itself by tapping the reputation and good will of the infringed."

---

[9] To the extent TocMail believes Microsoft's alleged willful behavior dates back to 2011, it stated "[f]or disgorgement, TocMail chose not to pursue Contributory False Advertising in is Amended Complaint, which was the basis of the 2011 disgorgement." ECF No. 110 ¶ 63. Thus, TocMail concedes it has no basis for its disgorgement theory, including willfulness, to date back to 2011.

13

*Drew Estate Holding Co. v. Fantasia Distrib., Inc.*, No. 11-21900, 2014 WL 1319328, *7 (S.D. Fla. Apr. 1, 2014). TocMail admits it has no documents reflecting its and/or its product's reputation in the marketplace, SMF ¶ 33, and thus Microsoft could not have tapped into a reputation that does not exist.[10] In addition, "[t]he burden is on the plaintiff to prove [unjust enrichment] by pointing to evidence of actual consumer confusion." *Drew*, 2014 WL 1319328, at *7. Because TocMail concedes it did not survey or speak to a single consumer, it cannot prove consumer confusion. SMF ¶¶ 37, 39; ECF No. 110, TocMail's Reply to SMF ¶¶ 37, 39. Microsoft's mere profit from sales of its products does not prove it was unjustly enriched. Opp. at 26.

Deterrence is not applicable solely because Microsoft is "one of the largest, most-trusted tech companies in the world." Opp. at 26. Microsoft has not actively diverted sales away from TocMail by advertising Safe Links using TocMail's name brand or identity, or the like, which was required in *PlayNation Play Sys., Inc. v. Velex Corp.*, No. 20-12978, 2021 WL 2209096, at *4 (11th Cir. June 1, 2021). Nor does TocMail make such a claim. Opp. at 26. Its complaint is that it cannot break into the market. *Id.* at 22; SMF ¶ 30.

Even if one of these scenarios is met, TocMail is not entitled to an accounting of Safe Links' profits because Bour did not provide sales of Safe Links and instead provided Microsoft's revenues for larger products not at issue, ATP and Office 365 with ATP. Mot. at 27-28. In *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 13-2451, 2016 U.S. Dist. LEXIS 133828, at *18 (D. Minn. Sep. 28, 2016), the court explained the sales to be disgorged "must be of the allegedly falsely advertised products. Here, the falsely advertised products are the Tempur-Choice line of

---

[10] TocMail directs the Court to its statements in opposition to Microsoft's Motion to Dismiss, where it stated: "Microsoft's denials are inappropriate at this stage. Nevertheless, TocMail's allegations of reputational harm are clearly sufficient." ECF No. 42 at 21. Conclusory statements such as these cannot withstand summary judgment on the issue of reputational damages.

14

mattress products, not all of Tempur-Choice's products" and "there are no legal grounds for [p]laintiff to seek disgorgement of profits for Tempur-Pedic's sales of unrelated products." *Id*. Likewise, by failing to prove sales of the alleged falsely advertised product at issue, Safe Links, TocMail cannot obtain disgorgement damages.

### 2. TocMail Has Not Proven It Suffered or Will Suffer Actual Damages.

As discussed *supra* at Section D, TocMail has not established proximate causation, thus it is not entitled to actual damages. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007) ("As part of its case-in-chief, [the plaintiff] [is] required to establish that [the defendant's] alleged Lanham Act violations proximately caused it to suffer monetary damages."). Further, lost prospective profits are not recoverable where they are based on speculation or conjecture. Mot. at 24-25. Acknowledging this, TocMail only seeks lost profits of commercial sales post December 2019.[11] But it did not respond to the list of assumptions upon which its damages calculations rest, *id*. at 29-30, and thus concedes its damages are based on speculation. For this reason, it cannot obtain actual damages.

### 3. TocMail is Not Entitled to Injunctive Relief.

TocMail's sole basis for injunctive relief is that Microsoft's advertising is ongoing. Opp. at 31. But TocMail has not shown why the significant monetary damages it seeks are inadequate, as required, and thus the Court should deny injunctive relief. Mot. at 30; *Ordonez v. Icon Sky Holdings LLC*, No. 10-60156-CIV, 2011 WL 3843890, at *8 (S.D. Fla. Aug. 30, 2011).

### III. CONCLUSION

For the forgoing reasons, this Court should grant Microsoft's Motion.

---

[11] TocMail states it "decided to not pursue lost profits at trial for consumers (due to insufficiency of documents produced during discovery)" and clarifies it "has never sought damages for prior to December 2019." ECF No. 110 ¶¶ 51, 63.

Dated:  September 3, 2021

Respectfully submitted,

By */s/ Evelyn A. Cobos*
EVELYN A. COBOS

**GREENBERG TRAURIG, LLP**
Mary-Olga Lovett (*admitted pro hac vice)*
Texas Bar No. 00789289
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
   orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
   FLService@gtlaw.com

*Attorneys for Defendant,*
**MICROSOFT CORPORATION**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of September, I served for foregoing document on all counsel of record identified on the below Service List in the manner specified.

/s/ *Evelyn A. Cobos*
EVELYN A. COBOS

## **SERVICE LIST**

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*