UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:20-cv-60416-CANNON/HUNT

TOCMAIL INC., a Florida corporation,

    Plaintiff,

v.

MICROSOFT CORPORATION, a Washington corporation,

    Defendant.

**DEFENDANT MICROSOFT CORPORATION'S L.R. 56.1(a)(3)**
**REPLY STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1(a)(3), Defendant Microsoft Corporation ("Microsoft") submits its Reply Statement of Material Facts, and states as follows:

68.    **Disputed in part, but immaterial**. EOP, which is not at issue, is still the standard "robust email protection against spam, viruses, and malware" in Office 365, while ATP extends EOP's protection, providing additional features including Safe Links and Safe Attachments, to those who purchase ATP or an Office 365 suite with ATP. ECF No. 97-36 at -147-48; Microsoft's Statement of Material Facts in Support of Summary Judgment, ECF No. 100, ("SMF") ¶ 42 n.3.

69.    **Undisputed.** It is undisputed the article states this about ATP, which must be read in context.

70.    **Disputed in part**. As stated in the Parties' Joint Statement of Undisputed Facts, ECF No. 95, ("JSUF"), a consumer can "purchase ATP as a separate add-on service to Office 365 or purchase an Office 365 suite that includes ATP." JSUF ¶ 3.

71.    **Undisputed**. It is undisputed that Safe Links began with its reputation server but it "evolved as the sort of state of the art [service that] became a combination of reputation and sandbox detonation." ECF No. 112-3 at 20:21-21:3.

72.    **Undisputed**.

73. **Disputed in part, but immaterial.** TocMail's Exhibit 46, a February 2019 email, is irrelevant since TocMail's product became available in December 2019. JSUF ¶ 4. Further, it explains this client's "misses were primarily due to a configuration issue--a tenant allow policy … that allowed many of the URLs to bypass the protection stack." ECF No. 97-46 at -792. In other words, the client's customized policy settings created the weakness, not Safe Links.

74. **Disputed but immaterial.** Since mid to late 2018, Microsoft has had the ability to use and does use IP anonymization to route detonation traffic out of non-Microsoft IP ranges. SMF ¶ 5. Microsoft works with several third-party anonymous proxy servers to route its detonation traffic, not just one. *See, e.g.,* ECF No. 97-20 at -461.

75. **Disputed but immaterial**. In April 2019, Microsoft used a particular "criteria for deciding when to route a URL to the IP Anonymization infrastructure" to test its effectiveness. ECF No. 110-2 at 143:2-13. The test sample comprised 4.25% of URLs, which had non-200 and non-zero response codes. ECF No. 110-4 at -791. The test data showed Safe Link's use of IP Anonymization provided effective protection from IP Cloaking. ECF No. 110-2 at 143:7-13. Microsoft is routing "much more now" through IP Anonymization "using different criteria, which is proprietary." *Id.* at 143:17-19; 146:5-13. The percentage of URLs sent to the anonymous proxy server is immaterial; not all traffic can be routed out of non-Microsoft IP ranges because that would tip off hackers. *See* ECF No. 97-18 at -749.

76. **Disputed in part, but immaterial.** IP Cloaking (*i.e.* network evasion) is not the most common or critical type of threat faced by Microsoft users. *See* ECF No. 112-3 at 24:4-18; ECF No. 112-4 at 40:16-22; ECF No. 112-2 at 24:19-25:2, 96:7-10, 163:7-164:13; ECF No. 112-6 at Response to Rog. No. 8.

77. **Disputed in part, but immaterial.** This is immaterial as the presentation predates

2

TocMail's product (JSUF ¶ 4) and discusses solutions to network evasion, such as "rout[ing] traffic through anonymous proxy servers" that have been implemented and are effective. ECF No. 97-20 at -461; ECF No. 112-3 at 50:4-24. The presentation states there is merely a "risk" of "*possible* evasion of [the proxy servers]," and TocMail has no evidence otherwise. ECF No. 97-20 at -461.

78.     **Undisputed and immaterial**. TocMail's Exhibit 41, an April 2018 email, is irrelevant since it predates TocMail's product (JSUF ¶ 4) and shows Microsoft was already "chasing a number of options" to improve Safe Links protections. ECF No. 97-41 at -023. Microsoft does not advertise 100% effectiveness (SMF ¶ 13), and by late 2018, Microsoft developed additional means to protect consumers from IP Cloaking. *See* SMF ¶ 5; ECF No. 97-20 at -461; Hatekar Dep. (ECF No. 112-4) at 41:14-18.

79.     **Disputed but immaterial**. TocMail's Exhibits 59 and 122 show a client's "Red hat team" conducted its own "pen test against their environment," (ECF No. 97-59 at -138, -146; ECF No. 110-28 at -853), and ATP correctly "detected/blocked the link that was used for the pen exercise." ECF No. 110-28 at -852. TocMail's Exhibit 122 explains a preliminary call Microsoft held with a client was "supposed to strictly be a discovery call in which we gathered more info" and not a "forum for us to disclose answers [because] [w]e weren't ready to provide the customer with answers" yet. *Id*. at -849. One Microsoft employee prematurely indicated to the client that there was a "MacOS gap" and Microsoft "plan[ned] to reach back out to the customer to clarify." *Id*. Thus, there was clearly no intent to deceive or conceal information from this customer.

80.     **Disputed but immaterial**. Prior to April 15, 2020, the client had already purchased ATP (ECF No. 97-43 at -188), and all subsequent discussions in ECF Nos. 97-43, 97-89 were to further understand and discuss ATP's capabilities and have no bearing on *why* this client initially purchased ATP. ECF No. 97-18 is an internal document preparing for a call with a client, and the

client did not see the cited sample response to a possible question on evasion. *Id*. at -747, -749. The fact that Microsoft monitors network evasion to ensure effectiveness does not equate to bullet proof protection from evasion. *Id*. ECF No. 97-53 is irrelevant as it is an investment pitch for a product called "SmartScreen" which is not at issue here, and any gap in Sonar, which is one layer of Safe Links, is not indicative of a failure of every layer of Safe Links. *Id.* at -029. The purported value of this account (ECF No. 97-43) is irrelevant to this action.

81.     **Disputed in part, but immaterial.** Exhibits 22 and 92, emails from November 2016 and June 2017, respectively, are irrelevant as they predate TocMail's product. JSUF ¶ 4. Exhibit 22 explains Microsoft is interested in developing IP Anonymization to route detonation traffic, and by mid to late 2018, Safe Links had developed it. SMF ¶¶ 4-5; ECF No. 97-20 at -461; ECF No. 112-4 at 40:16-20,41:14-18. Exhibit 92 explains how ATP is effective and shows Microsoft works to continuously and quickly fix issues it and/or its clients experience, providing protection from attacks. ECF No. 97-92 at -607. Finally, the purported number of employees and revenue of this customer are irrelevant. ECF No. 110-123.

82.     **Disputed but immaterial.** TocMail's citations to emails discussing a theoretical concept called "BYO VPN" does not establish that "Microsoft knows that companies were safe from IP evasion when they used on-premise scanners," and TocMail has no proof to support this allegation. TocMail's Exhibits 124 and 125 are examples of Microsoft continuously working to improve Safe Links protections, including against IP evasion, by using techniques such as IP Anonymization, fingerprinting, BYO VPN, custom VPN, and customized IP anonymizer. ECF No. 110-124; ECF No. 110-125; 110-30 at p. 4; ECF No. 110-31 at -009. BYO VPN is not an on-premise scanner, thus TocMail's Exhibit 127 is not relevant or useful. The cited portion of Patel's transcript does not discuss on-premise scanners, but instead, cloud-based solutions, such as Sonar

and Z-scaler. ECF No 110-2 at 187:5-15. The cited portion of Rogers' transcript discusses a scenario where an attacker cannot distinguish between a user and protection service, and thus cannot evade, which can occur with cloud-based solutions. ECF No. 110-32 at 90:9-17.

83. **Disputed but immaterial.** TocMail's Exhibit 128 refers only to "lateral movement" observed in Vectra's customer base and does not state or show that "96% of companies using Office 365 show signs of active hacker movement within their company network." ECF No. 110-34 at -118. The document also does not indicate whether the customer had ATP or Safe Links enabled, a third-party email protection service, or any email protection whatsoever. *Id.*

84. **Disputed but immaterial**. Microsoft disputes TocMail's characterization of this patent, its unproven methodology, and efficacy. The patent is also immaterial and irrelevant to prove the elements of TocMail's false advertising Lanham Act claim. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (listing elements).

85. **Disputed in part, but immaterial.** TocMail's Exhibit 32 is immaterial as it refers to Sonar's inability to detect "as bad" a URL that was "inside the pdf," attached to certain emails. ECF No. 97-32 at -682. The service responsible for protecting from attacks by malicious links in PDFs is Safe Attachments, a product not at issue. ECF No. 97-36 at 7; *c.f.* ECF No. 97-18 at -747 (stating Safe Links provides protection from links in Office documents only).

86. **Disputed in part, but immaterial.** TocMail cites a YouTube video that is unavailable as of July 29, 2021, and to a video provided to the Court via a flash drive (the "Video"). The Video does not depict or state that Safe Links protects users from IP Cloaking. *See* ECF No. 97-63. The quotation from the Video's narrator describes a malicious link. *See generally* Patel Dep. (**Exhibit 3**) at 158:18-20. It does ***not*** describe a redirect due to a particular IP range (*i.e.*, employing IP Cloaking), *id.*, and because only IP Cloaking is at issue, this Video is immaterial.

Patel 30(b)(6) Dep. (**Exhibit 2**) at 132:14-16. The cited ebook does not "promote[] Safe Links' reputation and detonation as the solution to these very same redirects." ECF No. 97-66. TocMail does not have evidence to dispute Office 365's rate of protection from malware, which is not at issue, anyway. ECF No. 97-66.

87.   **Disputed but immaterial**.  The email subject line of TocMail's Exhibit 31 is irrelevant, and its context explains that a Microsoft employee wanted "to make progress on" Microsoft's ability to "detect Urls using any form of static analysis," which is not at issue and does not pertain to IP Cloaking. Further, this exhibit is evidence that Microsoft's IP anonymization tool is effective because it was able to see the phishing page. ECF No. 97-31 at -550.

88.   **Disputed but immaterial**.  TocMail's Exhibit 60 is mischaracterized, as the malware false negative rate is 13.5%, therefore 86.5% of URLs categorized as linked malware where caught in the month of December 2020. ECF No. 97-60 at -780. The false negatives utilized geo evasion. *Id.* However, this email does not indicate whether the evasion occurred on the initial URL click where Safe Links runs, or later on the traffic generated by the malicious file itself, which is a critical distinction, as the latter does not pertain to Safe Links. *Id.* Finally, effectiveness rates change as the threat landscape is constantly shifting. *See* ECF No. 110-35 at -633.

89.   **Disputed in part, but immaterial**. Whether an attacker can get past a block list is immaterial, as that only implicates Safe Links' reputation service, which is but one of many layers of protection and services designed to protect customers from malicious links, and thus a breach of one layer is not necessarily indicative of an attack harming the consumer. *See* ECF No. 112-5 at Interrog. No. 17; Microsoft's Statement of Additional Facts (ECF No. 112) ¶¶ 16-25 (explaining Safe Links utilizes a multi-layered approach to prevent attacks and describing Safe Links' many features, redundancies, and layers of protection to combat IP network evasion).

90. **Disputed but immaterial.** Microsoft does not state, and TocMail has no evidence that, *to consumers*, "security" is an "inherent quality of [the] products" (*i.e.*, ATP or Office 365 with ATP) consumers must purchase to access the Safe Links feature, let alone an inherent quality of Safe Links. *See J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 796–98 (11th Cir. 2020). TocMail's Exhibit 81 also states "security is not the end goal, but simply a support to ensure organizations can remain productive to achieve more." ECF No. 97-81 at -442 (emphasis added). TocMail's Exhibit 82 is immaterial, as it is one individual's blog stating that another individual blogged about Exchange Online Protection and describes "one of the core value propositions of the new Exchange – Keeping your organization safe." ECF No. 97-82 at -576. Exhibit 83, Microsoft's Form 10-Q, does not pertain specifically to ATP or Office 365 with ATP, or what *consumers* think of Safe Links. ECF No. 97-83. Exhibits 84 and 85 are irrelevant marketing studies that predate TocMail's creation in December 2019, JSUF ¶ 4, and pertain to "messaging" Microsoft was exploring for future marketing campaigns, which were not necessarily implemented and are not the at-issue messages or about Safe Links. ECF No. 97-84, -85. The statement from Exhibit 84 was written by Microsoft and pertains to respondents' perceptions of "elements such as Encryption & DRM," and in Exhibit 85, consumer reactions were obtained when presented with a statement about "advanced protection against online threats," which are irrelevant.

91. **Disputed in part, but immaterial.** Prior to the creation of the email in ECF No. 97-86, the client had already purchased ATP (ECF No. 97-43 at -188), and all subsequent discussions with the client have no bearing on *why* it initially purchased ATP. Exhibit 86 does not show that the client itself asked about evasion. It is setting an internal call to discuss Microsoft's "approach to evasion" in case that discussion is broached. ECF No. 97-86 at -184.

92. **Disputed but immaterial.** TocMail's Exhibits 126 and 130 do not support the

7

conclusion that "[s]ome companies purchase ATP solely for the Safe Links' feature," and even if this were true, it does not show the purchase was made due to the three messages at issue. Exhibit 130 merely provides a topic "for discussion" internally regarding preferring Safe Links to Safe Attachments. ECF No. 110-36 at -953. Exhibit 126 merely explains Mr. Chandler holds a position as a program manager.

93. **Undisputed.**

94. **Disputed but immaterial**. Research articles from 2006 are irrelevant since Safe Links was created in 2015 and TocMail became available in December 2019 (JSUF ¶¶ 2, 4), and the threat landscape constantly changes and evolves over the years. *See* ECF No. 110-35 at -633.

95. **Disputed in part, but immaterial**. The quoted statement in the first sentence is immaterial because it only appears in the presenter's notes, ECF No. 97-72 at 13, and consumers may not have been exposed to it. It is also immaterial because it discusses a service named "Campaign Views" and its "AI" technology, but Safe Links is not mentioned and thus, this is irrelevant. *Id.* Further, the "ensure" statements in the first two sentences are nonactionable puffery as a matter of law, and even if it is not, it is undisputed that Safe Links does not advertise it is 100% effective. SMF ¶¶ 13, 20. Microsoft's promotions that post-date the filing of this action are not at issue, ECF No. 110-135; ECF No. 110-136; ECF No. 110-137, and to the extent they discuss a "redirect," it is not discussing a redirection due to a particular IP range (*i.e.* IP Cloaking) and thus they are immaterial to this case. ECF No. 112-2 at 132:14-16; ECF No. 97-47 at -808.

96. **Disputed in part, but immaterial**. It is undisputed that one individual typed this in an internal email in 2016, but this is immaterial because all links are not at issue here – only IP Cloaked links are, *see generally,* Am. Compl., and the threat landscape constantly changes and evolves including from the time this was written to now. *See* ECF No. 110-35 at -633.

Dated: September 3, 2021                    Respectfully submitted,

/s/ *Evelyn A. Cobos*
Evelyn A. Cobos

**GREENBERG TRAURIG, LLP**
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile: (713) 374-3505
MARY-OLGA LOVETT
Email: lovettm@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
Email: sanchezo@gtlaw.com
          orizondol@gtlaw.com
EVELYN A. COBOS
Florida Bar No. 092310
Email: cobose@gtlaw.com
          FLService@gtlaw.com

*Attorneys for Microsoft Corporation*

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of September, the foregoing document is being served this day on all counsel of record on the service list via electronic mail.

/s/ *Evelyn A. Cobos*
EVELYN A. COBOS

## SERVICE LIST

JOHNSON & MARTIN, P.A.
Joshua D. Martin
500 W. Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33602
Tel: (954) 790-6699
Fax: (954) 206-0017
Email: josh.martin@johnsonmartinlaw.com

*Attorneys for Plaintiff*